USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/9/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
GRAHAM CHASE ROBINSON,

                            Plaintiff,                      19-CV-9156 (KHP)

               -against-                                  **OPINION**

ROBERT DE NIRO and CANAL PRODUCTIONS, INC.,

                            Defendants.
-----------------------------------------------------------------X

**KATHARINE H. PARKER, United States Magistrate Judge**

On August 17, 2019, Defendant Canal Productions, Inc. filed suit against Plaintiff in New York State Supreme Court asserting claims of breach of fiduciary duty, breach of the duty of loyalty, conversion and fraud.[1] On October 3, 2019, Plaintiff commenced this federal action alleging, among other things, that the Defendants retaliated against her by commencing the State Court Action. (ECF No. 1) Before this Court is Defendants' motion for leave to amend its answer and to replead the claims in the State Court Action as counterclaims in this action. (ECF Nos. 58-60.) For the following reasons, the Defendant's motion is GRANTED.

**BACKGROUND**

Canal Productions, Inc. ("Canal") is a business that contracts the services of Robert De Niro ("De Niro") (collectively, "Defendants") to third parties. (Compl ¶ 8) In 2008, the Defendants hired Plaintiff to be an executive assistant to Mr. De Niro. *Id*. Plaintiff's job included overseeing the office, arranging travel and scheduling for Mr. De Niro and other

---

[1] Canal Productions, Inc. v. Robinson, Index No. 654711/2019 ("State Court Action").

administrative tasks. (Compl ¶9.)  In or about 2012, Plaintiff's role increased, and she was given greater responsibilities including supervising employees, developing and implementing employment policies and working to maintain Canal's operations.  (Compl ¶ 10).

According to the Defendants, in early 2019 suspicions arose regarding Plaintiff's honesty, integrity, work ethic and motivation.  (Compl ¶¶ 18-19.)  Plaintiff resigned from Canal in April of that year. *Id.*  After an audit of its records, Canal commenced the New York State Action alleging that Plaintiff abused her position at Canal by charging hundreds of thousands of dollars' worth of her personal expenses to the business charge account and utilizing millions of Defendant's frequent flier miles – intended for business use – for her own personal use, plus other similar abuses.  It asserted four causes of action against the Plaintiff: (1) breach of fiduciary duty; (2) breach of duty of loyalty; (3) conversion; and (4) fraud.

On October 3, 2019, before answering the state court complaint, Plaintiff commenced the instant action. (ECF No. 1.)  Plaintiff alleges that Defendants (1) subjected her to gender discrimination and retaliation in violation of the New York City Human Rights Law, (2) failed to pay her the same as an allegedly similarly situated male employee in violation of the Equal Pay Act and the New York Equal Pay Law, (3) failed to pay her for overtime in violation of the Fair Labor Standards Act and the New York Labor Law, and (4) retaliated against her by commencing the State Court Action after she complained about her pay. (Compl. ¶¶ 4, 45, 66, 93 and 101.)

Plaintiff then filed a motion to dismiss, or alternatively to stay, the State Court Action on the grounds that there was substantial overlap of the claims in the two lawsuits and that all claims were more appropriately tried in this federal action.  On December 2, 2020, the State

Court granted the motion to stay, explaining that "to have the parties dispersed between two separate forums, representing two separate jurisdictions . . . would be indisputably repugnant to notions of judicial efficiency and party economy due to the 'substantial overlap of claims and parties.'" (ECF No. 59, Exhibit D)  Canal moved for reconsideration of the stay order. (ECF No. 38.)  The State Court denied the motion for reconsideration on March 2, 2021.  Within a week thereafter, Defendants sought Plaintiff's consent to bring their state claims as counterclaims in this action.  (ECF No. 65 ¶ 4.)  Plaintiff refused to consent.

The deadline for amending the pleadings or joining additional parties was April 30, 2020. (ECF No. 16)  Nevertheless, Defendants now move pursuant to Federal Rule of Civil Procedure ("Rule") 15 to amend their answer and assert counterclaims against Plaintiff—the same claims previously asserted in the State Court Action. (ECF No. 58.)

Plaintiff opposes the amendment on several grounds including: (1) the Defendants were not diligent in seeking the amendment; (2) given the stage of this case, the amendment would delay the case and thereby prejudice her; (3) the proposed counterclaims are retaliatory and without merit and therefore brought in bad faith; (4) the counterclaim for breach of duty of loyalty/faithless servant is duplicative of the claim for breach of fiduciary duty and thus is futile and should not be permitted; (5) the counterclaim for fraud does not meet the pleading requirements of Federal Rule of Civil Procedure 9 and thus should not be permitted. (ECF No. 63.)

