UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GRAHAM CHASE ROBINSON,

                  *Plaintiff*,

    - against -

ROBERT DE NIRO and
CANAL PRODUCTIONS, INC.,

                  *Defendants*.

Case No. 1:19-cv-09156-LJL-KHP

**DEFENDANTS' FIRST AMENDED
ANSWER WITH COUNTERCLAIMS**

Defendant, Robert De Niro ("Mr. De Niro"), by and through his attorneys, Traub, Lieberman, Straus & Shrewsberry LLP and Defendant, Canal Productions, Inc. ("Canal" and together with Mr. De Niro, the "Defendants"), by and through their attorneys, Traub, Lieberman, Straus & Shrewsberry LLP and Tarter Krinsky & Drogin LLP, submit their First Amended Answer with Counterclaims (the "Answer") to the Complaint, dated October 3, 2019 (the "Complaint"), filed by Plaintiff, Graham Chase Robinson ("Plaintiff" or "Ms. Robinson"). Any allegation not explicitly admitted is denied. Headings contained in the Complaint are not substantive allegations to which an Answer is required and to the extent the headers are repeated in the Answer, it is solely for reference purposes. To the extent any allegations herein are not answered, and it is determined that an answer is required, Defendants deny the allegations.

## I.   <u>Overview</u>

1.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "1" of the Complaint.

2.    Deny the allegations set forth in paragraph "2" of the Complaint, except admits that Plaintiff began working for Mr. De Niro as an Executive Assistant in 2008 and deny knowledge or information sufficient to form a belief as to her age and her hopes to build a career in the

entertainment industry.

3.    Deny the allegations set forth in paragraph "3" of the Complaint.

4.    Deny the allegations set forth in paragraph "4" of the Complaint.

5.    Deny the allegations set forth in paragraph "5" of the Complaint, except deny knowledge or information sufficient to form a belief as to Plaintiff's motivations.

## II.    Summary

6.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "6" of the Complaint.

7.    Deny the allegations set forth in paragraph "7" of the Complaint.

8.    Deny the allegations set forth in paragraph "8" of the Complaint.

9.    Deny the allegations set forth in paragraph "9" of the Complaint.

10.    Deny the allegations set forth in paragraph "10" of the Complaint.

11.    Deny the allegations set forth in paragraph "11" of the Complaint.

## III.   The Parties

12.    Deny the allegations set forth in paragraph "12" of the Complaint, except admit that Plaintiff was employed by Canal Productions, Inc. from February 4, 2008 until April 6, 2019.

13.    Admit the allegations set forth in paragraph "13" of the Complaint only insofar as Canal is a company owned by Mr. De Niro that is headquartered in Manhattan, and otherwise deny knowledge or information sufficient to form a belief as to the use of the term "controlled."

14.    Admit the allegations set forth in paragraph "14" of the Complaint.

## IV.   Jurisdiction and Venue

15.    The allegations set forth in paragraph "15" of the Complaint characterize the lawsuit and constitute conclusions of law to which Defendants make no answer save to demand

strict proof thereof, and respectfully refer all questions of law to this Honorable Court. To the extent any response is required, Defendants deny any conduct that forms the basis of the claims set forth herein and deny that there were any unlawful employment practices or other actions that form the basis of a viable claim against Defendants.

16.     The allegations set forth in paragraph "16" of the Complaint characterize the lawsuit and constitute conclusions of law to which Defendants make no answer save to demand strict proof thereof, and respectfully refer all questions of law to this Honorable Court. To the extent any response is required, Defendants deny any conduct that forms the basis of the claims set forth herein and deny that there were any unlawful employment practices or other actions that form the basis of a viable claim against Defendants.

## V.     Factual Allegations

17.     Deny the allegations set forth in paragraph "17" of the Complaint.

18.     Deny the allegations set forth in paragraph "18" of the Complaint, except admit that Plaintiff held the position of Executive Assistant until April 2011, Director of Productions from April 2011 until December 2017, and Vice President of Production and Finance in December 2017 until she resigned.

19.     Deny the allegations set forth in paragraph "19" of the Complaint.

20.     Deny the allegations set forth in paragraph "20" of the Complaint.

21.     Deny the allegations set forth in paragraph "21" of the Complaint.

22.     Deny the allegations set forth in paragraph "22" of the Complaint.

23.     Deny the allegations set forth in paragraph "23" of the Complaint.

24.     Deny the allegations set forth in paragraph "24" of the Complaint.

25.     Deny the allegations set forth in paragraph "25" of the Complaint.

26.     Deny the allegations set forth in paragraph "26" of the Complaint, except admit that Mr. De Niro left a voicemail for Plaintiff after she failed to perform her job duties wherein he used terms contained in paragraph "26", and respectfully refer the Court to such recording as best evidence of same.

27.     Deny the allegations set forth in paragraph "27" of the Complaint.

28.     Deny the allegations set forth in paragraph "28" of the Complaint.

29.     Deny the allegations set forth in paragraph "29" of the Complaint.

30.     Deny the allegations set forth in paragraph "30" of the Complaint.

31.     Deny the allegations set forth in paragraph "31" of the Complaint.

32.     Deny the allegations set forth in paragraph "32" of the Complaint.

33.     Deny the allegations set forth in paragraph "33" of the Complaint.

34.     Deny the allegations set forth in paragraph "34" of the Complaint.

35.     Deny the allegations set forth in paragraph "35" of the Complaint.

36.     Deny the allegations set forth in paragraph "36" of the Complaint.

37.     Deny the allegations set forth in paragraph "37" of the Complaint.

38.     Deny the allegations set forth in paragraph "38" of the Complaint, except admit that Plaintiff requested a letter of recommendation from Mr. De Niro after her departure and prepared a draft letter which she wanted him to sign.

