```
                    UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF NEW YORK

In re:                                 :
                                           Docket #1:19-cv-09156-
 ROBINSON, GRAHAM CHASE,               : LJL-KHP

                     Plaintiff,        :

   - against -                         :

 DE NIRO, ROBERT, et al.,              : New York, New York
                                         January 31, 2022
                     Defendants.       :
                                         TELEPHONE CONFERENCE
------------------------------------ :

                    PROCEEDINGS BEFORE
              THE HONORABLE KATHARINE H. PARKER,
          UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:            SANFORD HEISLER SHARP, LLP
                          BY:  KATE MACMULLIN, ESQ.
                               ALEXANDRA HARWIN, ESQ.
                               ANN SLOAN, ESQ.
                          1350 Sixth Avenue, Floor 31
                          New York, New York 10019

For Defendant            TARTER KRINSKY & DROGIN LLP
Canal Productions:        BY:  LAURENT SCOTT DROGIN, ESQ.
                               BRITTANY KATE LAZZARO, ESQ.
                          1350 Broadway
                          New York, New York 10018




Transcription Service:   Carole Ludwig, Transcription Services
                         155 East Fourth Street #3C
                         New York, New York 10009
                         Phone:  (212) 420-0771
                         Email:  Transcription420@aol.com


Proceedings conducted telephonically and recorded by
electronic sound recording;
Transcript produced by transcription service
```

APPEARANCES CONTINUED:

For All Defendants:        TRAUB LIEBERMAN STRAUS & SHREWSBERRY
                           BY:  GREGORY R. BENNETT, ESQ.
                           7 Skyline Drive
                           Hawthorne, New York 10532
                           914-586-7037

<u>**INDEX**</u>

**E X A M I N A T I O N S**

| <u>Witness</u> | <u>Direct</u> | <u>Cross</u> | <u>Re-Direct</u> | <u>Re-Cross</u> |
|---|---|---|---|---|

None

**E X H I B I T S**

| <u>Exhibit Number</u> | <u>Description</u> | <u>ID</u> | <u>In</u> | <u>Voir Dire</u> |
|---|---|---|---|---|

