```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #:_____          │
│ DATE FILED: 3/9/2022 _____ │
└─────────────────────────────────────┘
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------X

GRAHAM CHASE ROBINSON,

                              Plaintiff,                          **19-CV-9156 (LJL) (KHP)**

                  -against-                                       **OPINION**

ROBERT DE NIRO and CANAL PRODUCTIONS, INC.,

                              Defendants.

-------------------------------------------------------------------X

**KATHARINE H. PARKER, United States Magistrate Judge**

On January 7, 2022, Plaintiff filed a motion to compel production of documents withheld by Defendants on a claim of privilege.  (ECF Nos. 130-32.)  On February 17, 2022, Defendants filed an opposition to Plaintiff's motion.  (ECF Nos. 162-63.)  For the following reasons, the Plaintiff's motion is GRANTED in part and DENIED in part.

This was one of eight motions filed in a flurry at the beginning of 2022.  The Court assumes familiarity with the facts and thus does not elaborate on the factual assertions in this action.[1]  In the present motion, Plaintiff disputes certain documents that Defendants are withholding from production on the basis of attorney-client privilege and/or the work product doctrine.  Plaintiff puts forth a number of arguments.  First, Plaintiff maintains that Defendants' privilege log is untimely, inadequate, vague and deficient and thus warrants waiver of privilege. Second, Plaintiff maintains that Defendants' claims of privilege are erroneous where said documents contain communications with non-attorney third parties, concerned transactional matters, Defendants are trying to shield communications between Plaintiff and the witnesses

---

[1] For a full recitation of the facts, *see Opinion regarding Defendant's Motion for Leave to File Amended Answer and to include Counterclaims* at ECF No. 72.

Defendants identified in their Initial Disclosures, and Defendants waived privilege and work product protection as to Canal's investigation into and the commencement of its state court action against Plaintiff by placing these subjects directly at issue in the Counterclaims and defenses in this action.  Plaintiff further suggests that the Defendants' privilege claim does not attach to communications about Canal's commencement of the state court action and that these communications were for the purpose of furthering crime or fraud.  As a result of all of these arguments, Plaintiff argues that Defendants waived privilege for such documents and should be ordered to produce them.  Lastly, Plaintiff claims that if the motion is granted, Plaintiff should be awarded her attorney's fees and costs related to the instant motion.

In response, Defendants adamantly assert that the crime-fraud argument fails unequivocally, the timing of Defendants service of privilege logs was dictated by Plaintiff's failure to compromise on limiting the search criteria, the log is compliant with Local Rule 26.2 and is not deficient, and that the claims of privilege are proper because, where applicable, the documents are evidence that their primary purpose was to obtain or provide legal advice, the documents contain attorney's mental impressions regarding case strategy, and thus waiver is unwarranted.

Twenty-five documents were submitted to the Court for in camera review.  The documents fall within the following categories on the categorical privilege log:

- Category 2: Communications and documents exchanged between and among Canal's and Mr. De Niro's general legal counsel, Canal's external legal counsel, Mr. De Niro and/or then-current Canal personnel and external consultants regarding (i) activities immediately preceding, and relating to, Canal's filing of the State Action, (ii) advice relating to Canal's and Mr. De Niro's communications with, and response to, Plaintiff's resignation immediately following same, and (iii) consideration of how to address issues identified in the State Action.

- Category 5: Communications and documents exchanged between and among Canal's general counsel, external legal counsel, Mr. De Niro, then-current Canal personnel and/or external consultants regarding (i) legal issues relating to strategy and assessment of claims and related tactics in the State Action and current action (including invoices from law firms reflecting such legal work/ advice), and (ii) insurance-related issues before commencement of the State Action and following commencement of Plaintiff's action.

- Category 7: Communications and documents exchanged between and among Mr. De Niro's family legal counsel, which include Plaintiff.

However, the Defendants failed to provide a breakdown of which documents fall under each category. Further, based on the Court's own review, the majority of documents submitted for review do not fit neatly into categories 2 or 5, and there were no documents relevant to Category 7.[2]

Based on the Court's own review, the documents produced for in camera review fall into the following categories:

- Documents about/ related to the State Court Action:

  - REV 00050335
  - REV 00050353
  - REV 00062940
  - REV 00063035
  - REV 00069252
  - TXT 0000008401
  - Text Message Document not assigned a Bates control number

- Documents about/ related to the Federal Court Action:

  - REV 00032616
  - REV 00055207
  - REV 00069550
  - TXT 0000008400

---

[2] To add to the confusion, Defendants provide in their brief that communications in Category 5, also appear in the Privilege Log provided to Plaintiff as Category 4 documents.

- Resignation/ Post-Resignation Documents:

  - REV 00053893
  - REV 000123826
  - REV 000125432
  - TXT 0000002625

- Documents concerning Legal Invoices:

  - REV 00055526
  - REV 00055858
  - REV 00061377
  - REV 00063722
  - REV 00063738

- Documents regarding the "Investigation":

  - REV 00057032
  - REV 00069368
  - REV 00069843
  - REV 00069845
  - TXT 0000008207

The Court has carefully considered the parties' arguments in their briefs.  Its rulings are set forth below.  For ease of review, its decision on the twenty-five documents submitted for *in camera* review also are summarized in the Chart attached to this Opinion.

