

**Sanford Heisler Sharp, LLP**
1350 Avenue of the Americas, Floor 31
New York, NY 10019
Telephone: (646) 402-5650
Fax: (646) 402-5651
www.sanfordheisler.com

*Alexandra Harwin*, Partner
Executive Chair of Discrimination and Harassment Practice Group
(646) 401-0475
aharwin@sanfordheisler.com                 New York | Washington D.C. | San Francisco | San Diego | Nashville | Baltimore

March 18, 2022

**VIA ECF**
The Honorable Katharine H. Parker
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

    Re:   *Robinson v. De Niro and Canal Productions, Inc.*, No. 1:19-cv-09156 (LJL) (KHP)

Dear Judge Parker:

On behalf of Plaintiff Graham Chase Robinson, we write in opposition to Defendants' letter motion (Dkt. No. 178) seeking a third (3rd) extension of time to complete their expert reports and a pre-motion conference seeking a forensic psychiatric expert examination of Plaintiff.

### **Defendants' Third (3rd) Extension Request Should Be Denied**

In violation of this Court's Individual Practice I(c), Defendants fail to disclose that they have already sought and received two (2) extensions of time for their expert reports. Defendants identify no new developments since their last extension request that warrant a third (3rd) extension.

Additionally, Defendants failed to act diligently with respect to expert discovery. Defendants have had months to retain and work with expert witnesses. Plaintiff disclosed the names of her experts approximately two (2) months ago on January 21, 2022. Yet, Defendants admit in their letter motion that they did not even *begin* interviewing potential experts until a month later, after receiving Plaintiff's final expert reports on February 18, 2022. Defendants had ample time in recent months to identify experts and have had years to prepare materials for their experts' review, but they failed to do so. Defendants' dilatory conduct should not be rewarded.

Finally, there is no reason why Defendants' request for a psychiatric examination requires postponing the deadline to submit their vocational and economic expert reports. A psychiatric examination has no bearing on those expert analyses; a vocational or economic expert should be able to timely produce their reports without the results of a psychiatric examination. Moreover, the "critical information" allegedly needed by Defendants' vocational expert (including Plaintiff's purported intention to seek other work while employed by Canal and the impact of media attention on her job prospects) are not proper subjects of a psychiatric evaluation.

**Defendants' Request for a Rule 35(a) Examination Should Be Denied or Limited**

Pursuant to Rule 35(a), a mental examination may not be ordered absent "an affirmative showing" that Plaintiff's mental condition is "genuinely in controversy," and also "that good cause exists" to order the examination. *Bridges v. Eastman Kodak Co.*, 850 F. Supp. 216, 221 (S.D.N.Y. 1994) (citation and internal quotation omitted). These requirements "are not mere formalities." *Winters v. Travia*, 495 F.2d 839, 840-41 (2d Cir. 1974) (citing *Schlagenhauf v. Holder*, 379 U.S. 104, 118 (1964)). Indeed, Rule 35 requires "discriminating application." *Jarrar v. Harris*, 2008 WL 2946000, at *3 (E.D.N.Y. July 25, 2008) (citing *Schlagenhauf*, 379 U.S. at 118).

Critically, even if good cause is shown under Rule 35(a), "it is still within the court's discretion to determine whether to order an examination." *Curtis v. Express, Inc.*, 868 F. Supp. 467, 468 (N.D.N.Y. 1994). Here, Defendants' request for a forensic psychiatric examination should be denied, either for lack of good cause or through the exercise of the Court's discretion.

First, Defendants' request is untimely. If Defendants wanted a forensic examination of Plaintiff, they could and should have raised the issue long ago. Instead, this was a mere afterthought. Defendants did not present their request for a forensic psychiatric examination until just over two (2) weeks before their (already-extended) deadline for their psychiatric expert report. A forensic examination would now impose an undue burden, when the parties are rushing to finish fact depositions, with five (5) fact witnesses to be examined in the next three (3) weeks.

Second, Defendants' request is procedurally improper. Once again, Defendants have disregarded the Court's requirement that "[a]ny party wishing to raise a discovery dispute with the Court must first confer in good faith with the opposing party, in person or by telephone, in an effort to resolve the dispute." Individual Practice II(c). Rather than conferring as required, Defendants disregarded Plaintiff's offer to confer and rushed to file their motion less than twenty-four (24) hours after they first emailed Plaintiff a description of their request for a forensic psychiatric examination. Defendants' request should be denied on these procedural grounds alone.

