**TRAUB LIEBERMAN STRAYS & SHRESBURY LLP**
*Attorneys for Defendants Robert De Niro and Canal Productions Inc.*
Gregory Ross Bennett
7 Skyline Drive
Hawthorne, New York 10532
Tel.: (914) 347-8898
Email: gbennett@tsslaw.com

**TARTER KRINSKY & DROGIN LLP**
*Attorneys for Defendant Canal Productions, Inc.*
Laurent S. Drogin
Brittany K. Lazzaro
1350 Broadway, 11th Fl.
New York, New York 10018
Telephone: 212-216-8000
Email: ldrogin@tarterkrinsky.com
Email: blazzaro@tarterkrinsky.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GRAHAM CHASE ROBINSON,<br><br>     *Plaintiff*,<br><br>- against -<br><br>ROBERT DE NIRO and<br>CANAL PRODUCTIONS, INC.,<br><br>     *Defendants*. | Case No. 1:19-cv-09156-LJL-KHP |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO CONDUCT A MENTAL EXAMINATION OF PLAINTIFF**

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ............................................ 2

   I.    PLAINTIFF HAS PLACED HER MENTAL CONDITION IN CONTROVERSY ......... 2

ARGUMENT .................................................................................................................................. 4

   I.    DEFENDANTS ARE ENTITLED TO CONDUCT THE MENTAL EXAMINATION .. 4

        A.   Plaintiff Placed Her Mental Condition in Controversy, and
            Defendants Have Demonstrated Good Cause .................................................................. 4

        B.   The Requested Examination is Critical for Defendants to
            Meaningfully Rebut Dr. Goldstein's Opinions ............................................................ 7

        C.   Dr. Resnick Should Be Afforded Adequate Time in Order to
            Conduct the Examination ................................................................................................ 9

        D.   Plaintiff's Claim of Undue Burden Rings Hollow ......................................................... 10

   II.   DEFENDANTS HAVE DEMONSTRATED GOOD CAUSE TO EXTEND
        THE SCHEDULING ORDER SO AS TO ALLOW THE REQUESTED
        EXAMINATION AND FOR THE PARTIES TO COMPLETE EXPERT
        DISCOVERY ................................................................................................................ 11

CONCLUSION ............................................................................................................................. 13

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Abdulwali v. Washington Metro Area Transit Auth.*,
 193 F.R.D. 10 (D.D.C. 2000)......................................................................................................10

*Bender v. Del Valle*,
 No. 05-cv-6459, 2007 WL 528694 (S.D.N.Y. Feb. 20, 2007) ....................................................5

*Cauley v. Ingram Micro, Inc.*,
 216 F.R.D. 241 (W.D.N.Y. 2003).................................................................................................6

*Duncan v. Upjohn*,
 155 F.R.D. 23 (D. Conn. 1994).....................................................................................................9

*E.E.O.C. v. Grief Bros. Corp.*,
 218 F.R.D. 59 (W.D.N.Y. 2003).................................................................................................6

*Ebo v. N.Y. Methodist Hosp.*,
 No. 12-cv-4432, 2015 WL 4078550 (E.D.N.Y. Jul. 6, 2015)......................................................5

*Guzman v. News Corp.*,
 No. 09-cv-9323, 2012 WL 2148166 (S.D.N.Y. Jun. 13, 2012)...................................................6

*Jarrar v. Harris*,
 No. cv-07-3299, 2008 WL 2946000 (E.D.N.Y. Jul. 25, 2008)....................................................6

*Large v. Our Lady of Mercy Med. Ctr.*,
 No. 94-cv-5986, 1998 WL 65995 (S.D.N.Y. Feb. 17, 1998) ......................................................6

*Malone v. Med. Inn Centers of Am., LLC*,
 No. 00-cv-0720E, 2004 WL 1080155 (W.D.N.Y. Apr. 20, 2004) ..............................................9

*In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.*,
 528 F. Supp. 2d 303 (S.D.N.Y. 2007).........................................................................................5

*Mohammed v. Marriott Int'l, Inc.*,
 No. 94-cv-2336, 1996 WL 103838 (S.D.N.Y. 1996) ................................................................11

