

Tarter Krinsky & Drogin LLP
1350 Broadway
New York, NY 10018
T. 212.216.8000
F. 212.216.8001
www.tarterkrinsky.com

Laurent S. Drogin, Partner
Direct Dial: (212) 216-8016
ldrogin@tarterkrinsky.com

April 13, 2022

**By ECF Only**
Honorable Katharine H. Parker, U.S.M.J.
Daniel Patrick Moynihan United States Courthouse
500 Pearl St., Courtroom 17D
New York, New York 100007

> Re:   *Graham Chase Robinson v. Canal Productions, Inc. et al.*
>        **Civil Action No. 1:19-cv-9156 (LTS) (KHP) (the "Action")**

Dear Judge Parker:

We write on behalf of the Defendants in response to Plaintiff's counsel's April 11 letter (ECF #201) in which they seek a pre-motion conference to compel Mr. De Niro to sit for an additional four (4) hours of deposition testimony. This is excessive, unnecessary, and unwarranted.

Due to Mr. De Niro's personal obligations, Plaintiff's counsel agreed to depose him from 10:00 a.m. until 2:30 p.m. on April 4 and 5. Nine (9) hours was set aside for seven (7) hours of testimony. Six hours and 22 minutes of questioning took place. There were no meal breaks. Where did the other two hours and 38 minutes go? The elapsed time was low because the clock was stopped 22 times by Ms. Robinson's counsel for Mr. De Niro to review documents, 10-minutes to download a video of a person unwrapping a birthday present, some technical glitches, and several restroom breaks. The deposition ought to have been completed within this 9-hour window.

We do not object to the additional remaining 38 minutes and have proposed extending this to one full hour simply to avoid bickering. Plaintiff's counsel says additional time is desired but offers no explanation why one (1) hour is insufficient. Without such a showing or explanation, four (4) hours is random and untethered to the circumstances and needs of the case.

One hour wasted

The entire first hour of the deposition was consumed by lines of questioning such as Mr. De Niro's prior marriages, children, domestic disputes, interactions with police officers, foreign investigations, and use of alcohol. In fact, the first substantive line of questioning appears on page 83 of the transcript. Later, more time was spent exploring questions about Mr. De Niro's net worth, earnings, money in the bank, Tr. 231-241, whether he owned airplanes, boats or helicopters, Tr. 242, and statements made by his estranged wife's counsel in pending divorce proceedings. Tr. 231-232. This was a deposition, not an interview and the fact that counsel spent time exploring these topics should not operate to burden Mr. De Niro.

The Court previously cautioned the parties to "use … [deposition] time wisely and reminded [counsel] that Rule 26 limits the information that can be discovered to information that is relevant to the claims and defenses." ECF #151, at 8. When Ms. Robinson claims her counsel was unable to commence or complete certain lines of questioning, it is they who chose the topics and order. Had they been prioritized differently the topics would have been covered.

Defense counsel's conduct

      Counsel next claims defense counsel's conduct warrants additional questioning time. They raise a ruckus about several instances over the course of two days. It is much ado about nothing. Nor do they argue there was bad faith or that they were precluded from obtaining information. One cited example shows how time was wasted and proves our point. They protest an "objectionable comment" that appears on page 356 of the transcript. My comment was: "Are you going you to keep asking that question different ways until you get the answer you want?" Though pithy, it seemed a fair inquiry as it was the <u>ninth</u> <u>time</u> the question had been asked. *See* Annex 1. Stepping back, in totality, and given the nature of this litigation, these interactions do not warrant more than one (1) hour to conclude the deposition.

The deponent's conduct

      Ms. Robinson's counsel faults Mr. De Niro for "lengthy outbursts which interrupted the questioning." None are cited.

      It is true the witness was frustrated and argumentative at times. At one point he was asked if he was mad at that moment and answered in the affirmative. Tr. 52:22-25. Knowing this, in lieu of a break, counsel provoked with questions protected by the doctor-patient privilege on topics such therapy and anger management. If you see a bull is mad, maybe don't wave a red cape.

      Other questions were deliberately provocative and appeared designed to agitate him to the point where the witness himself said he felt "harassed."[1] *See, e.g.,* Tr. 62:1-3; 143:2-4; 228:22-23. Others were abstract and esoteric: "Mr. De Niro, I'm going to ask you again, was there anyone besides Ms. Robinson who knew more about your personal and professional life during the 11 years that she served as your employee?" Tr. 144:9-13. How does one determine and answer this?

      As to long-winded answers, if counsel did not want Mr. De Niro to give them, that was never made known, and they were accepted without protest. Taken as a whole, there is no demonstrated need for the Court to extend Mr. De Niro's deposition beyond one hour.

Direction not to answer

      Mr. De Niro was directed not to answer several questions, all of which occurred on the first day of his deposition. Unlike the balance of their April 11 letter that redacted quotations and topics, the Court should first note that this portion does not. It is another example of how Ms. Robinson is looking to feed misleading information to the media through the docket.[2]

      Second, the Court should note the number of times, in connection with the direction not to answer, we offered to call the Court for rulings. Tr. 37, 52, 55, 67, 69, 70, 147, 237. Consistent

---

[1]     The irony here was lost on no one, as this case involves Ms. Robinson's generic use of the word "harassment" rather than in its meaning as a legal term of art.

