**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

**GRAHAM CHASE ROBINSON,**

      *Plaintiff*,

v.

**ROBERT DE NIRO and**
**CANAL PRODUCTIONS, INC.,**

      *Defendants*.

**Case No. 19-cv-9156 (LJL) (KHP)**

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO CONDUCT A MENTAL EXAMINATION OF PLAINTIFF

## **TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT .................................................................................. 1

II.   RELEVANT BACKGROUND ................................................................................. 2

III.  ARGUMENT ............................................................................................................ 2

  A.  Legal Standard ...................................................................................................... 2

  B.  Defendants' Motion is Procedurally Defective: They Did Not Meet and Confer ............... 3

  C.  Defendants' Request Is Late and Does Not Warrant an Extension of Discovery ............... 4

  D.  Defendants Fail to Establish Good Cause for a Rule 35 Examination ............................... 7

     1.  A Compelled Examination of Plaintiff is Unnecessary Given the Extensive Medical Records Produced in this Case ................................................................. 7

     2.  Defendants Chose Not to Avail Themselves of Less Burdensome Means of Eliciting Information about Plaintiff's Health .......................................................... 9

     3.  Defendants Make No Proffer as to the Value of a Forensic Examination ..................... 10

     4.  Dr. Resnick Is Not Suitably Qualified to Perform the Proposed Examination .............. 10

     5.  Defendants Fail to Specify the Scope of the Proposed Examination ............................ 11

  E.  In Any Event, The Court Should Exercise Its Discretion to Deny Defendants' Request for a Mental Examination ........................................................................... 13

  F.  In the Alternative, If the Court Orders a Mental Examination, It Should Be Limited to Two (2) Hours and Not Videorecorded ................................................................. 14

     1.  An Eight (8) Hour Examination Is Excessive ............................................................ 14

     2.  Videorecording Is Improper and Unnecessary ........................................................... 15

IV.  CONCLUSION ....................................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Anhui Konka Green Lighting Co. v. Green Logic LED Elec. Supp., Inc.*,
  2021 WL 4264033 (S.D.N.Y. Sept. 20, 2021) ........................................................... 3

*Anzo v. Union Pac. R. Co.*,
  2014 WL 5140034 (E.D. Cal. Oct. 10, 2014) ............................................................ 5

*Baez Duran v. ELG Parking, Inc.*,
  2021 WL 1338982 (S.D.N.Y. Apr. 9, 2021) ............................................................. 4

*Ballard v. Wilshire Ins. Co.*,
  2018 WL 6164334 (N.D. Ga. May 22, 2018) ......................................................... 12

*Briesacher v. AMG Res., Inc.*,
  2005 WL 2105908 (N.D. Ind. Aug. 31, 2005) ..................................................... 5, 6

*Burger v. Litton Indus., Inc.*,
  1995 WL 363741 (S.D.N.Y. June 19, 1995) ........................................................... 15

*Calderon v. Reederei Claus-Peter Offen GmbH & Co.*,
  258 F.R.D. 523 (S.D. Fla. 2009) ............................................................................ 15

*Carter v. Astrue*,
  413 F. App'x 899 (7th Cir. 2011) ........................................................................... 15

*Curtis v. Express, Inc.*,
  868 F. Supp. 467 (N.D.N.Y. 1994) .................................................................... 3, 13

*Diaz v. Con-Way Truckload, Inc.*,
  279 F.R.D. 412 (S.D. Tex. 2012) ............................................................................. 6

*Does 1-5 v. City of Chicago*,
   2019 WL 2076260 (N.D. Ill. May 10, 2019) .......................................................................... 14

*Edson v. Liberty Mut. Ins. Co.*,
   2002 WL 31946902 (N.D. Cal. Oct. 4, 2002) ......................................................................... 15

*Gao v. Savour Sichuan Inc.*,
   2021 WL 4892864 (S.D.N.Y. Oct. 20, 2021) ........................................................................... 6

*Great W. Life Assur. Co. v. Levithan*,
   153 F.R.D. 74 (E.D. Pa. 1994) .................................................................................................. 3

*Guzman v. News Corp.*,
   2012 WL 2148166 (S.D.N.Y. Jun. 13, 2012).......................................................................... 13

*Hertenstein v. Kimberly Home Health Care, Inc.*,
   189 F.R.D. 620 (D. Kan. 1999) ................................................................................................. 1

*Hirscheimer v. Assoc. Metals & Mins. Corp.*,
   1995 WL 736901 (S.D.N.Y. Dec. 12, 1995)............................................................... 12, 14, 15

*In re Bell & Beckwith*,
   93 B.R. 569 (Bankr. N.D. Ohio 1988) .................................................................................... 15

*In re Falcon Workover*,
   1999 WL 721945 (E.D. La. Sept. 15, 1999) ........................................................................... 15

*Jarrar v. Harris*,
   2008 WL 2946000 (E.D.N.Y. July 25, 2008) ........................................................................... 7

*Kemp v. Harris*,
   263 F.R.D. 293 (D. Md. 2009) .................................................................................................. 4

