**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

**GRAHAM CHASE ROBINSON,**

     *Plaintiff*,

v.

**ROBERT DE NIRO and**
**CANAL PRODUCTIONS, INC.,**

     *Defendants*.

---

**Case No. 19-cv-09156 (LJL) (KHP)**

<u>**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**</u>
<u>**MOTION FOR SANCTIONS**</u>

## TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT ........................................................................................ 1

II.    PROCEDURAL HISTORY............................................................................................... 1

III.   ARGUMENT .................................................................................................................... 3

   A.  Legal Standards .......................................................................................................... 3

     1.  Rule 11 ................................................................................................................. 3

     2.  28 U.S.C. § 1927 ................................................................................................. 4

     3.  Sanctions Under the Court's Inherent Power ...................................................... 5

   B.  Defendants' Motion Is Fatally Late ........................................................................... 5

   C.  Plaintiff's Claims Are Not "Frivolous," But Rather Well-Supported ................................ 6

     1.  The Equal Pay Claims Are Well-Supported ....................................................... 7

       i.   Plaintiff's Duties Need Not Be Identical to Those of Her Comparator ........................ 7

       ii.  Plaintiff's Duties and Mr. Harvey's Duties Overlapped ................................ 8

     2.  The New York Overtime Claim Is Well-Supported and No Exemption Applies .......... 11

       i.   Overtime Exemptions Are Narrowly Construed, and Defendants Carry the Burden of Showing That They "Clearly" and "Unmistakably" Apply ................................ 11

       ii.  Defendants Do Not Meet their Burden of Showing that Plaintiff's "Primary Duties" Involved Exempt "Administrative" or "Executive" Work ................................ 12

       iii.  Defendants Do Not Show that Plaintiff's Primary Duties Involved the Exercise of Statutory "Discretion" or "Management" .......................................................... 15

   D.  The Equal Pay and Overtime Claims Are Not Frivolous and None of Plaintiff's or Counsel's Conduct Is Sanctionable .......................................................................... 16

     1.  Plaintiff's Claims Are Not Sanctionable under Rule 11 ................................ 17

     2.  Counsel Has Not Acted in Bad Faith for Purposes of 28 U.S.C. § 1927 ...................... 19

     3.  Sanctions under the Court's Inherent Power Are Unwarranted ................................ 20

   E.  Defendants' Motion Was Filed in Bad Faith, Warranting an Award of Fees .................. 21

     1.  Defendants Distort the Factual Record .......................................................... 21

2.    Defendants Disregard and Misreport the Law ............................................... 22

3.    The Motion Was Filed for an Improper Purpose ......................................... 23

F.    In the Alternative, and at a Minimum, the Court Should Defer Its Decision until after this Litigation Is Complete ............................................................................... 24