## **LEGAL STANDARD**

Under Rule 15(a) of the Federal Rules of Civil Procedure, "a party may amend its pleading once as a matter of course within . . . 21 days after serving it, or . . . if the pleading is

one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Second Circuit has stated that "[t]his permissive standard is consistent with our strong preference for resolving disputes on the merits." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011) (internal quotation marks and citation omitted). Under Rule 15, leave to amend should be given "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility . . . ." *Monahan v. New York City Dep't of Corrs.*, 214 F.3d 275, 283 (2d Cir. 2000) (citation omitted).

Where, as here, there is a scheduling order in place that establishes a deadline for seeking leave to amend, "the lenient standard under Rule 15(a), which provides leave to amend shall be freely given, must be balanced against the requirement under Rule 16(b) that the Court's scheduling order shall not be modified except upon a showing of good cause." *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009) (internal quotation marks and citation omitted); *see also* Fed. R. Civ. P. 16(b)(4) (a scheduling order "may be modified only for good cause and with the judge's consent"). The determination of whether "good cause" exists under Rule 16(b) largely turns on the diligence of the moving party. *Holmes*, 568 F.3d at 335 (citation omitted); *see also Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc.*, 889 F. Supp. 2d 453, 457 (S.D.N.Y. 2012) (to show good cause, moving party must demonstrate that "despite its having exercised

diligence, the applicable deadline could not have been reasonably met" (internal quotation marks and citation omitted)).

To the extent that the amendment is opposed due to futility, the Court evaluates whether the proposed new claim fails under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Panther Partners Inc. v. Ikanos Commc'ns., Inc.*, 681 F.3d 114, 119 (2d Cir. 2012). Thus, in reviewing the proposed amended pleading the Court must determine whether it contains sufficient facts, which if taken as true, state claims for relief that are plausible on their face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In general, while detailed factual allegations are not required, the complaint must contain more than mere "labels and conclusions." *Id.*; *see also Cruz v. Beto*, 405 U.S. 319, 322 (1972); *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717-18 (2d Cir. 2013). However, when a claim sounds in fraud, Rule 9(b) requires the complaint to state "with particularity the circumstances constituting fraud," *Emps.' Ret. Sys. of Gov't of the V.I. v. Blanford*, 794 F.3d 297, 304 (2d Cir. 2015) (citation omitted). To meet this standard, "a complaint must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Wood ex rel. U.S. v. Applied Research Assocs., Inc.*, 328 Fed. Appx. 744, 747 (2d Cir. 2009) (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)).

## ANALYSIS

### A. Diligence of Defendant

While it is true that the deadline for amendments passed in April 2020, Defendants delay is due in large part to the delay of the State Court in ruling on the Plaintiff's motion to stay the State Court Action and Canal's motion for reconsideration. It was not until late March 2021 when Canal learned definitively that it would not be able to proceed with its claims against Plaintiff in State Court. It then promptly moved for permission to reassert its claims as counterclaims in this action, consistent with what Plaintiff sought when seeking the stay and with what the State Court viewed as the more efficient way to resolve the parties' overlapping claims. (ECF Nos. 38, 65 ¶ 4.) If Canal had been successful in keeping its claims in State Court, there would be no need for the present motion. However, the State Court did not issue its decision until well after this Court's deadline for amendments had passed. Canal seeking to maintain its claims in State Court over Plaintiff's objection does not equate to a lack of diligence; it was entitled to obtain a ruling from the State Court before making a decision about moving its claims to this Court. See *Randolph-Rand Corp. of New York v. Tidy Handbags, Inc.*, 96 Civ. 1829 (DF), 2001 WL 1286989, at*4 (S.D.N.Y. Oct. 24, 2001). Thus, I find that Canal was diligent in seeking permission for this amendment and has shown good cause for purposes of Rule 16. *Ambac Assurance Corp. v. EMC Mortg. Corp.*, No. 08CIV9464, 2010 WL 11595698, at *4 (S.D.N.Y. Dec. 16, 2010), *adopted sub nom. Ambac Assur. Corp. v. EMC Mortg. Corp.*, No. 08 CIV.9464, 2011 WL 566776 (S.D.N.Y. Feb. 8, 2011) (if scheduling deadline could not have been met despite moving parties' diligence, good cause standard met); *accord Perfect Pearl*, 889 F. Supp. 2d at 457.