39.     Deny the allegations set forth in paragraph "39" of the Complaint.

40.     Deny the allegations set forth in paragraph "40" of the Complaint.

41.     Deny the allegations set forth in paragraph "41" of the Complaint.

42.     Deny the context and timeline regarding Plaintiff's claims of allegedly wrongful conduct but admit the existence of the July 31, 2019 email set forth in paragraph "42" of the

4

Complaint, which email asserted purported claims of sex discrimination, sex stereotyping, hostile work environment and retaliation, and further state that such allegations were made only after Plaintiff had been accused of misconduct. Defendants respectfully refer the Court to the July 31, 2019 email and all the emails that preceded and followed, for a more accurate recitation of the communications among the various parties.

43.     Deny the characterization of the referenced email set forth in paragraph "43" of the Complaint, but admit the existence of the August 2, 2019 email, which also contained veiled threats that if Plaintiff's demands were not met, she would publicly disclose information of a personal nature regarding Mr. De Niro, and respectfully refer the Court to the August 2, 2019 email and all the emails that preceded and followed, for a more accurate recitation of the communications among the various parties.

44.     Deny the characterization of the referenced email set forth in paragraph "44" of the Complaint, but admit the existence of the August 13, 2019 email, which also contained a suggestion that if Plaintiff's demands were not met, she may have to write a memoir containing information of a personal nature about Mr. De Niro, and respectfully refer the Court to the August 13, 2019 email and all the emails that preceded and followed, for a more accurate recitation of the communications among the various parties.

45.     Deny the allegations set forth in paragraph "45" of the Complaint, except admit that Plaintiff is a defendant in a lawsuit pending in the Supreme Court, State of New York, commenced by Canal Productions, Inc., Index No. 654711/2019 on August 17, 2019.

46.     Deny the allegations set forth in paragraph "46" of the Complaint.

47.     Deny the allegations set forth in paragraph "47" of the Complaint.

48.     Deny the allegations set forth in paragraph "48" of the Complaint.

5

49.     Deny the allegations set forth in paragraph "49" of the Complaint.

## VI.   Counts

### AS AND FOR A RESPONSE TO COUNT ONE

50.     In response to the allegations set forth in paragraph "50" of the Complaint, Defendants repeat and reallege the responses to paragraphs "1" through "49" of the Complaint as if fully set forth herein.

51.     The allegations set forth in paragraph "51" of the Complaint constitute conclusions of law to which Defendants make no answer save to demand strict proof thereof, and respectfully refer all questions of law to this Honorable Court.  Defendants admit that Plaintiff was a female employee of Canal Productions, Inc.

52.     The allegations set forth in paragraph "52" of the Complaint constitute conclusions of law to which Defendants make no answer save to demand strict proof thereof, and respectfully refer all questions of law to this Honorable Court.  Defendants admit that Mr. De Niro was Plaintiff's supervisor and an owner of Canal Productions, Inc.

53.     Deny the allegations set forth in paragraph "53" of the Complaint.

54.     Deny the allegations set forth in paragraph "54" of the Complaint.

55.     Deny the allegations set forth in paragraph "55" of the Complaint.

56.     Deny the allegations set forth in paragraph "56" of the Complaint.

57.     Deny the allegations set forth in paragraph "57" of the Complaint.

58.     Deny the allegations set forth in paragraph "58" of the Complaint.

59.     Deny the allegations set forth in paragraph "59" of the Complaint.

### AS AND FOR A RESPONSE TO COUNT TWO

60.     In response to the allegations set forth in paragraph "60" of the Complaint,

Defendants repeat and reallege the responses to paragraphs "1" through "59" of the Complaint as if fully set forth herein.

61.     The allegations set forth in paragraph "61" of the Complaint constitute conclusions of law to which Defendants make no answer save to demand strict proof thereof, and respectfully refer all questions of law to this Honorable Court.  Defendants admit that Plaintiff was a female employee of Canal Productions, Inc.

62.     The allegations set forth in paragraph "62" of the Complaint constitute conclusions of law to which Defendants make no answer save to demand strict proof thereof, and respectfully refer all questions of law to this Honorable Court.  Defendants admit that Mr. De Niro was Plaintiff's supervisor and an owner of Canal Productions, Inc.

63.     Deny the allegations set forth in paragraph "63" of the Complaint.

64.     Deny the allegations set forth in paragraph "64" of the Complaint.

65.     Deny the allegations set forth in paragraph "65" of the Complaint.

66.     Deny the allegations set forth in paragraph "66" of the Complaint.

67.     Deny the allegations set forth in paragraph "67" of the Complaint.

68.     Deny the allegations set forth in paragraph "68" of the Complaint.

69.     Deny the allegations set forth in paragraph "69" of the Complaint.

70.     Deny the allegations set forth in paragraph "70" of the Complaint.

71.     Deny the allegations set forth in paragraph "71" of the Complaint.

## AS AND FOR A RESPONSE TO COUNT THREE

72.     In response to the allegations set forth in paragraph "72" of the Complaint, Defendants repeat and reallege the responses to paragraphs "1" through "71" of the Complaint as if fully set forth herein.

73.     The allegations set forth in paragraph "73" of the Complaint constitute conclusions of law to which Defendants make no answer save to demand strict proof thereof, and respectfully refer all questions of law to this Honorable Court. Defendants admit that Plaintiff was employed by Canal Productions Inc.

74.     Deny the allegations set forth in paragraph "74" of the Complaint.

75.     Deny the allegations set forth in paragraph "75" of the Complaint.

76.     Deny the allegations set forth in paragraph "76" of the Complaint.

77.     Deny the allegations set forth in paragraph "77" of the Complaint.

## AS AND FOR A RESPONSE TO COUNT FOUR

78.     In response to the allegations set forth in paragraph "78" of the Complaint, Defendants repeat and reallege the responses to paragraphs "1" through "77" of the Complaint as if fully set forth herein.