None

```
 1                          PROCEEDINGS                   4
 2              THE CLERK:  19cv9156, Robinson versus De Niro.
 3   The Honorable Katharine H. Parker presiding.  Beginning
 4   with counsel for the plaintiff, please make your
 5   appearance for the record.
 6              MS. ALEXANDRA HARWIN:  This is Alexandra Harwin
 7   from Sanford Heisler Sharp on behalf of the plaintiffs.
 8              MS. KATE MacMULLIN:  This is Kate MacMullin from
 9   Sanford Heisler Sharp on behalf of plaintiffs.
10              MS. ANN SLOAN:  This is Annie Sloan from Sanford
11   Heisler Sharp on behalf of the plaintiffs.
12              MR. LAURENT DROGIN:  For defendant Canal
13   Productions, Laurent Drogin.
14              MS. BRITTANY LAZZARO:  Also for defendant Canal
15   Productions, this is Brittany Lazzaro from Tarter Krinsky
16   & Drogin.
17              MR. GREGORY BENNETT:  For all defendants,
18   Gregory Bennett, Traub Lieberman.
19              THE COURT:  Okay.  Good afternoon, everyone.
20   Because we're meeting on the phone, just a few
21   preliminaries.  I ask you to keep your phones on mute and
22   to state your name for the record before speaking for
23   clarity of the record.  The Court's making a recording of
24   this call, and if you'd like a transcript, you can order
25   one.
```

```
 1                          PROCEEDINGS                    5

 2          Finally, the Court's conference line is open to

 3   the press and public on a listen-only basis, and I want to

 4   remind everyone on the call that the Court prohibits

 5   others from recording and rebroadcasting court

 6   conferences, including this one, and that violations of

 7   this rule may result in sanctions.

 8          The parties are in the midst of completing

 9   discovery.  The Court issued some rulings on various

10   discovery issues, and there's still briefing to be

11   completed on motions to compel production of certain

12   documents that were redacted or withheld on the basis of

13   privilege.  That briefing will be completed in February.

14   I also extended the parties' time by a little bit to

15   complete their depositions.  I want to understand where

16   you are in the scheduling of depositions because I'd like

17   them to be completed.  Let me hear from plaintiff first.

18          MS. HARWIN:   Thank you, Your Honor.  Since the

19   last – this is Alexandra Harwin speaking.  Since the last

20   court conference on December 15, plaintiffs moved forward

21   diligently in conducting depositions and pursuing

22   discovery.  There are four depositions that have taken

23   place.  Plaintiff has taken the deposition of Canal

24   employees and Harvey Robin Chambers and Sabrina Weeks-

25   Brittan, and defendants took plaintiff's first day of
```

```
 1                          PROCEEDINGS                   6
 2   deposition as well.

 3           In scheduling depositions, plaintiff has

 4   endeavored to prioritize the deponents who are not

 5   substantially implicated in the disputes concerning

 6   privilege.  As the Court just said, Court has recently

 7   resolved a number of motions which the parties very much

 8   appreciate, but there are substantial disputes between the

 9   parties concerning defendants' claims of privilege and

10   work product protection that remain unresolved.

11           The Court originally set a schedule under which

12   the privilege disputes would've been completed, would've

13   been fully briefed by last week, and based on the pendency

14   of the motion to compel, plaintiff requested an extension

15   of the deadline to complete fact depositions, and the

16   Court granted a two-week extension of the fact deposition

17   deadline.  But after granting that two-week extension, the

18   Court substantially extended the motion to compel briefing

19   schedule giving defendants an additional four weeks to

20   file their opposition papers.  And as the Court just

21   noted, under the new schedule the motion to compel will

22   not be fully briefed until February 24.

23           But at that time the Court didn't further extend

24   the other discovery deadline, and so under the current

25   schedule the parties are required to complete fact
```

```
 1                           PROCEEDINGS                    7
 2    depositions nearly two weeks before the motion to compel
 3    is fully briefed.  This is a substantial departure from
 4    the schedule that the Court originally contemplated which
 5    provided that the parties would have 12 weeks after the
 6    completion of document production to complete fact
 7    depositions.  And, of course, that's standard to have
 8    document production complete and privilege issues resolved
 9    before completing depositions because access to all
10    relevant documents permit the litigants to conduct and
11    complete depositions efficiently and thoroughly.
12            After the last court conference, over a month
13    went by without defendants supplementing their production
14    to cure or narrow any of the privilege disputes.
15    Defendants subsequently said they'd produce documents by
16    no later than January 21, but that never happened.  Just
17    last week defendants began producing various documents
18    that they had withheld.  The production has come in dribs
19    and drabs with productions on Monday the 24th of January,
20    Wednesday, January 26, and Saturday, January 29, just two
21    days ago, which apparently included over 2,000 pages of
22    documents that had been withheld.  Defendants' recent
23    productions contain heavily redacted documents that
24    involve all of the individuals that plaintiff still needs
25    to depose.
```

```
1                          PROCEEDINGS                    8

2              In addition, defendants' productions were not

3    accompanied by amended privilege logs or explanation to

4    enable plaintiff to ascertain what documents have been

5    produced versus what documents continue to be withheld.

6    But it is apparent that defendants continue to withhold or

7    redact documents involving all of the individuals

8    plaintiff still needs to depose.  So all this has left

9    plaintiff without sufficient information and time to

10   prepare for depositions if they have to be completed by

11   February 11.

12             The parties conducted a lengthy meet and confer

13   on January 27 to prepare for this conference.  The parties

14   agreed during that meet and confer that the most efficient

15   course would be for the Court to extend the deadline to

16   complete fact depositions until a reasonable time after

17   the Court had decided the motion to compel and any

18   supplementary document production for defendants was

19   completed.  As it is now, plaintiff is still in the dark

20   as to the universe of documents that defendants continue

21   to withhold and have not been provided with sufficient

22   time to review and process defendants' document

23   productions which remain ongoing.  It would be inefficient

24   and --

25             THE COURT:  Let me just stop you.  Let me just
```

```
 1                          PROCEEDINGS                     9

 2  stop you for a second, Ms. Harwin.

 3         MS. HARWIN:   Sure.  Absolutely.

 4         THE COURT:   Because as I understood it, the

 5  defendants had provided a privilege log, and now what I'm

 6  hearing you say is that they have withdrawn the claim of

 7  privilege and produced some of the documents previously

 8  withheld.

 9         MS. HARWIN:   So defendants produced the

10  privilege logs which we provided to the Court as part of

11  our motion to compel briefing.  They this past week have

12  produced certain additional documents.  Again, we don't

13  have a comprehensive description of what these documents

14  represent and what they continue to withhold.  They've

15  stated that they anticipate providing a privilege log at

16  some point today, but we have yet to see what that

17  represents.  But from our discussions with defendants it's

18  clear that that doesn't fully resolve the parties'

19  dispute, that documents concerning all of the witnesses

20  that we still need to depose will continue to be withheld

21  and/or redacted despite the supplemental production.

22         THE COURT:   Well, the question is whether

23  they're being withheld properly or not, and if defendant

24  is withholding documents improperly, then the appropriate

25  sanction would be to reopen a deposition and charge the
```

```
 1                         PROCEEDINGS                   10
 2  defendant with costs.  Now, the defendant should be able
 3  to understand what documents are privileged and not
 4  privileged.  The case law is pretty clear on that.  And so
 5  let me hear from defendant about what has been produced.
 6  Can you provide an explanation?
 7            MR. BENNETT:   Yes, Your Honor, this is Gregory
 8  Bennett for the defendants.  I will explain the
 9  progression of events over the last December 15
10  conference.  Ultimately, at the end of the day, with
11  respect to the pending motion to compel, concern the
12  privilege documents.  The efforts that the defendants have
13  engaged in since the December 15 conference will serve to
14  substantially narrow the dispute that the Court will
15  ultimately need to adjudicate through that motion.
16            But taking the Court through it, prior to the
17  last conference which was December 15, defendants notified
18  the plaintiff after a meet and confer concerning their
19  claim that there were certain inadequacies in the
20  privilege log, that the defendants would conduct a
21  supplemental review of all documents that had been
22  withheld up until that point, as were cited in the
23  categorical logs.  Since that December 15 conference, as
24  Your Honor might recall, we were given the weekend
25  essentially to prepare for plaintiff's deposition and
```

```
 1                          PROCEEDINGS                    11
 2   conducted that later on after that conference.  Since the
 3   December 15 conference, there have been 45 filings in the
 4   case.  As plaintiff's counsel mentioned, four depositions
 5   have taken place thus far while plaintiff's remain, still
 6   needs to be completed.
 7           We certainly appreciate that plaintiff's counsel
 8   doesn't look at it this way.  The case simply doesn't
 9   warrant a platoon of lawyers trying to handle things on an
10   hourly basis every single day.  The defendants have taken
11   steps to try to produce the documents and conduct that
12   supplemental review in as timely a manner as possible
13   while still attending to the numerous other things that
14   are going on in this case that, as the Court describes,
15   the flurry of motions that were recently filed.
16           Part of the documents that defendants produced
17   recently were also in response to plaintiff's shocking
18   testimony as to a particular area of her duties, as the
19   Court might recall in reviewing her deposition transcript.
20   We do intend to serve not only an amended privilege log
21   today but also an explanatory letter describing what has
22   been produced thus far.
23           Essentially, as far - from the categories that
24   are mentioned in the privilege logs, the defendants have
25   now taken steps to produce several of those categories to
```

```
 1                           PROCEEDINGS            12

 2   try and narrow the dispute encompassed by the motion to

 3   compel.  And there will be additional information

 4   explaining what documents were produced and what dispute

 5   still remains once we send out that communication to

 6   plaintiff's counsel today.

 7            THE COURT:   So how is this going to impact the

 8   motion that's been filed?  I was under the impression that

 9   the plaintiffs were going to identify some documents and

10   that those would be the documents that would be submitted

11   for in camera review.

12            MR. BENNETT:   This is Gregory Bennett again.  I

13   planned on broaching that topic with plaintiff's counsel

14   to try and figure out the best way forward on that.

15   Certainly the defendants, under the prior order, I don't

16   have it in front of me, but I believe the Court ordered

17   the defendant to provide a sample of 20 documents from

18   each category at the time that the defendants filed their

19   opp for an in camera review.  We can certainly proceed in

20   that manner if the Court still wishes to do so.

21            THE COURT:   No, I didn't think that I was

22   saying 20 from each category.  How many categories are

23   there?

24            MR. BENNETT:   Now there are a total – we

25   distinguished between text and email productions, and I
```