**LEGAL STANDARDS**

I.   ***Privilege Log***

a.   ***Legal Standard: Demonstrating Burden Through Privilege Log***

The party withholding a document on the basis of attorney-client privilege or the work product doctrine bears the burden of establishing facts to demonstrate applicability of the protective rule.  *In re Grand Jury Subpoena Dated Jan. 4, 1984,* 750 F.2d 223, 224–25 (2d Cir. 1984).  Rule 26 of the Federal Rules of Civil Procedure provides that when a party withholds documents on the grounds of privilege, it must both "expressly make the claim" and "describe

the nature of the documents, communications, or tangible things not produced or disclosed—

and do so in a manner that, without revealing information itself privileged or protected, will

enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A).  In addition, the Local Civil

Rule specifies that the party must provide complete identifying information, date, type of

document, and subject matter in a privilege log at the time the party responds to discovery.

*Dey, L.P. v. Sepracor, Inc.*, 2010 WL 5094406, at *2 (S.D.N.Y. Dec. 8, 2010) (citing Local Civ. R.

26.2(c)).  "The standard for testing the adequacy of the privilege log is whether, as to each

document, it sets forth specific facts that, if credited, would suffice to establish each element of

the privilege that is claimed."  *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.,* 274

F.R.D. 106, 112 (S.D.N.Y. 2011); *Orbit One Commc'ns, Inc. v. Numerex Corp.,* 255 F.R.D. 98, 109

(S.D.N.Y. 2008) (a party must justify assertion of privilege by providing sufficient information by

its adversary to assess any potential objections).

        In addition, the Local Civil Rules provide that a party claiming a privilege must provide

the foregoing information in writing and within the time the response to the discovery request

is due, unless the court orders otherwise. Local Civil Rule 26.2(b).  Thus, "[a] privilege log must

be received either within thirty days of a request for documents or by a date that is agreed

upon by the parties or set by the court." *Strougo v. BEA Assocs.,* 199 F.R.D. 515, 521

(S.D.N.Y.2001) (Sweet, D.J.), *citing* Fed. R. Civ. P. 34(b).  Importantly, a party's failure to comply

with the requirements of Fed. R. Civ. P. 26(b)(5) or Local Civil Rule 26.2 may result in a waiver of

privilege.  *See* Fed. R. Civ. P. 26(b)(5), Advisory Committee Notes ("To withhold materials

without such notice is contrary to the rule, subjects the party to sanctions under Rule 37(b)(2),

and may be viewed as a waiver of the privilege or protection.").  However, "[o]nly 'flagrant'

violations" require such an outcome.  *Pem–America, Inc. v. Sunham Home Fashions,* 2007 U.S.

Dist. LEXIS 80548, at *5 (S.D.N.Y. Oct. 30, 2007).  In fact, some courts have found that the

"failure to provide a privilege log alone does not warrant a waiver of the attorney-client

privilege." *Id.*

####     b.   *Adequacy of the Privilege Log*

Plaintiff argues that Defendants' privilege log is inadequate pursuant to Local Rule 26.2,

vague, and deficient and should result in a waiver of privilege.   The Court disagrees.  The

Defendants' Log is on an excel spreadsheet that lists the document control number; the date of

the document; author; recipient; other individuals on the document; an indicator as to whether

any of the persons who authored, sent, or received the document is an attorney; the general

subject matter of the document; a general description of the document; and the privilege(s)

asserted.  This information is sufficient to permit Plaintiff to identify documents and this Court

finds that the log complies with Local Rule 26.2 and FRCP 26.  See *In re Methyl Tertiary Butyl*

*Ether Prods. Liab. Litig.*, 274 F.R.D. 106, 112 (S.D.N.Y. 2011).

Additionally, Defendants provided Plaintiff with a list of non-attorney participants noted

in the log and also designated the attorneys in the log.  Therefore, they have sufficiently

identified the individuals who participated in the communications.   Further, Defendants were

at all times willing to meet and confer with Plaintiff regarding questions she had about the log

and to provide clarification.

Finally, to the extent Defendants provided a categorical log, such logs are expressly

permitted under the Local Rules and the Federal Rules of Civil Procedure.  Provided the

categories are not overbroad, categorical logs can be an efficient way to log privileged documents.  Plaintiffs do not argue that categorical logs are inappropriate.

### c.   Timeliness of Defendants Privilege Log

Plaintiff argues that Defendants failed to produce timely privilege logs and as a result, the Court should order a waiver of privilege as to all documents and sanctions for untimeliness. Plaintiff relying on *FG Hemisphere Assocs., L.L.C. v. Republique Du Congo*, asserts that the unjustified failure to list privileged documents on the required log of withheld documents in a timely and proper manner operates as a waiver of any applicable privilege.  2005 WL 545218, at *6 (S.D.N.Y. Mar. 8, 2005).  However, this case is wholly distinguishable.  In *FG Hemisphere Assocs.*, the Defendant failed to provide a privilege log for what appears to be over two years.