Third, Rule 35(a) examinations are uncommon and disfavored in employment cases such as this one. As courts have recognized, "lax application" of the Rule 35 requirements in discrimination cases could "easily dissuade employees from bringing suit in the first place." *Winstead v. Lafayette Cty. Bd. of Cty. Commissioners*, 315 F.R.D. 612, 614 (N.D. Fla. 2016). After all, "[i]f the price of even having the opportunity to vindicate one's rights under [anti-discrimination laws] in court necessarily included a . . . forced psychological examination, many plaintiffs with viable cases might decline to pursue their claims." *Id.*; *see also Robinson v. Jacksonville Shipyards, Inc.*, 118 F.R.D. 525, 531 (M.D. Fla. 1988) (rejecting a mental examination request when doing so would endorse examinations in all cases involving discrimination claims, thereby dissuading employees from reporting claims). Accordingly, it is standard in employment cases for defendants to retain psychiatric experts who opine about a plaintiff's psychiatric state based on the written record and testimony in the case, without requiring a personal examination of the plaintiff.

Fourth, Defendants cannot establish "good cause" for a mental examination given the extensive medical information that they already have about Plaintiff. *See, e.g.*, *Jarrar*, 2008 WL 2946000, at *3 (explaining that "good cause" depends in part on a movant's "ability to obtain the information it seeks by other means"). Unlike in a typical employment case where a plaintiff is deposed for seven (7) hours, Plaintiff has already been deposed for twelve (12) hours, including answering ample questions about her mental and physical state. In addition, Defendants obtained complete medical records from Plaintiff's health care providers concerning her physical and mental health. *See, e.g.*, *Winstead*, 315 F.R.D. at 616 (emphasizing that medical records "offer[] a less intrusive means of obtaining similar (if not the same) information" as a mental examination and denying the examination request because the defendant could, "through other discovery tools, gather adequate information to call into question [the plaintiff's] claims of ongoing emotional injury"). Finally, Defendants made the choice not to avail themselves of other, less burdensome means of eliciting information, such as deposing Plaintiff's doctors during fact discovery.

Finally, the examination that Defendants are seeking is particularly burdensome. Defendants informed Plaintiff that the forensic examination they seek would last up to *eight (8) hours*. When added to the twelve (12) hours of deposition testimony that Plaintiff has already given, this amounts to *twenty (20) hours of adversarial questioning*. Defendants present no authority for a plaintiff in an employment case being subjected to anything remotely close to this.

In sum, even assuming *arguendo* that "good cause" exists, the Court should exercise its discretion and deny a Rule 35 examination, in light of the nature of Plaintiff's claims, Defendants' dilatory conduct and willful refusal to abide by the Court's rules, Defendants' extensive access to Plaintiff's medical information, and the expansive nature of Defendants' request. *See Winstead*, 315 F.R.D. at 617 (warning of "a distinct danger" that Rule 35 may be used as an improper and harassing "retaliatory measure," and recognizing that "that danger counsels in favor of granting Rule 35 motions sparingly given the policies underlying" anti-discrimination statutes).

Alternatively, at the very least, the Court should limit any Rule 35 examination to no more than two (2) hours. Rule 35 "permits the court to include in its order such protective conditions as are deemed appropriate" and is guided by Rule 26(c), which allows a court to protect a party from oppression or undue burden. *See Hirschheimer v. Associated Metals & Mins. Corp.*, No. 94 CIV. 6155(JKF), 1995 WL 736901 (S.D.N.Y. Dec. 12, 1995); *see also id.* (limiting the duration of a Rule 35 examination "especially" because the expert was able to review the plaintiff's deposition testimony); *Edson v. Liberty Mut. Ins. Co.*, 2002 WL 31946902, at *2 (N.D. Cal. Oct. 4, 2002) (limiting Rule 35 mental examination to no more than two (2) hours).

\*     \*     \*

In sum, the Court should deny Defendants' request for a third (3rd) adjournment of their expert report deadlines and deny Defendants' request for a Rule 35(a) psychiatric examination, or in the alternative, limit any Rule 35(a) psychiatric examination to no more than two (2) hours.

Hon. Katharine H. Parker
March 18, 2022
Page 4 of 4

                                                                     Respectfully submitted,

                                                                     Alexandra Harwin