*Convolve, Inc. v. Compaq Comput. Corp.*,
 643 F. Supp. 2d 336 (S.D.N.Y. 2008).......................................................................................12

*Ornelas v. S. Tire Mart, LLC*,
 292 F.R.D. 388 (S.D. Tex. 2013).................................................................................................9

*Parnass v. British Airways PLC*,
　No. 19-CV-4555, 2020 WL 3073251 (S.D.N.Y. Jun. 9, 2020) .................................................7

*Rance v. Jefferson Village Condo. No. 5*,
　No. 18-cv-6923, 2019 WL 12373336 (S.D.N.Y. Sep. 23, 2019) .............................................9

*Ren v. Phoenix Satellite Television (US), Inc.*,
　309 F.R.D. 34 (D.D.C. 2015)..................................................................................................10

*Grochowski v. Phoenix Constr.*,
　318 F.3d 80 (2d Cir. 2003)......................................................................................................11

*Schlagenhauf v. Holder*,
　379 U.S. 104 (1964).................................................................................................................5

*Stoner v. NYC Ballet Co.*,
　No. 99-cv-0196, 2002 WL 31875404 (S.D.N.Y. Dec. 24, 2002) ........................................7, 10

**Statutes and Other Authorities**

Federal Rule of Civil Procedure 16 ................................................................................................11

Federal Rule of Civil Procedure 35 ......................................................................................... *passim*

Federal Rule of Civil Procedure 26(c)...........................................................................................10

## **PRELIMINARY STATEMENT**

Pursuant to Fed. R. Civ. P. 35 and the Court's March 22 Order (ECF #183), Defendants Robert De Niro and Canal Productions, Inc. ("Canal") (collectively, "Defendants") move for an Order permitting their expert psychiatric witness to conduct a mental examination of plaintiff Chase Robinson ("Plaintiff"), and to grant such other relief as the Court may deem appropriate.[1]

In her Complaint, Plaintiff seeks $12 million in damages based on the "humiliation, embarrassment, reputational harm, emotional and physical distress, mental anguish and other . . . non-economic damages" she claims to have suffered and continues to suffer to date. ECF #1, Complaint ("Compl."), ¶¶ 58, 70, 96, 104. During the initial conference before this Court on January 30, 2020, her counsel indicated that psychological experts "may be used as well." ECF #18, Tr. at 8:17-18. In her Amended Rule 26(A)(1) Initial Disclosures, served on December 16, 2021, Plaintiff identified four (4) medical doctors she claimed had knowledge regarding her emotional harm. And on January 21, 2022, Plaintiff disclosed three (3) experts, including a psychiatric expert witness who examined her and later served a 38-page report on February 18, 2022 setting forth an opinion about her mental state and its causes.

Plaintiff now resists having to submit for an examination by the expert psychiatric witness retained by Defendants. Denying Defendants that opportunity would unnecessarily and improperly deprive them of the ability to refute what Plaintiff contends is a major component of her case.

There is no rational way to dispute that Plaintiff has placed her emotional state squarely at issue. Given the factual and procedural circumstances here and the absence of prejudice, good cause exists to reopen discovery for the limited purpose of compelling Plaintiff to appear for an examination by Defendants' expert witness, and to provide that witness sufficient time to prepare

---

[1] All dates are 2022 except when indicated otherwise.

her own rebuttal report.

**RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

**I.      PLAINTIFF HAS PLACED HER MENTAL CONDITION IN CONTROVERSY**

In her Complaint, Plaintiff alleges that "[a]s a result of Defendants' unlawful conduct, Plaintiff has suffered and *will continue to suffer* harm, including, but not limited to[,] … humiliation, embarrassment, reputational harm, emotional and physical distress, mental anguish and other … non-economic damages." ECF #1, Compl., ¶ 104 (emphasis added). In part, Plaintiff claims she suffered damages because of the lawsuit Canal commenced against her in August 2019, which allegedly resulted in "devastating" Plaintiff by destroying her career and reputation. *Id.*, ¶ 11. She seeks more than $12 million, in part, for "compensatory damages." *Id.*, p. 19, Part VIII(A).