[2]     For example, the April 11 letter says that Mr. De Niro was directed not to answer questions about his "gendered treatment of Ms. Robinson." Upon review of the cited pages (Tr. 142-144) it can be seen the line of questioning had nothing to do with that topic.

Honorable Katharine H. Parker, U.S.M.J.  Page | 3
April 13, 2022

with Local Civil Rule 37.3(b) we confirmed with chambers the Court would be available if rulings were necessary. All these questions could have been resolved at the time, but counsel chose not to despite our stated position that the failure to do so would constitute a waiver of any protest. Tr. 37.

As counsel for Canal and Mr. De Niro, we instructed the witness not to answer several questions designed to harass, intimidate, and embarrass him on matters having nothing to do with this case. This is consistent with our understanding of Judge Failla's decision in *Kennedy v. City of New York*, 12-cv-4166, 2016 WL 3460417 (S.D.N.Y. Jun. 20, 2016).

One line of questions involved legal proceedings involving a child and a pending matrimonial action in which Mr. De Niro is represented by separate counsel. Tr. 34-36. Another concerned counsel's attempt to negotiate directly with Mr. De Niro about his unavailability for the second day of his deposition. Tr. 54-57. That was followed by inquiries protected by the doctor-patient privilege, Tr. 60-61, and vague and invasive questions about alcohol use having nothing to do with this case. Tr. 65-73. The suggestion that alcohol somehow "bears on his credibility"—which makes no sense—was never explained or even expressed at the deposition.[3] Similarly, detailed financial questions (e.g. the amount he donated the charity in 2021) asked under the pretext of relevance to "punitive damages" is remote from the facts and exemplifies wasted time.

Refusal to answer questions

Mr. De Niro declined to answer a handful of questions. Let us assume for the moment he should have answered them. Ms. Robinson's counsel never sought a ruling from the Court, and his refusal to answer does not automatically lead to the conclusion that he should be required to do so, or that more than an hour is necessary to accomplish this. The questions and topics were far from germane to the claims and defenses at issue. And a review of the transcripts reflects that in a vast majority of the times he protested, he was instructed to answer, and he did. When the questioning was factual and proper, the deposition flowed smoothly. *See* Tr. 151-79, 264-89, 300-40, 351-76.

For all the foregoing reasons, the Court should rule that Mr. De Niro's deposition may continue for one (1) hour of time on the record.

Respectfully submitted,

**TARTER KRINSKY & DROGIN LLP**  **TRAUB LIEBERMAN STRAUS & SHREWSBERRY LLP**

*/s/ Laurent S. Drogin* and   */s/ Gregory R. Bennett* and
*/s/ Brittany K. Lazzaro*   */s/ Hillary J. Raimondi*

cc:   All counsel of Record (via ECF)

---

[3] Counsel's letter ends by noting the line of inquiry at the end of day 2 concerned Mr. De Niro's personal trainer. Nothing stops counsel from picking up where he left off. Given that multiple witnesses (including the trainer) have already been deposed, and a Rule 11 motion has been filed, perhaps this line of questioning should have been covered earlier.

# ANNEX 1

Example of nine (9) instances where the same question was asked:

1. And do you remember having conversations with Ms. Robinson about ▮▮▮▮▮ and the point of scouting a hotel for ▮▮▮▮▮ in LA? Tr. 283:8-11.

2. Do you remember asking Ms. Robinson to look for hotels in Los Angeles for Ms. ▮▮▮? Tr. 350: 18-19.

3. In March of 2018, you reached out to Ms. Robinson to identify a hotel that would accommodate Ms. ▮▮▮ when she was undergoing for treatment for ▮▮▮ Tr. 350: 21-24.

4. In March of 2018, you reached out to Ms. Robinson to identify a hotel that would accommodate Ms. ▮▮▮▮▮ when she was undergoing treatment for ▮▮▮▮▮, correct? Tr. 351:25 – 352:4.

5. So I just want to know if you remember having a conversation with Ms. Robinson to identify a hotel that would accommodate Ms. ▮▮▮▮▮ when she was undergoing treatment for ▮▮▮▮▮. Tr. 352:13-17.

6. In March of 2018, you reached out to Ms. Robinson to identify a hotel that would accommodate Ms. ▮▮▮ when she was undergoing treatment for ▮▮▮▮▮; isn't that right? Tr. 353:14-18.

7. You asked Ms. Robinson to travel to Los Angeles to look into hotels for Ms. ▮▮▮, didn't you? Tr. 354:5-7.

8. Do you recall having a conversation regarding – with Ms. Robinson regarding her traveling to LA to investigate hotels for Ms. ▮▮▮? Tr. 354:18-21.

9. Well, the primary purpose of Ms. Robinson's trip to LA in March of '18 had to do with scouting a hotel for ▮▮▮▮▮, right? Tr. 355:19-22.