*King v. Friend of Farmer, Inc.*,

  2000 WL 290355 (S.D.N.Y. Mar. 21, 2000) ............................................................ 5


*Large v. Our Lady of Mercy Med. Ctr.*,

  1998 WL 65995 (S.D.N.Y. Feb. 17, 1998) ............................................................ 13


*Lowe v. Philadelphia Newspapers, Inc.*,

  101 F.R.D. 296 (E.D. Pa. 1983) ............................................................ 15


*Marroni v. Matey*,

  82 F.R.D. 371 (E.D. Pa. 1979) ............................................................ 12


*McLaughlin v. Atl. City*,

  2007 WL 1108527 (D.N.J. Apr. 10, 2007) ............................................................ 2, 9


*Miksis v. Howard*,

  106 F.3d 754 (7th Cir. 1997) ............................................................ 5


*Mohamed v. Marriott Int'l, Inc.*,

  1996 WL 103838 (S.D.N.Y. Mar. 8, 1996) ............................................................ 9, 13


*O'Sullivan v. Rivera*,

  229 F.R.D. 184 (D.N.M. 2004) ............................................................ 7


*Olin Corp. v. Lamorak Ins. Co.*,

  517 F. Supp. 3d 161 (S.D.N.Y. 2021) ............................................................ 4


*Pearson v. Norfolk-Southern Ry. Co., Inc.*,

  178 F.R.D 580 (M.D. Ala. 1998) ............................................................ 8


*Riel v. Ayers*,

  2010 WL 1980251 (E.D. Cal. May 17, 2010) ............................................................ 7, 9, 10

*Robinson v. Jacksonville Shipyards, Inc.*,
    118 F.R.D. 525 (M.D. Fla. 1988) ........................................................................ 13

*Romano v. Interstate Exp., Inc.*,
    2009 WL 211142 (S.D. Ga. Jan. 28, 2009) .......................................................... 7

*Schlagenhauf v. Holder*,
    379 U.S. 104 (1964) ....................................................................................... 3, 7

*Schumaker v. West*,
    196 F.R.D 454 (S.D. W.Va. 2000) ........................................................................ 5

*Shirsat v. Mut. Pharm. Co.*,
    169 F.R.D. 68 (E.D. Pa. 1996) ............................................................................ 16

*Stanislawski v. Upper River Services, Inc.*,
    134 F.R.D. 260 (D. Minn. 1991) .......................................................................... 8

*Stoner v. NYC Ballet Co.*,
    2002 WL 31875404 (S.D.N.Y. Dec. 24, 2002) .................................................. 13

*Thom v. Benson Chevrolet Co.*,
    759 So. 2d 988 (La. App. 2000) ......................................................................... 15

*Tirado v. Erosa*,
    158 F.R.D. 294 (S.D.N.Y. 1994) ........................................................................ 16

*Tomlin v. Holecek*,
    150 F.R.D. 628 (D. Minn. 1993) ........................................................................ 15

*U.S. v. Wilson*,
    170 F. Supp. 3d 347 (E.D.N.Y. 2016) ................................................................ 15

*Vaigasi v. Solow Mgmt. Corp.*,
  2017 WL 3869990 (S.D.N.Y. Sept. 5, 2017) ............................................................................ 4

*Valita M. v. City of Chicago*,
  1986 WL 8736 (N.D. Ill. Aug. 1, 1986) ............................................................................. 8, 12

*Winstead v. Lafayette Cty. Bd. of Cty. Commissioners*,
  315 F.R.D. 612 (N.D. Fla. 2016) ................................................................................... 3, 8, 13

*Winters v. Travia*,
  495 F.2d 839 (2d Cir. 1974) ................................................................................................... 3

*Womack v. Stevens Transp., Inc.*,
  205 F.R.D. 445 (E.D. Pa. 2001) ...................................................................................... 7, 10

*Wrangen v. Pennsylvania Lumbermans Mut. Ins. Co.*,
  2009 WL 151715 (S.D. Fla. Jan. 16, 2009) ..................................................................... 8, 12

**Rules**

Federal Rule of Civil Procedure 16(b)(4) ................................................................................. 6

Federal Rule of Civil Procedure 26(a)(2)(B)(v) ..................................................................... 11

Federal Rule of Civil Procedure 35 .................................................................................. passim

Federal Rule of Civil Procedure 35(a)(2)(B) .......................................................................... 11

Federal Rule of Civil Procedure 35, Advisory Committee Note (1991) .................................. 11

Individual Civil Practice Rule II(c) of Katharine H. Parker, U.S. Magistrate Judge .................. 3

**Regulations**

20 C.F.R. § 404.1519N(A)(3) ................................................................................................ 15

## I.  PRELIMINARY STATEMENT

In employment cases, Rule 35 examinations are atypical and disfavored, and it is common for a defendant's expert to opine on a plaintiff's mental state based only on records and testimony. Here, Defendants belatedly ask the Court to grant the unusual relief of a compulsory mental examination under Rule 35, along with a third (3rd) extension of their deadline to produce an expert report. For the reasons set forth below, Defendants' Motion should be denied in its entirety.[1]

First, Defendants ignored the Court's requirement to first confer with Plaintiff to try to resolve the matter in dispute. The Motion is procedurally defective and should not be entertained.

Second, Defendants are late. They have known for years that Plaintiff is alleging emotional injuries, and they do not justify their failure to seek a Rule 35 examination earlier.

Third, Defendants do not establish good cause for a compulsory examination. Plaintiff has given Defendants access to her complete primary care and mental health records, and she testified extensively at deposition regarding her physical and mental condition. Meanwhile, Defendants chose not to obtain information about Plaintiff's health through less burdensome means, such as by deposing Plaintiff's doctors. Critically, Defendants do not identify any gaps or deficiencies in the extensive information they already have that would warrant an invasive mental examination.

Also militating against a finding of good cause are the inexperience of Defendants' expert and the open-endedness of the proposed examination. Defendants' expert only recently finished her training and has no apparent experience as an expert. Further, the proposed examination has a vague and open-ended scope, including unspecified follow-up "psychological testing."

Fourth, even if good cause existed, the Court should exercise its discretion not to order the

---

[1] Abbreviations used herein include "Motion" (Memorandum of Law in Support of Defendants' Motion to Conduct a Mental Examination of Plaintiff, Dkt. No. 189); "Resnick Decl." (Declaration of Dr. Kimberly Resnick, Dkt. No. 191); and "Harwin Decl." (the accompanying Declaration of Alexandra Harwin, Esq.).

examination: compulsory examinations are rare in employment cases and would pose a particular burden here, where Plaintiff has already sat for twelve (12) hours of adversarial questioning.