IV.    CONCLUSION ................................................................................................... 25

## **TABLE OF AUTHORITIES**

**Cases**

*Almeida v. Bennet Auto Supply, Inc.*,

   335 F.R.D. 463 (S.D. Fla. 2020) ............................................................... 24

*Anderson v. Phoenix Beverages, Inc.*,

   2017 WL 9481014 (E.D.N.Y. July 17, 2017) ......................................... 18

*Astudillo v. U.S. News & World Report*,

   2004 WL 2075179 (S.D.N.Y. Sept. 17, 2004) ....................................... 14

*Benton v. Laborers' Joint Training Fund*,

   210 F. Supp. 3d 99 (D.D.C. 2016) .......................................................... 16

*Brands-Kousaros v. Banco Di Napoli S.P.A.*,

1997 WL 790748 (S.D.N.Y. Dec. 23, 1997) ............................................ 17

*Burke-Fowler v. Orange Cty., Fla.*,

   2005 WL 8159821 (M.D. Fla. Dec. 30, 2005) ....................................... 20

*Carpenter v. Mohawk Valley Cmty. Coll.*,

   2020 WL 1915144 (N.D.N.Y. Apr. 20, 2020) ....................................... 16

*Chiaramonte v. Animal Med. Ctr.*,

   2014 WL 3611098 (S.D.N.Y. July 22, 2014) .......................................... 8

*Choi v. Home & Home Corp.*,

   2019 WL 4193449 (E.D.N.Y. Sept. 3, 2019) ......................................... 16

*Cohen v. Equifax Info. Servs., LLC*,

   2021 WL 4393129 (S.D.N.Y. Feb. 24, 2021) ........................................................ 3, 5

*Coker v. Goldberg & Assocs. P.C.*,

   2022 WL 874719 (S.D.N.Y. Mar. 24, 2022) ........................................................ 15

*DeFrancesco v. Mirador Real Est.*,

   2019 WL 5722120 (S.D.N.Y. July 15, 2019) ........................................................ 3

*E. Gluck Corp. v. Rothenhaus*,

   252 F.R.D. 175 (S.D.N.Y. 2008).......................................................................... 4, 24

*E.E.O.C. v. Port Auth. of New York and New Jersey*,

   768 F.3d 247 (2d Cir. 2014) ................................................................................ 7

*Figueira v. Sch. Bd. of Miami-Dade Cty., Fla.*,

   2009 WL 10697979 (S.D. Fla. Sept. 16, 2009) ........................................................ 18

*Fishoff v. Coty Inc.*,

   634 F.3d 647 (2d Cir. 2011) ................................................................................ 4, 12

*Fredette v. Peter Young Hous., Indus., & Treatment*,

   2015 WL 5518424 (E.D.N.Y. Sept. 17, 2015) ........................................................ 10

*Galin v. Hamada*,

   283 F. Supp. 3d 189 (S.D.N.Y. 2017) ................................................................. 11

*Garcia v. Heady*,

   847 N.Y.S.2d 303 (3d Dep't 2007) ......................................................................... 12

*GMA Accessories, Inc. v. BOP, LLC*,

   765 F.Supp.2d 457 (S.D.N.Y. 2011) ...................................................................... 22

*Gold v. N.Y. Life Ins. Co.*,

   730 F.3d 137 (2d Cir. 2013) ......................................................................... 12, 15

*Goodwin v. MTA Bus Co.*,

   2017 WL 1082408 (E.D.N.Y. Mar. 22, 2017) ........................................................ 6

*Guanzon v. Vixxo Corp.*,

   2020 WL 619695 (D. Ariz. Feb. 10, 2020) ........................................................... 15

*Guevara v. Fla. E. Coast Ry., LLC*,

   2020 WL 5578960 (S.D. Fla. Aug. 7, 2020) .......................................................... 18

*Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*,

   2000 WL 528633 (S.D.N.Y. May 2, 2000) ........................................................... 24

*Husser v. N.Y.C. Dep't of Educ.*,

   137 F.Supp.3d 253 (E.D.N.Y. 2015) ....................................................................... 8

*Indergit v. Rite Aid Corp.*,

   2010 WL 1327242 (S.D.N.Y. Mar. 31, 2010) ................................................. 12, 16

*Jean-Louis v. N. Shore Univ. Hosp. at Plainview*,

    2007 WL 4409937 (E.D.N.Y. Dec. 14, 2007) ......................................................... 18

*Kassman v. KPMG LLP*,

    925 F. Supp. 2d 453 (S.D.N.Y. 2013) ...................................................................... 8

*Kienzle v. Gen. Motors, LLC*,

    903 F. Supp. 2d 532 (E.D. Mich. 2012) ................................................................ 11

*Kilkenny v. L. Off. of Cushner & Garvey, L.L.P.*,

    2012 WL 1638326 (S.D.N.Y. May 8, 2012) ......................................................... 16

*Kropelnicki v. Siegel*,

    290 F.3d 118 (2d Cir. 2002) ................................................................................... 3

*Lavin-McEleney v. Marist College*,

    239 F.3d 476 (2d Cir. 2001) ................................................................................... 7

*Lima v. Hatsuhana of USA, Inc.*,

    2014 WL 177412 (S.D.N.Y. Jan. 16, 2014) ......................................................... 24

*McKinney v. United Stor-All Centers LLC*,

    656 F. Supp. 2d 114 (D.D.C. 2009) ...................................................................... 15

*McLoughlin v. Altman*,

    1995 WL 640770 (S.D.N.Y. Oct. 31, 1995) .................................................. 18, 20

*McMahan v. Adept Process Servs., Inc.*,

    279 F.R.D. 356 (E.D. Va. 2011) ............................................................. 18

*Moazzaz v. MetLife, Inc.*,

    2021 WL 827648 (S.D.N.Y. Mar. 4, 2021) ........................................ 8, 10

*Moore v. Time, Inc.*,

    180 F.3d 463 (2d Cir. 1999) ................................................................... 23

*Oliveri v. Thompson*,

    803 F.2d 1265 (2d Cir. 1986) .............................................................. 4, 22

*Panora v. Deenora Corp.*,

    2021 WL 5712119 (E.D.N.Y. Dec. 2, 2021) ........................................... 6

*Parnoff v. Fireman's Fund Ins. Co.*,

    796 F. App'x 6 (2d Cir. 2019) ................................................................. 3

*Perez v. Allstate Ins. Co.*,

    2014 WL 4635745 (E.D.N.Y. Sept. 16, 2014) ....................................... 12

*Perkins v. S. New England Tel. Co.*,

    669 F. Supp. 2d 212 (D. Conn. 2009) .................................................... 14

*Pfeiffer v. Lewis Co.*,

    308 F. Supp. 2d 88 (N.D.N.Y. 2004) ....................................................... 7

*Revson v. Cinque & Cinque, P.C.*,

    221 F.3d 71 (2d Cir. 2000) ........................................................................... 4

*Riser v. QEP Energy*,

    776 F.3d 1191 (10th Cir. 2015) ................................................................... 10

*Rodick v. City of Schenectady*,

    1 F.3d 1341 (2d Cir. 1993) ..................................................... 3, 11, 16, 19

*Safe-Strap Co. v. Koala Corp.*,

    270 F. Supp. 2d 407 (S.D.N.Y. 2003) .............................................. 5, 21, 24

*Sang Lan v. Time Warner, Inc.*,

    2015 WL 4469838 (S.D.N.Y. July 13, 2015) ............................................ 24

*Scott Wetzel Servs. v. N.Y. State Bd. of Indus. Appeals*,

    682 N.Y.S.2d 304 (3d Dep't 1998) ............................................................. 12

*State of Conn. v. Ins. Co. of Am.*,

    121 F.R.D. 159 (D. Conn. 1988) ................................................................. 6

*Storey v. Cello Holdings, L.L.C.*,

    347 F.3d 370, 391 (2d Cir. 2003) ............................................................... 4

*Talwar v. Staten Island Univ. Hosp.*,

    610 F. App'x 28 (2d Cir. 2015) .................................................................. 7

*Team Obsolete Ltd. v. A.H.R.M.A. Ltd.,*

  216 F.R.D. 29 (E.D.N.Y. 2003) .................................................................. 6

*Tedeschi v. Smith Barney, Harris Upham & Co.,*

  579 F. Supp. 657 (S.D.N.Y. 1984) .................................................. 18, 19, 20

*Tomka v. Seiler Corp.,*

  66 F.3d 1295 (2d Cir. 1995) ............................................................... 7, 10

*Toussaint v. NY Dialysis Servs., Inc.,*

  230 F. Supp. 3d 198 (S.D.N.Y.) ........................................................... 6, 17

*U.S. v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am., AFL-CIO,*

  948 F.2d 1338 (2d Cir. 1991) ............................................................ 4, 5, 20

*Vaigasi v. Solow Mgmt. Corp.,*

  2016 WL 616386 (S.D.N.Y. Feb. 16, 2016) .......................................... 20, 21

*Wachter-Young v. Ohio Cas. Grp.,*

  236 F. Supp. 2d 1157 (D. Or. 2002) ....................................................... 10

*West v. Goodyear Tire & Rubber Co.,*

  167 F.3d 776 (2d Cir. 1999) ................................................................ 24

*Zurich Am. Ins. Co. v. Team Tankers A.S.,*

  811 F.3d 584 (2d Cir. 2016) ............................................................... 19

**Statutes**

28 U.S.C. § 1927 ............................................................................................... 4, 17, 19, 20

New York Labor Law § 194 ....................................................................................... 11

New York Labor Law § 663(3) .................................................................................. 12

**Rules**

Federal Rule of Appellate Procedure 38 ..................................................................... 23

Federal Rule of Civil Procedure 11 ..................................................................... passim

Federal Rule of Civil Procedure 11, Advisory Committee Note ............................... 5, 23

Federal Rule of Civil Procedure 26(f) ........................................................................ 2

Federal Rule of Civil Procedure 56 ........................................................................... 24

Local Rule 56.1 of the U.S. District Courts for the Southern and Eastern Districts of New
    York ................................................................................................................... 25

**Regulations**

12 NYCRR § 142-2.14(c)(4)(i) ................................................................................. 12

12 NYCRR § 142-2.14(c)(4)(ii) ................................................................................ 12

29 C.F.R. § 1620.14(a) .............................................................................................. 10

29 C.F.R. § 541.202(b) ............................................................................................. 15

## I.    PRELIMINARY STATEMENT

Following years of litigation, Defendants now move to sanction Plaintiff for the equal pay and overtime claims she filed some thirty (30) months ago. Their Motion is late, it improperly tries to circumvent summary judgment, and it is meritless. The Court should deny the Motion in full.

First, courts routinely deny motions for sanctions that are filed long after the allegedly sanctionable filing. The Motion is untimely, and Defendants offer no excuse for their delay.

Second, Plaintiff's claims are not frivolous, but rather well-supported. As to the equal pay claims, Mr. De Niro's assistant Dan Harvey is a viable comparator: both Plaintiff and Mr. Harvey served Mr. De Niro's personal needs and assisted with his health. To the extent their roles differed, Plaintiff had greater responsibilities than Mr. Harvey, which further supports an equal pay claim. As to the overtime claim brought under state law, the record is replete with evidence that Plaintiff functioned as a non-exempt personal assistant, handling an array of Mr. De Niro's personal needs.

Third, though the gravamen of Defendants' Motion is that the claims are meritless, even a meritless claim is not necessarily frivolous and sanctionable. Defendants do not muster any facts and they identify no cases where sanctions were issued under remotely similar circumstances.

Fourth, Defendants' Motion is replete with distortions of the factual record and the law, and it was filed for an improper purpose: discovery is nearly complete, and Defendants are improperly trying to preempt the summary judgment process through a blatant misuse of Rule 11.

The Court should deny Defendants' Motion outright or, in the alternative, defer its decision until the end of this litigation.

## II.    PROCEDURAL HISTORY

The complaint that Defendants now challenge was filed over 2.5 years ago on October 3, 2019. *See* Dkt. No. 1. Among other things, the complaint alleges that Mr. De Niro relegated

Plaintiff to an array of personal assistant tasks and routinely had Plaintiff work in excess of 60 hours per week. Dkt. No. 1 at ¶¶ 18, 25, 27. The complaint also alleges that Mr. De Niro admitted to paying a male employee more than Plaintiff because (unlike Plaintiff) he had a family to support. *Id.* ¶ 29. After being served with Plaintiff's complaint, Defendants did not make any suggestion that Plaintiff had violated Rule 11 and did not even move to dismiss any of Plaintiff's claims. Instead, Defendants filed an answer on January 21, 2020. *See* Dkt. No. 12.

As the case proceeded, Defendants (a) did not pursue any motion challenging Plaintiff's claims, (b) agreed to engage in discovery on the claims at issue here, and (c) stated that they would later challenge those claims on summary judgment. *See* Declaration of Alexandra Harwin, Esq. ("Harwin Decl.") ¶ 3, Ex. 1 (Rule 26(f) Report in which Defendants sought no limits on discovery and identified no contemplated motions) ("Ex." refers to exhibits to the Harwin Declaration).

Notably, the parties engaged in a lengthy substantive discussion on the merits of Plaintiff's equal pay and overtime claims on May 4, 2020. Harwin Decl. ¶ 3. During that meet-and-confer, Plaintiff's counsel provided Defendants' counsel with citations to legal authority supporting the equal pay claims and expressed that Plaintiff was open to suggestions from Defendants on how to streamline discovery. *Id.* Defendants' counsel never mentioned Rule 11 and represented only that they would eventually seek summary judgment. *Id.* Ultimately, Defendants did not present any contrary legal authority, they offered no suggestions to streamline discovery concerning the equal pay and overtime claims, and the parties mutually agreed to employ search terms concerning all claims and defenses in this case, including the equal pay and overtime claims. *Id.*

It was only after the deadline for production of documents (over 1.5 years later) that Defendants sent a letter asking Plaintiff to withdraw her equal pay and overtime claims. *See* Dkt. No. 113-1. Thereafter, Defendants filed various letter motions, first on December 31, 2021,

seeking to pursue sanctions as to the equal pay claims (Dkt. No. 113) and then on March 15, 2022, seeking to file a sanctions motion as to the overtime claim (Dkt. No. 175). Defendants filed their combined Motion on April 1, 2022, nearly thirty (30) months after the complaint was filed.