### B. Delay, Bad Faith and Prejudice

Contrary to what Plaintiff argues, there is no basis for finding undue delay here. Courts have granted leave to amend where delays were far greater than the roughly one year delay in this case. *See Richardson Greenshields Securities, Inc., v. Lau,* 825 F.2d 647, 653 n.6 (2d Cir. 1987) (collecting cases where leave to amend was granted after delays ranging from two to five years). The parties are still engaged in discovery and depositions have not yet begun. Further, the same discovery needed for the prosecution of the counterclaims is needed for the defense of Plaintiff's retaliation claims in this case. Thus, the addition of the counterclaims should not delay discovery or the ultimate resolution of the case. Indeed, as Plaintiff argued in the State Court and as the State Court noted in its decision staying the State Court Action, efficiencies are gained by litigating the counterclaims in this action.

To the extent Plaintiff argues that the counterclaims are brought in bad faith, this argument is premised on her contention that Canal's accusations against her, including that she improperly used company resources such as sky miles and put in false claims for vacation pay, are a pretext for retaliation. Whether Plaintiff is correct in her claim of retaliation cannot be decided at this stage of the litigation. Her merits-based argument that the counterclaims are without merit can only be resolved on a motion for summary judgment or at trial. *Kleeberg v. Eber*, 331 F.R.D. 302, 317–19, 320–21 (S.D.N.Y. 2019) (merits arguments are "not appropriate to decide on a motion to amend a pleading").

Plaintiff's argument that she will be prejudiced by the amendment is based on her fear that Defendants are using this amendment to "start litigation from scratch." (ECF No. 63 at p. 16.) This fear is unfounded. As discussed above, discovery in this case overlaps substantially with the discovery needed in connection with the counterclaims. Having closely supervised

discovery and hearing from the parties, the Court is confident that the scope of discovery will not be enlarged substantially, if at all, by the amendments. The claims are no surprise to Plaintiff, as they are the basis for her retaliation claim in this action and have been pending in State Court for some time. Thus, Plaintiff will not be prejudiced from allowing the amendment. *Ouedraogo v. A-1 Int'l Courier Serv., Inc.,* No. 12 CIV. 5651 AJN, 2013 WL 3466810, at *5 (S.D.N.Y. July 8, 2013) (granting leave under Rule 16(b) when "factual nexus" existed between complaint and proposed amendment).

### C. Futility of Duty of Loyalty Claim

Plaintiff argues that the proposed Breach of Duty of Loyalty claim is redundant of the proposed Breach of Fiduciary Duty claim and that the Breach of Fiduciary Duty claim should not be permitted for this reason. "A court may dismiss a claim as duplicative if relying on the same alleged acts, the claim simply seeks the same damages or other relief already claimed in a companion cause of action." *Supreme Showroom Inc. v. Branded Apparel Grp. LLC*, 16 Civ. 5211 (PAE), 2018 WL 3148357, at *12 n.14 (S.D.N.Y. June 27, 2018) (internal quotation marks and citation omitted); *see also NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008) ("Two claims are duplicative of one another if they "arise from the same facts . . . and do not allege distinct damages"). The two claims are indeed based on the same underlying facts. However, as pled, the claims are seeking different relief.

A breach of fiduciary duty claim is a common law tort claim that allows an injured party in an agency relationship to recover for the agent's misconduct. It is not enforceable unless and until damages are sustained. *Cf. Murphy v. Morlitz*, 751 F. App'x 28, 30 (2d Cir. 2018) (citation omitted); *Helios Int'l S.A.R.L. v. Cantamessa USA, Inc.,* No. 12 Civ. 8205, 2013 WL 3943267, at

*11 (S.D.N.Y. July 31, 2013). By contrast, the faithless servant doctrine (described by Defendants as breach of the duty of loyalty) functions as an alternative cause of action that is designed to compensate a principal for the faithless actions of his agent, even when the principal has suffered no injury. *See generally Webb v. RLR Assocs., Ltd.,* No. 03 Civ. 4275(HB), 2004 WL 555699, at *2 (S.D.N.Y. Mar. 19, 2004). In *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 242 (2d Cir. 2020), the Second Circuit noted that some courts have found these specific claims as duplicative, while other courts have dealt with them as separate causes of action. The New York Court of Appeals does not appear to have clarified the issue since *Yukos*. Plaintiff cites no cases in a Rule 12(b)(6) context granting the relief she requests.[2]