79.     The allegations set forth in paragraph "79" of the Complaint constitute conclusions of law to which Defendants make no answer save to demand strict proof thereof, and respectfully refer all questions of law to this Honorable Court. Defendants admit that Plaintiff was employed by Canal Productions, Inc.

80.     Deny the allegations set forth in paragraph "80" of the Complaint.

81.     Deny the allegations set forth in paragraph "81" of the Complaint.

82.     Deny the allegations set forth in paragraph "82" of the Complaint.

83.     Deny the allegations set forth in paragraph "83" of the Complaint.

## AS AND FOR A RESPONSE TO COUNT FIVE

84.     In response to the allegations set forth in paragraph "84" of the Complaint, Defendants repeat and reallege the responses to paragraphs "1" through "83" of the Complaint as

if fully set forth herein.

85.     The allegations set forth in paragraph "85" of the Complaint constitute conclusions of law to which Defendant makes no answer save to demand strict proof thereof, and respectfully refer all questions of law to this Honorable Court. Defendants admit that Plaintiff was employed by Canal Productions, Inc.

86.     Deny the allegations set forth in paragraph "86" of the Complaint.

87.     Deny the allegations set forth in paragraph "87" of the Complaint.

88.     Deny the allegations set forth in paragraph "88" of the Complaint.

89.     Deny the allegations set forth in paragraph "89" of the Complaint.

**AS AND FOR A RESPONSE TO COUNT SIX**

90.     In response to the allegations set forth in paragraph "90" of the Complaint, Defendants repeat and reallege the responses to paragraphs "1" through "89" of the Complaint as if fully set forth herein.

91.     The allegations set forth in paragraph "91" of the Complaint constitute conclusions of law to which Defendants make no answer save to demand strict proof thereof, and respectfully refer all questions of law to this Honorable Court. Defendants admit that Plaintiff was employed by Canal Productions, Inc.

92.     Deny the allegations set forth in paragraph "92" of the Complaint.

93.     Deny the allegations set forth in paragraph "93" of the Complaint.

94.     Deny the allegations set forth in paragraph "94" of the Complaint.

95.     Deny the allegations set forth in paragraph "95" of the Complaint.

96.     Deny the allegations set forth in paragraph "96" of the Complaint.

97.     Deny the allegations set forth in paragraph "97" of the Complaint.

## AS AND FOR A RESPONSE TO COUNT SEVEN

98.     In response to the allegations set forth in paragraph "98" of the Complaint, Defendants repeat and reallege the responses to paragraphs "1" through "97" of the Complaint as if fully set forth herein.

99.     The allegations set forth in paragraph "99" of the Complaint constitute conclusions of law to which Defendants make no answer save to demand strict proof thereof, and respectfully refer all questions of law to this Honorable Court. Defendants admit that Plaintiff was employed by Canal Productions, Inc.

100.    Deny the allegations set forth in paragraph "100" of the Complaint.

101.    Deny the allegations set forth in paragraph "101" of the Complaint.

102.    Deny the allegations set forth in paragraph "102" of the Complaint.

103.    Deny the allegations set forth in paragraph "103" of the Complaint.

104.    Deny the allegations set forth in paragraph "104" of the Complaint.

105.    Deny the allegations set forth in paragraph "105" of the Complaint.

## AS AND FOR A RESPONSE TO PLAINTIFF'S PRAYER FOR RELIEF

106.    Deny that Plaintiff is entitled to the relief sought in the "WHEREFORE" clause of the Complaint, and/or that Defendants engaged in any conduct that forms the basis of the claims set forth herein.

## DEFENDANTS' AFFIRMATIVE AND OTHER DEFENSES

Defendants assert the following defenses and affirmative defenses, as the latter are defined in Rule 8(c) of the Federal Rules of Civil Procedure, without assuming any burden of proof that otherwise does not exist as a matter of law.

## AS AND FOR A FIRST DEFENSE

107.    Defendants acted in good faith and with a reasonable belief that their practices complied with federal and state law.

## AS AND FOR A SECOND DEFENSE

108.    Defendants have a defense founded upon documentary evidence.

## AS AND FOR A THIRD DEFENSE

109.    Plaintiff may not recover liquidated damages because (i) Defendants acted reasonably and in good faith, had reasonable grounds for believing that their acts were not a violation of the Fair Labor Standards Act and/or New York Labor Law and did not commit any willful violation of any of the provisions of the Fair Labor Standards Act or New York Labor Law; (ii) Defendants did not authorize or ratify any willful violation with respect to the Plaintiff; and (iii) Plaintiff has failed to plead facts sufficient to support recovery of such damages.

## AS AND FOR A FOURTH DEFENSE

110.    Plaintiff's claims are barred in whole or in part because Defendants made complete and timely payment of all wages due in accordance with the FLSA and New York law.

## AS AND FOR A FIFTH DEFENSE

111.    Plaintiff's claims are barred, in whole or in part, by the equitable doctrines of estoppel, unclean hands, laches and/or waiver.

## AS AND FOR A SIXTH DEFENSE

112.    If Plaintiff succeeds in establishing any violation under the Fair Labor Standards Act or the New York Labor Law, and to the extent any sums are found due and owing to Plaintiff, Defendants are entitled to a set-off against said sum to the extent paid, tendered, waived, compromised, and/or released prior to the adjudication herein, including but not limited to those

amounts paid, tendered, waived, compromised, and/or released through any other proceeding, either formal or informal, or to the extent any additional compensation was paid to Plaintiff over and above her wages.