| | | |
|---|---|---|
| 1 | PROCEEDINGS | 13 |

2    have it in front of me, I believe the email productions

3    contain six categories, but there are only three which

4    remain at issue, and there's really only two categories to

5    the text messages.

6            THE COURT:   So there's five categories.

7            MR. BENNETT:   I believe that's accurate, Your

8    Honor, yes.

9            THE COURT:   And how many documents are in each

10   category?

11           MR. BENNETT:   The total number of documents for

12   each category differs.

13           (interposing)

14           MR. BENNETT:   I don't have – so the text

15   messages I believe there are a total of nine documents

16   being withheld under all categories.  Certainly, the

17   emails are far greater than that.  Again, we produced

18   50,000 pages of discovery.  We withheld I'm sure at least

19   200 plus documents under the other email related

20   categories.  But I don't have a precise figure for you at

21   the moment, Your Honor.

22           THE COURT:   And so because of the categorical

23   log, you don't have an ability to pick out precise

24   documents, is that the situation?

25           MR. BENNETT:   We certainly can.  From the ESI

```
 1                         PROCEEDINGS              14
 2   platform that we're using, we can have them generate a
 3   random sample or pick a random sample of 20.  To the
 4   extent it will be easier for the Court and/or opposing
 5   counsel, defendants are also amenable to doing a doc by
 6   doc privilege log if that's going to make everything
 7   easier.  At least in defendants – there's a vast amount of
 8   data at issue here, not only which has been exchanged so
 9   far but which remains withheld under claims of privilege.
10   And so whatever is going to be --
11            THE COURT:  And what about a --
12            (interposing)
13            THE COURT:  Okay, so what are the categories
14   that are left?
15            MR. BENNETT:   I think the primary category at
16   issue would be communications following plaintiff's
17   resignation up to the filing of the state court action,
18   which would be August 17, 2019.  Defendants just produced
19   a traunch of documents related to that issue which show
20   the factual basis for why Canal commenced the state court
21   action.  Defendants still believe, however, there are
22   privileged communications between and among Mr. DeNiro,
23   Canal's general counsel, and Canal's external legal
24   counsel that are properly withheld under either work
25   product or attorney-client privilege.
```

```
 1                        PROCEEDINGS                    15
 2          THE COURT:   Okay.
 3          MR. BENNETT:   In addition --
 4          THE COURT:   Ms. Harwin, is that the primary
 5   category that you're concerned with?
 6          MS. HARWIN:   So that is certainly an important
 7   category of documents that we're concerned with.  You
 8   know, as it is now, I can't fully respond to what Mr.
 9   Bennett is saying because I don't have the amended
10   privilege log identifying what documents now are no longer
11   being withheld.  But that certainly is a significant
12   category.
13          And to address what has been raised about the
14   procedure, as I believe Mr. Bennett noted, the Court's
15   original order directed defendants to file a document by
16   document privilege log and present a random sample of 20
17   documents from each category at issue.  And, you know, we
18   do believe that that procedure makes good sense given that
19   we don't have a document by document privilege log or even
20   an identification of the number of documents being
21   withheld from each category to enable plaintiff to
22   identify specific documents for defendants to produce to
23   the Court for in camera review.
24          THE COURT:   Okay, so then we'll stick with the
25   procedure that I set forth.
```

```
 1                          PROCEEDINGS                    16

 2              MS. HARWIN:   The original procedure --

 3              THE COURT:   Right --

 4              MS. HARWIN:   -- that the Court --

 5              THE COURT:   -- and preparation of a document by

 6   document log.

 7              MS. HARWIN:   And, Your Honor, if I could just

 8   turn to the implications of this for deposition because I

 9   think that that's obviously an important issue, and I

10   could share some additional information.

11              You know, with respect to the depositions we've

12   previously conducted, as I mentioned, we prioritized the

13   deponents that were not substantially implicated in the

14   privilege dispute.  We proceeded, for instance, with the

15   deposition of a Canal employee named Sabrina Weeks-Brittan

16   based on the understanding that she was not substantially

17   implicated in the privilege disputes or involved in the

18   purported investigation into plaintiff.  But after her

19   deposition was completed, just this past week, defendants

20   produced numerous documents for the first time that they

21   withheld reflecting her, the deponent's extensive

22   involvement in the purported investigation into plaintiff.

23   But plaintiff was unable to confront the deponent at her

24   deposition because we didn't have those documents.

25              And it is - while the possibility of recalling
```