Here, Plaintiff served her first ESI production on February 9, 2021 and Defendants produced their first privilege log on July 27, 2021.  The parties had multiple meet and confers where the Defendants explained that the ESI volume at issue was vast and review of this ESI material would hamper generating a privilege log.  At a case management conference before the undersigned on September 29, 2021, Plaintiff requested that the Court set a deadline for production of outstanding privilege logs, and I ordered Defendants to produce privilege logs on a rolling basis with each tranche of production and an updated log by November 5, 2021.  (Case Mgmt. Conf. Tr. Sept. 29, 2021.)  Defendants complied with this order.

Plaintiff challenged certain documents on the log and the parties met and conferred about these documents.  On November 30, 2021, Defendants represented they conducted a supplemental review of documents on their log and had withdrawn privilege assertions on some, resulting in the production of additional documents.  On December 15, 2021, the Plaintiff

indicated she still had concerns about over-withholding of documents and sought permission to move to compel.  Thus, the Court set a briefing schedule for the instant motion.

While it is true that Defendants did not initially produce privilege logs with each tranche of documents as required, they did produce a log as ordered by the Court prior to the completion of document production.  It is also true that Plaintiff made overbroad requests and that there were meet and confers to narrow the scope of ESI discovery that delayed Defendants' production and preparation of a privilege log.  Further, Defendants met and conferred with Plaintiff's counsel about objections to privilege assertions, provided clarifying information, and re-reviewed their log based on Plaintiff's objections, resulting in their production of additional information.  Thus, although Defendants did not initially produce logs with each tranche of their document production, they ultimately produced a log within the time for Plaintiff to review it and make challenges to it prior to depositions.  Additionally, Defendants have not abandoned their obligations under the Federal Rules.  To the contrary, they have met and conferred with Plaintiff and made compromises.  Further, as evident from the case management conferences, Defendants timely complied when ordered to produce additional privilege logs.

In sum, Defendants' actions (including the timing of when they produced their logs) do not come close to the sort of flagrant violations of the discovery rules that should result in a wholesale waiver of privilege.  *Pem–America, Inc. v. Sunham Home Fashions,* 2007 U.S. Dist. LEXIS 80548, at *5. Thus, the Court declines to impose such a sanction.

II.     **Privilege Assertions**

    a.   ***Legal Standards***

        i.   ***Attorney-Client Privilege***

The attorney-client privilege protects communications between client and counsel made for the purpose of obtaining or providing legal advice that were intended to be and in fact kept confidential.  *In re County of Erie*, 473 F.3d 413, 418-419 (2d Cir. 2007); *United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996).  As the U.S. Supreme Court explained in *Upjohn Co. v. United States*, the privilege encourages full and frank communications between a client and counsel, which in turn promotes an understanding of and compliance with the law and the administration of justice.  449 U.S. 383, 389 (1981).  The privilege is narrowly construed, however, because it renders relevant information undiscoverable.  *Fisher v. United States*, 425 U.S. 391, 403 (1976); *In re County of Erie*, 473 F.3d at 418.

It is not just communications that are subject to the privilege.  Internal investigation notes and documents also may be privileged.  Because the "first step in the resolution of any legal problem is ascertaining the factual background and sifting through the facts with an eye to the legally relevant," *Upjohn Co.,* 449 U.S. at 390-91, factual investigations conducted or directed by an attorney fall within the attorney-client rubric.  *Id.* at 391 (employee factual responses to questionnaires from counsel in connection with internal investigation to provide legal advice protected by attorney-client privilege); *Gucci Am., Inc. v. Guess?, Inc.,* 271 F.R.D. 58, 71 (S.D.N.Y. 2010) (citations omitted) (collecting cases).

Courts also have applied the privilege to communications among non-lawyer employees of a corporation where the purpose of the communication was to provide information to

counsel or aid counsel in providing legal advice. *Upjohn Co*., 449 U.S. at 394; *People's United Bank v. Peoples Bank*, 2009 WL 10689492, at *2 (D. Conn. Dec. 28, 2009); *see also Cuno, Inc. v. Pall Corp.,* 121 F.R.D. 198, 203 (E.D.N.Y. 1988) (attorney-client privilege protects the giving of information from an employee to a superior for transmission to lawyer if made for the purpose of securing legal advice, requested by corporate superior, provided within the scope of the employees' corporate duties and confidentiality maintained).

ii.  ***Work Product Doctrine***

Pursuant to Rule 26(b)(3) of the Federal Rules of Civil Procedure, documents and tangible things prepared by a party or its representative in anticipation of litigation are protected under the work product doctrine. *See* Fed. R. Civ. P. 26(b)(3)(A); *Welland v. Trainer,* 2001 WL 1154666, at *2 (S.D.N.Y. Oct. 1, 2001) (if document "was prepared 'because of existing or expected litigation'" it is eligible for work product protection) (quoting *United States v. Adlman,* 134 F.3d 1194, 1202 (2d Cir. 1998)); *see also Hickman v. Taylor,* 329 U.S. 495 (1947) (establishing and articulating application of the work product doctrine). The key factor in determining applicability of this doctrine is whether the documents or things were prepared "with an eye toward" or "in anticipation of" or "because of the prospect of litigation." *Hickman*, 329 U.S. at 510-511; *Schaeffler v. United States*, 806 F.3d 34, 43 (2d Cir. 2015); *Adlman*, 134 F.3d at 1202. "[T]he doctrine is not satisfied merely by a showing that the material was prepared at the behest of a lawyer or was provided to a lawyer. Rather the materials must result from the conduct of 'investigative or analytical tasks to aid counsel in preparing for litigation.'" *In re Symbol Techs., Inc. Sec. Litig.*, 2017 WL 1233842 (E.D.N.Y. Mar. 31, 2017) (quoting *Wultz v. Bank of China Ltd.,* 304 F.R.D. 384, 393-94 (S.D.N.Y. 2015)). Thus, a

court must determine if the materials would have been prepared in essentially similar form irrespective of the litigation. *Id.*, at \*8 (citing *Adlman*, 134 F.3d at 1202); *Clarke v. J.P. Morgan Chase & Co.*, 2009 WL 970940, at \*7 (S.D.N.Y. Apr. 10, 2009). But, unlike the rule for invoking attorney-client privilege, the predominant purpose of the work product need not be to assist with litigation to be protected; rather, the work product need only have been prepared or obtained because of the prospect of litigation. *Adlman*, 134 F.3d at 1202; *In re Symbol Techs., Inc. Sec. Litig.*, 2017 WL 1233842, at \*8.