Notwithstanding these allegations, Plaintiff's counsel objected to numerous discovery requests based on the psychotherapist- and physician-patient privilege. Only after having to prepare and send a deficiency letter did they relent and provide the authorizations. *See* Declaration of Gregory Bennett ("Bennett Decl."), Ex. A, Letter, dated April 20, 2020, at pp. 3-4.

On December 16, 2021, Plaintiff served her Amended Initial Disclosures. *See* Bennett Decl., Ex B. Plaintiff identified four (4) medical doctors as witnesses, all of whom Plaintiff claims have knowledge relating to her "damages." *See id.* at pp. 3-4. Plaintiff went on to disclose that she "seeks compensatory damages in an amount to be determined by the jury," which is to include "compensation for the significant emotional distress and reputational harm that Plaintiff has suffered as a result of Defendants' unlawful conduct." *Id.* at p. 6.

On January 21 Plaintiff advised that she was disclosing three (3) expert witnesses. *See* Bennett Decl., Ex. C. Among them was "Robert Lloyd Goldstein, M.D., J.D." Other than his address and telephone number, no further information was provided. *Id.*

2

At 5:57 p.m. on Friday, February 18, Plaintiff served Dr. Goldstein's 38-page report. *See* Bennett Decl., Ex. D, Email, dated February 18; Goldstein Report, dated February 17 (annexed to the Bennett Decl. as Exhibit "E"). According to the Report, Dr. Goldstein conducted a "psychiatric examination of [Plaintiff] … on January 25, 2022." *See* Bennett Decl., Ex. E, at p. 1. His February 17 Report was dated twenty-three (23) days after the date he examined Plaintiff.

The Court should note that the three (3) expert reports were served after the close of business on the Friday before the Presidents Day long weekend.

Upon receipt, Defendants' counsel reviewed the three reports and assessed whether to retain their own expert witnesses. Four business days later, on February 25, 2022, Defendants sought a two-week extension from the Court relating to their disclosure of rebuttal experts and service of expert reports (ECF #168). The Court extended Plaintiff's deadline to disclose affirmative expert reports to February 18 (ECF #154) but did not correspondingly extend the date for Defendants' disclosure of expert witnesses or their rebuttal reports. Defendants sought and obtained their own extension to account for the one granted to Plaintiff (ECF #169).

On March 9, Defendants asked for dates on which Plaintiff was available to meet with Defendants' psychiatric expert witness. *See* Bennett Decl., Ex. F, Email, dated March 9, 2022 ("In connection with the interview of plaintiff mentioned above, please advise of any dates when plaintiff isn't available between now and March 25. Once we have selected dates, defendants will serve a formal notice.").

Anticipating cooperation from Plaintiff's counsel regarding dates of Plaintiff's availability, on March 10 Defendants sought an extension of time to serve their psychiatric expert rebuttal report, up to April 1 (ECF #173), which was subsequently granted (ECF #174). Plaintiff's counsel explained their position on the requested extension of time but offered no dates for Plaintiff to be

3

examined. *See* Bennett Decl., Ex. G, Email, dated March 10, 2022.

On three occasions between March 10 and 12, Defendants' counsel followed-up, seeking a date for Plaintiff's examination. *See* Bennett Decl., Exs. H-I. The requests were ignored. After five requests, instead of providing dates, Ms. Robinson's counsel requested details about the examination. *See* Bennett Decl., Ex. J. Defendants provided the requested information.

On March 16, Defendants sought a pre-motion conference to address this anticipated motion, as well as an extension of time for submission of reports from their vocational rehabilitation and economic damages experts (ECF #178). With respect to the latter, Defendants expressly noted that "[o]n March 9, Defendants' counsel asked for dates Plaintiff was available for a psychiatric examination with our expert witness. To date, Plaintiff's counsel has offered none. Given the Court's April 1 deadline and the schedule of Defendants' counsel and their expert witness, they wish to obtain dates for this examination as soon as possible." *Id.*, at p. 2.

On March 18, Plaintiff's counsel notified the Court, and for the first time Defendants, that they opposed Defendants' requested examination (ECF #180).