Last, if the Court does decide to order the examination, it should be limited to two (2) hours, which courts regularly find adequate. Further, the examination should not be videorecorded.

## II.     RELEVANT BACKGROUND

Since this case was filed in October 2019, Defendants have known that Plaintiff is alleging emotional distress damages. *See* Dkt. No. 1 ¶ 49. At the initial case management conference in January 2020, counsel explained that Plaintiff was considering using a psychiatric expert. Dkt. No. 18 at 8:15-18. Then, as this case progressed, Plaintiff gave Defendants extensive information about her mental and physical health. In June 2020, Plaintiff provided Defendants with HIPAA authorizations that permitted them to obtain records from Plaintiff's primary care and psychiatric providers dating back to February 2005. Harwin Decl. ¶ 3, Ex. 1. Thus, for almost two (2) years, Defendants have had complete access to voluminous information about Plaintiff's health.

When expert discovery commenced, Plaintiff timely disclosed her psychiatric expert by the deadline of January 21, 2022 (Dkt. No. 190-3), and she timely disclosed that expert's report by the deadline of February 18, 2022 (Dkt. No. 190-4). *See* Dkt. Nos. 89 and 157 at 36:20-21.

## III.     ARGUMENT

### A.     Legal Standard

"The determination of whether a mental examination should be ordered requires a fact intensive analysis." *McLaughlin v. Atl. City*, 2007 WL 1108527, at *2 (D.N.J. Apr. 10, 2007). Rule 35 examinations are permitted only on "an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination." *Schlagenhauf v. Holder*, 379 U.S. 104, 118

(1964). These standards "are not mere formalities." *Winters v. Travia*, 495 F.2d 839, 841 (2d Cir. 1974). Rather, Rule 35 requires "a discriminating application." *Schlagenhauf*, 379 U.S. at 121.

Critically, "[g]ood cause" is "distinct" from the "in controversy" prong, as they "implicate different concerns." *Winstead v. Lafayette Cty. Bd. of Cty. Comm'rs*, 315 F.R.D. 612, 616 (N.D. Fla. 2016).

Even if good cause is shown, "it is still within the court's discretion to determine whether to order an examination." *Curtis v. Express, Inc.*, 868 F. Supp. 467, 468 (N.D.N.Y. 1994). This is because "an order for the physical or mental examination of a party is *not* granted as of right[.]" *Great W. Life Assur. Co. v. Levithan*, 153 F.R.D. 74, 76 (E.D. Pa. 1994).[2]

## B.   Defendants' Motion is Procedurally Defective: They Did Not Meet and Confer

This Court's Individual Practice Rule II(c) states: "Any party wishing to raise a discovery dispute with the Court ***must*** first confer in good faith with the opposing party, in person or by telephone, in an effort to resolve the dispute." Specifically, parties must "actually meet, in person or by telephone, and make a genuine effort to resolve the dispute by determining . . . what the requesting party is actually seeking . . . and what specific genuine issues, if any, cannot be resolved without judicial intervention." *Anhui Konka Green Lighting Co. v. Green Logic LED Elec. Supply, Inc.*, 2021 WL 4264033, at *2 (S.D.N.Y. Sept. 20, 2021) (citation omitted) (Parker, M.J.).

In this case, Defendants have made no attempt whatsoever to meet and confer about their request. It was not until the night of March 15, 2022, that Defendants informed Plaintiff for the first time that they were seeking a full-day forensic psychiatric examination of Plaintiff.[3] Harwin

---

[2] All emphasis in quoted text is added unless indicated otherwise.

[3] Before March 15, 2022, Defendants requested what they vaguely characterized as an "interview," with no indication that this would entail a full-day forensic psychiatric examination. *See* Dkt. No. 190-6 (email of March 9, 2022); Dkt. No. 190-8 (email of March 11, 2022). It was only after Plaintiff sought clarification that Defendants revealed the full substance of what they were seeking. *See* Harwin Decl. Ex. 2.

Decl. Ex. 2. The next day, March 16, 2022, Plaintiff offered to meet and confer about their request. *Id.* Rather than confer with Plaintiff as required, Defendants hurriedly filed their letter motion less than twenty-four (24) hours after they first emailed Plaintiff a description of their request. *Compare* Dkt. No. 190-10 (email containing Defendants' initial request for a psychiatric evaluation, sent on March 15, 2022, at 7:14 p.m.) *with* Dkt. No. 178 (Defendants' letter motion concerning same, filed on March 16, 2022, at 7:05 p.m.). Indeed, nowhere in their letter motion did Defendants represent that they met and conferred with Plaintiff, thereby violating the Court's requirement that "[s]uch letter ***must include a representation that the meet-and-confer process occurred and state when it occurred***." Individual Practice Rule II(c) (emphasis in original). Defendants' Motion (Dkt. No. 189) also contains no such representation. As of the filing of this brief, Defendants still have never conferred with Plaintiff concerning their request. Harwin Decl. ¶ 5.