### III.   ARGUMENT

#### A.   Legal Standards

#### 1.   Rule 11

"Rule 11 is an extraordinary remedy to be used with extreme caution." *DeFrancesco v. Mirador Real Est.*, 2019 WL 5722120, at \*6-7 (S.D.N.Y. July 15, 2019) (Parker, M.J.) (denying sanctions, because claims were "not completely without merit") (citation omitted). Accordingly, Rule 11 is reserved for those extraordinary situations "where it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands." *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993). The Second Circuit has described the inquiry as follows:

> A pleading, motion or other paper violates Rule 11 either [1] when it has been interposed for any improper purpose, or where, [2] after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law.

*Kropelnicki v. Siegel*, 290 F.3d 118, 131 (2d Cir. 2002) (citation omitted). In short, "Rule 11 requires that the conduct [at issue] be objectively unreasonable." *Parnoff v. Fireman's Fund Ins. Co.*, 796 F. App'x 6, 9 (2d Cir. 2019). Critically, in evaluating a motion brought under Rule 11, courts "must resolve all doubts in favor of the signer." *Rodick*, 1 F.3d at 1350 (citation omitted).

The mere fact that a claim may be meritless does not make it frivolous and sanctionable. *Cohen v. Equifax Info. Servs., LLC*, 2021 WL 4393129, at \*2 (S.D.N.Y. Feb. 24, 2021) (Parker, M.J.) ("It does not follow that a grant of summary judgment automatically renders the non-prevailing party's claims frivolous and sanctionable."); *E. Gluck Corp. v. Rothenhaus*, 252 F.R.D.

175, 179 (S.D.N.Y. 2008) ("The appropriateness of sanctions is distinct from the underlying merits of a claim."). A claim is "frivolous" only if it has "no chance of success" ***and*** there is "no reasonable argument to extend, modify or reverse the law[.]" *Fishoff v. Coty Inc.*, 634 F.3d 647, 654 (2d Cir. 2011). Thus, "[m]erely incorrect legal statements are not sanctionable[,]" nor are "factual contentions" unless "utterly lacking in support." *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 388, 391 (2d Cir. 2003) (citation omitted).

Last, contrary to Defendants' claim, "[R]ule 11 ***does not*** impose a continuing obligation." *Oliveri v. Thompson*, 803 F.2d 1265, 1276 (2d Cir. 1986).[1] Defendants flatly ignore this Second Circuit precedent and falsely claim that such a continuing obligation *does* exist. Motion at 12.

### 2.    28 U.S.C. § 1927

Section 1927 authorizes sanctions against attorneys who "unreasonably and vexatiously" "multipl[y]" proceedings. Its "touchstone" is "bad faith." *U.S. v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am., AFL-CIO*, 948 F.2d 1338, 1345 (2d Cir. 1991) ("*Teamsters*"). As Defendants note, the statutory purpose is "to deter unnecessary delays," as it is "concerned only with limiting the abuse of court processes." Motion at 13 (citations omitted).

The standard is extremely high: an award under Section 1927 is proper only "when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Oliveri*, 803 F.2d at 1273. Thus, courts will not impose Section 1927 sanctions absent "clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes." *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 79 (2d Cir. 2000) (citation omitted). Furthermore, an issuance of sanctions under Section 1927 "***must*** be supported by a finding of bad faith." *Oliveri*, 803 F.2d at 1273.

---

[1] All emphasis in quoted material is added.

### 3.      Sanctions Under the Court's Inherent Power

While the Court also has the inherent power to issue sanctions based on the parties'
conduct, a "particularized showing of bad faith" is required, with "a high degree of specificity"
and "clear evidence that the challenged actions are entirely without color and are taken for reasons
of harassment or delay or for other improper purposes." *Teamsters*, 948 F.2d at 1345.

### B.      Defendants' Motion Is Fatally Late

Defendants' Motion is untimely and should be denied on grounds of unreasonable delay.

Rule 11 motions "should be served promptly after the inappropriate paper is filed, and, if
delayed too long, may be viewed as untimely." Rule 11, Advisory Committee Note. Thus, "Rule
11 motions filed at late stages of a case . . . are inappropriate." *Cohen*, 2021 WL 4393129, at *4.

> Parties that initially remain idle after a Rule 11 violation has come to their attention
> risk the denial of their subsequent Rule 11 motion on the basis of unreasonable
> delay. . . . When, as here, the "inappropriate paper" averred to is the complaint, . . .
> the party which hopes to secure sanctions for the submission of that pleading should
> move for sanctions promptly after the complaint is filed.

*Safe-Strap Co. v. Koala Corp.*, 270 F. Supp. 2d 407, 413 n.3 (S.D.N.Y. 2003) (collecting cases).

Here, Defendants took no steps to challenge Plaintiff's equal pay and overtime claims until
over two (2) years after they were filed. *Compare* Dkt. No. 1 (complaint filed on October 3, 2019)
*with* Dkt. No. 113 (letter motion of December 31, 2021, seeking to file Rule 11 motion as to equal
pay claims) *and* Dkt. No. 175 (letter motion of March 15, 2022, seeking to file Rule 11 motion as
to overtime claims). Critically, Defendants *answered* the claims rather than moving to dismiss (*see*
Dkt. No. 12), represented in the Rule 26(f) Report that "no motions are anticipated" (Ex. 1), and
sought no limitations on discovery as to the equal pay and overtime claims (*id.*).

Defendants present no authority granting a Rule 11 motion brought so late after the
challenged filing, nor can they. Indeed, courts routinely deny Rule 11 motions filed significantly
earlier than the Motion here. *Cohen*, 2021 WL 4393129, at *4 (defendant was "not entitled to

sanctions" given the "almost two years that have passed since the SAC was accepted"); *Goodwin v. MTA Bus Co.*, 2017 WL 1082408, at *4 (E.D.N.Y. Mar. 22, 2017) (same, where defendant "did not invoke Rule 11 as a basis for withdrawing the Complaint at the outset, nor did it even move to dismiss the case," and instead "exchanged discovery for over a year and then asked the court to dismiss [the] claims on summary judgment"); *Team Obsolete Ltd. v. A.H.R.M.A. Ltd.*, 216 F.R.D. 29, 44 (E.D.N.Y. 2003) (same, after delay of one year: "If the claims on their face were patently frivolous or without any basis in existing law (as opposed to containing factual allegations that only subsequent discovery would reveal lacks support), [defendant] could have moved far sooner."); *State of Conn. v. Ins. Co. of Am.*, 121 F.R.D. 159, 162 (D. Conn. 1988) (same, because sanctions motion was "filed a year after removal" with "no reason for the[ ] unreasonable delay").

Defendants offer no excuse (and have none) for not bringing their Motion earlier.

### C.    Plaintiff's Claims Are Not "Frivolous," But Rather Well-Supported

Defendants offer minimal legal analysis. *See* Motion at 14-18. Their brief does not discuss the very high threshold for a court to declare a claim "frivolous," nor does it present a single case where claims were found frivolous under circumstances remotely similar to these.

Especially given the fact-intensive inquiries involved, courts regularly refuse to find that even meritless discrimination and overtime claims rise to the level of "frivolous." *E.g.*, *Toussaint v. NY Dialysis Servs., Inc.*, 230 F. Supp. 3d 198, 223 (S.D.N.Y.), *aff'd*, 706 F. App'x 44 (2d Cir. 2017) (where discrimination plaintiff failed to identify a proper comparator, claims were "meritless" but not frivolous, because "the law is ***not so definitive*** that no reasonable attorney could conceive of at least an argument against summary judgment," and recognizing that "***particularly in a discrimination case***," sanctions are inappropriate if any "conceivable" argument supports the claims); *cf. Panora v. Deenora Corp.*, 2021 WL 5712119, at *3 (E.D.N.Y. Dec. 2, 2021) (denying Rule 11 motion as to meritless wage claim under New York Labor Law, even

where judge told counsel that the claim "seemed unlikely to succeed," as the theory was "creative" and "courts should not sanction lawyers merely for trying to stretch the reach of a statute").