    As noted above, while both claims rely on the same sets of facts, Defendants seek additional, and different, relief pursuant to the faithless servant doctrine in the form of "the return of all wages, bonuses and other compensation paid to Plaintiff." For the breach of fiduciary duty, Defendants seek return of miles and amounts charged by Plaintiff on the corporate credit card, among other damages. The Second Circuit has held that where a "claimant is entitled to a particular category of damages on one claim but not the other, the claims are not duplicative." *NetJets Aviation, Inc. v. LHC Commc'ns, LLC,* 537 F.3d 168, 175 (2d Cir. 2008). Because the Defendants in this case are claiming separate remedies under the two causes of action, and because the New York Court of Appeals has not definitively held that they are duplicative, this Court will permit Defendants to assert both. *See Haraden Motorcar Corp. v. Bonarrigo*, 19-cv-01079 (BKS)(DJS), 2020 WL 1915125, at *12 (N.D.N.Y. Apr. 20, 2020)

---

[2] Instead, Plaintiff cites cases that focus on duplicative claims when there is a breach of contract claim. None of the cases Plaintiff cites to deal with breach of fiduciary duty and breach of duty of loyalty claims.

(opining that the same two causes of action were not duplicative because the potential damages under each were distinct); *Plaza Motors of Brooklyn, Inc. v. Rivera*, No. 19-CV-6336 (LDH), 2020 WL 9814102, at *4 (E.D.N.Y. Sept. 17, 2020) (although on motion for a default judgment, the court analyzed these two causes of action as distinct for purposes of pursuing claims).

### D. Futility of Fraud Claim

Under New York law, the elements of a claim for fraud are: "(1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff." *Crigger v. Fahnestock & Co.,* 443 F.3d 230, 234 (2d Cir. 2006); *accord Albert Apartment Corp. v. Corbo Co.,* 182 A.D.2d 500, 582 N.Y.S.2d 409, 410 (1st Dep't 1992). Where a party "ha[d] the means available . . . of knowing . . . the truth," its failure to "make use of those means" bars any fraud claim. *Curran, Cooney, Penney, Inc. v. Young & Koomans, Inc.*, 583 N.Y.S.2d 478, 479 (1992) (citing *Schumaker v. Mather*, 30 N.E. 755, 757 (1892)). Additionally, Rule 9(b) sets forth a heightened pleading standard for allegations of fraud: "the complaint must: (1) specify the statements that the [Defendant] contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Id.*

Here, Defendants have sufficiently pleaded fraud insofar as they allege that Plaintiff, who was in a trusted position with full access to company accounts, submitted false requests for vacation pay and made false statements about trips for purposes of using company miles. With respect to these actions, enough has been pled to allow the claims to proceed. The same

is true as to personal charges on the company credit card. Canal details in the proposed pleading a number of charges for meals and other items that Plaintiff charged as work expenses but that were not in fact work expenses. That Canal has not provided the specific dates of each of the alleged improper charges and each of the false vacation submissions and each improper trip does not doom the claim at this stage. It has provided specific details of the nature of the false submissions, examples of specific trips, purchases and vacation pay requests, and explained the reasons it relied on Plaintiff--her position of trust. Whether Canal ultimately can prove fraud will be determined at a later stage of the case. For now, Canal will be permitted to assert the fraud claim.

### E. Improper Factual Allegations

Plaintiff opposes the inclusion of certain factual allegations in the counterclaims, including allegations about watching Netflix during work hours, information concerning Plaintiff's job duties and compensation on the grounds they are irrelevant to the counterclaims and improper under Rule 12(f). Rule 12(f) provides that a party may move to strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter. In the Court's view, none of the paragraphs are so irrelevant to warrant striking them from the proposed pleading. All relate to Plaintiff's position and duties and level of responsibility vis-à-vis other employees in the company. Accordingly, they need not be stricken from the proposed pleading.

## **CONCLUSION**

For the foregoing reasons, the Defendants motion to amend and add counterclaims is

GRANTED.

DATED: July 9, 2021
New York, New York

SO ORDERED,

*Katharine H. Parker*