**AS AND FOR A SEVENTH DEFENSE**

113.     Any claim for additional compensation by Plaintiff must be reduced by compensation already paid to the Plaintiff for periods not compensable under the Fair Labor Standards Act and the New York Labor Law.

**AS AND FOR AN EIGHTH DEFENSE**

114.     Plaintiff's claims are barred in whole or in part by the applicable statutes of limitations including the FLSA/Equal Pay Act (2 years and 3 years for willful violations), the New York Labor Law (6 years), the New York City and New York State Human Rights Laws (3 years).

**AS AND FOR A NINTH DEFENSE**

115.     Plaintiff's claims are barred in whole or in part because Plaintiff has failed to mitigate her damages.

**AS AND FOR A TENTH DEFENSE**

116.     Plaintiff's claims are barred or should be reduced, in whole or in part, by exclusions, exceptions, credits recoupments or offsets permissible under the Fair Labor Standards Act and/or New York Labor Law.

**AS AND FOR AN ELEVENTH DEFENSE**

117.     Plaintiff's retaliation claims are barred because she did not engage in any protected activity.

**AS AND FOR A TWELFTH DEFENSE**

118.     Plaintiff is exempt from the minimum wage and overtime requirements of the Fair

12

Labor Standards Act and New York Labor Law because she was a highly compensated employee and/or was employed in a bona fide executive and/or administrative role.

## AS AND FOR A THIRTEENTH DEFENSE

119.   All actions taken by Defendants with respect to Plaintiff's employment were lawful, were made in good faith compliance with applicable provisions of law, rules and regulations, and all actions were taken for legitimate non-discriminatory, non-retaliatory, non-prohibited reasons.

## AS AND FOR A FOURTEENTH DEFENSE

120.   Plaintiff's claims are barred in whole or in part because any employment decisions regarding Plaintiff were based upon bona fide factors other than sex, gender or participation in protected activity under the statutes referenced in the Complaint herein.

## AS AND FOR A FIFTEENTH DEFENSE

121.   Plaintiff's claims are barred in whole or in part because of a failure to mitigate her damages.

## AS AND FOR A SIXTEENTH DEFENSE

122.   Plaintiff's claims are barred in whole or in part by the after-acquired evidence doctrine.

## AS AND FOR A SEVENTEENTH DEFENSE

123.   Defendants have maintained equal employment policies prohibiting harassment, discrimination and/or retaliation and exercised reasonable care to prevent any alleged incidents, and Plaintiff unreasonably failed to take advantage of available preventative or corrective opportunities.

## AS AND FOR AN EIGHTEENTH DEFENSE

124.    Any disparity in pay between Plaintiff and any other employee was justified based upon (1) seniority; (2) a merit system; (3) a pay system based on quantity or quality of output; or (4) factors other than her sex.

## AS AND FOR A NINETEENTH DEFENSE

125.    Plaintiff cannot prevail on her claims under the Human Rights Law because the behavior or conduct about which she complains constitutes nothing more than petty slights or trivial inconveniences.

## AS AND FOR A TWENTIETH DEFENSE

126.    Defendants reserve the right to assert additional defenses upon further information regarding Plaintiff's claims and upon the development of other relevant information.

## DEFENDANT CANAL PRODUCTIONS, INC.'S COUNTERCLAIMS

Defendant Canal Productions, Inc. ("Canal"), by and through its attorneys, Traub, Lieberman, Straus & Shrewsberry LLP and Tarter Krinsky & Drogin LLP, as and for its counterclaims against, Graham Chase Robinson a/k/a Chase Robinson ("Ms. Robinson"), alleges as follows:

## NATURE OF THE COUNTERCLAIMS

124.    These counterclaims seek economic damages from a disloyal former employee who, despite being in a trusted position, repeatedly and methodically abused her position to misappropriate her employer's funds and property for her personal gain.

125.    More specifically, Ms. Robinson improperly: (a) charged hundreds of thousands of dollars in personal expenses on Canal's American Express card; (b) used and converted millions

of Canal's frequent flyer miles for her personal use; (c) "reimbursed" herself from Canal's petty cash account for personal and luxury items; (d) submitted false information in order to be paid for 96 days of "unused" vacation time; and (e) loafed during working hours, binge-watching astounding hours of TV shows on Netflix.

126.    Canal brings these counterclaims against Ms. Robinson for breaching her fiduciary duties, violation of the faithless service doctrine and conversion.

## JURISDICTION AND VENUE

127.    The Court has supplemental jurisdiction over these counterclaims pursuant to 28 U.S.C. § 1367(a) because they are so related to Ms. Robinson's retaliation claim that they form part of the same case or controversy under Article III of the United States Constitution.

128.    Venue is proper pursuant to 28 U.S.C. §1391(b)(1) and/or (b)(2) because Ms. Robinson and Canal both reside in this district, and a substantial part of the events or omissions giving rise to the counterclaims occurred in this judicial district.

## PARTIES

129.    Canal is a foreign corporation registered and authorized to do business in the State of New York, with its principal place of business located at 375 Greenwich Street in Manhattan.

130.    On information and belief, Ms. Robinson is an adult residing in the State of New York, County of New York.

## FACTUAL BACKGROUND FOR ALL COUNTERCLAIMS

131.    Canal is a business that contracts the services of Robert De Niro ("Mr. De Niro") to third parties.  In or about 2008, Ms. Robinson was hired by Canal to serve as an assistant to Mr. De Niro.

132.    From 2008 to 2019, Canal would typically have three (3) full time assistants to

oversee its office, arrange travel, and scheduling for Mr. De Niro and handle other administrative tasks.