PROCEEDINGS                    17

1
2   the witness exists, the more efficient course is for
3   plaintiff and plaintiff's counsel to have the documents in
4   hand prior to deposition to be able to prepare appropriate
5   questions and to be able to identify appropriate areas of
6   inquiry for the witness rather than having to do partial
7   depositions based on a partial documentary record and then
8   having to recall each witness.
9          We anticipate very similar problems for the
10  remaining deponents.  Defendants are withholding or
11  redacting documents concerning all of the remaining
12  witnesses:  Mr. DeNiro, Canal employee Michael Kaplan,
13  defendants' accountant Michael Cash who's one of
14  defendants' Rule 30(b)(6) witnesses, Mr. DeNiro's lawyer-
15  fixer Tom Harvey who's another of defendants' Rule
16  30(b)(6) witnesses, and Mr. DeNiro's girlfriend Tiffany
17  Chen.  All of these individuals were actively involved in
18  the acts of alleged retaliation that go to the heart of
19  this case.  I believe that all of these individuals are
20  the subject of documents being withheld under the category
21  that Mr. Bennett just described.  And if plaintiff has to
22  complete depositions based on the incomplete documentary
23  record, it's likely we'll have to re-depose each and every
24  one of those witnesses following the resolution of the
25  motion to compel.

```
 1                      PROCEEDINGS                    18
```

 2          And in addition, the parties anticipate
 3 substantial disputes over the scope of privilege
 4 concerning what topics and documents are or are not
 5 privileged.  By contrast, if the Court has ruled on
 6 plaintiff's motion to compel, the scope of privilege will
 7 be clarified for all parties, and we can anticipate far
 8 fewer disputes as to privilege during the deposition which
 9 obviously makes for just a much more efficient deposition.

10          And so we would respectfully request that the
11 Court proceed in deciding the motion to compel and for the
12 fact depositions to be completed a reasonable time after
13 the motion to compel is decided and any supplementary
14 production from defendants is completed.  Because as it is
15 now we are in a period where we're continuing to receive
16 documents, including, again, thousands of documents just
17 this past Saturday, that we need to review and process and
18 understand what is there and what hasn't been produced.
19 And, again, it implicates each and every witness that
20 remains.

21          THE COURT:   Why is it that defendant is so late
22 in producing all of these documents in dribs and drabs?  I
23 don't understand.  This document discovery was supposed to
24 have been done, and, you know, the case starts out by the
25 parties saying everything is hunky dory, and then at the

```
 1                        PROCEEDINGS                 19
 2  last minute you're seeking all kinds of extensions and
 3  haven't produced what's been requested.  What's going on?
 4           MR. DROGIN:   Judge --
 5           MR. BENNETT:   Your Honor, this is -
 6           MR. DROGIN:   Greg, can I take a crack at it?
 7           MR. BENNETT:   Of course.
 8           MR. DROGIN:   I think - there's a holistic view
 9  that needs to be understood and considered here.  There is
10  a period of time which is relevant between let's say
11  January of 2019 and April 2019 when plaintiff resigned.
12  During that period of time there is growing suspicion
13  about plaintiff's activities, and this is being looked at
14  informally, and it's being looked at by Mr. DeNiro's
15  girlfriend.  On some of those emails and texts, the
16  attorneys are involved as there are questions as to what
17  is going on.  Sometimes there's an attorney involved,
18  sometimes there isn't.  Sometimes an attorney is brought
19  in later.
20           THE COURT:   Well, how is there any privilege
21  with Mr. DeNiro's girlfriend, how does that, how is -
22  she's not an employee of Canal.
23           MR. DROGIN:   Correct.  Correct.
24           THE COURT:   So why there be any privilege that
25  attached whatsoever, even if the lawyer was an on email
```

```
 1                         PROCEEDINGS                    20
 2   with the girlfriend?
 3             MR. DROGIN:   That's what I'm getting to.   At
 4   some point, and we know when, it shifts.   It shifts from
 5   what's going on here to we understand what's going on
 6   here; we now need to gather information from the employees
 7   to determine whether or not two things are going to
 8   happen.   One, we're going to commence litigation, or, two,
 9   we're going to refer this to the district attorney's
10   office.   Both of those things happened, and both of those
11   things happened before the lawsuit was filed.   So now we
12   have this outside date of August 19 which is when the
13   lawsuit was filed.   So I believe 90 percent of the issues
14   here relate to the period post-resignation, pre-
15   commencement of the lawsuit.
16             And many of these documents involve
17   communications with, between the attorneys and Mr. DeNiro
18   about facts that were discovered, who's gathering the
19   information, and what are we doing with them,
20   recommendations as to different things that we can do, so
21   on and so forth.   Exactly the type of things that an
22   attorney and a client would never anticipate opposing
23   counsel would be ever able to lay their eyes on.   In some
24   of those circumstances, Mr. DeNiro did copy his girlfriend
25   on them because she had some of the relevant information,
```

```
 1                          PROCEEDINGS              21
 2  because she had gathered it.
 3          So we've got this kind of like bird's nest where
 4  we know how it ends, and you've got to remember the only
 5  relevance that this has to this case is our affirmative
 6  claims, this is the evidence we have against her, which
 7  we're producing anyway.  The small component here that
 8  they're looking for here has to do with the retaliation
 9  claim.
10          So if I wanted to disclose something tactically,
11  for example, a date showing that before the lawsuit was
12  ever filed, before Ms. Robinson ever had an attorney that
13  surfaced, Mr. Harvey was already in touch with the
14  district attorney's office.  That blows the retaliation
15  claim out of the water.  We want to disclose that.  Even
16  if it's privileged, we want them to know that because it
17  completely destroys their retaliation claim because there
18  was no protected activity --
19          THE COURT:  Well, if you're relying on the
20  investigation as part of your defense, then there would
21  be, any privilege would be waived with respect to that
22  investigation.
23          MR. DROGIN:  It's not – factually we have no
24  problem in terms of what was produced, and that was what
25  was alluded to when Ms. Weeks-Brittan was deposed and
```