Work product comes in two forms. Opinion work product consists of the mental impressions, conclusions, opinions and legal theories of an attorney or other representative of a party and is given heightened protection. Fact work product consists of factual material, including the results of a factual investigation. This latter type of work product is subject to disclosure upon a showing of substantial need and an inability to obtain the equivalent without undue hardship. *Upjohn Co.*, 449 U.S. at 400; *Hickman*, 329 U.S. at 511; *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183-84 (2d Cir. 2007); *Adlman*, 134 F.3d at 1204.

Courts in the Second Circuit have held that "[a] substantial need exists 'where the information sought is "essential" to the party's defense, is "crucial" to the determination of whether the defendant could be held liable for the acts alleged, or carries great probative value on contested issues.'" *Gucci Am.*, 271 F.R.D. at 74–75 (quoting *Nat'l Cong. for Puerto Rican Rights v. City of New York*, 194 F.R.D. 105, 110 (S.D.N.Y. 2000)). The documents must "have a unique value apart from those already in the movant's possession." *FTC v. Boehringer Ingelheim Pharm., Inc.*, 778 F.3d 142, 155–56 (D.C. Cir. 2015). Disclosure is warranted only when the moving party makes a strong showing of the relevance and importance of the fact

work product and that "it is likely to be significantly more difficult, time-consuming or expensive to obtain the information from another source." *In re Aggrenox Antitrust Litig.*, 2017 WL 5885664 (D. Conn. Nov. 29, 2017) (internal citations omitted).

### b. *Exceptions to Privilege and Work Product Protection*

Courts recognize several exceptions to privilege and work product protection which Plaintiffs say apply here.  First, a party may waive privilege or work product protection by voluntarily disclosing otherwise protected information to a third party or injecting protected material into a litigation.  The party asserting privilege has the burden of establishing that there has been no waiver.  *Egiazaryan v. Zalmayev*, 290 F.R.D. 421, 427 (S.D.N.Y. 2013).  Second, courts will not recognize the attorney-client privilege or work product protection if doing so would serve to hide a crime under the so-called crime-fraud exception.  The burden of demonstrating applicability of the crime-fraud exception falls on the party seeking disclosure. *In re Richard Roe, Inc.*, 68 F.3d 38, 40 (2d Cir. 1995).  Plaintiff argues that these exceptions apply here and are discussed in further detail below.

### c. *Waiver*

#### i. *Circumstances Giving Rise to Waiver*

Slightly different rules govern waiver of attorney-client privilege and work product protection.  In the case of the attorney-client privilege, "if the holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the matter or communication over which the privilege is claimed," the privilege is waived.  *Fullerton v. Prudential Ins. Co.*, 194 F.R.D. 100, 102 (S.D.N.Y. 2000) (quoting *United States v. Int'l Bhd. of Teamsters,* 961 F. Supp. 665, 673 (S.D.N.Y. 1997)).

However, unlike the attorney-client privilege, work product protection is not waived merely because the material is disclosed to a third party.  *See, e.g., Adlman,* 134 F.3d at 1200 n. 4 (work product may be shown to others "simply because there [is] some good reason to show it" without waiving the protection).  Protection is waived only when work product is disclosed to a third party in a manner that is inconsistent with the purpose of the protection.  *See In re Steinhardt Partners, L.P.*, 9 F.3d at 235; *In re Symbol Techs., Inc. Sec. Litig.*, 2017 WL 1233842, at *9 (disclosure that substantially increases the opportunities for potential adversaries to obtain the information results in a waiver of work product protection); *In re Visa Check/MasterMoney Antitrust Litig.,* 190 F.R.D. at 314 (purpose of work product doctrine is "to keep counsel's work from his opponent in the litigation so that it will not be used against him").

There are other ways attorney-client privilege and work product protection can be waived.  A party cannot assert reliance on counsel as a defense or selectively proffering protected information in litigation without waiving privilege.  Fairness requires waiver in these circumstances so a party's adversary and fully explore the validity of the defense of advice of counsel and prepare cross examination.  *In re County of Erie*, 546 F.3d 222, 228-29 (2d Cir. 2008); *In re Grand Jury Proceedings*, 219 F.3d 175, 191 (2d Cir. 2000); *In re Lehman Bros. Holdings, Inc*., 2011 WL 2651812, at *2 (S.D.N.Y. June 22, 2011).