## ARGUMENT

**I.  DEFENDANTS ARE ENTITLED TO CONDUCT THE MENTAL EXAMINATION**

### A. Plaintiff Placed Her Mental Condition in Controversy, and Defendants Have Demonstrated Good Cause

Pursuant to Fed. R. Civ. P. 35(a), "[w]hen the mental or physical condition … of a party … is in controversy, the court in which the action is pending may order the party to submit to a … mental examination by a physician…. The order may be made only on a motion for good cause shown…." Upon such a showing, the court may enter an order specifying the "time, place, manner, conditions, and scope of [the requested mental] examination, as well as the person or persons who

will perform it." *Id*.

The key predicates for application of this rule—which are typically intertwined—are whether a plaintiff has put her mental condition "in controversy" and whether the moving party has shown "good cause" for the examination. *See, e.g.*, *Schlagenhauf v. Holder,* 379 U.S. 104, 118 (1964). According to the Supreme Court, a moving party must affirmatively demonstrate that "each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination." *Id.*, at 118. Both exist here.

Generally, a plaintiff who alleges damages caused directly by emotional distress has placed her mental state is "in controversy" under Fed. R. Civ. P. 35. *See, e.g.*, *Bender v. Del Valle*, No. 05-cv-6459, 2007 WL 528694, at *2 (S.D.N.Y. Feb. 20, 2007) ("if a plaintiff asserts that a defendant's actions caused a mental injury or ongoing mental illness, that plaintiff puts her mental condition *clearly in controversy*, and provides defendant with the good cause necessary for an order under Rule 35(a) allowing a mental examination") (emphasis added); *In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.*, 528 F. Supp. 2d 303, 319-20 (S.D.N.Y. 2007) ("Most cases where mental examinations have been allowed have either involved a separate tort claim for emotional distress or an allegation of *ongoing* severe mental injury") (emphasis added).

In situations where a plaintiff seeks damages arising out of alleged mental distress, courts recognize a distinction between "'garden variety' mental distress claims … and more severe mental distress claims." *Ebo v. N.Y. Methodist Hosp.*, No. 12-cv-4432, 2015 WL 4078550, at *6 (E.D.N.Y. Jul. 6, 2015).

As an aid in clarifying when a mental examination is warranted, courts have identified the following as factors in favor of permitting a defendant to conduct such an examination: "in addition to a claim of emotional distress, one or more of the following [is also present] … an allegation of

5

a specific mental or psychiatric injury or disorder … a claim of unusually severe emotional distress … plaintiff's offer of expert testimony to support a claim of emotional distress … and/or … plaintiff's concession that his or her mental condition is "in controversy" within the meaning of Rule 35(a). *Jarrar v. Harris*, No. cv-07-3299, 2008 WL 2946000, at *11-12 (E.D.N.Y. Jul. 25, 2008) (citation omitted) (alteration added) (discussing cases in employment context); *see also Cauley v. Ingram Micro, Inc.*, 216 F.R.D. 241, 244 (W.D.N.Y. 2003) (a plaintiff "alleg[ing] a claim of 'unusually severe emotional distress'" may itself constitute good cause for a Rule 35(a) examination); *Large v. Our Lady of Mercy Med. Ctr.*, No. 94-cv-5986, 1998 WL 65995, at *6 (S.D.N.Y. Feb. 17, 1998) ("There must be good cause for such an examination, which is *usually the case* where a party has placed her mental condition in controversy") (emphasis added); *Guzman v. News Corp.*, No. 09-cv-9323, 2012 WL 2148166, at *1 (S.D.N.Y. Jun. 13, 2012) ("[I]f a plaintiff asserts that a defendant's actions caused a mental injury or ongoing mental illness, that plaintiff puts her mental condition clearly in controversy, and provides defendant with the good cause necessary for … a mental examination."); *E.E.O.C. v. Grief Bros. Corp.*, 218 F.R.D. 59, 61 (W.D.N.Y. 2003) (former employee placed his mental condition in controversy, justifying a court-ordered medical examination).