"[I]t is well established that the failure to meet and confer prior to filing a discovery motion can be fatal to a party's application." *Baez Duran v. ELG Parking, Inc.*, 2021 WL 1338982, at *2 (S.D.N.Y. Apr. 9, 2021) (denying motion for failure to meet-and-confer and collecting cases); *see also Olin Corp. v. Lamorak Ins. Co.*, 517 F. Supp. 3d 161, 177 (S.D.N.Y. 2021) (failure to "provide [a meet-and-confer] certification" renders the motion "procedurally defective"); *Vaigasi v. Solow Mgmt. Corp.*, 2017 WL 3868990, at *1 (S.D.N.Y. Sept. 5, 2017) ("failure to meet and confer with defendants in good faith" was "procedural defect[ ]" supporting denial of motion); *see also Kemp v. Harris*, 263 F.R.D. 293, 297 (D. Md. 2009) (finding that counsel failed to meet-and-confer, where, as here, he simply sent an "e-mail" regarding his request and then hurriedly proceeded to file his motion "the next business day after he sent the e-mail").

Thus, Defendants' Motion is procedurally defective and should be denied on these grounds.

### C.   Defendants' Request Is Late and Does Not Warrant an Extension of Discovery

Defendants' request for a psychiatric examination of Plaintiff is also untimely. To the

extent Defendants wanted such an examination, they could and should have raised this long ago. Defendants have known about Plaintiff's claimed injuries and the potential need for a psychiatric expert since the very beginning of this case (*see supra* Part II), and they do not explain why they failed to retain an expert and request a psychiatric examination earlier. Even after Plaintiff identified her psychiatric expert on January 21, 2022 (Dkt. No. 190-3), Defendants allowed nearly two (2) months to elapse before they made their request for a full-day psychiatric evaluation on March 15, 2022 (Dkt. No. 190-8). Defendants have exhibited a pronounced lack of diligence.

Courts routinely deny requests for Rule 35 examinations in the circumstances present here: where the movant knew of its purported need for the examination and could have sought one earlier, but did not. *Miksis v. Howard*, 106 F.3d 754, 758 (7th Cir. 1997) (Rule 35 motion properly denied, as "Defendants knew from day one that plaintiff's medical condition was an issue, yet they failed to request the medical examination" until after discovery cutoff); *King v. Friend of Farmer, Inc.*, 2000 WL 290355, at *1 (S.D.N.Y. Mar. 21, 2000) (denying schedule modification needed for Rule 35 examination where emotional injuries were on face of complaint and defendants "offer[ed] no explanation" why they did not "retain th[eir] expert prior to the completion of discovery"); *Schumaker v. West*, 196 F.R.D 454, 457 (S.D. W.Va. 2000) (denying Rule 35 motion given movant's "belated attempt to seek a Rule 35 examination days before his expert disclosures were due"); *Briesacher v. AMG Res., Inc.*, 2005 WL 2105908, at *2 (N.D. Ind. Aug. 31, 2005) (same where defendants filed Rule 35 motion ten (10) days after deadline to disclose experts, as they "entered [the] case with the knowledge that [plaintiff's] physical condition was at issue"); *Anzo v. Union Pac. R. Co.*, 2014 WL 5140034, at *3 (E.D. Cal. Oct. 10, 2014) (same where "[d]efendant ha[d] long been aware of plaintiff's head trauma, which would foreseeably include [neuropsychological] testing" and obtained "regular reports from plaintiff's treating physicians,"

and so "the potential for neuropsychological issues *should have come as no surprise*").

In any event, Defendants' belated request does not warrant a third (3rd) extension of expert discovery. Rule 16(b)(4) motions to modify a case schedule are disfavored and require more than a showing of "diligence": the movant "must show why the court's deadlines ***could not*** reasonably have been made despite its diligence." *Gao v. Savour Sichuan Inc.*, 2021 WL 4892864, at *1 (S.D.N.Y. Oct. 20, 2021) (citation omitted) (Parker, M.J.) (noting such requests are denied where "the party seeking discovery has had ample opportunity to obtain the information" within the deadline). In the context of Rule 35, "a defendant's delay in seeking a Rule 35 examination when the plaintiff's condition has been at issue from the beginning of the case ***strongly supports*** a finding that no good cause has been shown." *Briesacher*, 2005 WL 2105908, at *2. Defendants do not identify any case where discovery was extended to accommodate a late Rule 35 examination.

This Court has already extended Defendants' deadline to serve expert reports twice. *See* Dkt. Nos. 169, 174. The operative deadline to serve expert reports (April 1, 2022) has passed, *see* Dkt. No. 174, and the deadline to complete expert discovery (April 30, 2022) expires soon, *see* Dkt. No. 169. In all, this third (3rd) extension would likely result in two (2) more months of delay to expert discovery: Dr. Resnick claims to need twenty-five (25) days to complete her report following an examination, Resnick Decl. ¶ 5, and additional time will then be needed to depose the psychiatric experts. Defendants utterly "fail to take into account the domino-effect that a belated Rule 35 examination and report could have on [ ] subsequent deadlines." *Diaz v. Con-Way Truckload, Inc.*, 279 F.R.D. 412, 418 (S.D. Tex. 2012); *see Briesacher*, 2005 WL 2105908, at *3 (rejecting argument that "an extension of the discovery deadline would not prejudice plaintiff" because it "misses the point," as "[t]he focus is, and remains, on whether the moving party has demonstrated that the deadline could not be met, despite their diligence in attempting to meet it").

In sum, Defendants' Motion is late and should be further denied on these grounds. In any event, Defendants fail to establish good cause to further extend expert discovery.

### D.     Defendants Fail to Establish Good Cause for a Rule 35 Examination

To establish good cause, a movant "must do more than make conclusory allegations of the relevance of a mental health exam[.]" *Riel v. Ayers*, 2010 WL 1980251, at *5 (E.D. Cal. May 17, 2010); *Schlagenhauf*, 379 U.S. at 118 ("[G]ood cause would be meaningless if [it] could be sufficiently established by merely showing that the desired materials are relevant[.]"). Instead, "[g]ood cause requires a showing that the examination could adduce specific facts relevant to the cause of action and is ***necessary*** to the defendant's case," *Womack v. Stevens Transp., Inc.*, 205 F.R.D. 445, 447 (E.D. Pa. 2001), and that the "physical or mental state ***cannot be evidenced*** without the assistance of expert medical testimony based on an examination," *Romano v. Interstate Exp., Inc.*, 2009 WL 211142, at *1 (S.D. Ga. Jan. 28, 2009) (citation omitted).