### 1.     The Equal Pay Claims Are Well-Supported

### i.        Plaintiff's Duties Need Not Be Identical to Those of Her Comparator

To prevail under the Equal Pay Act, a plaintiff must show that "[1] the employer pays different wages to employees of the opposite sex; [2] the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and [3] the jobs are performed under similar working conditions." *Lavin-McEleney v. Marist College*, 239 F.3d 476, 480 (2d Cir. 2001) (citation omitted). As to the second element (the only element at issue here),[2] the job need not be "identical" to the higher paid position: the two positions need only be "substantially equal in skill, effort, and responsibility," which is a fact-intensive "question for the jury." *Id.* (citation omitted).[3]

In deciding whether positions are "substantially equal," the trier of fact must examine "job content": "title" is irrelevant. *E.E.O.C. v. Port Auth. of New York and New Jersey*, 768 F.3d 247, 255 (2d Cir. 2014). In comparing positions, a plaintiff may prevail where the duties "***partially overlap***." *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1311 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998) (reversing summary judgment, even though plaintiff and comparators had different responsibilities and levels of client interaction, because their duties "partially overlap[ped]" and they shared a similar knowledge base). A plaintiff can also prevail by showing, *e.g.*, that she and her comparator "shared supervisors" or "performed

---

[2] As to the first element, Defendants do not dispute they paid Mr. Harvey more than Plaintiff. As to the third element, Defendants claim in a footnote that Plaintiff and Mr. Harvey did not have "similar working conditions," Motion at 16 n.12, citing *Pfeiffer v. Lewis Co.*, 308 F. Supp. 2d 88 (N.D.N.Y. 2004). But the *Pfeiffer* plaintiff worked in a "secure" radio room, and her comparator worked "with [ ] inmates." Here, Plaintiff and Mr. Harvey both worked in safe settings, regularly on the move, running errands and traveling.

[3] Plaintiff also asserts an equal pay claim under New York law, which "is analyzed under the same standards" as the Equal Pay Act. *Talwar v. Staten Island Univ. Hosp.*, 610 F. App'x 28, 29 (2d Cir. 2015).

the same tasks." *Moazzaz v. MetLife, Inc*., 2021 WL 827648, at *6 (S.D.N.Y. Mar. 4, 2021).

ii.     **Plaintiff's Duties and Mr. Harvey's Duties Overlapped**

Defendants present a distorted account of the record, with repeated falsehoods concerning Plaintiff's position and job duties. Defendants claim, falsely, that Plaintiff "asserted" in discovery that she "lacked sufficient knowledge or information as to whether her job and Dan [Harvey]'s shared any material duties or responsibilities[.]" Motion at 7. In fact, Plaintiff denied that assertion and stated only that she did not know the "full extent" of his duties. *See* Dkt. No. 198-24 at 7-8, 11. It is normal in equal pay cases (or any kind of litigation, for that matter) for a party to begin with a limited amount of information. *See* Dkt. No. 110 at 9:12-23 (Court conference of December 15, 2021, where the Court noted that Defendants can ask Plaintiff about Mr. Harvey's duties at her deposition).[4] And contrary to Defendants' claim that Plaintiff was "unable to recall" Mr. Harvey's job duties at her deposition, Motion at 8-9, Plaintiff *did* testify about what she understood those duties to be. *See* Dkt. No. 160 at 211:15-212:12.

Ultimately, Mr. Harvey was a fair comparator for Plaintiff to identify, for multiple reasons. The two employees shared a supervisor, they performed job duties that overlapped, and Plaintiff's job required at least as much skill, effort, and responsibility as Mr. Harvey's did.

First, Plaintiff and Mr. Harvey have always reported to the same supervisor: Mr. De Niro. Dkt. No. 160 at 264:23-265:8; Dkt. No. 198-5 at 71:14-17. "[S]upervis[ion] by the same manager" is a factor supporting the equality of two positions. *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 472 (S.D.N.Y. 2013); *Husser v. N.Y.C. Dep't of Educ.*, 137 F.Supp.3d 253, 267 (E.D.N.Y. 2015) ("Factors that are considered include . . . whether they have the same supervisor[.]").

---

[4] In any event, such knowledge is not required: a complaint need not even *identify* a comparator. *Chiaramonte v. Animal Med. Ctr.*, 2014 WL 3611098, at *5 (S.D.N.Y. July 22, 2014) ("[T]he Second Circuit has not adopted the requirement of identifying a specific comparator.").

Second, Plaintiff and Mr. Harvey had overlapping duties. Both were on call for Mr. De Niro to handle his personal needs. Plaintiff was Mr. De Niro's lead assistant, and her duties involved handling whatever personal needs of his arose any given day. *See* Dkt. No. 160 at 177:19-24; Ex. 2 at 98:18-19, 156:19-176:14 (Mr. De Niro testifying as to Plaintiff's all-encompassing range of daily duties). Mr. Harvey handled overlapping tasks: after Mr. De Niro's former assistant left Canal, Mr. Harvey began performing many of the assistant tasks that she previously performed. Dkt. No. 198-13 at 225:12-226:8 (testimony from Mr. De Niro's former lead assistant); *see also* Ex. 2 at 433:8-13 (testimony from Mr. De Niro confirming this). Indeed, Mr. Harvey testified that he was almost always available for Mr. De Niro: they spoke and met almost every day, and when Mr. De Niro was on set, he would wait around to see if Mr. De Niro needed anything. Dkt. No. 198-5 at 73:21-24, 75:21-24, 82:19-22, 104:11-13.

Third, Plaintiff and Mr. Harvey shared particular responsibilities in assisting Mr. De Niro with his health. *See* Ex. 2 at 158:2 (Mr. De Niro testifying as to Plaintiff helping with his medications); Dkt. No. 198-5 at 88:8-9 (Mr. Harvey describing his job duty of monitoring Mr. De Niro's health); *see also* Ex. 3 (emails involving Mr. Harvey, Plaintiff, Mr. De Niro, and Mr. De Niro's doctor, concerning medical advice); Ex. 4 (emails in which Plaintiff and Mr. Harvey followed up with Mr. De Niro's doctor regarding his medication), Ex. 5 (email from Plaintiff to Mr. De Niro, reminding him to take medication); Ex. 6 (text message from Mr. De Niro to Plaintiff, asking about his medications). Additionally, both Plaintiff and Mr. Harvey accompanied Mr. De Niro to medical appointments. *See* Ex. 2 at 167:20-22; Dkt. No. 198-5 at 82:11-18; 157:12-17.

Fourth, Plaintiff and Mr. Harvey had overlapping duties with regard to Mr. De Niro's exercise equipment. Mr. De Niro's practice was to have Mr. Harvey and Plaintiff work together to ensure that his vacation homes and hotels had sufficient and proper exercise equipment. *See* Dkt.

No. 198-5 at 64:13-17 (Mr. Harvey testifying that his job included ensuring that Mr. De Niro had the exercise equipment he needed at his homes and on the road); Dkt. No. 198-3 at 19:11 (Plaintiff testifying as to the same); *see also* Ex. 7 (emails between Plaintiff, Mr. Harvey, and Mr. De Niro discussing the exercise equipment at a prospective rental location for Mr. De Niro).

Clearly, Plaintiff's and Mr. Harvey's duties at least "partially overlap[ped]" and required a shared knowledge base regarding Mr. De Niro's health and personal needs. *See Tomka*, 66 F.3d at 1311. Under the Second Circuit's standards, this is ample information for the Court to conclude that Plaintiff's equal pay claims are not frivolous. *C.f. also Freyd v. Univ. of Oregon*, 990 F.3d 1211, 1222 (9th Cir. 2021) (noting that "pick[ing] through the facts" with "granularity" would "gut the Equal Pay Act for all but the most perfunctory tasks").

Even if Plaintiff's job involved substantial additional office duties as Defendants argue (*see* Motion 4-6), that would not defeat her equal pay claim. *See* 29 C.F.R. § 1620.14(a) ("[D]ifferences in skill, effort or responsibility which might be sufficient to justify a finding that two jobs are not equal within the meaning of the EPA if the greater skill, effort, or responsibility has been required of the higher paid sex, do not justify such a finding where the greater skill, effort, or responsibility is required of the lower paid sex."). Courts in the Second Circuit and beyond have repeatedly reached this same conclusion. *See Moazzaz*, 2021 WL 827648, at *7 (female employee with "greater responsibilities" and "extra work" may prevail on equal pay claim); *Fredette v. Peter Young Hous., Indus., & Treatment*, 2015 WL 5518424, at *1 & n.1 (E.D.N.Y. Sept. 17, 2015) (same); *see also Riser v. QEP Energy*, 776 F.3d 1191, 1197 (10th Cir. 2015) ("[T]he fact that a female employee performed additional duties beyond a male comparator does not defeat the employee's prima facie case under the EPA."); *Wachter-Young v. Ohio Cas. Grp.*, 236 F. Supp. 2d 1157, 1162 (D. Or. 2002) (("[I]t is axiomatic that the fact that males performing jobs with less

10

responsibility receive higher pay is sufficient to establish plaintiff's prima facie case.").[5]

Thus, insofar as Defendants claim that Mr. Harvey was just a fitness trainer and that Plaintiff was an "executive" with broad operational duties, including financial projects, office management, and film production (Motion at 4-6), Plaintiff can still prevail on her equal pay claim by showing her role involved greater "skill," "effort," and "responsibility" than Mr. Harvey's.[6]

Here, where "all doubts" must be resolved in Plaintiff's favor, *Rodick*, 1 F.3d at 1350 (citation omitted), there is ample support for the equal pay claims to deny Defendants' Motion.