133.    Since in or about 2012, Ms. Robinson's role evolved to include overseeing Canal's office operations. This involved supervising and directing employees, developing, and implementing employment policies (including those relating to compliance with the Fair Labor Standards Act and the New York State Labor Law), recommending hiring, discharge, and discipline decisions, and generally working to maintain Canal's day-to-day operations in a smooth and efficient manner.

134.    In or about 2017, Ms. Robinson requested a title change to "Vice President of Production & Finance."

135.    Mr. De Niro granted this request and increased her duties and responsibilities to include monitoring and ensuring that there was no misuse, waste, or theft with respect to credit card charges, use of petty cash, and/or airline travel by Canal staff.  In short, her responsibilities included ensuring that Canal was not being used by employees for their personal gain or expenses.

136.    Throughout her employment, the growth and evolution of her position caused and required Ms. Robinson to have detailed and unique knowledge of Canal's finances, policies, practices and procedures that were not known to all other employees.

137.    In connection with her duties and responsibilities, and on her request, Ms. Robinson was made a co-account manager on Canal's American Express card.  Ms. Robinson was authorized to use the credit card for legitimate and *bona fide* expenses relating to Canal's business.

138.    Ms. Robinson's position required Mr. De Niro to place full faith, trust, and confidence in her that she would carry out her duties and responsibilities in Canal's best interests, mindfully overseeing the finances and other employees.

139.    Ms. Robinson understood that loyalty and honesty were essential parts of her job, and that her role, in part, was to protect and be a watchdog for Canal's assets.

140.    Ms. Robinson understood that in exchange for her compensation, she was expected to perform to the best of her abilities.

141.    Ms. Robinson understood that in exchange for her compensation, during working time (meaning the moments she was performing services for Canal), she was expected to dedicate her focus and attention to her duties.

142.    At all times relevant to these counterclaims, Ms. Robinson was paid on a salary basis.  In 2017, she earned over $175,000.  In 2018, she earned over $225,000.  In 2019, she was being compensated at an annual rate of $300,000.

143.    Ms. Robinson is female.

144.    For the two (2) years prior to her resignation, Ms. Robinson was the most highly compensated Canal employee, except for Mr. De Niro's personal trainer.

145.    Mr. De Niro's personal trainer was male.

146.    At all times relevant to these counterclaims Mr. De Niro's personal trainer had performed services for him for more than two (2) decades.

147.    At the time Ms. Robinson commenced this lawsuit, she was aware that Mr. De Niro's personal trainer had performed services for him for more than two (2) decades.

148.    At all times relevant to these counterclaims, Ms. Robinson did not supervise or have other material responsibilities relating to Mr. De Niro's personal trainer.

149.    At all times relevant to these counterclaims, Mr. De Niro's personal trainer did not have supervisory authority over any Canal employee.

150.    At all times relevant to these counterclaims, Mr. De Niro's personal trainer did not

share any material duties and responsibilities with Ms. Robinson.

151.    Among Ms. Robinson's duties and responsibilities during the last two years of her employment was ensuring that Canal was compliant with all applicable wage and hour laws.

152.    Throughout the two (2) year period prior to her resignation, based on her duties and responsibilities, and in particular her knowledge of the applicable federal and state wage and hour laws, Ms. Robinson was, and understood herself to be, an "exempt" employee within the meaning of the Fair Labor Standard Act and the New York State Labor Law.

153.    Beginning in early 2019, Canal's suspicions arose regarding Ms. Robinson's honesty, integrity, work ethic, and motivation.

154.    On April 6, 2019, by way of e-mail, Ms. Robinson abruptly resigned her position at Canal.  In her resignation e-mail, Ms. Robinson acknowledged, but brushed off as "ridiculous," mounting concerns about her withholding information, engaging in an act of corporate sabotage, stealing property, and not being diligent, professional, nor helpful.

155.    Shortly thereafter, and in connection with Ms. Robinson's sudden resignation and those mounting concerns, Canal's accountants initiated a review of various books and records, including Canal's American Express card, petty cash, and frequent flyer miles (known as SkyMiles).

156.    In June 2019, Robinson penned a "recommendation letter" for herself and asked Mr. De Niro to sign it.

157.    Mr. De Niro refused to sign the recommendation letter.

158.    On July 11, 2019, counsel for Mr. De Niro and Canal wrote to Ms. Robinson alerting her that an investigation had uncovered various acts of malfeasance on her part.  A copy of that correspondence is annexed as **Exhibit 1**.  Among other things, the correspondence laid out

Canal's allegations about Ms. Robinson's misdeeds, "strongly suggest[ed]" that she retain counsel and was told in no uncertain terms: "Please return the SkyMiles immediately to avoid legal action."

159.    Ms. Robinson understood or had reason to understand that if she did not return the SkyMiles immediately, Canal might commence litigation against her.

160.    In response to the correspondence, Ms. Robinson retained counsel but did not return the SkyMiles.

161.    In response to the correspondence, and while represented by counsel, Ms. Robinson attempted to dissuade Canal from commencing litigation.  She rendered a fictionalized and imaginary account of her 11-year employment history in a series of increasingly false, threatening, and self-serving emails as a makeshift paper trail to publicize if Canal filed litigation against her.

162.    These culminated with Ms. Robinson's threat that, based on her "ability to write," she could obtain "financial and professional security" by publicly embarrassing Mr. De Niro with her accusations.  Copies of these emails were referenced in the Complaint, and later publicly filed by Ms. Robinson.

163.    Ms. Robinson has not returned the SkyMiles.

164.    On August 16, 2019, Canal filed a lawsuit against Ms. Robinson in New York State Supreme Court ("State Court Lawsuit").

165.    On October 3, 2019, Ms. Robinson filed the instant lawsuit.

166.    On December 16, 2019, Ms. Robinson filed a motion to dismiss the fraud cause of action in the State Court Lawsuit.