PROCEEDINGS                    22

1

2  plaintiff's counsel asked her about how certain things

3  were tabulated, how they came up with certain numbers.  So

4  I disagree with Ms. Harwin as to whether or not that's

5  been explored.

6           But the point is is, look, you have as example,

7  Judge, there's a draft complaint that is sent by counsel

8  to Mr. DeNiro on I think it's August 1 or August 2 where

9  he's given information and he's asked to review the

10 complaint and how he wants to proceed.  That's the level

11 of detail that we're talking about, and it specifically

12 goes to motivation.

13          So, again, I think when you get right down to it

14 as to what are the real documents that are being fought

15 over, the vast majority of them are direct communications

16 with Mr. DeNiro by counsel, and in some instances he has

17 shown them to his girlfriend, and I think that's, those

18 are the documents that you're going to see.  Because she

19 is a fact witness who's going to be deposed who is

20 providing him with information as to what she had found.

21 You're right, she's not a Canal employee.  I guess that's

22 why she's not sued, you know, I don't know.

23          But I just want to be very clear so you have a

24 better understanding just as to – it really is quite

25 unique here because we're being asked not only to justify

1                              PROCEEDINGS                    23

2   our claims where obviously we've got a burden of proof but

3   also to prove a negative which really isn't, it's kind of

4   backwards.  They're the one that has to prove that there

5   was retaliatory intent here.  You know, we're being sort

6   of asked to disprove something that's not our burden, and

7   we're being asked to disprove it by being compelled really

8   to disclose confidential information to show when things

9   happened.  Factually I have no problem with that.

10          You know, there's a draft letter from Mr. Harvey

11  to Mr. DeNiro in the middle of June before Ms. Robinson's

12  attorney ever came onto the surface.  The message then was

13  please return the Sky Miles or you'll face civil or

14  criminal prosecution.  That was ultimately changed in the

15  letter that was sent to her on July 13, but factually we

16  want them to know what that letter said.

17          THE COURT:  Okay, fine.

18          MR. DROGIN:   Parts of it are redacted though.

19          THE COURT:   Nothing about discovery alters

20  burdens of proof on a dispositive motion or at trial.

21  Discovery is simply the exchange of information relevant

22  to the claims and defenses and proportional to the needs

23  of the case.  So what you're talking about is production

24  of documents relevant to your defense of the retaliation

25  claim.  That's not shifting a burden of proof.

```
 1                          PROCEEDINGS              24
 2            MR. DROGIN:   Well --
 3            THE COURT:   That's neither here nor there.  The
 4   issue before the Court is whether to extend discovery, and
 5   I'm reluctantly going to extend the time to depose the
 6   four remaining fact witnesses.  Let's identify them now.
 7            MS. HARWIN:   So the remaining fact witnesses
 8   are Mr. DeNiro, Mr. Kaplan, Michael Kaplan.  I can give
 9   full names.  Robert DeNiro, Michael Kaplan, Michael Cash,
10   Tom Harvey, and Tiffany Chen.  And then in addition,
11   there's the Rule 30(b)(6) deposition in which the
12   witnesses are Mr. Cash and Mr. Harvey.  So there are
13   technically five depositions involving four witnesses.
14            THE COURT:   I have --
15            MR. DROGIN:   Five witnesses.
16            (interposing)
17            THE COURT:    -- five --
18            MS. HARWIN:   Your Honor, yes, I'm sorry, Your
19   Honor, technically six depositions involving five
20   witnesses.
21            MR. BENNETT:   And, Judge, counsel are all
22   prepared to move forward to conclude plaintiff's
23   deposition on February 9.  That date has been cleared with
24   all counsel.
25            MS. HARWIN:   Yeah, we don't need an extension
```

PROCEEDINGS                          25

of time to complete plaintiff's deposition.  It's for the

remaining five witnesses that I just named for those six

depositions.  And, Your Honor, we would respectfully ask

that the time to complete those depositions be tied to the

timing for deciding the motion to compel and the

completion of any supplementary document production.

Because, of course, we don't know when that will be

decided nor any deadline that the Court will set for

producing any supplemental documents, and so we would want

a reasonable time which the parties thought would be four

weeks to complete fact depositions after the motion to

compel is decided and any supplementary document

production is completed.