### ii.  *Scope of Waiver*

When a waiver of attorney-client privilege or work product protection has occurred, the court then must address the scope of the waiver.  The scope of waiver of attorney-client privilege is determined based on the "fairness doctrine."  *In re von Bulow,* 828 F.2d 94, 101 (2d Cir. 1987).  The doctrine is designed "to prevent prejudice to a party and distortion of the

judicial process that may be caused by the privilege-holder's selective disclosure during

litigation of otherwise privileged information."  *Id.; see United States v. Bilzerian*, 926 F.2d 1285,

1292 (2d Cir. 1991) ("[T]he attorney-client privilege cannot at once be used as a shield and a

sword.  A defendant may not use the privilege to prejudice his opponent's case or to disclose

some selected communications for self-serving purposes.") (citations omitted).  When there has

been a selective disclosure of attorney-client communications in the litigation, courts typically

find the party has waived privilege as to all documents pertaining to the subject disclosed.  *In re*

*Symbol Techs., Inc. Sec. Litig.*, 2017 WL 1233842, at *16-18 (ordering disclosure of nine

memoranda on confidential witnesses' statements because five other memoranda were

disclosed for withholding party's strategic benefit) (citations omitted); *Tribune Co. v.*

*Purcigliotti*, 1997 WL 10924, at *5 (S.D.N.Y. Jan. 10, 1997), *modified*, 1998 WL 175933 (S.D.N.Y.

Apr. 14, 1998) ("[W]here there is partial disclosure in the context of the litigation for the benefit

of the privilege holder, there may be a complete subject matter waiver as to all

communications on the subject.").

      When a privileged communication is disclosed outside of a litigation or extrajudicially,

the scope of the waiver typically is limited to those matters actually revealed.  *In re Grand Jury*

*Proceedings*, 219 F.3d at 186-187; *In re von Bulow,* 828 F.2d at 103.  Thus, in *von Bulow*, where

privileged communications were revealed to the public in a book and not in a litigation, the

court found waiver only with respect to the particular communications or portions of

communications disclosed.  828 F.2d at 101-03.

In all cases, courts must evaluate the factual circumstances of a disclosure to determine whether the disclosing party waived privilege or work product protection and the extent or scope of any waiver.

### iii.  Crime-Fraud Exception

Another exception to protection is the so-called crime-fraud exception. Communications "in furtherance of contemplated or ongoing criminal or fraudulent conduct" fall under the exception.  *In re Richard Roe, Inc.*, 68 F.3d at 40.  The party seeking disclosure of protected information via the crime-fraud exception has the burden of demonstrating that there is probable cause to believe that (1) a crime or fraud has been attempted or committed; and (2) the privileged communications and work product were in furtherance thereof.  *Id.* There must be "substantial reason to believe that the party resisting disclosure engaged in or attempted to commit a fraud and used communications with its attorney to do so."  *In re Omnicom Group, Inc. Sec. Litig.*, 2007 WL 2376170, at *11 (S.D.N.Y. Aug. 10, 2007); *see also United States v. Zolin*, 491 U.S. 554, 572 (1989); *Amusement Indus., Inc. v. Stern*, 293 F.R.D. 420, 426-27 (S.D.N.Y. 2013).  This standard, while "fairly robust," does not require proof by a preponderance of the evidence.  *In re Omnicom Group, Inc. Sec. Litig.*, 2007 WL 2376170, at *11.  Rather, it requires that the court be "persuaded of at least a substantial possibility of . . . fraud."  *Id.*, at *11 n.13.

Plaintiff argues that the crime-fraud exception applies because Defendants have produced explosive evidence confirming the retaliatory motivations for Defendants lawsuit. (ECF No. 131 at p. 19.)  Specifically, Plaintiff alleges that text messages produced by Defendants reveal that once Defendants learned that Plaintiff was threatening legal action, Defendants

sued to strike first, humiliate, and ruin Plaintiff.  *Id*.  Plaintiff cites to *United States v. Ceglia*, to support her argument that the very act of litigating this case is fraud.

The Court disagrees with Plaintiff.  The facts in *Ceglia* do not even remotely resemble those before the Court and that action was a criminal case.  Additionally, after reviewing Plaintiff's selection of 25 documents *in camera*, as well as text messages supposedly supporting the claim of fraud, nothing in them persuades this Court that there is a substantial possibility that a fraud was committed or that Defendants used the communications with counsel to commit a crime or fraud.   *See Sparrow Fund Mgmt. LP v. MiMedx Grp., Inc.*, 2021 WL 1930294, at *7 (S.D.N.Y. May 13, 2021) (The Court noted that the "major flaw in Sparrow's argument [that the crime-fraud exception applied] is that it has no factual support for the contention that the privileged communications at issue furthered a crime, fraud, or intentional tort that undermines the adversarial system."); see also  *In re Richard Roe, Inc.*, 68 F.3d at 40; *Amusement Indus., Inc. v. Stern*, 293 F.R.D. at 426-27; *In re Omnicom Group, Inc. Sec. Litig.*, 2007 WL 2376170, at *11.  Therefore, the crime-fraud exception does not apply to any of the documents, and the Court will not further address this exception in the Analysis section below.