Beyond any plausible question, Plaintiff has placed her mental condition in controversy. In her Complaint, Plaintiff claims she "has suffered and *will continue to suffer* harm, including, but not limited to … humiliation, embarrassment, reputational harm, emotional and physical distress, mental anguish and other … non-economic damages," as a result of Defendants' actions. ECF #1, Compl., ¶¶ 58, 70, 96, 104 (emphasis added). Moreover, Plaintiff seeks in excess of $12 million, in part, for "compensatory damages." *Id.*, ¶ 19, VIII(A). In support of those allegations, Plaintiff identifies four (4) medical doctors as witnesses in her Amended Initial Disclosures, all of whom

6

Plaintiff claims have knowledge relating to her "damages." *See* Bennett Decl., Ex. B, at pp. 3-4. In those Amended Initial Disclosures, Plaintiff asserts that she is seeking "compensatory damages," which is to include "compensation for the *significant* emotional distress and reputational harm that Plaintiff has suffered as a result of Defendants' unlawful conduct." *Id*., at 6 (emphasis added). *See also Parnass v. British Airways PLC*, No. 19-CV-4555, 2020 WL 3073251 (S.D.N.Y. Jun. 9, 2020) (granting defendant's motion for a medical examination of plaintiff where plaintiff has placed his medical condition in controversy).

Most significantly, Plaintiff has placed her mental state in controversy by relying affirmatively on the opinions of her disclosed expert psychiatric witness, Dr. Goldstein. As set forth above, Dr. Goldstein's conclusions make clear that it is Plaintiff's contention that Defendants caused her to suffer certain psychiatric injuries, which *continue* to the present. *See* Bennett Decl., Ex. E, at pp. 9-10.

Based on the foregoing, Plaintiff has unquestionably placed her mental state in controversy, and Defendants have established good cause for the requested mental examination. *See, e.g.*, *Stoner v. NYC Ballet Co.*, No. 99-cv-0196, 2002 WL 31875404, at *5 (S.D.N.Y. Dec. 24, 2002) ("In this case, we see no basis for precluding any examination of plaintiff. He has most assuredly put his emotional and psychiatric status into issue by seeking damages for serious emotional distress and proffering *Dr. Goldstein* [Plaintiff's expert witness] as a witness to testify about his alleged psychological problems") (emphasis added).

### B. The Requested Examination is Critical for Defendants to Meaningfully Rebut Dr. Goldstein's Opinions

Defendants' psychiatric expert witness, Dr. Kimberly S. Resnick, has submitted a Declaration in support of this motion. *See* Declaration of Kimberly S. Resnick, M.D. (the "Resnick Decl."), at ¶ 14. Dr. Resnick explains that the requested examination is necessary to enable her to

offer medical opinions in response to those proffered by Dr. Goldstein within a reasonable degree of medical certainty. *Id.*, at ¶ 4.

In addition, Dr. Resnick has offered the following information in compliance with Fed. R. Civ. P. 35(a)(2):

(i) the proposed examination would be conducted by videoconference at a mutually agreeable date and time (Resnick Decl., at ¶ 3);

(ii) it will be video-recorded, and will involve only Plaintiff and Dr. Resnick; (iii) the assessment would take no longer than eight (8) hours, which is customary for Dr. Resnick based on her past practice, and in particular where, as here, she does not personally know the evaluee, where the available record of medical history is somewhat limited, where it is difficult to predict the nature and complexity of the forensic issues to be addressed, where the claimed manifestations are extensive, and where factors such as individual life history and mental state of the evaluee will be difficult to predict (Resnick Decl., at ¶ 3); and

(iii) the scope of the requested examination would involve the following: Dr. Resnick intends to conduct a standard psychiatric examination that involves an assessment of Plaintiff's past and present mental health, as well as the gathering of information about the Plaintiff's prognosis (Resnick Decl., at ¶ 2).

The evaluation will be interview-based, but Dr. Resnick may perform psychological testing following any such evaluation if she determines it is necessary based on the interview (*id.*, at ¶ 2).