"'[G]ood cause' depends on the circumstances . . . including the movant's ability to obtain the information it seeks by other means." *Jarrar v. Harris*, 2008 WL 2946000, at *3 (E.D.N.Y. July 25, 2008) (citing *Schlagenhauf*, 379 U.S. at 118). Where medical records are produced, "***[t]he party seeking an exam must demonstrate why th[at] discovery is inadequate***." *Riel*, 2010 WL 1980251, at *5 (citation omitted). Indeed, "***if discovery of medical reports has been obtained, good cause . . . may no longer exist***." *O'Sullivan v. Rivera*, 229 F.R.D. 184, 186 (D.N.M. 2004).

Here, the gravamen of Defendants' Motion is that Plaintiff's mental condition is in controversy. But good cause is "distinct" from the "in controversy" requirement, *Winstead*, 315 F.R.D. at 616, and Defendants present no argument to establish good cause here.

### 1.     A Compelled Examination of Plaintiff is Unnecessary Given the Extensive Medical Records Produced in this Case

Courts refuse to find good cause under Rule 35 where other discovery has provided

adequate information. *See Winstead*, 315 F.R.D. at 616 (because records provide "similar (if not the same) information" as an examination, defendant can "through other discovery tools, gather adequate information to call into question [the plaintiff's] claims of ongoing emotional injury"); *Wrangen v. Pennsylvania Lumbermans Mut. Ins. Co.*, 2009 WL 151715, at *6 (S.D. Fla. Jan. 16, 2009) (denying Rule 35 motion, given that "[t]his is not a case lacking in medical records"); *Stanislawski v. Upper River Services, Inc.*, 134 F.R.D. 260, 262 (D. Minn. 1991) (denying Rule 35 motion where defendant already had "ample material" for its expert to reach an opinion in the form of plaintiff's medical records and deposition testimony); *Valita M. v. City of Chicago*, 1986 WL 8736, at *2 (N.D. Ill. Aug. 1, 1986) (denying Rule 35 motion, as "[d]efendant has made no showing" why the records and testimony are insufficient, given that defendant carries the "burden of producing evidence to satisfy the court that the mental examination is necessary and that the desired information cannot be otherwise obtained"); *Pearson v. Norfolk-S. Ry. Co., Inc.*, 178 F.R.D 580, 582 (M.D. Ala. 1998) (denying Rule 35 motion because defendant failed to show why it could not obtain other sources of information regarding plaintiff's mental status); *Nicholson v. Baltimore Police Dep't*, 2022 WL 1104575, at *3 (D. Md. Apr. 13, 2022) (denying Rule 35 motion, because defendant failed to examine medical records and show how they were insufficient, and requiring defendant to "explain in clear and specific terms what information necessary to his defense he still requires and why it can only be obtained by an expert examination").

Indeed, Defendants do not even try to claim they lack sufficient information about Plaintiff's health. Nor could they. Defendants have long possessed extensive medical information detailing Plaintiff's mental and physical condition. Pursuant to the HIPAA authorizations provided by Plaintiff, Defendants obtained Plaintiff's primary care and mental health records spanning back to at least 2013, including years of detailed notes from Plaintiff's treating psychiatrist, who

recorded her evaluations of Plaintiff from over fifty (50) psychiatric treatment sessions since February 2020. Harwin Decl. ¶ 4. In addition, Defendants elicited extensive information at Plaintiff's deposition about her mental and physical condition, including past and present mental health issues, treatments, and medications (Dkt. No. 144-1 at 12:22-13:6, 14:3-16:3, 17:11-18:22), her treatment providers and diagnoses (*id.* at 116:5-135:10), and her physical health, including regarding a past back injury (*id.* at 117:7-122:11, 133:2-135:14).

Ultimately, a compelled examination is most appropriate when there is a "paucity of other means" to evaluate an individual's physical or mental state. *Mohamed v. Marriott Int'l, Inc.*, 1996 WL 103838, at *4 (S.D.N.Y. Mar. 8, 1996). But here, there is no paucity of information available about Plaintiff's health: there is a plethora. Accordingly, there is no good cause under Rule 35.

### 2. Defendants Chose Not to Avail Themselves of Less Burdensome Means of Eliciting Information about Plaintiff's Health

Also weighing against a finding of good cause is that Defendants made the choice not to avail themselves of other, less burdensome means of eliciting information about Plaintiff's mental condition, such as deposing Plaintiff's doctors during fact discovery.

As noted in Part II above, Plaintiff provided Defendants with HIPAA authorizations to obtain her primary care and psychiatric treatment records nearly two (2) years ago. Yet Defendants made the knowing choice not to depose any of Plaintiff's treating doctors.

Defendants' decision not to depose Plaintiff's doctors further establishes a lack of good cause. *See Riel*, 2010 WL 1980251, at *7 (denying Rule 35 motion, as defendant "had the opportunity to depose not only [petitioner's expert] . . . , but petitioner's other mental health experts and others who may have information about petitioner's mental health"); *McLaughlin*, 2007 WL 1108527, at *4-5 (same where "[t]hroughout the course of this case [movant] ha[d] not been barred from conducting any relevant discovery regarding [the examinee's] mental condition"

and movant "had more than an adequate opportunity to obtain through interrogatories and depositions the identical information [the expert] proposes to obtain during his examination").