### 2.   The New York Overtime Claim Is Well-Supported and No Exemption Applies

### i.   Overtime Exemptions Are Narrowly Construed, and Defendants Carry the Burden of Showing That They "Clearly" and "Unmistakably" Apply

Defendants' challenge to the overtime claim is premised on their affirmative defenses, *i.e.*, the "executive" and "administrative" exemptions under the New York Labor Law.[7] "Where, as here, the viability of a plaintiff's claim turns on the applicability of an affirmative defense, the standard for imposing sanctions is arguably even higher." *Galin v. Hamada*, 283 F. Supp. 3d 189, 201 (S.D.N.Y. 2017), *aff'd*, 753 F. App'x 3 (2d Cir. 2018).

For the "executive" exemption to apply, Defendants must prove that Plaintiff (a) had *primary* duties of "management," (b) directed two (2) or more employees, (c) had "authority" or

---

[5] *See also Kienzle v. Gen. Motors, LLC*, 903 F. Supp. 2d 532, 546 (E.D. Mich. 2012) ("[I]t defies reason and logic to suggest that an employer may defend a case of wage discrimination under the EPA by proving that a woman works *more* but is paid *less* than her male peers.").

[6] Plaintiff also worked longer hours than Mr. Harvey. Mr. Harvey testified that that he worked up to five (5) hours per day, *i.e.*, some 35 hours per week, for 330 days per year. Dkt. No. 198-5 at 37:24, 63:24, 87:4. Plaintiff worked an average of 64 hours per week, generally seven (7) days a week. *See* Harwin Decl ¶ 11; Ex. 8; Dkt. No. 198-3 at 16:18-23, 83:2-21, 234:11-20, 236:20-25; Ex. 2 at 92:9-93:1, 93:21-95:6 (Mr. De Niro testifying to talking with Plaintiff throughout the day, and having her work early, late, weekends, and holidays); *see also* Ex. 9 (back-to-back emails from Mr. De Niro after 9:00 p.m., asking Plaintiff to call him); Ex. 10 (work emails between Plaintiff and Mr. De Niro on a Sunday after 10:00 p.m.).

[7] Defendants additionally claim that a "highly-compensated" exemption applies. *See* Motion at 18. But that exemption exists only under federal law, not the New York Labor Law. *See* New York Labor Law § 194.

11

"particular weight" in hiring and firing, *and* (d) regularly exercised "discretionary powers." 12 NYCRR § 142-2.14(c)(4)(i). For the "administrative" exemption to apply, Defendants must prove that Plaintiff (a) had *primary* duties related to "management policies or general operations," (b) "customarily and regularly exercise[d] discretion and independent judgment," *and* (c) "regularly and directly assist[ed] [her] employer[.]" 12 NYCRR § 142-2.14(c)(4)(ii).

The exemptions are "narrowly construed against the employer," *Garcia v. Heady*, 847 N.Y.S.2d 303, 305 (3d Dep't 2007), and "applied only where the employee fits plainly and unmistakably within its terms," *Scott Wetzel Servs. v. N.Y. State Bd. of Indus. Appeals*, 682 N.Y.S.2d 304, 305 (3d Dep't 1998). Further, "the employer bears the ultimate burden of establishing that its employee falls within the exemption." *Id.*

The focus is on an employee's "primary duty," *Perez v. Allstate Ins. Co.*, 2014 WL 4635745, at *4-5 (E.D.N.Y. Sept. 16, 2014), and courts must consider the "actual primary duties, not . . . title or position." *Gold v. N.Y. Life Ins. Co.*, 730 F.3d 137, 145 (2d Cir. 2013). Resolving disputes regarding overtime exemptions involve an exceedingly "difficult and intensive factual inquiry." *Indergit v. Rite Aid Corp.*, 2010 WL 1327242, at *6 (S.D.N.Y. Mar. 31, 2010).

### ii.   Defendants Do Not Meet their Burden of Showing that Plaintiff's "Primary Duties" Involved Exempt "Administrative" or "Executive" Work

Defendants bear the burden of proving that some statutory exemption applies throughout the nearly six (6) years of Plaintiff's employment that the overtime claim spans (*see* New York Labor Law § 663(3)). Defendants do not prove in their Motion that Plaintiff's "primary duties" fell "plainly and unmistakably" within the exemptions, let alone that Plaintiff's claim has "no chance of success" and is thus "frivolous." *See Fishoff*, 634 F.3d at 654.

At his deposition, Mr. De Niro plainly described Plaintiff as his personal assistant. *See* Ex.

2 at 98:1, 167:25-168:4.[8] He testified about the broad array of Plaintiff's (non-exempt) job duties, including that she: bought presents for his friends and relatives, *id.* at 97:18-98:3, 159:24-160:3; purchased and set up all his furniture, *id.* at 98:8-19, 161:25-162:6; handled his prescription medication refills, *id.* at 158:2; organized his closet, *id.* at 157:16-18; managed his schedule, *id.* at 157:20-23; arranged flower deliveries, *id.* at 158:16-18; organized and decorated his parties, *id.* at 158:19-21; arranged his private jet travel, *id.* at 158:22-24; ran errands, *id.* at 159:3-6; managed his contact lists, *id.* at 160:5-8; researched restaurants, *id.* at 160:23-25; vetted vacation and home rentals, *id.* at 161:3-8; scouted hotels, *id.* at 161:20-24; vetted housekeepers, *id.* at 162:7-9; bought house plants and planters, *id.* at 162:10-18; shopped with him for antiques, *id.* at 162:19-21; selected and framed photos for his home, *id.* at 163:10-15; bought vacuum cleaners for his home, *id.* at 163:19-21; found his new home and helped him unpack when he moved in, *id.* at 165:19-21, 171:4-7; helped him design room layouts and pick paint colors, *id.* at 172:10-16; assisted his former partner with personal matters, *id.* at 164:8-15; collected evidence for his divorce proceedings, *id.* at 165:22-167:6; and accompanied him to doctors' appointments and filled out medical forms, *id.* at 167:20-24, 169:3-13.

Plaintiff's extensive non-exempt responsibilities are confirmed in voluminous documents and Plaintiff's own testimony. *See* Dkt. No. 160 at 36:21-38:3, 86:4-15, 87:4-6, 99:23-100:3, 177:19-23 (describing duties including furnishing Mr. De Niro's home, shopping for gifts, helping with his children's birthdays and schedules, handling his prescriptions and medications, being on-call, domestic housework, *e.g.*, vacuuming, organizing closets, washing bed sheets, and various

---

[8] This description was echoed by Mr. De Niro's girlfriend (Ex. 11 at 128:10-24) and his former lead assistant (Dkt. No. 198-13 at 267:12), who both described Plaintiff as Mr. De Niro's assistant.

other errands).[9] Given these duties (which Mr. De Niro agreed were a *significant* portion of Plaintiff's work, Ex. 2 at 167:25-168:4), Defendants cannot show that the overtime exemptions apply, much less satisfy the extraordinary burden they face on a sanctions motion.

Defendants present just two arguments as to the overtime claim, both with faulty premises.

First, Defendants argue that Plaintiff is overtime exempt because she *also* exercised duties at the Canal office. But Defendants do not show that Plaintiff's office tasks comprised her ***primary*** duties. "Where an employee performs both exempt and non-exempt duties, ***all of the work is treated as non-exempt***." *Astudillo v. U.S. News & World Report*, 2004 WL 2075179, at *2 (S.D.N.Y. Sept. 17, 2004).

Second, Defendants rely heavily on a handful of cherry-picked documents and facts that are entitled to little weight. Motion at 4-5 (discussing two emails and a draft recommendation letter in which Plaintiff allegedly "self-touted several of her executive functions"); *see also* Dkt. Nos. 198-9 (email about V.P. title), 198-10 (email with Mr. De Niro's son), 198-12 (recommendation letter). These documents, all from near the end of Plaintiff's employment, do not speak to the nearly six (6) year period that her overtime claim spans. In any event, the documents merely reflect Plaintiff's ongoing (though ultimately unsuccessful) efforts to realign her role away from the menial, personal assistant duties she performed. Obviously, no employee would include washing bed sheets or picking up prescriptions in a proposal for a V.P. title or a draft recommendation letter. *Cf. Perkins v. S. New England Tel. Co.*, 669 F. Supp. 2d 212, 219 n.3 (D. Conn. 2009)

---

[9] Documents also depict Plaintiff's primary duties as a personal assistant. *E.g.*, Ex. 12 (organizing furniture deliveries to Mr. De Niro's cousin); Ex. 13 (email from Plaintiff to Mr. De Niro regarding planters); Ex. 14 (same, regarding Mr. De Niro's new bed); Ex. 15 (same, regarding schooling for Mr. De Niro's child); Ex. 16 (emails from Plaintiff organizing private jet travel); Ex. 17 (email from Mr. De Niro to his son, explaining that Plaintiff handles his schedule); Ex. 18 (emails between Plaintiff and Mr. De Niro regarding gift shopping); Ex. 19 (emails between Plaintiff and hotel staff member, explaining needs for Mr. De Niro's upcoming stay, including precise instructions on how to make his coffee and martinis); Ex. 20 (emails from Mr. De Niro and his girlfriend to Plaintiff, asking her to buy mattress sanitizers and vacuums).