167.    Ms. Robinson knew or had reason to know that the motion would, by operation of law, and until the motion was resolved, spare her the obligation to file an Answer in response to the Complaint filed in State Court Lawsuit.

168.    Ms. Robinson has never filed an Answer in response to the Complaint filed in the State Court Lawsuit.

**A.    Improper Reimbursement for Personal Expenses**

169.    On occasion, Canal employees would use personal funds to purchase goods and services on behalf of Canal.   To obtain reimbursement, documentation was required to be submitted to Ms. Robinson for approval.   Based on her position of trust, Ms. Robinson was permitted to approve her own submissions for reimbursement of business-related expenses.   In other cases, employees would request funds directly from petty cash to be used towards Canal's business expenses.

170.    From in or about January 2018 through April 6, 2019, on specific dates known to her, Ms. Robinson submitted, approved, and received reimbursement or direct payments under false pretenses for personal services and items, such as iPhones, a Louis Vuitton handbag, and a dog sitter.   None of these purchases were authorized or otherwise permitted or expended in connection with her employment or any other valid business purpose. In these instances, Ms. Robinson falsely represented to Canal that she was seeking reimbursement for purchases made for or on behalf of Canal and its legitimate business interests. Canal reasonably relied on Ms. Robinson's representations to its detriment.

**B.    Unauthorized Charges on Canal's American Express Card**

**i.    Taxi Driver Books**

171.    At Ms. Robinson's suggestion, Mr. De Niro agreed to autograph a number of collectable coffee table books (based on the film "Taxi Driver") to be donated to charities and given as gifts to some of his close personal friends.

172.    In or about March 2018, on a date known by her, Ms. Robinson represented to

Canal that she needed to fly to Los Angeles to receive the signed "Taxi Driver" books and deliver them to various people in Los Angeles.

173.    Mr. De Niro approved the trip based upon Ms. Robinson's representation that she would be working and delivering the books while in Los Angeles.

174.    Ms. Robinson flew to Los Angeles on March 9, 2018 using Canal's frequent flyer miles.

175.    Ms. Robinson stayed at the Montage Hotel in Los Angeles and used Canal's American Express card to pay the $2,608.66 bill.

176.    Ms. Robinson rented a car in Los Angeles and used Canal's American Express card to pay the $729.28 for the rental car.

177.    Ms. Robinson took $458 from Canal's petty cash for expenses she incurred during her stay in Los Angeles and charged and additional $319 on Canal's American Express card for Ubers and taxis, despite having rented a car.

178.    Ms. Robinson also used Canal's American Express card to pay $604.51 for a dinner at Nobu and $156.05 for a lunch while in Los Angeles, ostensibly for "business."

179.    Ms. Robinson returned from Los Angeles to New York on March 11, 2018; on a flight paid for with Canal's frequent flyer miles.

180.    In fact, the "Taxi Driver" books were being delivered to Los Angeles on March 12, 2018, the day *after* Ms. Robinson flew back to New York.  Upon information and belief, Ms. Robinson traveled to and from Los Angeles at Canal's expense to attend a friend's birthday party and for no valid business purpose.

181.    The representations Ms. Robinson made to Canal regarding the purpose of the trip and expenses incurred were false and reasonably relied on by Canal to its detriment. Mr. De Niro

would not have approved the trip if he knew Ms. Robinson would not be working but rather going to Los Angeles to attend a social event unrelated to Canal's business.

### ii.    Paola's Restaurant

182.    At all times relevant to these counterclaims Paola's was a restaurant located 1295 Madison Avenue in Manhattan.

183.    On information and belief, at all times relevant to these counterclaims, Ms. Robinson lived within a few blocks of Paola's restaurant.

184.    During the period between in or about May 2017 and April 2019, on dates known specifically by her, Ms. Robinson, without proper authorization, permission, or valid business purpose, used the Canal American Express card to charge approximately $12,696.65 for food, drinks and gratuities at Paola's.

### iii.    Flowers by Philip

185.    Flowers by Philip is a flower store located at 1311 Lexington Avenue in Manhattan.

186.    During the period between in or about June 2017 through on or about April 6, 2019, on dates known to her, Ms. Robinson, without proper authorization, permission, or valid business purpose, used Canal's American Express card to charge over $3,000 for flowers and/or other items from this store that were delivered or taken to her residence.   This included a $1,311.94 arrangement to which she treated herself for her birthday.

### iv.    Groceries

187.    Whole Foods is a grocery store located at 1551 Third Avenue in Manhattan.

188.    Dean & Deluca is a grocery store located at 1150 Madison Avenue in Manhattan.

189.    During the period between in or about May 2017 through about April 2019, on dates known to her, Ms. Robinson, without proper authorization, permission or valid business

purpose, used Canal's American Express card to purchase groceries from Whole Foods and/or Dean & Deluca in the amount of $8,923.20.

### v.     Personal transportation

190.     During the period between May 2017 through April 2019, on dates known to her, Ms. Robinson, without proper authorization, permission, or valid business purpose, used Canal's American Express card to pay for personal taxis and Uber rides in the amount of approximately $32,000.

### C.     Conversion of Frequent Flyer Miles

191.     From in or about 2017 through April 2019, use of Canal's and Mr. De Niro's American Express cards generated approximately eight million (8,000,000) SkyMiles.

192.     Upon information and belief, from in or about 2017 through April 2019, on dates specifically known by her and without permission, proper authorization or valid business purpose, Ms. Robinson used approximately three million (3,000,000) SkyMiles for her personal trips and vacations.

193.     Upon information and belief, between January 28, 2019 and March 18, 2019, on dates specifically known to her and without permission or proper authorization, Ms. Robinson transferred approximately five million (5,000,000) SkyMiles from Canal's American Express account to her personal account.