THE COURT:  Under the protocol, what I'm

hearing now is under the protocol there would be a hundred

documents submitted for in camera review.  I don't know

that that's necessary if there's only – that's like 50

percent of the documents that have been withheld, and I

don't know that that makes a lot of sense.  It's not going

– that I need that much in terms of a sample for the

documents that have been withheld.  It seems to me that

the in camera can be, you know, more like 10 percent of

the documents withheld.

MS. HARWIN:  Your Honor --

```
 1                        PROCEEDINGS                    26
 2            (interposing)
 3            MR. DROGIN:   It's Laurent Drogin again.  Two
 4   things.  First of all, I just want to make sure the Court
 5   is aware in the event you decide not to extend discovery,
 6   there are dates set for every one of these witnesses with
 7   the exception of a half day for Mr. DeNiro.  So we have
 8   that in place in case you do not extend the discovery
 9   deadline.  Also, I think one of the critical questions
10   here, I think a lot of these documents are going to be, as
11   I indicated, documents that ultimately Mr. DeNiro shared
12   with Ms. Chen because she had information based on her
13   becoming a fact witness here.  If there's a privilege
14   there, the number of documents implicated here shrinks
15   drastically.  If there's no privilege, it's a different
16   story if the privilege has been waived.  We think it
17   hasn't been waived, and here we are on the briefing
18   question.
19            THE COURT:   Well, if Ms. Chen was included in
20   the communications, how can there be a privilege?
21            MR. DROGIN:   Because our position that at that
22   point she was really an agent for him and for Canal
23   because she had been the original one that uncovered the
24   wrongdoing.
25            THE COURT:   That doesn't make any sense.  An
```

```
 1                          PROCEEDINGS                    27
 2  agent?  She's a fact witness.  She's --
 3           MR. DROGIN:   She is a fact --
 4           THE COURT:   It's the same as when you conduct
 5  any investigation and get information from fact witnesses.
 6  The underlying facts are not privileged.
 7           MR. DROGIN:   We're not talking about the facts.
 8  We're not talking about the facts.  We're talking about
 9  communications with attorneys about how to proceed.  We're
10  not talking about the facts.  The facts, of course --
11           (interposing)
12           THE COURT:   -- for Canal.  She's not a
13  decisionmaker for Canal.  She has no attorney-client
14  relationship.  She's not paying - all she is is a fact
15  witness.
16           MR. BENNETT:   Your Honor, this his Gregory --
17           THE COURT:   You all elected to include her in
18  communications, that's, you know, I don't see how case law
19  would support her being deemed an agent.  The case law is
20  pretty clear that when a third party is included, it has
21  to be for purposes of assisting the lawyer in providing
22  things the lawyer can't advise on as to that, and just
23  simply providing facts is not something that would fall
24  into that category.  So I --
25           MR. BENNETT:   The way --
```

1                          PROCEEDINGS                    28

2          THE COURT:   I don't see how that would remain

3    privileged.

4          MR. BENNETT:   Well, the way that we're looking

5    it, as an example, is if the attorneys sat down with the

6    employees of Canal and discussed the factual findings, we

7    understand the facts are discoverable, but how the facts

8    were being used is another story.  So in this case she was

9    one of the people who, yes, is a fact witness.  Whether

10   she was an employee or not, I'm not clear how that happen,

11   why that matters if she was assistant the attorney which

12   is exactly the case.

13         And on some things, Your Honor, she's a fact

14   witness, and there's no issue.  There's no privilege at

15   all. We don't claim that there is.  We're really just

16   talking about a very narrow subset here.

17         THE COURT:   I'm skeptical of this argument, I

18   have to say.

19         MR. DROGIN:   Well, same as work product, Judge.

20   I mean it's gathering information, it's presenting to us

21   so we can advise – at that point, remember also, it's –

22   sometimes I forget this as well --

23         THE COURT:   But you're relying on the

24   investigation as part of your defense.

25         MR. DROGIN:   Yes, and factually I have no

PROCEEDINGS                    29

1

2  problem turning all of that over.  The question is when

3  she's working with the attorneys to provide the

4  information and we are asking questions and she is giving

5  answers.  Factually they have everything.  We're not

6  withholding any of the facts that were relied upon, any of

7  the documents or anything like that.  But if a draft

8  complaint is sent to Mr. DeNiro and he shares it with her

9  to make sure it is factually accurate since she has first-

10  hand knowledge and has been working with the attorneys,

11  that's the question.  Or that's at least one of the

12  questions.  And, again --

13         MS. HARWIN:   Your Honor, this – I'm sorry, Mr.

14  Drogin, you may continue.

15         MR. DROGIN:   No, no, go ahead.

16         MS. HARWIN:   Your Honor, I would just simply,

17  and this is Alexandra Harwin on behalf of plaintiff.  I

18  would simply note that it is not the case that the

19  documents that have been withheld or redacted are limited

20  to those such as a draft complaint.  For instance, among

21  the dribs and drabs of documents received over the past

22  week are lots of communications compiling purported facts

23  where attachments have not been produced or the content

24  has been substantially redacted.  This is information from

25  the purported investigation.  These are the bones of the

```
 1                          PROCEEDINGS                    30

 2   purported investigation where the documents are not

 3   produced to us in full, and, again, you know, to be in a

 4   situation where plaintiff has to depose the people who are

 5   participating in these communications where we don't

 6   actually have the substance of the communications that

 7   were exchanged is deeply problematic.

 8            And as the Court has noted, this goes to the

 9   heart of defendants' defense that the purported

10   investigation they conducted was not retaliatory in

11   nature.  But, again, much of that investigation has been

12   concealed, and as of now, because we are getting documents

13   in dribs and drabs, we have no assurance that there aren't

14   going to be additional documents that are, you know,

15   coming about in the coming days.  And so we very much

16   appreciate the Court's inclination to extend the time for

17   completing fact depositions because it truly would be

18   highly prejudicial and extremely inefficient for all

19   parties to proceed on what is clearly a very disputed and

20   incomplete documentary record.

21            And, Your Honor, with respect to the procedures

22   for presenting documents for in camera review, I would

23   note that while Mr. Bennett has noted that there may be

24   approximately 200 documents or so that are being

25   completely withheld.  It appears based on our review that
```