<u>ANALYSIS</u>

III.     ***The In Camera Documents***

The Court next addresses the documents submitted for in camera review under the Court-assigned categories.

a. ***Documents concerning the State Court Action***

Seven of the *in camera* documents relate to the State Court Action.  Documents identified as REV 00062940 and REV 00069252 concern the draft complaint.  Canal employees

16

Gillian Spear ("Ms. Spear") and Sabrina Weeks-Brittan ("Ms. Weeks-Brittan") provided

comments, edits, and corrections regarding the draft complaint back to the attorney for Canal,

Mr. Tom Harvey ("Mr. Harvey").  Drafts of what became the operative complaint for the State

Action and/ or the Demand Letter sent to Plaintiff for return of property, as well as

communications involving then-current Canal personnel discussing those drafts are properly

withheld as attorney work product and/or privileged communications.  See *Au New Haven, LLC

v. YKK Corp.,* 2016 WL 6820383, at *6 (S.D.N.Y. Nov. 18, 2016) (holding that "communications"

involving a discuss[ion of] a draft of the complaint and various issues related thereto . . . clearly

constitute communications from attorney to client that contains legal advice and are thus

privileged."); *BNP Paribas v. B. of N.Y. Trust Co., N.A.,* 2013 WL 2434686, at *8 (S.D.N.Y. Jun. 5,

2013) ("Drafts of the Amended Complaint need not be produced because, as drafts, they are

work product").  However, a cover note sharing a draft complaint without any commentary and

that is a mere transmittal is not protected.  Thus, REV 00063035 must be produced.[3]

Similarly, regarding documents REV 00050335 and REV 00050353, the Court finds that

these documents are appropriately withheld and are privileged.  These documents are from the

same email chain that contain communications between attorneys that reveals mental

impressions, assessment and strategies of Canal's outside and general legal counsel.  Also, they

were generated solely in anticipation of Canal filing the State Court action against Plaintiff.

These emails contain comments regarding aspects of the claims asserted in the State Action

and assessment of the then-existing draft Complaint.

---

[3] As an aside, the parties could have agreed not to produce or log such cover notes because they do not contain information relevant to the underlying claims.

Additionally, a document with "no control number assigned" (but identified in Defendants privilege log as document #26), is appropriately marked privileged and work product.  This communication is between two attorneys in this case, Laurent S. Drogin ("Mr. Drogin") and Mr. Harvey discussing legal options and strategy relating to the State Action.

Finally, the Court does not find that there is enough information to support withholding TXT 0000008401 from production.  The text message merely identifies information (specifically, a website link) on Plaintiff.  The exchange neither conveys nor seeks legal advice and does not reflect any attorney mental impressions.  Further, it is unclear what the purpose of the exchange is.  In sum, Defendants fail to meet their burden that this document is protected from disclosure.

        **b.   *Documents Concerning the Federal Court Action***

There are four documents that relate to the federal court action.  Document REV 00055207 explains that the firm sought insurance coverage for analysis in the Federal Court action.  The email attached the executed retainer agreement for Canal productions.  The email identified a communication between a paralegal at Saxe Doernberger & Vita, P.C. and attorney for Canal Productions, Mr. Harvey.  Importantly, the substance of this email does not contain any information requesting, providing, or seeking legal advice.  Additionally, the paralegal at Saxe Doernberger & Vita P.C. is not Mr. Harvey's client.  Nothing in this email is privileged.  As to the retainer agreement, which appears to be attached to the email but was not produced for *in camera* review, the Second Circuit has consistently held that "in the absence of special circumstances client identity and fee arrangements do not fall within the attorney-client privilege because they are not the kinds of disclosures that would not have been made absent

the privilege and their disclosure does not incapacitate the attorney from rendering legal advice." *Vingelli v. United States,* 992 F.2d 449, 452 (2d Cir. 1993), *citing In re Grand Jury Subpoena Served Upon Doe,* 781 F.2d 238, 247 (2d Cir.) (en banc), *cert. denied,* 475 U.S. 1108 (1986); *In re Shargel,* 742 F.2d 61, 62 (2d Cir. 1984).  The defendants have identified no special circumstances here.  The identity of their client is not a secret.  Nor have they cited anything of a confidential nature that might be revealed by production of the retainer agreement.  Accordingly, this document should be produced.

Regarding REV 00032616, this email appears to be a draft letter that was prepared by counsel to be sent to the New York Times.  The email reveals that this draft email was sent to a Canal employee, Ms. Spear, for review and comment.  As noted above, discussions between client and attorney about draft documents relevant to a lawsuit constitute an attorney-client communication so long as the draft and communications concerning it were intended to be and maintained as confidential.  *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d 1032, 1037 (2d Cir. 1984); *SEC v. Beacon Hill Asset Mgmt. LLC*, 231 F.R.D. 134, 145 (S.D.N.Y. 2004); *Softview Computer Prod. Corp. v. Haworth, Inc.*, 2000 WL 351411, at *15 (S.D.N.Y. Mar. 31, 2000); *Sequa Corp. v. Gelmin*, 1994 WL 538124, at *3 (S.D.N.Y. Oct. 3, 1994).  Here, the draft has been maintained as confidential.  Thus, it is privileged. The final letter sent to the newspaper is not privileged, however.