The interview will involve a standard psychiatric examination, including information-gathering in areas of psychiatric history, personal history (*e.g.*, developmental, familial, academic, social, and occupational functioning), and medical history, including substance use history and history of trauma (*id.*). Dr. Resnick will also conduct a standard forensic psychiatric examination,

8

including collecting information about the alleged discrimination, harassment and/or retaliation from the perspective of the Plaintiff (*id*.). Dr. Resnick will evaluate for the presence or absence of current psychiatric symptoms and for any potential impact they might be having on major life domains, including social, occupational or other important areas of functioning (*id*.). These components, in Dr. Resnick's medical opinion, are routine under the circumstances (*id*.). *See, e.g., Duncan v. Upjohn*, 155 F.R.D. 23, 25 (D. Conn. 1994) (granting defendant's motion for a psychiatric examination and noting that "one purpose in granting a request for a psychiatric examination pursuant to Rule 35 is to 'preserve the equal footing of the parties to evaluate the plaintiff's mental state....' "); *Malone v. Med. Inn Centers of Am., LLC*, No. 00-cv-0720E, 2004 WL 1080155, at *2 (W.D.N.Y. Apr. 20, 2004) (compelling plaintiff to submit to an examination).

### C. Dr. Resnick Should Be Afforded Adequate Time in Order to Conduct the Examination

In Dr. Resnick's professional judgment, up to eight (8) hours may be needed to complete the evaluation. Resnick Decl., at ¶ 3. Without any factual explanation or legal basis, Plaintiff's counsel asks the Court to limit Dr. Resnick's examination to two (2) hours. Curiously, Dr. Goldstein's Report omitted any reference to the amount of time he spent with Plaintiff. Bennett Decl., Ex. E. For all we know, he spent eight (8) hours with Plaintiff or, worse, if he spent only two (2) hours, so begins the differences of opinion between the doctors. They may not agree on the amount of time necessary to adequately assess a person claiming millions of dollars in emotional harm.

This is not a novel issue. The Court should "refuse to impose time restrictions on [this] Rule 35 examination[] for fear that an arbitrary timeline will interfere with the Rule's purpose." *Ornelas v. S. Tire Mart, LLC*, 292 F.R.D. 388, 399 (S.D. Tex. 2013). "Courts generally do not limit the amount of time an examining physician will have to conduct the examination." *Rance v.*

9

*Jefferson Village Condo. No. 5*, No. 18-cv-6923, 2019 WL 12373336, at *5 (S.D.N.Y. Sep. 23, 2019). Indeed, "[c]ourts are skeptical of requests to limit the length of an examination, particularly where the examiner (to whose expertise the court generally defers) has stated that any such limitation will impede the examination." *Ren v. Phoenix Satellite Television (US), Inc.*, 309 F.R.D. 34, 37 (D.D.C. 2015).

The Court has broad authority under Federal Rule of Civil Procedure 26(c) to limit or otherwise control discovery, including psychological examinations authorized pursuant to Rule 35. "In determining whether an examination should be permitted and on what terms, the court must determine whether good cause has been shown to justify the request." *Stoner*, 2002 WL 31875404, at *5. In *Stoner*, the court rejected plaintiff's request that the Rule 35 examination be limited to two ninety-minute sessions and permitted the examiner to conduct the examination in two four-hour sessions, in part because of the seriousness of plaintiff's allegations, and because plaintiff offered no persuasive evidence that the amount of time was unreasonable for a forensic psychiatric evaluation. *Id.*; *see also Abdulwali v. Washington Metro Area Transit Auth.*, 193 F.R.D. 10, 15 (D.D.C. 2000) (rejecting plaintiff's request that the Rule 35 examination be limited to three hours where plaintiff failed to offer any basis for the limitation and to do so would subvert the truth-finding function inherent in Rule 35 examinations).

### D. Plaintiff's Claim of Undue Burden Rings Hollow

Plaintiff's counsel insists that the requested examination should be denied because it would impose an undue burden on the Plaintiff, after she already appeared for two deposition sessions (ECF #180). The need for Plaintiff's appearance for a second day to complete her deposition was determined by the Court after briefing (ECF #181) and has no relationship whatsoever to the duration of this aspect of discovery. It would be just as irrelevant if Defendants attempted to weigh

10

this burden against the burden imposed on Plaintiff if the case proceeded to trial. These things have nothing to do with each other. And given that Plaintiff appears to remain unemployed, her counsel does not identify how this examination will present any disruption to work-related obligations. *See Mohammed v. Marriott Int'l, Inc.*, No. 94-cv-2336, 1996 WL 103838 (S.D.N.Y. 1996) (granting motion to compel expert interview pursuant to Rule 35(a) and finding good cause is shown to submit an opposing party to an independent examination in a Title VII of the Civil Rights Act case when there is a paucity of means to evaluate the party's condition).