### 3.     Defendants Make No Proffer as to the Value of a Forensic Examination

Critically, neither Defendants nor Dr. Resnick identify what the proposed examination could reveal that is not already available to them in the many years of Plaintiff's medical records and her deposition testimony. Defendants do not identify any missing information, inconsistencies, or reason to doubt the conclusions of Plaintiff's treating and expert psychiatrists. Dr. Resnick does not state whether she reviewed the entire existing record, much less explain why she cannot evaluate Plaintiff's mental status based on it.[4] And while Defendants claim a desire to "rebut" the opinions of Plaintiff's psychiatric expert, Motion at 7-8, they do not identify any deficiency in his report or explain why they think their examination would undermine his opinions.

Without any proffer as to the value of an examination, Defendants fail to establish good cause. *Womack*, 205 F.R.D. at 447 ("Good cause requires a showing that the examination could adduce specific facts relevant to the cause of action and is ***necessary*** to the defendant's case."); *Riel*, 2010 WL 19880251, at *6 (denying Rule 35 motion because "to the extent respondent argues [that Plaintiff's expert's] conclusions are deficient . . . he has not shown why he requires his own testing and why respondent's cross-examination of [Plaintiff's expert] will not be sufficient").

### 4.     Dr. Resnick Is Not Suitably Qualified to Perform the Proposed Examination

Under Rule 35, the Court has a "responsibility to determine the suitability of the examiner's qualifications" and "[i]f the proposed examination and testimony calls for an expertise that the proposed examiner does not have, ***it should not be ordered***, even if the proposed examiner is a

---

[4] While Dr. Resnick claims that the "available record of medical history is somewhat limited," Resnick Decl. ¶ 3, this is belied by the numerous years of medical records (including records of Plaintiff's annual physicals, lab tests, and mental health treatment) made available to Defendants. Harwin Decl. ¶ 4.

physician." Rule 35, Advisory Committee Note (1991) (where a proposed examiner has "narrow qualifications," courts are "encourage[d]" to exercise the discretion "to refuse to order an examination, or to restrict an examination"). Dr. Resnick is not a suitable examiner in this case.

First, Dr. Resnick is inexperienced. Since graduating from medical school, she switched fields multiple times (first training in internal medicine, then anesthesia, and most recently psychiatry). Dkt. No. 191-1. She completed her psychiatric training less than four (4) years ago and obtained board certification in forensic psychiatry just two (2) years ago. Since then, she has worked in a mental institution with a patient population that is completely different from Plaintiff: individuals committed to a mental institution after being found "incompetent to stand trial" or "not responsible [for crimes] by reason of mental disease or defect."[5]

Second, it appears that Dr. Resnick has never served as an expert before. Her resume does not disclose any prior deposition or trial testimony. *Cf.* Fed. R. Civ. P. 26(a)(2)(B)(v) (requiring disclosure of prior expert testimony). Likewise, her WestLaw Expert Profile indicates that she never served as an expert in any case. Harwin Decl. ¶ 6, Ex. 3.[6] Plaintiff's counsel inquired whether Dr. Resnick ever testified before, but Defendants declined to identify any prior testimony. *Id.* ¶ 7, Ex. 4. Thus, the Court can conclude that Dr. Resnick has never served as an expert before.

Dr. Resnick's lack of experience weighs against a finding of good cause.

### 5.    Defendants Fail to Specify the Scope of the Proposed Examination

Under Fed. R. Civ. P. 35(a)(2)(B), the Court's order "must specify" the examination's "scope." But Defendants have not detailed what the proposed examination would investigate or

---

[5] *See* Mid-Hudson Forensic Psychiatric Center, https://omh.ny.gov/omhweb/facilities/mhpc/ (last visited Apr. 12, 2022); *see also* Dkt. No. 191-1 (detailing Dr. Resnick's present work at the Mid-Hudson Center).

[6] The only court record found by counsel regarding Dr. Resnick was a letter proposing her testimony as an expert on sexual issues such as "spanking, BDSM, role play, and fetishes" on behalf of celebrity musician R. Kelly. *See U.S.A. v. Kelly*, 19-cr-286, Dkt. No. 225 at *2 (Sept. 21, 2021). Ultimately, Dr. Resnick was not called to testify. *See Kelly*, Trial Tr. 4208:18 (Sept. 22, 2021), Dkt. No. 239 (filed Oct. 4, 2021).

how it would do so. Dr. Resnick vaguely describes (1) a "standard psychiatric examination" (on Plaintiff's "psychiatric," "personal," and "medical history") and (2) a "standard forensic psychiatric examination" (on "the alleged discrimination, harassment and/or retaliation"). Resnick Decl. ¶ 2. But she does not specify what these purportedly "standard" examinations would entail or how they are tailored to evaluate Plaintiff's specific injuries of "depression, anxiety, panic, and humiliation" and manifestations thereof such as "insomnia and weight loss." Dkt. No. 1 ¶ 49.

Without more information, this Court has no basis to order such a vague and untailored examination. *See Wrangen*, 2009 WL 151715, at *6 (denying Rule 35 motion as "Defendant ha[d] not provided any indication . . . suggesting that the requested examination would, in fact, accomplish the goals that Defendant seeks or that the requested examination is necessary for Defendant's expert to be able to offer his expert opinion"); *Valita*, 1986 WL 8736, at *2 (the "scope of the examination" requirement is not met by vague reference to a "psychological examination"); *Marroni v. Matey*, 82 F.R.D. 371, 372 (E.D. Pa. 1979) (a "general request for 'psychological testing' provides little guidance for determining the scope of any eventual examination").