(rejecting defendants' reliance on plaintiffs' resumes as it relates to proving an exemption, because the inquiry "does not depend on an employee's general characterization of his or her job in a resume designed to enhance the employee's duties and responsibilities"). Notably, Mr. De Niro's son treated Plaintiff as his father's personal assistant and mocked her for claiming to be involved in financial matters. Dkt. No. 198-10. Defendants also stress the V.P. title that Plaintiff held at the end of her employment. But titles are irrelevant in the analysis, *Gold*, 730 F.3d at 145, and were irrelevant to Mr. De Niro himself. He testified that the title meant nothing: in his view, Plaintiff wanted the title as she thought it would help her *become* an executive. Ex. 2 at 85:8-10; 109:3-11.

### iii.     Defendants Do Not Show that Plaintiff's Primary Duties Involved the Exercise of Statutory "Discretion" or "Management"

Beyond the fact that Plaintiff's "primary duties" were outside the office, Defendants cannot show the "discretion" element of the exemptions (let alone the "management" element).[10] Typically, the "discretion" analysis considers ten (10) non-exhaustive factors (*see* 29 C.F.R. § 541.202(b)): Defendants do not even discuss these. In any event, Plaintiff did not have the authority to bind the business or shape its decisions and practices: she served at Mr. De Niro's command, and she did not "run" the business.  Indeed, Mr. De Niro testified that his approval was required on all matters of significance. Ex. 2 at 129:6-23; *see also supra* footnote 10. *See Coker v. Goldberg & Assocs. P.C.*, 2022 WL 874719, at *3-4 (S.D.N.Y. Mar. 24, 2022) (denying motion to dismiss executive assistant's overtime claim because "discretion and independent judgment"

---

[10] An assistant meets the "management" element only where she has "broad authority to act in place of her boss" and engages in "complicated, macro-level planning, assessment, and advising." *Guanzon v. Vixxo Corp.*, 2020 WL 619695, at *7 (D. Ariz. Feb. 10, 2020) (citations omitted). Here, Plaintiff required Mr. De Niro's approval for nearly everything – *see, e.g.*, Dkt. No. 198-3 at 66:2-7, 86:16-24, 223:14-24; Ex. 2 at 126:20-22, 127:5-7, 127:18-20, 128:3-6, 128:18-20, 129:6-23 (Mr. De Niro testifying to his control over personnel) – and Defendants do not try to show otherwise. Further, Defendants' claim that Plaintiff was in charge of the office, Motion at 6, is irrelevant: "the mere fact that an employee [is] 'in charge' does not necessarily mean that her primary duty involved the exercise of management-related responsibilities." *McKinney v. United Stor-All Centers LLC*, 656 F. Supp. 2d 114, 124 (D.D.C. 2009).

does not include "mechanical, repetitive, recurrent or routine work," and defendants did not dispute that in addition to office work, she also performed personal errands for the company's principal, *e.g.*, "to assist [his] mother and to schedule personal appointments"); *Kilkenny v. L. Off. of Cushner & Garvey, L.L.P.*, 2012 WL 1638326, at *4 n.5 (S.D.N.Y. May 8, 2012) (secretarial duties non-exempt, because "discretion" requires primary duties involving "decision-making capacity on matters of significance"); *Benton v. Laborers' Joint Training Fund*, 210 F. Supp. 3d 99, 113-14 (D.D.C. 2016) (denying summary judgment given conflicting evidence on degree of plaintiff's authority to make discretionary decisions without input from her supervisor).

To conclude, exemption-based defenses present a difficult factual inquiry, and often cannot be decided even at summary judgment. *Indergit*, 2010 WL 1327242, at *6 ("Many courts have held that resolving this difficult and intensive factual inquiry is inappropriate at summary judgment.").[11] Defendants present only a few cherry-picked facts and a conclusory one-page argument (Motion at 17-18) that *insists* that the exemptions apply, without legal analysis. They do not address, much less distinguish, the mountains of evidence showing Plaintiff's primary duties to be those of a personal assistant. Here, where "all doubts" must be resolved in Plaintiff's favor, *Rodick*, 1 F.3d at 1350 (citation omitted), Defendants have not shown that the overtime claim is meritless, let alone carried their burden of proving it frivolous.

### D. The Equal Pay and Overtime Claims Are Not Frivolous and None of Plaintiff's or Counsel's Conduct Is Sanctionable

As outlined above, Plaintiff's claims are entirely well-supported. And critically, Defendants do not make the necessary particularized showing to warrant sanctions. They lump

---

[11] *See also Choi v. Home & Home Corp.*, 2019 WL 4193449, at *2 (E.D.N.Y. Sept. 3, 2019) ("[E]ven where there has been full discovery, courts are often reluctant to grant summary judgment based on an exemption."); *Carpenter v. Mohawk Valley Cmty. Coll.*, 2020 WL 1915144, at *6 (N.D.N.Y. Apr. 20, 2020) (denying summary judgment where the "primary duties are in dispute," because the "primary-duty determination is highly context specific and depends on all the facts in a particular case" (citation omitted).

together all three bases of authority (Rule 11, Section 1927, inherent power) in just one (1) page of merged analysis (Motion at 18-19) with no support or discussion of relevant case law.

### 1.     Plaintiff's Claims Are Not Sanctionable under Rule 11

The gravamen of Defendants' Motion is that the claims are *meritless*. Motion at 14-18. But even if that were so, the Motion should still be denied. There is a profound gulf between a meritless claim and a sanctionable one, yet Defendants offer no argument or evidence showing why that would make the claims "frivolous" for purposes of Rule 11, and further, Defendants allege no "bad faith" conduct other than the filing of the Complaint. Defendants' request for Rule 11 sanctions must be denied, because Plaintiff brought this suit in good faith and her claims are "warranted by existing law" and/or supported "by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2).[12]

Courts regularly reject requests for Rule 11 sanctions on discrimination and equal pay claims, *even where a plaintiff completely fails to identify a comparator. E.g., Brands-Kousaros v. Banco Di Napoli S.P.A.*, 1997 WL 790748, at *6 (S.D.N.Y. Dec. 23, 1997) (denying Rule 11 motion, even where plaintiff failed to "recite[ ] that any male employee was more highly compensated for performing work substantially similar to the work that she performed"); *Toussaint*, 230 F. Supp. 3d at 223 (same, where discrimination plaintiff failed to identify a similarly situated comparator, because "the law is not so definitive that no reasonable attorney could conceive of at least an argument against summary judgment," and recognizing that "particularly in a discrimination case," sanctions are inappropriate so long as any "conceivable" argument supports the claims); *Anderson v. Phoenix Beverages, Inc.*, 2017 WL 9481014, at *17,

---

[12] Equal pay and overtime claims present fact-intensive and elastic inquiries: the applicability of overtime exemptions is "not distinctly drawn," *McMahan*, 279 F.R.D. at 361, and the bounds of a suitable comparator are "not so definitive," *Toussaint*, 230 F. Supp. 3d at 223. Thus, a claim that requires extending the scope of apt comparators or overtime exemptions is not sanctionable, where the argument is "conceivable." *Id.*

25 (E.D.N.Y. July 17, 2017) (same, even where plaintiff "provide[d] no evidence pertaining to similarly situated" employees), *report and recommendation adopted*, 2017 WL 4767447 (E.D.N.Y. Sept. 30, 2017); *Jean-Louis v. N. Shore Univ. Hosp. at Plainview*, 2007 WL 4409937, at *10-11 (E.D.N.Y. Dec. 14, 2007) (same, where evidentiary basis for comparator "was extremely thin," because plaintiff, at the time of filing, did not believe the discrimination claim was frivolous and "appear[ed] to have believed" a comparator existed).[13] Likewise, sanctions are rarely appropriate for overtime claims. *See, e.g.*, *McMahan v. Adept Process Servs., Inc.*, 279 F.R.D. 356, 361 (E.D. Va. 2011) (denying sanctions as to meritless overtime claim, because limits of exemptions are "***not distinctly drawn***," and depend "a good deal upon the facts in each case, especially upon the character of the work that is principally engaged in").