194.     Upon information and belief, the SkyMiles converted by Ms. Robinson are valued at more than $125,000.

### D.     Falsification to Obtain Paid Vacation Time

195.     In and about 2014, Ms. Robinson was authorized to take 19 paid vacation days.  At the end of 2014, on a date or dates known specifically to her, Ms. Robinson falsely represented to

Canal's accountant that she had used only three (3) vacation days and sought payment for the 16 "unused" days.  Based upon Ms. Robinson's representation, which is now known to be false, Canal paid Ms. Robinson for 16 days of unused vacation.  In fact, as her emails now reveal, Ms. Robinson took several vacations which, in the aggregate, exceeded 19 days.

196.  In and about 2015, Ms. Robinson was authorized to take 19 paid vacation days.  At the end of 2015, on a date or dates known specifically to her, Ms.  Robinson falsely represented to Canal's accountant that she had used only one (1) vacation day and sought payment for the 18 "unused" days.  Based upon Ms. Robinson's representation, which is now known to be false, Canal paid Ms. Robinson for 18 days of unused vacation.  In fact, as her emails now reveal, Ms. Robinson took several vacations which, in the aggregate, exceeded 19 days.

197.  In and about 2016, Ms. Robinson was authorized to take 19 paid vacation days.  At the end of 2016, on a date or dates known specifically to her, Ms. Robinson falsely represented to Canal's accountant that she had not used any of her vacation days and sought payment for the 19 "unused" days.  Based upon Ms. Robinson's representation, which is now known to be false, Canal paid Ms. Robinson for 19 days of unused vacation.  In fact, as her emails now reveal, Ms. Robinson took several vacations which, in the aggregate, exceeded 19 days.

198.  In and about 2017, Ms. Robinson was authorized to take 20 paid vacation days.  At the end of 2017, on a date or dates known specifically to her, Ms. Robinson falsely represented to Canal's accountant that she had not used any of her vacation days and sought payment for the 20 "unused" days.  Based upon Ms. Robinson's representation, which is now known to be false, Canal paid Ms. Robinson for 20 days of unused vacation.  In fact, as her emails now reveal, Ms. Robinson took several vacations which, in the aggregate, exceeded 20 days.

199.  In and about 2018, Ms. Robinson was authorized to take 23 paid vacation days.  At

24

the end of 2018, on a date or dates known specifically to her, Ms. Robinson falsely represented to Canal's accountant that she had not used any of her vacation days and sought payment for the 23 "unused" days.  Based upon Ms. Robinson's representation, which is now known to be false, Canal paid Ms. Robinson for 23 days of unused vacation.  In fact, as her emails now reveal, Ms. Robinson took several vacations which, in the aggregate, exceeded 23 days.

200.    As a result of foregoing, Ms. Robinson collected in excess of $70,000 by falsely claiming that she had not used 96 vacation days between 2014 and 2018.

**E.    Theft of Time: Excessive Netflix Streaming**

201.    Ms. Robinson's position required her to spend her time focused on scheduling and coordinating Mr. De Niro's work obligations while also overseeing aspects of Canal's operations. The duration of her relationship with Mr. De Niro and the trust he had instilled in her resulted in her having autonomy as to the means and manner her services were performed.

202.    In 2019 Ms. Robinson rarely worked from Canal's office, but instead represented that she was "working remote" from home.

203.    Canal reasonably understood that Ms. Robinson would, to the best of her abilities, and in accordance with her duty to her employer, dedicate sufficient time, effort, and energy to her responsibilities to be responsive to the needs of Canal, Mr. De Niro and the employees she supervised.

204.    When in the office or speaking with co-workers, Ms. Robinson had made it known that she enjoyed shows like "Friends," "Arrested Development," and "Schitt's Creek" among other popular shows available for streaming on Netflix.

205.    A review of Canal's Netflix account, to which she had access, indicates that Ms. Robinson spent astronomical amounts of times accessing these shows, not only on weekends and

holidays.

206.    For example, over the 4-day period between Tuesday, January 8 and Friday, January 11, 2019, 55 episodes of "Friends" were accessed (which carried over to an impressive 32 episodes on Saturday, January 12 alone).  Twenty-seven (27) episodes were accessed on Monday, January 14 and the final 12 episodes, leading to the series finale, were accessed on Tuesday, January 15, yet another workday.  Over $300 in charges from Paola's were also placed on Canal's American Express card on these dates.

207.    This was not an isolated occurrence.  For example, during four of the five workdays between Monday, March 25, 2019, and Friday, March 29 (excluding March 27), Canal's Netflix account was accessed to watch:  20 episodes of "Arrested Development" and 10 episodes of "Schitt's Creek."

208.    Watching shows on Netflix was not in any way part of or related to the duties and responsibilities of Ms. Robinson's employment and, on information and belief, was done for her personal entertainment, amusement, and pleasure at times when she was being paid to work.

209.    Ms. Robinson was not responsible or connected in any way with respect to the development of any artistic material for Canal and would have no valid work-related reason to immerse herself by streaming television shows at home when she was supposed to be working.

210.    Upon information and belief, Ms. Robinson's binging also included fine food charged to Canal on its American Express card.  For example, it appears that on January 9, 2019, Ms. Robinson binge-watched twelve (12) episodes of "Friends," ordered lunch from the delivery service "Caviar San Francisco" and, thereafter, had dinner at Paola's Restaurant.  Both the lunch and dinner bills were charged on Canal's American Express card, and neither were authorized, permitted, nor associated with any valid business purpose.

211.    At no time did Ms. Robinson ever reimburse Canal or Mr. De Niro for the personal charges she placed on Canal's American Express card or offer to do so.