PROCEEDINGS                          31

1

2    there are many, many dozens, if not, you know, over a

3    hundred additional documents that have been substantially

4    redacted based on purported privilege issues.

5           And so, you know, our understanding of the

6    universe is substantially larger than 200 documents, and I

7    would note that, at the time the Court set the original

8    procedure, there were, you know, many hundreds of

9    additional documents being withheld.  So if the Court were

10   inclined to hv a sample of, say, 15 documents per

11   category, you know, we certainly wouldn't object to that.

12   But we would be concerned about having only a sample of,

13   say, you know, five or ten documents per category as not

14   being sufficient to give the Court the sense of what the

15   nature is of the documents being withheld or redacted

16   because, again, Your Honor, it's not limited to documents

17   such as draft complaints as has been suggested by defense

18   counsel.

19          MR. BENNETT:   Your Honor, this is Gregory

20   Bennett.  If I could just add something to that.

21          THE COURT:   Go ahead.

22          MR. BENNETT:   Your Honor, thank you.  I don't

23   want, I don't have the precise numbers in front of me, so

24   as plaintiff's counsel just mentioned, the 200 number

25   might not be correct.  It might be a lower count.

PROCEEDINGS                    32

1

2    Obviously we will do, we will provide the Court with

3    however many samples it would like following the creation

4    of the doc by doc privilege log.

5              With respect to certain aspects of redactions

6    that have been contained on documents that the recently

7    produced, we plan on notifying counsel today that we do

8    plan on seeking protective relief regarding one of the

9    categories of documents, and I think that would at least

10   address in particular plaintiff's concern about some of

11   those redactions.  What those relate to are, following the

12   plaintiff's testimony, defendants decided to produce

13   documents between Ms. Robinson and an attorney who

14   represents Canal and Mr. DeNiro in connection with various

15   transactions on both films advertising and related

16   business ventures.  In the course of producing those

17   documents, because there is absolutely zero relevance and

18   they are highly sensitive and confidential information

19   contained in the transactional documents, it did apply

20   redactions to dollars figures and the substance of the

21   terms of transactional agreements.

22             So that is something that remains open at

23   present.  We planned on notifying or inquiring from

24   plaintiff's counsel today by letter as to whether or not

25   they would consent to the forthcoming motion.

```
 1                          PROCEEDINGS                   33

 2            THE COURT:   But why do plaintiffs need that

 3   data anyway?

 4            MR. DROGIN:   Your Honor --

 5            THE COURT:   Why should there be motion practice

 6   on that kind of redaction?  That's neither here nor there

 7   in this case.

 8            MS. HARWIN:   Your Honor, this was raised with

 9   us previously, but, you know, we're happy to confer with

10   defendants because we certainly would like to avoid the

11   need for additional motion practice that the Court would

12   need to adjudicate.  And so we're happy to work with them

13   to try to resolve this issue --

14            THE COURT:   Yeah, I'd ask you to meet and

15   confer because this is --

16            MS. HARWIN:   Sure.

17            THE COURT:   -- getting out of hand in terms of

18   the issues that you're raising at the very end of

19   discovery.  So I'm going to reluctantly, reluctantly

20   extend discovery solely for purposes of deposing the five

21   individuals that were named today.  They must be completed

22   within 30 days of the Court's ruling on the motion for

23   privilege, and I am not extending the deadline on the

24   motion regarding privilege.

25            MS. HARWIN:   Your Honor, can I clarify
```

PROCEEDINGS                    34

1

2    something?  When you say 30 days, do you mean 30 days

3    after – if the Court orders any supplemental production,

4    can we clarify that it'll be 30 days after --

5             THE COURT:   No --

6             MS. HARWIN:   -- the --

7             THE COURT:   -- 30 days after the ruling, and

8    because I'm going to require immediate production.

9             MS. HARWIN:   Your Honor, I would simply note

10   that, you know, 30 days are approximately 20 business days

11   for the completion of fixed depositions when there may be

12   additional documents to review is quite burdensome, and we

13   would just request --

14            THE COURT:   Well, maybe there's some of these

15   people that you can depose between now and February 11,

16   and there really won't be too much remaining open for

17   them.