The following documents – identified as REV 00069550 and TXT 0000008400 – contain communications between Canal employee Ms. Weeks-Brittan and attorney Mr. Harvey.  In both documents, Ms. Weeks-Brittan is providing a recommendation for a lawyer for this case.  Nothing about this communication suggests it should be kept confidential as it was not for the

purpose of obtaining or providing legal advice.  The purpose of these communications was to propose a recommendation of a lawyer to assist with the case.  Communications about engagement of a lawyer are not privileged nor work product.[4]  Accordingly, neither of these documents is privileged and must be produced.

### c.   Documents concerning Plaintiff's Resignation/ Post-Resignation Status

Defendants provided four documents that surround Plaintiff's resignation, including her resignation letter to Mr. De Niro and conversations with lawyers that ensued thereafter.  After careful review, the Court finds that documents REV 00053893 and REV 000125432 are privileged.  They both contain an exchange of communications with legal counsel regarding proposed communications with Plaintiff following her resignation and concern a draft letter seeking input and legal advice on appropriate language.  Thus, Defendants have met their burden of demonstrating that these documents are privileged.  *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d at 1037; *Beacon Hill Asset Mgmt. LLC*, 231 F.R.D. at 145; *Softview Computer Prods. Corp. v. Haworth, Inc.*, 2000 WL 351411, at *15; *Sequa Corp. v. Gelmin*, 1994 WL 538124, at *3.

Regarding REV 000123826, which contains Plaintiffs' resignation letter that was sent from Plaintiff to Mr. De Niro, the Court finds that this document should be produced with redactions.  Once received by Mr. De Niro, Plaintiff's resignation letter was then forwarded onto legal counsel and Mr. De Niro sought legal advice on how to respond.  Thus, the top emails

---

[4] Here again, the parties could have agreed not to produce or log such communications, as they are irrelevant to the claims and defenses.

in the document are privileged.  Therefore, the document is privileged in part and should be produced in redacted form with only Plaintiff's resignation letter produced.

Document identified as TXT 0000002625 also was properly withheld as it constitutes a communication between a Canal employee and lawyer about issues pertaining to the State Action, including legal counsel's impressions.

### d.  *Documents Concerning Legal Invoices*

All the documents in this category focus on payment of legal invoices.  In the Second Circuit, time records and billing statements that are "detailed in showing services, conversations, and conferences between counsel and others" to such an extent that "to allow access to [the] material would disclose . . . trial strategy, and reveal the  . . . legal work that has been done by [the party's attorneys]" are privileged.  *DiBella v. Hopkins,* 403 F.3d 102, 120 (2d Cir. 2005), *see also Bretillot v. Burrow*, 2015 WL 5306224, at *25 (S.D.N.Y. June 30, 2015) ("[C]orrespondence . . . which also reveal[s] . . . the specific nature of the services provided, such as researching particular areas of the law, fall[s] within the privilege.")

Two documents – REV 00055526 and REV 00055858 – presented for in camera review detail legal work completed by Defendants counsel in this matter, Tarter Krinsky & Drogin LLP in the form of invoices.  While the legal invoices contain standard narratives describing the kind of work conducted, the billing attorney, the amount of time it took to complete the specific activity, the billing rate, and the total billed for each entry, the Court also finds that they are privileged because they are detailed and contain information about discovery, trial strategy, factual investigation, and the legal services rendered.

However, the Court finds that the following three documents are not privileged and should be produced – REV 00061377, REV 00063722, and REV 00063738.  In each of these documents, Ms. Gillian Spear, administrative assistant to Mr. De Niro, either forwards an email with an invoice attached from Tarter Krinsky & Drogin LLP or separately attaches the invoice (without forwarding) to Mr. De Niro ("Bob Shepherd") seeking approval of the attached invoices.  Simply put, these emails illustrate Ms. Gillian Spear seeking approval of payment for the legal invoices.  These cover notes neither request nor reveal legal advice and are not work product.[5]  The invoices attached to these cover notes were not submitted for *in camera* review, but for the reasons discussed above, would be privileged.

### e.  *Documents Concerning Defendants 'Investigation'*

Defendants denote five documents that concern their 'investigation' regarding Plaintiff's allegations.  Although it is true that a fact investigation conducted at the direction of an attorney for purposes of rendering legal advice can be protected by the attorney-client privilege, *First Chicago Int'l v. United Exch. Co.*, 125 F.R.D. 55, 56-58 (S.D.N.Y. 1989), the purpose of the fact investigation must be to aid the provision of legal advice.  However, where an investigation is raised as the support for a counterclaim, as it is here, any privilege is waived as to the factual information uncovered.   Communications with counsel about the factual information, however, would be protected.  *See Sparrow Fund Mgmt. LP v. MiMedx Grp., Inc.*, 2021 WL 1930294, at *4.  Thus, document REV 00069368, which is an email forwarding factual information to Canal's counsel with commentary is a document that should be produced in

---

[5] Again, the parties could have agreed that communications concerning legal invoices and bills do not need to be produced or logged.

redacted form.  The factual information should be produced, but the communications with counsel can be redacted.  The same is true for documents identified as REV 00069843 and REV 00069485.

In contrast, document identified as TXT 0000008207, which is a communication between Mr. Harvey and Ms. Weeks-Brittan is appropriately withheld under both the attorney client privilege and the work product privilege.  This communication reveals counsel's requests for information and reveals investigation strategy and is properly withheld as privileged and work product.