**II.    DEFENDANTS HAVE DEMONSTRATED GOOD CAUSE TO EXTEND THE SCHEDULING ORDER SO AS TO ALLOW THE REQUESTED EXAMINATION AND FOR THE PARTIES TO COMPLETE EXPERT DISCOVERY**

Federal Rule of Civil Procedure 16 (b) governs a motion to extend deadlines contained in a scheduling order. Pursuant to Rule 16(b), once a district court enters a scheduling order, the schedule "shall not be modified except upon a showing of good cause and by leave of the district judge or, when authorized by local rule, by a magistrate judge." "A finding of good cause depends on the diligence of the moving party." *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003); *see also* Fed. R. Civ. P. 16 advisory committee's note (1983 amendment, discussion of subsection (b)) explaining that Rule 16(b) permits modifications where the court determines that "[the deadlines] cannot reasonably be met despite the diligence of the party seeking the extension").

Plaintiff argues that Defendants do not have good cause to extend the deadline for completing expert discovery because "Plaintiff disclosed the names of her experts approximately two (2) months ago on January 21, 2022. Yet, Defendants admit in their letter motion that they did not even begin interviewing potential experts until a month later, after receiving Plaintiff's final

11

expert reports on February 18, 2022." ECF #180. The argument smells of the lamp.

The 28-day passage of time does not speak to Defendants' diligence, as they had not received Dr. Goldstein's Report. When it was received after hours on the Friday of a holiday weekend, Defendants acted swiftly. The same cannot be said about the delay in Plaintiff's counsel providing dates for their client's examination, and eventual objection to having her examined at all. *See* Bennett Decl, Exs. F-I; ECF #180. Moreover, Plaintiff's counsel still did not respond even after Defendants provided the additional information Plaintiff requested concerning the anticipated examination. *See cf. Convolve, Inc. v. Compaq Comput. Corp.*, 643 F. Supp. 2d 336, 344 (S.D.N.Y. 2008) ("plaintiffs are precluded from arguing prejudice by their own failure to disclose the thesis earlier…").

In addition, as this Court is aware, there has been a significant amount of activity in this action over the past forty-five (45) days, including work associated with complying with the Court's Opinion on the privilege motion, the work associated with two of the Defendants' experts and service of their reports by March 18, and the scheduling of the final five fact witness depositions. *See* Bennett Decl., at ¶¶ 12-13.

Finally, Dr. Resnick indicates she can complete her report within twenty-five (25) days of Plaintiff's examination. Resnick Decl., at ¶ 5. Unlike Dr. Goldstein who took twenty-three (23) days, Dr. Resnick has the additional task of reviewing and assimilating Dr. Goldstein's Report and explaining where her opinion differs. As the Court is also aware, with a sanctions motion being filed this week, depositions concluding on April 8 and no trial appearing on the immediate horizon, these twenty-five (25) days will not delay any aspect of this case.

## CONCLUSION

Based on the foregoing, Defendants respectfully submit that they have demonstrated an entitlement to have their expert psychiatric witness conduct a mental examination of the Plaintiff, and for the Court to briefly extend the date for the parties to complete expert discovery, as set forth above.

| | |
|---|---|
| Dated: Hawthorne, New York<br>April 1, 2022 | Dated: New York, New York<br>April 1, 2022 |
| **TRAUB LIEBERMAN STRAUS & SHREWSBERRY LLP** | **TARTER KRINSKY & DROGIN LLP** |
| By: *Gregory R. Bennett*<br>Gregory R. Bennett<br>Mid-Westchester Executive Park<br>Seven Skyline Drive<br>Hawthorne, New York 10532<br>Tel.: (914) 347-2600<br>Email: gbennett@tsslaw.com<br>*Attorneys for Defendants Canal Productions, Inc. and Robert De Niro* | By: *Laurent S. Drogin*<br>Laurent S. Drogin<br>Brittany K. Lazzaro<br>1350 Broadway<br>New York, New York 10018<br>Tel.: (212) 216-8000<br>Email: ldrogin@tarterkrinsky.com<br>Email: blazzaro@tarterkrinsky.com<br>*Attorneys for Defendant Canal Productions, Inc.* |