Further, the proposed examination is effectively unlimited in scope. Specifically, Dr. Resnick states that she "may perform psychological testing following any such evaluation if I determine it is necessary based on the interview." Resnick Decl. ¶ 2. Courts regularly reject such requests for unspecified, unlimited testing. *See Hirscheimer v. Assoc. Metals & Mins. Corp.*, 1995 WL 736901, at *4 (S.D.N.Y. Dec. 12, 1995) (where movant "has not identified which tests will be administered . . . , requiring [plaintiff] to undergo unidentified testing would deprive him of the opportunity to seek an order precluding those tests that may be irrelevant"); *Ballard v. Wilshire Ins. Co.*, 2018 WL 6164334, at *2 (N.D. Ga. May 22, 2018) ("[D]efendants' request that Dr. Norman be given leave to conduct as many follow-up tests as he deems necessary goes too far[.]").

### E.    In Any Event, The Court Should Exercise Its Discretion to Deny Defendants' Request for a Mental Examination

"Even if good cause is shown, it is still within the court's discretion to determine whether to order an examination." *Curtis*, 868 F. Supp. at 468. Here, as a matter of discretion, the Court should not order an examination, both for the grounds discussed above, and also because a compulsory examination jeopardizes the goals of the civil rights laws at issue, and imposes a particular burden here, where Plaintiff has already sat for twelve (12) hours of deposition.

Compulsory examinations are disfavored in employment cases, as they could "easily dissuade employees from bringing suit in the first place[.]" *Winstead*, 315 F.R.D. at 614 ("If the price of even having the opportunity to vindicate one's rights under [anti-discrimination laws] in court necessarily included a . . . forced psychological examination, many plaintiffs with viable cases might decline to pursue their claims."); *Robinson v. Jacksonville Shipyards, Inc.*, 118 F.R.D. 525, 531 (M.D. Fla. 1988) (denying Rule 35 motion in harassment case, as compulsory examinations would "discourage[ ]" the reporting of future claims). Thus, compelled examinations are exceedingly rare in employment cases: in fact, Defendants cite *just four (4)* employment cases where this Court ordered a Rule 35 examination, all of which are distinguishable.[7]

In addition, the Court should decline to order Plaintiff to sit for eight (8) more hours of invasive questioning. Plaintiff has already sat for twelve (12) hours of grueling adversarial questioning at depositions over two days. Defendants now want a third session of eight (8) hours,

---

[7] The four cases are *Mohamed v. Marriott Int'l, Inc.*, 1996 WL 103838 (S.D.N.Y. 1996), *Large v. Our Lady of Mercy Med. Ctr.*, 1998 WL 65995 (S.D.N.Y. Feb. 17, 1998), *Stoner v. NYC Ballet Co.*, 2002 WL 31875404 (S.D.N.Y. Dec. 24, 2002), and *Guzman v. News Corp.*, 2012 WL 2148166 (S.D.N.Y. Jun. 13, 2012). In any event, these cases are distinguishable. In *Mohamed*, the proposed examinee was not the plaintiff, but defendant's employee, 1996 WL 103838, at *2-4; in *Large*, the "examination c[ould] be accomplished within the cut-off for pretrial discovery," 1998 WL 65995 at *6; in *Stoner*, the burden was not on defendant, but on the plaintiff-examinee, who filed for a protective order, 2002 WL 31875404, at *4-5; and in *Guzman*, the defendants made a timely request and there was an asserted "lack of information" on the plaintiff's mental status, 09-cv-9323, Dkt. No. 78 at 16:1 (Apr. 17, 2012), which is not the case here.

for a total of twenty (20) hours of questioning. Nowhere in their papers do Defendants identify any plaintiff in any case who was subjected to so many hours of interrogation. While mental examinations differ from depositions, they are no less burdensome and stressful: they are "by their nature intrusive and implicate sensitive matters." *Hirschheimer*, 1995 WL 736901, at *3.

The Court should exercise its discretion under Rule 35 to deny the proposed examination.

### F.  In the Alternative, If the Court Orders a Mental Examination, It Should Be Limited to Two (2) Hours and Not Videorecorded

Rule 35 "permits the court to include in its order such protective conditions as are deemed appropriate." *Hirschheimer*, 1995 WL 736901, at *2 (S.D.N.Y. Dec. 12, 1995). Many aspects of Defendants' requested examination are plainly improper. If the Court does order an examination, the examination should be limited to a duration of two (2) hours and should not be recorded.

### 1.  An Eight (8) Hour Examination Is Excessive

Under Rule 35, Defendants carry the burden of justifying every aspect of the proposed examination, including the amount of time needed. Defendants request eight (8) hours, but fail to explain why that is needed. *See* Motion at 9-10. They merely rely on Dr. Resnick's claim that an 8-hour examination is "customary for [her] based on past practice[.]" Resnick Decl. ¶ 3. That is insufficient, especially given Dr. Resnick's inexperience as an expert. *See supra* Part III.D.4.

Contrary to Defendants' cited proposition that "'[c]ourts generally do not limit the amount of time an examining physician will have to conduct the examination,'" Motion at 9, courts do *regularly* set such limits. *E.g.*, *Hirschheimer*, 1995 WL 736901, at *5 (rejecting request for six hours in favor of Plaintiff's three-hour proposal, "especially" given availability of deposition testimony); *Does 1-5 v. City of Chicago*, 2019 WL 2076260, at *3 (N.D. Ill. May 10, 2019) (denying request for "full-day" examination as "unnecessary and excessive").

Indeed, there are *extensive* authorities finding that approximately two (2) hours (or less) is

sufficient for a psychiatric evaluation. *See Edson v. Liberty Mut. Ins. Co.*, 2002 WL 31946902, at

*2 (N.D. Cal. Oct. 4, 2002) (limiting examination to two hours); *Tomlin v. Holecek*, 150 F.R.D.