Tellingly, Defendants cite no case where sanctions were issued in any remotely similar context. In fact, in the portion of their argument regarding application of sanctions, *see* Motion at 18-19, Defendants muster only one case involving Rule 11: *Tedeschi v. Smith Barney, Harris Upham & Co.*, 579 F. Supp. 657, 661 (S.D.N.Y. 1984).[14] *Tedeschi* is almost forty-years-old and it is inapposite. There, plaintiffs' claims regarding an unsuccessful arbitration were almost all "patently without substance and color of law," and counsel's conduct was "particularly flagrant" as he had represented the plaintiff at the underlying arbitration and thus necessarily knew that the

---

[13] *See also Figueira v. Sch. Bd. of Miami-Dade Cty., Fla.*, 2009 WL 10697979, at *1 (S.D. Fla. Sept. 16, 2009) (denying Rule 11 motion where plaintiff "could not point to a comparator," because frivolity requires "fail[ure] to introduce any evidence to support their claims" and plaintiff did "present some evidence"); *Guevara v. Fla. E. Coast Ry., LLC*, 2020 WL 5578960, at *4-5 (S.D. Fla. Aug. 7, 2020) (denying fee-shifting as plaintiff had "some evidence," even if he "had not identified a comparator in all relevant respects").

[14] Rule 11 sanctions were also awarded in *McLoughlin v. Altman*, 1995 WL 640770 *2-3 (S.D.N.Y. Oct. 31, 1995), which Defendants discuss as to Section 1927. In any event, in *McLoughlin*, "virtually all . . . arguments [we]re legally insupportable," plaintiff "attempt[ed] to re-litigate matters already decided," made absurd arguments such as that he and his mother were a "protected class," "fail[ed] to properly plead a single element . . . manifesting a total lack of legal research," and made arguments that the court had already ruled on as "improbable" and for which the court had warned counsel to consult Rule 11. *Id.* at *2.

asserted facts had no basis. *Id.* at 661 ("This was not a case where the attorney had to rely upon information received from the client and yet to be established."). Ultimately, "[n]o reasonable attorney could have concluded that allegations supporting the claims might be established." *Id.*[15]

Ultimately, Plaintiff's claims are well-founded. But, if the Court detects any error and finds them meritless, it must resolve "all doubts in favor of the signer," *Rodick*, 1 F.3d at 1350 (citation omitted), and should not make the unjustified and unsupported leap to find them "frivolous."

## 2.    Counsel Has Not Acted in Bad Faith for Purposes of 28 U.S.C. § 1927

Section 1927 is not a proper mechanism to challenge allegedly frivolous claims: Rule 11 serves that purpose. Section 1927 is focused on the distinct issue of bad faith, *i.e.*, whether counsel has engaged in abuse, delays, or other misconduct. Defendants identify no such behavior.

Defendants argue merely that Plaintiff included the equal pay and overtime claims "as part of a strategy to expand the scope of discovery and increase the costs of defense." Motion at 18. This is preposterous: Plaintiff's claims were pled in good faith for the purpose of obtaining relief under those statutes. In addition, Plaintiff expressed a clear willingness to streamline discovery. Harwin Decl. ¶ 3. In any event, Defendants do not cite any case finding that a frivolous claim warrants Section 1927 sanctions because of a resulting increase in the scope of discovery and costs of defense. Such a rule would not make sense, because then any frivolous and sanctionable claim under Rule 11 would trigger sanctions under Section 1927 as well.

Section 1927 is for bad faith conduct (not frivolous filings), and courts do not generally use it as a proxy for Rule 11. *See Zurich Am. Ins. Co. v. Team Tankers A.S.*, 811 F.3d 584, 591 (2d Cir. 2016) (denying Section 1927 sanctions, as the party "tie[d] its reasoning, however flawed, to recognizable legal concepts" and there was no showing of "bad faith"); *Burke-Fowler v. Orange*

---

[15] The decision in *Tedeschi* also relied on counsel's misconduct: "vicious," "mendacious allegation[s]" against defense counsel, lateness at hearings, violation of stipulations, and more. *Id.* at 661-63.

*Cty., Fla.*, 2005 WL 8159821, at *4 (M.D. Fla. Dec. 30, 2005) (same, for failure to identify comparator, because although the "comparators' situations were distinguishable (or insufficiently presented and therefore warranting no discussion)," such failure was not sanctionable conduct).

Defendants present only one case in relation to Section 1927, *see* Motion at 19 (citing *McLoughlin v. Altman* and noting that fees were awarded under Section 1927 because of "counsel's persistence in advancing legal positions that the court had previously found meritless." 1995 WL 640770 (S.D.N.Y. Oct. 31, 1995)). But in *McLoughlin*, the attorney had "fail[ed] to properly plead a single element" of the claim, "manifesting a total lack of legal research," and advanced legal arguments that the court had already *ruled* on as "improbable." *Id.* at *2 (citation omitted). Here, Defendants do not identify any part of the Complaint that was inadequately pled or any bad faith behavior by counsel, such as defiance of any of the Court's rulings in this case.[16]

### 3.    Sanctions under the Court's Inherent Power Are Unwarranted

As for sanctions under the Court's inherent power, Defendants have not made a "particularized showing of bad faith" with a "high degree of specificity" and "clear evidence that the challenged actions are entirely without color and are taken for reasons of harassment or delay or for other improper purposes." *Teamsters*, 948 F.2d at 1345 (citation omitted). As with their request under Section 1927, Defendants do not even identify the allegedly improper "actions."

Defendants cite just one case involving inherent power sanctions. *Vaigasi v. Solow Mgmt. Corp.*, 2016 WL 616386 (S.D.N.Y. Feb. 16, 2016). *Vaigasi* has no bearing here: it deals with discovery sanctions against a *pro se* plaintiff who engaged in extreme bad faith conduct "beyond the bounds of reason" (*id.* at *22), including serving some "1,100 document requests," many

---

[16] Section 1927 sanctions were also awarded in *Tedeschi*, which Defendants mention with regard to Rule 11. In any event, counsel in *Tedeschi* engaged in extreme behavior, *e.g.*, making "reckless and mendacious allegation[s]" against defense counsel and "repeatedly fail[ing] to attend sessions on time" or "adhere to stipulations." 579 F. Supp. 661-63. Here, counsel has always been well-behaved, proper, and professional.

"lack[ing] even the remotest connection to [his] claims" (*id.* at *19), "disobe[ying]" court orders, and engaging in a litany of "obstructive behavior," such as taking four meritless interlocutory appeals (*id.* at *21-22). No such behavior occurred here.

### E.   Defendants' Motion Was Filed in Bad Faith, Warranting an Award of Fees

The Court should deny the Motion and award Plaintiff her costs incurred in opposing it. *See* Fed. R. Civ. P. 11(c)(2) (permitting an award of incurred fees and expenses to the prevailing party). Fees are warranted where, as here, the motion is "not well grounded in fact or law, or is filed for an improper purpose." *Safe-Strap Co.*, 270 F. Supp. 2d at 421.

### 1.   Defendants Distort the Factual Record

Defendants distort the factual record beyond the bounds of fair or proper advocacy.

First, as to the equal pay claims, Defendants claim that Plaintiff "asserted" in discovery that she "lacked sufficient knowledge or information as to whether her job and Dan [Harvey]'s shared any material duties or responsibilities." Motion at 7. As mentioned above, that is false: Plaintiff "denied" that request to admit: she admitted only that she did not know the "full extent" of his duties. Dkt. No. 198-24 at 7-8, 11. Defendants grossly mischaracterize the record.

Second, Defendants falsely claim that at Plaintiff's deposition, she was "unable to recall what [Mr. Harvey] did," Motion at 8-9 (citing Dkt. No. 160 at 210, 228-29, 243-44, 256-57). Those pages of testimony do not support that claim. In any event, Defendants ignore the ensuing pages of the transcript where Plaintiff outlined Mr. Harvey's duties. *See* Dkt. No. 160 at 211:15-212:12.

Third, Defendants claim that Plaintiff's work "handling Mr. De Niro's schedule, messages, maintaining birthday and Christmas lists, and selecting presents as well as any other tasks Mr. De Niro gave her" were "first-year responsibilities." Motion at 4 (citing Dkt. No. 160 at 177:13-18). But those duties continued "***throughout the entire 11 years***" of employment, not just her "first year," as ample testimony and documents show. *See* Dkt. No. 160 at 86:4-18.