## FIRST COUNTERCLAIM
### (Breach of Fiduciary Duty)

212.    Canal repeats, reiterates, and realleges the allegations in paragraphs 1 through 214 as if fully set forth herein.

213.    Ms. Robinson was employed at Canal in a position of trust and confidence.

214.    As an employee of Canal, Defendant owed Canal a fiduciary duty.  By virtue of this duty, Ms. Robinson was prohibited from acting in a disloyal manner, or in any way inconsistent with that fiduciary relationship.

215.    Ms. Robinson's aforesaid conduct constitutes a breach of the fiduciary duty she owed to Canal.

216.    As a consequence of the Ms. Robinson's foregoing breach of her fiduciary duty, Canal has been injured, for which it is entitled to recover damages including but not limited to financial loss, loss of good will and reputation, compensatory and special damages in an amount to be proved and determined at trial.

## SECOND COUNTERCLAIM
### (Breach of Duty of Loyalty)

217.    Canal repeats and realleges the allegations in paragraphs 1 through 219 as if fully set forth herein.

218.    Ms. Robinson was employed at Canal in a position of trust and confidence.

219.    As an employee of Canal, Ms. Robinson owed Canal a duty of loyalty, honesty, and fidelity. By virtue of these duties, Ms. Robinson was prohibited from acting in a disloyal manner, or in any way inconsistent with that trust relationship.

220.     Pursuant to the faithless servant doctrine, Ms. Robinson was obligated to be loyal to Canal and was prohibited from acting in a manner inconsistent with that position of agency and trust and was bound to exercise the utmost good faith and loyalty in the performance of her duties.

221.     Ms. Robinson's aforesaid conduct constitutes a violation of her duty of loyalty rendering her liable as a faithless servant.

222.     Ms. Robinson's improper activities were related to the performance of her duties.

223.     The Defendant's disloyalty permeated her services in the most material and substantial parts.

224.     As a proximate result of Ms. Robinson's conduct, which constitutes a cause of action pursuant to the faithless servant doctrine, Canal has been injured, for which it is entitled to recover damages including but not limited to the return of wages, bonuses and other compensation paid to Ms. Robinson, financial loss, loss of good will and reputation, compensatory and special damages in an amount to be proved and determined at trial.

### THIRD COUNTERCLAIM
**(Conversion)**

225.     Canal repeats and realleges the allegations in paragraphs 1 through 227 as if fully set forth herein.

226.     Throughout Ms. Robinson's employment, she took the above-mentioned property from Canal's possession and converted the same to her own use.

227.     Ms. Robinson's acts were illegal, malicious, and reckless with the purpose of intentionally damaging Canal.

228.     Canal is entitled to possession of the cash, property and frequent flyer miles that remain in the care, custody, control, or possession of Ms. Robinson; or their equivalent value in

the event she has disposed of them.

229.    As a consequence of Ms. Robinson's wrongful conduct, Canal has been injured, for which it is further entitled to recover damages including but not limited to financial loss, loss of good will and reputation, compensatory and special damages in an amount to be proved and determined at trial.

## FOURTH COUNTERCLAIM
### (Fraud)

230.    Canal repeats and realleges the allegations in paragraphs 1 through 232 as if fully set forth herein.

231.    On various occasions as set forth above, Ms. Robinson made false statements and/or omissions, with knowledge of their falsity, with the intent to induce Canal's reliance thereon.

232.    The nature, extent and frequency of Ms. Robinson's misrepresentations are unique and known to her.

233.    The nature of Ms. Robinson's positive gave her a unique opportunity and ability to obtain goods, services, and money for her personal gain by making false statements to Canal and/or by misrepresenting the capacity in which the goods and services were obtained.

234.    Canal justifiably relied on such false representations and omissions and would have conducted itself differently had it known the truth.

235.    As a consequence of the Ms. Robinson's wrongful conduct, Canal has been injured, for which it is further entitled to recover damages including but not limited to financial loss, loss of good will and reputation, compensatory and special damages in an amount to be proved and determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Canal respectfully requests the following relief against Robinson:  Entry of a judgment granting relief to Canal on its claims in their entirety and:

(i)      Awarding monetary damages including, but not limited to, disgorgement of all compensation, in whatever form, paid to or taken by Ms. Robinson during such period(s) of her disloyalty and violation of the faithless servant doctrine, in an amount to be determined at trial;

(ii)     Awarding monetary damages for the value of the funds and property misappropriated by Ms. Robinson during her employment in an amount to be determined at trial;

(iii)    Directing Ms. Robinson to return to Canal all cash, goods and frequent flyer miles that remain in her care, custody, control or possession;

(iv)    Awarding interest to Canal on all monies found to be owed by Ms. Robinson at the applicable statutory rate; and

(v)     Awarding Canal such other and further relief as the Court deems just and proper.

Dated: New York, New York
      July 28, 2021

                    **TARTER KRINSKY & DROGIN LLP**
                    *Attorneys for Defendant Canal Productions Inc.*

                    By:  */s/ Laurent S. Drogin*
                        Laurent S. Drogin
                        Brittany K. Lazzaro
                        1350 Broadway, 11th Floor
                        New York, New York 10018
                        Tel.: (212) 216-8000
                        Email: ldrogin@tarterkrinsky.com
                        Email: blazzaro@tarterkrinsky.com

**TRAUB LIEBERMAN STRAUS
& SHREWSBERRY LLP**
*Attorneys for Defendants*
*Robert De Niro and Canal Productions Inc.*

By: */s/ Hillary J. Raimondi*
    Hillary J. Raimondi
    Gregory R. Bennett
    7 Skyline Drive
    Hawthorne, New York 10532
    Tel.: (914) 347-8898
    Email: hraimondi@tsslaw.com
    Email: gbennett@tsslaw.com