18            MR. DROGIN:   That was my thinking, Judge.  It's

19   Laurent Drogin.  And we'd like you to order February 9 for

20   Ms. Robinson.  We actually have a schedule for --

21            THE COURT:   Well, she should go on February 9

22   if everybody's available.  It --

23            (interposing)

24            MS. HARWIN:   Yeah, we've already --

25            THE COURT:   -- done.  I'm not extending the

```
 1                          PROCEEDINGS                 35
 2  time period.  But, for example, I haven't heard really why
 3  Mr. Kaplan or Mr. Cash couldn't be deposed sooner.  I mean
 4  I don't know how much is withheld, but you can think about
 5  that, but I'm not going to give you more than 30 days --
 6           MS. HARWIN:   Your Honor --
 7           THE COURT:   That is what it is.  This is --
 8           MR. DROGIN:   Mr. Cash isn't --
 9           (interposing)
10           MS. HARWIN:   So, Your Honor, Mr. Kaplan and Mr.
11  Cash are both the subject of extensive withheld documents.
12  Mr. Kaplan, there are extensive documents that continue to
13  be redacted, continue to be withheld.  And so these are
14  all of these witnesses, unfortunately, are not ones that
15  can be resolved before the motion to compel, but certainly
16  we'll comply with --
17           THE COURT:   Well, then you're going to have to
18  figure out how to get them in in 30 days, and that's --
19           MS. HARWIN:   Okay, thank you, Your Honor.
20           THE COURT:   And so I urge you to reconsider
21  whether you really could conduct some of this stuff now,
22  especially --
23           MR. DROGIN:   We're available.
24           MS. HARWIN:   Your Honor, if I could point out
25  one other just scheduling issue.  Under the Court's
```

```
 1                          PROCEEDINGS                    36
 2  original order there was approximately, there was a lack
 3  of time between when plaintiff's deposition was required
 4  to be completed and then the completion of affirmative
 5  expert reports because experts typically want to review a
 6  plaintiff's deposition prior to completing a report.  And
 7  so given that plaintiff – right now the fact – I'm sorry,
 8  right now the deadline for disclosure of affirmative
 9  expert reports is February 4, but plaintiff's deposition
10  is not going to be completed until February 9.  Therefore,
11  we would request an extension of approximately a month so
12  that experts can review plaintiff's deposition prior to
13  the completion of their reports.
14          THE COURT:   What is the topic, what are the
15  expert topics?
16          MS. HARWIN:   So the experts, there's a
17  vocational expert, an economics expert on damages as well
18  as a psychiatric expert on emotional distress issues.
19          (pause in proceeding)
20          THE COURT:   I'll extend the time to do the
21  affirmative expert report to February 18.
22          MS. HARWIN:   Thank you, Your Honor.
23          THE COURT:   Anything further from defendants?
24          MS. HARWIN:   Your Honor, there's one more thing
25  from plaintiff, when there's an opportunity.
```

```
 1                        PROCEEDINGS                    37
 2            THE COURT:   Okay, what's the remaining issue
 3   from plaintiff?
 4            MS. HARWIN:   The remaining issue is that
 5   defendants have not yet produced a computation of damages
 6   as required under Rule 26.   As part of the initial
 7   disclosures, as the Court knows, there's an obligation to
 8   provide a computation of damages.   Obviously, when the
 9   case began, defendants weren't asserting affirmative
10   claims, but after they were granted leave to assert
11   affirmative claims, they didn't amend their initial
12   disclosures to provide the computation of damages.   And so
13   one thing we would request is the Court set a deadline for
14   defendants to do that because that is obviously something
15   that we need in advance of depositions, the remaining
16   depositions.
17            THE COURT:   Well, the computation simply is the
18   amount that they believe were stolen by the plaintiff, is
19   that right?
20            MS. HARWIN:   They should – they are required to
21   disclose what that computation is as part of Rule --
22            THE COURT:   Have you confirmed the value of
23   what was returned the last day, in the boxes?   Because I
24   know that the defendants were asking for confirmation of
25   the contents of those --
```

```
 1                        PROCEEDINGS                    38

 2          MS. HARWIN:   Yeah.

 3          THE COURT:   You have done that?

 4          MS. HARWIN:   Yes, we – yes.

 5          THE COURT:   Okay.

 6          MS. HARWIN:   But as for the issues in the

 7   litigation, obviously there are different claims

 8   concerning various expenses as part of defendants'

 9   counterclaims in this action, and Rule 26(a)(i)(A)(3)

10   requires them to compute those damages and provide us with

11   a computation at the inception of the action.  And we

12   still don't have that yet.  And so we're simply seeking

13   that the Court set a deadline for those disclosures.

14          THE COURT:   Have defendants computed the extent

15   of the alleged theft?

16          MR. DROGIN:   Your Honor, it's Laurent Drogin.

17   We have not updated it, and I would also add that there's

18   another component here under the duty of loyalty for

19   disgorgement of compensation paid during the period of

20   disloyalty.  I have no problem on behalf of Canal of

21   supplementing that.  If we could have a week to do that,

22   I'm sure we could turn it around.  That's not a problem.

23          THE COURT:   Okay, so I'd ask that you – I'll

24   direct you to supplement that (inaudible).  All right,

25   anything further from defendants?
```

```
 1                        PROCEEDINGS                    39

 2             MR. DROGIN:   I don't think so.  Greg, anything

 3    you have?

 4             MR. BENNETT:   No, Your Honor.

 5             THE COURT:   Okay, thank you all, we're

 6    adjourned.

 7             MR. DROGIN:   Thanks, Judge.

 8             MS. HARWIN:   Thank you, Your Honor.

 9             (Whereupon, the matter is adjourned.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

40

C E R T I F I C A T E

        I, Carole Ludwig, certify that the foregoing

transcript of proceedings in the case of Robinson v. De

Niro et al, Docket #19-cv-09156-LJL-KHP, was prepared

using digital transcription software and is a true and

accurate record of the proceedings.

Signature_____
                    *Carole Ludwig*

                    Carole Ludwig

Date:    February 4, 2022