The final document for this category – REV 00057032 is marked as attorney work product.  Defendants note that this document was prepared by a retail store.  The document itself is merely an invoice that was provided to counsel related to an investigation being conducted regarding Plaintiff's purchase history during her employment with Canal.  Defendants contend that this investigation was guided by Canal's legal counsel for existing litigation, specifically the federal action.  *See* Fed. R. Civ. P. 26(b)(3)(A); *Welland v. Trainer,* 2001 WL 1154666, at *2 (S.D.N.Y. Oct. 1, 2001) (if document "was prepared 'because of existing or expected litigation" it is eligible for work product protection) (quoting *United States v. Adlman,* 134 F.3d 1194, 1202 (2d Cir. 1998)).  However, this purely factual document is not privileged and any work product is waived to the extent it was uncovered in the investigation that forms the basis for Defendants' counterclaims.

**IV.**     ***Plaintiff's Motion for Attorney's Fees and Costs***

Plaintiff also requests that if the motion is granted, Plaintiff should be awarded her fees and costs incurred in making this motion because she has tried in good faith to obtain the discovery, Defendants have no justification for their behavior, and there are no extraordinary circumstances that excuse their conduct.  Plaintiff's request for fees and costs is denied. Where, as here, a motion to compel is granted in part and denied in part, the court has discretion to apportion fees.  Fed. R. Civ. P. 37(a)(5)(C).  In this case, each party should bear its respective motion costs and fees.  *See Huminski v. Stop & Shop Supermarket Co.,* 2017 WL 2779468, at *2 (D. Conn. June 27, 2017) (declined to award attorneys' fees where motion to compel was granted in part and denied in part); *Mayo-Coleman v. Am. Sugar Holding, Inc.*, 2016 WL 7378767, at *1 (S.D.N.Y. Nov. 16, 2016) (declining to award attorneys' fees where motion to compel was only partially successful); *MASTR Adjustable Rate Mortgages Trust 2006-OA2 v. UBS, Real Estate Securities Inc.*, 2013 WL 5437354, at *2 (S.D.N.Y. Sept. 27, 2013) ("when motion is granted in part and denied in part, award of expenses is discretionary").  Accordingly, Plaintiff's request for fees is denied.

## CONCLUSION

For the reasons set forth above, Plaintiffs motion is GRANTED in part and DENIED in part.  The parties are directed to the Chart for a summary of the Court's ruling as to each of the documents submitted for *in camera* review.  Defendants shall produce the improperly withheld documents identified by March 16, 2022.

**SO ORDERED.**

Dated: March 9, 2022
   New York, New York

_____

KATHARINE H. PARKER
United States Magistrate Judge

| Document ID: | Final Determination: |
|---|---|
| REV00032616 | Properly Withheld.  ACC |
| REV00050335 | Properly Withheld.  ACC/WP |
| REV00050353 | Properly Withheld.  ACC/WP |
| REV00053893 | Properly Withheld.  ACC |
| REV00055207 | Needs to be Produced.  Cover note for signing of engagement letter is not privileged.  It neither requests or provides legal advice and is not work product. |
| REV00055526 | Properly Withheld.  ACC/WP |
| REV00125432 | Properly Withheld.  ACC/WP |
| REV00063722 | Needs to be Produced.  Cover note seeking approval for payment of legal invoice neither requests nor provides legal advice and is not work product. |
| REV00055858 | Properly Withheld.  ACC/WP |
| REV00057032 | Needs to be produced. Invoice from retailer alone is factual information uncovered during investigation that must be produced. |
| REV00061377 | Needs to be produced.  Cover note regarding payment of legal invoice neither requests nor provides legal advice and is not work product. |
| REV00062940 | Properly Withheld.  WP |
| REV00063035 | Needs to be Produced.  Cover note attaching draft complaint is not providing legal advice and not revealing work product. |
| REV00063738 | Needs to be produced but with redactions.  Cover note regarding payment of legal invoice neither requests nor provides legal advice and is not work product.  However, reference to another employee can be redacted as it is irrelevant and non-responsive. |
| REV00069368 | Needs to be Produced but with redactions.  The email is factual information obtained in connection with investigation.  The bank account numbers can be redacted.  The top emails can be redacted as WP. |

| | |
|---|---|
| REV00069550 | Needs to be Produced.  Cover email providing name of possible attorney is neither ACC nor WP. |
| REV00069252 | Properly Withheld.  WP |
| REV00069843 | Needs to be produced but with redactions.  Bottom email is factual information collected in connection with investigation.  Top email can be redacted as WP. |
| REV00069845 | Needs to be produced but with redactions.  Bottom emails are factual information collected in connection with investigation.  Top email can be redacted as WP. |
| REV00123826 | Must be produced but with redactions.  Bottom email is not privileged or work product.  Top emails are ACC. |
| TXT_0000008207 | Properly Withheld.  WP. |
| TXT_0000008400 | Needs to be Produced.  Neither seeks nor provides legal advice.  Not part of investigation. |
| TXT_0000008401 | Needs to be Produced.  Neither seeks nor provides legal advice.  Only fact information provided. |
| TXT_0000002625 | Properly withheld.  ACC. |
| Control No. Not Assigned | Properly Withheld.  ACC/WP. |