628, 633 (D. Minn. 1993) (two-hour psychiatric examination appropriate); *Hertenstein v. Kimberly*

*Home Health Care, Inc.*, 189 F.R.D. 620, 635 (D. Kan. 1999) (ordering "two-hour psychiatric

examination"); *Carter v. Astrue*, 413 F. App'x 899, 901-02 (7th Cir. 2011) (diagnosis of "major

depression with psychotic and paranoid features" required a "one hour" psychiatric examination);

20 C.F.R. § 404.1519n(a)(3) ("***40 minutes***" is sufficient for a "[c]omprehensive psychiatric

examination" for certain Social Security programs).[8] Further, two (2) hours has been found

especially sufficient when combined with a review of treatment records. *See U.S. v. Wilson*, 170

F. Supp. 3d 347, 383 (E.D.N.Y. 2016) (evaluation comprised "forensic psychiatric examination"

of "one hour and 20 minutes" and a review of "clinical" and "medical records"); *Thom v. Benson*

*Chevrolet Co.*, 759 So. 2d 988, 998 (La. App. 2000) (psychiatric evaluation conducted with a "one

hour and fifty minute" examination combined with a "review of [plaintiff's] records").

### 2.    Videorecording Is Improper and Unnecessary

The videorecording of Rule 35 examinations is presumptively improper and allowed only

"where special circumstances have been shown." *Hirschheimer*, 1995 WL 736901, at *4; *see also*

*In re Falcon Workover*, 1999 WL 721945, at *1 (E.D. La. Sept. 15, 1999) (rejecting request, as it

is "tantamount to allowing counsel . . . to be present in the room"); *Calderon v. Reederei Claus-*

*Peter Offen GmbH & Co.*, 258 F.R.D. 523, 529 (S.D. Fla. 2009) ("[V]ideotaping is not 'typically

necessary or proper.'") (citation omitted); *Shirsat v. Mut. Pharm. Co.*, 169 F.R.D. 68, 70 (E.D. Pa.

---

[8] *C.f. also Burger v. Litton Indus., Inc.*, 1995 WL 363741, at *2 (S.D.N.Y. June 19, 1995) (psychiatric
examination "should take no longer than three hours"); *Lowe v. Philadelphia Newspapers, Inc.*, 101 F.R.D.
296, 300 (E.D. Pa. 1983) (ordering psychiatric examination "of no more than two sessions, each of which
shall last no longer than ninety minutes"); *In re Bell & Beckwith*, 93 B.R. 569, 573 (Bankr. N.D. Ohio 1988)
("standard psychiatric evaluation" required only "two hours and thirty minutes").

1996) (recognizing cameras as a "distraction" at mental examinations that "work to diminish the accuracy of the process"); *Tirado v. Erosa*, 158 F.R.D. 294, 299 (S.D.N.Y. 1994) ("The introduction of a human or mechanical presence . . . changes the nature of the proceeding, much in the way that television 'coverage' of events qualitatively changes what occurs in front of the camera. I am not prepared to permit such an abuse of Rule 35.").

Defendants have not explained what purpose the videorecording would serve and identify no "special circumstances" supporting their request. Thus, videorecording should not be allowed.

## IV.     CONCLUSION

There are multiple grounds to deny Defendants' Motion.

First, Defendants' request is procedurally defective: Defendants failed to confer with Plaintiff as required by the Court's Individual Practices.

Second, Defendants' request is untimely. Even though Defendants have long known about Plaintiff's claimed injuries, Defendants failed to act diligently and did not request an examination under Rule 35 until shortly before their (extended) deadline to submit their expert report.

Third, Defendants have not shown good cause. They already possess Plaintiff's extensive medical records and pertinent deposition testimony, and they do not explain why Dr. Resnick cannot opine based on that discovery. Defendants also failed to take advantage of other, less burdensome ways to obtain information, such as deposing Plaintiff's doctors. Further, Defendants do not identify any gap, inconsistency, or deficiency in the information available to them (or in the report from Plaintiff's expert psychiatrist) that would warrant an intrusive mental examination.

Meanwhile, Defendants' proposed expert is not suitably qualified to conduct the examination: she just completed her psychiatric training and has no apparent experience as an expert. Further, Defendants fail to specify the scope and content of the proposed examination. It

is described in extremely vague terms, is not tailored to evaluate Plaintiff's specific psychiatric conditions, and it is potentially limitless, involving unspecified follow-up "psychological testing."

Even if good cause were found, the Court should exercise its discretion to deny Defendants' Motion. Compulsory mental examinations are unusual in employment discrimination cases and in tension with public policy encouraging employees to bring forth good-faith complaints about discrimination and retaliation. The examination would be especially burdensome here, where Plaintiff has already sat for twelve (12) hours of deposition.

Plaintiff respectfully asks that the Court deny Defendant's Motion.

Dated: April 15, 2022

Respectfully submitted:

Alexandra Harwin (AH-3111)
David Sanford (5695671)
Jeremy Heisler (JH-0145)
Kate MacMullin (5693882)
Annie Sloan (5880034)
SANFORD HEISLER SHARP, LLP
1350 Avenue of the Americas, 31st Floor
New York, New York 10019
Telephone: (646) 402-5650
Facsimile: (646) 402-5651
aharwin@sanfordheisler.com
dsanford@sanfordheisler.com
jheisler@sanfordheisler.com
kmacmullin@sanfordheisler.com
asloan@sanfordheisler.com

Michael Lockman (5485156)
SANFORD HEISLER SHARP, LLP
611 Commerce Street, Suite 3100
Nashville, Tennessee 37203
Telephone: (615) 434-7000
Facsimile: (615) 434-7020
mlockman@sanfordheisler.com

*Counsel for Plaintiff Graham Chase Robinson*

17