Fourth, Defendants mislead by "padding" their factual claims with non-supportive record citations. For example, Defendants cite the testimony of Mr. De Niro's former lead assistant to support the claim that Plaintiff "managed" Canal's "personnel." Motion at 6 (citing Dkt. No. 198-13 at 261-67). But those pages do not contain any testimony that Plaintiff managed "personnel." As another example, Defendants cite two emails to support the claim that Plaintiff "handled accounting issues, executed operational, cost/financial, and medical projects, and oversaw labor law issues." Motion at 5 (citing Dkt. Nos. 198-8 and 198-10). Those exhibits do not remotely support that claim. The list of inaccuracies, exaggerations, and missing support is extensive.

These egregious factual errors are not haphazard mistakes by incompetent counsel, but can be interpreted only as a willful misconstruing of the facts in order to manufacture a favorable record.

## 2.    Defendants Disregard and Misreport the Law

Defendants also distort and ignore the law, and defense counsel violate their obligation of candor to this Court. The following are just a few examples of their misconduct.

First, Defendants falsify the legal standards that apply on a motion for sanctions. Defendants claim that Rule 11 requires counsel to "continually review, examine, and re-evaluate his or her position," citing a 31-year-old out-of-district case (which has never been cited by any court). Motion at 12. This is incorrect, and defense counsel is clearly aware of adverse Second Circuit authority, *because they cite it on the next page of their brief*: *Oliveri v. Thompson*, 803 F.2d 1265, 1276 (2d Cir. 1986) ("[R]ule 11 ***does not*** impose a continuing obligation . . . ."). By failing to disclose "directly adverse" authority, defense counsel violated Rule 3.3(a) of the New York Rules of Professional Conduct. *See GMA Accessories, Inc. v. BOP, LLC*, 765 F.Supp.2d 457, 467 n.2 (S.D.N.Y. 2011) (ordering counsel to show cause "why he should not be sanctioned" where he clearly knew of the uncited authority and thus "cannot claim ignorance").

Second, Defendants misrepresent the substantive exemptions that apply to the overtime claims. Defendants claim that the *federal* "highly compensated exemption" bars the New York *state law* overtime claim. Motion at 18. Plaintiff explained in her letter motion that the federal exemption is inapplicable (Dkt. No. 179 at 2), but Defendants still pursue that argument anyway.

Finally, Defendants mischaracterize case law. For example, Defendants cite *Moore v. Time, Inc.*, 180 F.3d 463 (2d Cir. 1999), Motion at 18, describing it as "affirming sanctions award." Wrong: the district court "***declined to impose sanctions***." *Id.* at 463. That case did not deal with Rule 11, but rather an award of costs under the inapposite Federal Rule of Appellate Procedure 38.

These unacceptable legal errors demonstrate Defendants' willful ignorance of the law.

### 3.     The Motion Was Filed for an Improper Purpose

Last, Defendants' Motion was filed for an improper purpose. In bringing a Rule 11 Motion at the tail-end of discovery, Defendants are attempting an end-run around the proper motions permitted under the Federal Rules to challenge the merits of a claim. Specifically, Defendants are seeking to evade the high standards and rigorous procedures of a summary judgment motion.

The Advisory Committee Note states that Rule 11 "should not be employed . . . to test the legal sufficiency or efficacy of allegations in the pleadings . . . [or] to emphasize the merits of a party's position[.]" But that is exactly what Defendants are doing here. In their initial letter motion, Defendants described this Motion as an *alternative* to summary judgment briefing: "The outcome of th[is] motion[ ] will dictate whether Canal seeks summary judgment on the federal and state equal pay claims." Dkt. No. 113 at 1. Likewise, Defendants explicitly request dismissal in their formal Motion. *See* Motion at 19. The Court should not even consider Defendants' request for dismissal: the one-line request is "mentioned in a perfunctory manner, unaccompanied by some effort at developed argumentation," and thus must be "deemed waived." *Lima v. Hatsuhana of*

*USA, Inc.*, 2014 WL 177412, at *1 (S.D.N.Y. Jan. 16, 2014) (citation omitted).[17]

By attempting to bypass the exacting standards of Rule 56, Defendants are abusing Rule 11. *See Safe-Strap Co.*, 270 F. Supp. 2d at 412-13 (denying Rule 11 motion "in part because it serves, in an improper fashion, as a surrogate for a summary judgment motion" and noting that the party seeking Rule 11 sanctions "has not yet challenged the legal sufficiency or efficacy of this . . . action through the channels afforded by the Federal Rules of Civil Procedure"); *E. Gluck Corp.*, 252 F.R.D. at 183 (Rule 11 "misuse[d]" where motion was "grounded on matters that go to the merits of the parties' dispute" and "raise[d] issues that more properly should be addressed in a 12(b)(6) motion"); *Almeida v. Bennet Auto Supply, Inc.*, 335 F.R.D. 463, 466 (S.D. Fla. 2020) (denying motion where defendants sought dismissal "under the guise of a Rule 11 motion").

The Court should deny the Motion and award Plaintiff her costs incurred in opposing it.

## F.    In the Alternative, and at a Minimum, the Court Should Defer Its Decision until after this Litigation Is Complete

Given Defendants' delay in bringing their Motion, and the record evidence supporting Plaintiff's claims, there are ample grounds for the Court to deny Defendants' Motion outright now. In the alternative, the Court should defer its decision until after the litigation concludes.

"[W]here a Rule 11 motion is based on the institution of the action itself, it will generally not be decided until after the litigation is completed." *Sang Lan v. Time Warner, Inc.*, 2015 WL 4469838, at *2 (S.D.N.Y. July 13, 2015) (collecting cases); *Safe-Strap Co.*, 270 F. Supp. 2d at 420 (deferring until "end of the litigation"); *Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*, 2000 WL 528633, at *1 (S.D.N.Y. May 2, 2000) (denying motion that "flies in the teeth of the

---

[17] In any event, dismissal is improper. In the context of sanctions, "dismissal is a drastic remedy [and] should be imposed only in extreme circumstances." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). Defendants do not identify any "extreme" circumstances here.

requirement that the sanctions determination await the final adjudication of the action").

The merits of these claims have not yet been tested, and a sanctions motion is an improper vehicle to do so. As a matter of judicial economy, it does not make sense for the Court to review hundreds of pages of exhibits and testimony now, without the benefit of a Statement of Material Facts under Local Rule 56.1. Thus, in the alternative to denying this Motion immediately, the Court should wait and see whether Defendants even prevail on summary judgment. *Almeida*, 335 F.R.D. at 466 (the court will wait and see "[i]f Defendant prevails," and then consider sanctions).

## IV.    CONCLUSION

Defendants' Motion should be denied. First, the Motion is fatally late: it should have been filed promptly after the Complaint, not years later after fact discovery was substantially complete.

Second, the Motion is baseless. Plaintiff's equal pay and overtime claims are based on solid evidence, including the testimony of Plaintiff, Mr. De Niro, and others. The evidence in this case demonstrates multiple overlapping duties between Plaintiff and Mr. Harvey. And Mr. De Niro *admitted* that Plaintiff functioned largely as a personal assistant. On these facts, Defendants do not carry their heavy burden to show that these claims are meritless, let alone that they are frivolous.

Third, in any event, sanctions are inappropriate. Defendants merely challenge the merits of Plaintiff's claims: they identify no bad faith conduct, and they make no effort to make the necessary showing to support a finding of frivolousness. Defendants present no relevant case law, and they offer the Court no basis to issue the extraordinary relief of sanctions here.

Last, Defendants' motion shows a bad faith disregard for the facts and law and transparently attempts to evade the rigors of summary judgment briefing.

Thus, Plaintiff respectfully asks that the Court deny Defendants' Motion (or defer a decision until the case ends) and award Plaintiff her reasonable fees and costs in opposing it.

25

Dated:  April 29, 2022

Respectfully submitted:

Alexandra Harwin (AH-3111)
David Sanford (5695671)
Jeremy Heisler (JH-0145)
Kate MacMullin (5693882)
Annie Sloan (5880034)
SANFORD HEISLER SHARP, LLP
1350 Avenue of the Americas, 31st Floor
New York, New York 10019
Telephone: (646) 402-5650
Facsimile: (646) 402-5651
aharwin@sanfordheisler.com
dsanford@sanfordheisler.com
jheisler@sanfordheisler.com
kmacmullin@sanfordheisler.com
asloan@sanfordheisler.com

Michael Lockman (5485156)
SANFORD HEISLER SHARP, LLP
611 Commerce Street, Suite 3100
Nashville, Tennessee 37203
Telephone: (615) 434-7000
Facsimile: (615) 434-7020
mlockman@sanfordheisler.com

*Counsel for Plaintiff Graham Chase Robinson*