```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _7/13/2022_
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------X

GRAHAM CHASE ROBINSON,

                                Plaintiff,                        **19-CV-9156 (LJL) (KHP)**

                -against-                              **REPORT AND RECOMMENDATION**
                                                **ON MOTION FOR SANCTIONS**

ROBERT DE NIRO et al.,

                                  Defendants.

-----------------------------------------------------------------X

**TO:**    **THE HONORABLE LEWIS J. LIMAN, UNITED STATES DISTRICT JUDGE**
**FROM: THE HONORABLE KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE.**

        Before me for a Report and Recommendation is Defendants' motion for sanctions made

pursuant to Rule 11 of the Federal Rules of Civil Procedure ("Rule 11"), 28 U.S.C. § 1927

("§ 1927"), and the Court's inherent authority.  (ECF No. 195).  Defendants argue that Plaintiff's

equal pay and overtime claims are frivolous and were made in bad faith.  They request that the

Court sanction Plaintiff by dismissing the claims with prejudice, awarding Defendants attorneys'

fees and costs incurred in defending against the claims, and granting any further relief the

Court deems warranted.  For the reasons stated below, I recommend denying the motion.

**BACKGROUND**

        In 2008, Defendants Canal Productions, Inc. ("Canal") and Robert De Niro ("De Niro")

hired Plaintiff Graham Chase Robinson as De Niro's executive assistant.  (ECF No. 1 ¶ 2.)

Plaintiff's title was changed to Director of Productions in April 2011, and then to Vice President

of Production and Finance in December 2017.  (*Id.* ¶ 18.)  In April 2019, Plaintiff resigned.  (*Id.*

¶ 10.)  From 2011 until her resignation in 2019, Plaintiff's annual salary was above $100,000.

(ECF No. 196 at 4.)  On August 17, 2019, Defendants commenced a lawsuit in the Supreme

Court of the State of New York alleging that Plaintiff abused her authority by taking undeclared vacation and utilizing Defendants' frequent flier miles for her personal use, among other wrongdoing.  (ECF No. 53-2.)

On October 3, 2019, Plaintiff commenced the instant action against Defendants, alleging that they: (1) subjected her to gender discrimination and retaliation in violation of the New York City Human Rights Law, by, among other things, making demeaning and abusive comments to her and initiating gratuitous physical contact with her; (2) did not provide her with equal pay because of her gender, in violation of the federal Equal Pay Act and the New York Equal Pay Law, (3) failed to pay her for overtime in violation of the New York Labor Law ("NYLL"), and (4) retaliated against her for complaining about the harassment and equal pay violations by commencing the state court action, in violation of the NYLL and the Fair Labor Standards Act ("FLSA").[1]  (ECF No. 1 ¶¶ 50–105.)

As to the equal pay claims, the Complaint alleges Defendants paid Plaintiff "less than a male whose job required no greater skill, effort, or responsibility than" Plaintiff's job.  (*Id.* ¶ 29.) The Complaint alleges that after Plaintiff complained to De Niro about the pay disparity, De Niro implied that "a male breadwinner" deserved more pay than Plaintiff, "a woman without children."  (*Id.*)  At an initial case management conference held on January 30, 2020, Plaintiff stated that the male in question is De Niro's personal trainer, Dan Harvey.  (ECF No. 18, Tr. at 12:9–13.)

As to the overtime claim, the Complaint alleges Defendants were legally obligated by

---

[1]  Plaintiff did not bring a claim for overtime under FLSA; her FLSA claim is limited to one for retaliation. Defendants do not seek sanctions for her assertion and maintenance of the FLSA retaliation claim.

NYLL to pay Plaintiff for any hours above forty she worked each week, that Plaintiff informed De Niro of this legal requirement, and that Defendants "repeatedly refused" to pay her for overtime hours worked.  (ECF No. 1 ¶¶ 26–27.)  At the January 30, 2020 conference, Defendants stated that in their view, "it's very clear" that Plaintiff was exempt from overtime requirements.  (ECF No. 18 at 11:13–21.)

At the deposition of Plaintiff, Plaintiff testified that her "core job" at Canal, and the "core job of all Canal employees," was "[t]o do what [De Niro] asked."  (ECF No. 160, Tr. 23:4–7.)  Plaintiff also testified that "the majority" of her job "did not change" during the time she worked for Defendants despite two changes in title.  (*Id.* 20:20–22.)  She testified that her tasks included assisting in designing and furnishing De Niro's townhouse, (*Id.* 37:13–38:3); assisting with keeping track of finances, (*Id.* 237:2–11); scouting hotels and other amenities at locations where De Niro would be filming, (*Id.* 255:10–13); "facilitating" human resources paperwork, (ECF No. 198-3, Tr. 64:25–65:9); and interviewing certain potential hires, (*Id.* 65:10–21).  Additionally, Plaintiff testified that she tried to "realign" her job duties to ones with a focus on the production aspect of the business, but that De Niro consistently "redirected" her "to do things that were in a personal nature." (*Id.* 237:8–23.)

On December 31, 2021 and March 15, 2022 respectively, Defendants filed letter motions seeking leave to pursue sanctions as to the equal pay and overtime claims.  (ECF Nos. 113, 175.)  Defendants filed their motion for sanctions as to both claims on April 1, 2022.  (ECF No. 195.)

**LEGAL STANDARDS**

1. **Sanctions under Rule 11**

A court may impose sanctions under Rule 11 upon an attorney who presents frivolous claims in a pleading. *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 177 (2d Cir. 2012). To constitute a "frivolous" position for purposes of Rule 11 sanctions, it is not enough that the arguments presented are unpersuasive. *Mareno v. Rowe*, 910 F.2d 1043, 1047 (2d Cir. 1990). Rather, "it must be clear under existing precedents that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands." *Id.* (citation omitted). In other words, the court should not consider whether the claims in question are "losers," but rather whether they are "so clearly [] loser[s] that it is in the interest of justice to deter future plaintiffs and attorneys from prosecuting similar ones." *Toussaint v. NY Dialysis Servs., Inc.*, 230 F. Supp. 3d 198, 223 (S.D.N.Y.), *aff'd*, 706 F. App'x 44 (2d Cir. 2017). This is an objective standard. *Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir. 1986).

In assessing whether sanctions are appropriate, the court should consider whether the attorney's conduct was "objectively unreasonable" at the time the pleading was signed. *Id*. Moreover, since Rule 11 imposes a "continuing obligation" on counsel to correct or withdraw documents that are found to lack support, a court should also consider whether it was objectively unreasonable for an attorney to "reaffirm[]" claims and "advocat[e] positions" after they were shown to be inaccurate. *Galin v. Hamada*, 753 F. App'x 3, 8 (2d Cir. 2018) (citing Fed. R. Civ. P. 11 1993 Advisory Committee's Note) (affirming decision not to impose sanctions based on the filing of the complaint but to impose sanctions based on the plaintiff's

refusal to withdraw the claims after discovery made clear they were not viable).[2]

"[T]he imposition of sanctions is a choice of last resort," and even if a court finds that a claim is frivolous, it should "as a first option[] consider the dismissal of that action on the merits through the mechanism of summary judgment."  *Safe-Strap Co. v. Koala Corp.*, 270 F. Supp. 2d 407, 419 (S.D.N.Y. 2003).

### 2.  Sanctions under the Court's Inherent Power and § 1927

"The court has inherent power to sanction parties and their attorneys" when the party or the attorney has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 78 (2d Cir. 2000) (citation omitted).  Similarly, § 1927 provides that an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.[3]

To award sanctions under either § 1927 or the court's inherent power, the court must find "clear evidence" that the claims in question are "entirely meritless" *and* that the party acted "in bad faith."  *Revson*, 221 F.2d at 79 (citations omitted).  To find bad faith, the court must conclude that the action was "asserted wantonly, for purposes of harassment or delay, or for other improper reasons."  *Browning Debenture Holders' Comm. v. DASA Corp.*, 560 F.2d

---

[2]  Here, both parties incorrectly state that Rule 11 does not impose any sort of continuing obligation on counsel, citing case law that predates the 1993 amendment to Rule 11 and *Galin*, the 2018 Second Circuit decision clarifying that Rule 11 does impose a continuing obligation to correct or withdraw previously filed briefs or pleadings after they are shown to lack merit.  753 F. App'x at 8 (2d Cir. 2018).  *See also Klein v. Aicher*, 2020 WL 4194823, at *11 (S.D.N.Y. July 21, 2020), *motion for relief from judgment denied*, 2022 WL 61352 (S.D.N.Y. Jan. 6, 2022) (explaining that Rule 11 imposes on plaintiff's counsel a "continuing obligation" to ensure the action is supported and, if not, to withdraw it).

[3]  The only "meaningful difference" between sanctions under § 1927 and the court's inherent power is that § 1927 only permits sanctions against attorneys but the court has the inherent power also to sanction parties.  *Oliveri*, 803 F.2d at 1273.

1078, 1088 (2d Cir. 1977).  "Poor legal judgment" is not the same as bad faith.  *Schlaifer Nance & Co. v. Est. of Warhol*, 194 F.3d 323, 340 (2d Cir. 1999).

<u>**ANALYSIS**</u>

1. <u>**Defendants' Motion for Fees under Rule 11**</u>

As described in detail below, Plaintiff puts forward conceivable arguments, supported by case law, for her equal pay and overtime claims.  At bottom, her arguments rely on a particularly broad but, at this stage, facially plausible framing of the core duties of her employment.  Regardless of the strength or weakness of Plaintiff's arguments, it cannot be said that it was objectively unreasonable for Plaintiff to bring the claims in the first place or to maintain them now, notwithstanding that they appear to be extremely weak.

a. **Plaintiff's Equal Pay claims are not frivolous.**

To prove her federal and state equal pay claims, Plaintiff must show that (1) Defendants paid different wages to a male employee; (2) Plaintiff and the male employee performed "equal work on jobs requiring equal skill, effort, and responsibility;" and (3) the jobs were performed under "similar working conditions."  *Talwar v. Staten Island Univ. Hosp.*, 610 F. App'x 28, 30 (2d Cir. 2015) (providing the standard for a federal equal pay claim and explaining the standard is the same under New York law).  In order to meet the second prong, a "plaintiff need not demonstrate that her job is identical to a higher paid position, but only must show that the two positions are substantially equal in skill, effort, and responsibility."  *Lavin-McEleney v. Marist Coll.*, 239 F.3d 476, 480 (2d Cir. 2001) (quotation marks and citation omitted).  The question is generally a factual issue that depends on numerous factors including whether the plaintiff and the comparator have the same supervisor and have similar responsibilities.  *Lichtenstein*

*v. Triarc Cos.*, 2004 WL 1087263, at *11–12 (S.D.N.Y. May 14, 2004).  Where job duties "partially

overlap," this can "impl[y]" that the positions are substantially equal.  *Tomka v. Seiler Corp.*, 66

F.3d 1295, 1311 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*,

524 U.S. 742 (1998).

Defendants argue Plaintiff cannot meet the second prong, as Harvey's duties as personal

trainer are "substantially different from" Plaintiff's duties as Vice President of Production and

Finance.  (ECF No. 196 at 7–8.)  Plaintiff argues that Harvey is a fair comparator because she

and Harvey shared a supervisor (De Niro) and had similar and overlapping responsibilities.  (ECF

No. 218 at 8.)  Specifically, Plaintiff argues that her and Harvey shared the purported core duty

of handling De Niro's "personal needs" and assisting with De Niro's overall health and

wellbeing.  (*Id.* at 1.)  Plaintiff also lists numerous overlapping tasks she and Harvey were

responsible for, including ensuring De Niro's exercise equipment was set up at his hotels,

accompanying De Niro to medical appointments, and reminding De Niro to take his medication.

(*Id.* at 8–9.)  Plaintiff cites to deposition testimony from De Niro and Harvey that supports her

contention that her duties and Harvey's overlapped.  (*Id.* at 9)  As such, Plaintiff has put forward

conceivable arguments that Harvey is an appropriate comparator here.  It may ultimately be a

long shot to survive summary judgment and/or for a factfinder to determine that Plaintiff's role

was "substantially similar" to Harvey's, but whether or not the claim will succeed is not at issue.

The claim at least passes the red face test.  *See Brands-Kousaros v. Banco Di Napoli S.P.A.*, 1997

WL 790748, at *6 (S.D.N.Y. Dec. 23, 1997) (denying Rule 11 sanctions even though plaintiff

failed to identify a more highly compensated male comparator because Plaintiff alleged

sufficient facts that the argument was conceivable).  Accordingly, this argument was not

frivolous at the time the Complaint was filed, and sanctions should not be awarded on this basis.

Moreover, Defendants have not cited any specific evidence uncovered during discovery that makes it beyond a doubt that the equal pay claims are not viable. Some discovery certainly calls into question whether Plaintiff's characterization of her and Harvey's duties is accurate or that their core duties are substantially similar, but at this stage, the evidence is not so conclusive as to entirely foreclose Plaintiff's argument. Again, whether the claim can withstand summary judgment or succeed at trial is not the standard for purposes of Rule 11. Thus, it was not unreasonable for Plaintiff's counsel to decline to withdraw the equal pay claims following discovery, and sanctions should not be awarded on this basis either.

### b. Plaintiff's overtime claim is not frivolous.

To prove her overtime claim, Plaintiff must show that Defendants failed to pay her at the applicable overtime rate for any hours she worked over forty hours per week in violation of the NYLL. N.Y. Comp. Codes R. & Regs. tit. 12 ("12 NYCCRR") § 142-2.2. Defendants may defend against the claim by showing Plaintiff fell within an exemption the NYLL. *Chen v. Major League Baseball Props., Inc.*, 798 F.3d 72, 82 (2d Cir. 2015). Here, Defendants argue Plaintiff's overtime claim is frivolous because Plaintiff fell within NYLL's "executive" and "administrative" exemptions, and because Plaintiff fell within the "highly paid employee" exemption under the FLSA.[4] (ECF No. 196 at 17–18.)

---

[4] Generally, the same standards apply to both NYLL and FLSA claims. *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 118 (2d Cir. 2013). However, NYLL and FLSA differ in some respects; for example, FLSA provides for certain overtime exemptions that NYLL does not provide for, including the highly paid employee exemption.

Where, as here, the viability of a claim turns on the applicability of an affirmative defense, the high bar for imposing sanctions "is arguably even higher." *Galin v. Hamada*, 283 F. Supp. 3d 189, 201 (S.D.N.Y. 2017), *aff'd*, 753 F. App'x 3.  Defendants argue that they do not have the burden to prove that an exemption applies for purposes of this motion.   (ECF No. 229 at 5, n.8.)  This is incorrect, and to hold otherwise would "reorder[] traditional burdens of pleading." *Galin*, 283 F. Supp. at 201 (citation omitted).

Whether an employee falls under an overtime exemption "is a mixed question of law and fact" that involves "a number of subsidiary questions" to be resolved "by examining the employees' actual job characteristics and duties." *Myers v. Hertz Corp.*, 624 F.3d 537, 548 (2d Cir. 2010).  In considering whether a duty is "primary," courts consider, among other factors, the relative importance of an employee's exempt duties as compared with other types of duties and the amount of time the employee spends performing exempt work. *Clougher v. Home Depot U.S.A., Inc.*, 696 F. Supp. 2d 285, 289–90 (E.D.N.Y. 2010) (discussing the executive exemption under both NYLL and FLSA).

An employee falls within the executive exemption to NYLL's overtime requirement if (a) her "primary duty" consists of managing the enterprise or a department or subdivision thereof; (b) she "customarily and regularly directs the work" of two or more employees; (c) she "has the authority to hire or fire other employees" or her suggestions to hire or fire are given particular weight; (d) she "customarily and regularly exercise[s] discretionary powers;" and (e) her salary exceeds a threshold requirement.  12 NYCCRR § 142-2.14(c)(4)(i).  An employee falls within the administrative exemption if (a) her "primary duty consists of the performance of office or nonmanual field work directly related to management policies or general operations"

of the enterprise; (b) she "customarily and regularly exercises discretion and independent judgment;" (c) she "regularly and directly assists" an employer or another employee working in an administrative capacity or she "performs, under only general supervision, work along specialized or technical lines requiring special training, experience or knowledge;" and (d) her salary exceeds a certain threshold. *Id.* § 142-2.14(c)(4)(ii).

Plaintiff contends that the overtime claim is not frivolous because her primary duties throughout the period at issue did not fall within the definitions of the executive or administrative exemptions. Plaintiff argues that although some of her tasks may have been administrative or executive in nature, the majority of her time was spent on menial tasks, and the core requirement of her job—that she be available to perform whatever De Niro asked of her—is neither executive nor administrative in nature. (ECF No. 218 at 12–13). Plaintiff points to De Niro's deposition testimony, where he testified that Plaintiff performed an array of non-managerial, non-discretionary duties including buying gifts for his friends and relatives, organizing his closet, and handling his prescription refills. (*Id.* at 13.) She also notes that testimony from De Niro's girlfriend and from his former lead assistant, as well as "voluminous documents," all support Plaintiff's argument that despite her title, her actual duties were domestic, rather than executive or managerial in nature. (*Id.*) Plaintiff contends that although she tried to manifest a more managerial role for herself within the company, ultimately Defendants used her as a glorified personal assistant. (*Id.*)

Once again, Plaintiff's arguments pass the red face test. Plaintiff argues that she was a glorified assistant who occasionally helped out with more managerial or discretionary tasks, and that such a role does not qualify for exemption from overtime requirements. *See Coker*

*v. Goldberg & Assocs. P.C.*, 2022 WL 874719, at *1 (S.D.N.Y. Mar. 24, 2022) (finding defendants did not show that the FLSA's administrative exemption applied to a personal assistant). Defendants paint a different picture of Plaintiff's primary duties, arguing that these consisted of managerial and discretionary tasks.  Regardless of which argument is stronger, Plaintiff's argument is at least conceivable, and is supported to some extent by discovery and case law. As such, it was not unreasonable for her to bring this claim.

Moreover, Defendants have not pointed to any evidence uncovered during discovery that makes it clear the claim is not viable.  Defendants certainly cite evidence that supports their position, including correspondence and testimony by Plaintiff in which she describes her role as one that encompassed significant management responsibilities.  (ECF No. 196 at 5.) However, Plaintiff notes that this evidence does not speak to the entire six-year period at issue and argues that such evidence merely reflects her "ongoing (though ultimately unsuccessful) efforts to realign her role away from the menial, personal assistant duties she performed." (ECF No. 218 at 14.)  Moreover, in determining whether an employee qualifies as exempt, the focus should not be on "general job descriptions contained in resumes, position descriptions, and performance evaluations," but rather on "evidence regarding the actual day-to-day activities of the employee."  *Martinez v. Hilton Hotels Corp.*, 930 F. Supp. 2d 508, 525 n.16 (S.D.N.Y. 2013) (citation omitted).  As such, it was not unreasonable for Plaintiff's counsel to decline to withdraw this claim.

Defendants also argue that because Plaintiff's annual salary was higher than $100,000, Plaintiff fell within the "highly compensated employee" exemption under the FLSA.  The FLSA provides that a "highly compensated employee," which is "[a]n employee with total annual

compensation of at least $100,000," is exempt from the FLSA's overtime requirement "if the employee customarily and regularly performs one or more of the exempt duties or responsibilities of an executive, administrative or professional employee."  C.F.R. § 541.601(a).[5]

This exemption does not apply to the NYLL—the statute under which Plaintiff's overtime claim is brought.  Thus, Plaintiff could potentially be entitled to overtime under the NYLL even if she satisfied this exemption under federal law.  Indeed, the Second Circuit recently clarified in *Hayward v. IBI Armored Servs., Inc.*, that employees "subject to the exemptions of section 13" of FLSA "are nonetheless entitled to overtime compensation" under NYLL (provided they are not also exempt under state law).  954 F.3d 573, 576 (2d Cir. 2020) (citing 12 N.Y.C.R.R. § 142-2.2).[6]

However, even if the "highly compensated employee" exemption did apply to Plaintiff's NYLL overtime claim, the claim would still not be frivolous, because Defendants would need to prove that Plaintiff "customarily" and "regularly" performed an exempt duty.  *Kadden v. VisuaLex, LLC*, 910 F. Supp. 2d 523, 538 n.127 (S.D.N.Y. 2012).  While this duties burden is lower than that required to show Plaintiff falls within NYLL's executive or administrative

---

[5]  The "exempt duties" of an executive or administrative employee under the FLSA are the same as those defined by NYLL at 12 NYCCRR § 142-2.14(c)(4)(i)-(ii), as laid out above.  *See* 29 C.F.R. § 541.100; *id.* § 541.200.  The "exempt duties" of a professional employee under the FLSA are those "[r]equiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction" or "[r]equiring invention, imagination, originality or talent in a recognized field of artistic or creative endeavor."  *Id*. § 541.300.

[6]  Although Defendants do not cite them, the Court is aware of a handful of district court decisions pre-dating *Hayward* that assumed that the highly compensated employee exemption applies to claims brought under the NYLL.  *See, e.g. Haas v. Verizon N.Y., Inc.*, 2015 WL 4884858, at *24 (S.D.N.Y. Aug. 13, 2015), *report and recommendation adopted in part, rejected in part*, 2015 WL 5785023 (S.D.N.Y. Sept. 30, 2015); *Tilchen v. Cemd Elevator Corp.*, 2019 WL 4640184, at *4 (S.D.N.Y. Sept. 24, 2019).  *Hayward* has since clarified that this is not the case.

exemptions, discussed above, it is conceivable that Defendants might not be able to meet even this lower burden.  While Plaintiff admits she performed some exempt duties, the regularity with which she performed them remains hotly contested by the parties.  It cannot be said at this stage that it is objectively unreasonable for Plaintiff to maintain her overtime claim.

Thus, while it is clear Defendants have strong arguments on the merits to defend against Plaintiff's overtime claim, the claim is not so frivolous that Plaintiff should be sanctioned for raising it or not withdrawing it up to now.[7]

### c.  Defendants' Rule 11 Motion is Untimely as to the Complaint.

Defendants seek Rule 11 sanctions against Plaintiff's counsel both for bringing the challenged claims in the first place, and for refusing to withdraw them as the action progressed through discovery.  (*See* ECF No. 196 at 2, 10.)  To the extent Defendants seek sanctions for these claims having been brought in the first instance, Defendants' motion is untimely.

While there is no explicit time limit for filing a Rule 11 motion, such a motion "should be served *promptly* after the inappropriate paper is filed, and, if delayed too long, may be viewed as untimely."  *In re Pennie & Edmonds LLP*, 323 F.3d 86, 89 n.1 (2d Cir. 2003) (emphasis added) (quoting Rule 11 advisory committee's note to 1993 Amendments).  When the "inappropriate paper" in question is the complaint, the moving party "should move for sanctions promptly after the complaint is filed."  *Safe-Strap Co.*, 270 F. Supp. 2d at 413 n.3.  Courts routinely reject Rule 11 motions as untimely.  *See, e.g. Weinreich v. Sandhaus*, 156 F.R.D. 60, 63–64 (S.D.N.Y.

---

[7] Defendants also argue that if Plaintiff is in fact "a non-exempt employee," she cannot prevail on her equal pay claims.  (ECF No. 229 at 8.)  This argument is entirely unpersuasive.  The equal pay analysis does not include consideration of the employee's overtime eligibility.  Both tests evaluate an employee's duties, but for different purposes.  The equal pay analysis evaluates Plaintiff's duties as compared to another who is allegedly compensated at a higher rate based on sex.  In contrast, the overtime analysis evaluates Plaintiff's duties against the statutory test for an exemption.  Success or failure on one claim is not dependent on the other.

1994), *aff'd without decision*, 60 F.3d 810 (2d Cir.1995) (denying Rule 11 motion as untimely where the motion was filed over three years after the sanctionable conduct occurred); *Cohen v. Equifax Info. Servs., LLC*, 2021 WL 4393129, at *4 (S.D.N.Y. Feb. 24, 2021), *report and recommendation adopted*, 2021 WL 4392296 (S.D.N.Y. Sept. 24, 2021) (same where the motion was filed two years after the operative complaint was accepted); *Connecticut v. Ins. Co. of Am.*, 121 F.R.D. 159, 162–63 (D. Conn. 1988) (same where the motion was filed almost eight months after the case was remanded).

Here, Defendants waited over two years after the filing of the Complaint before taking steps to move for sanctions.  Defendants do not provide an excuse for the delay, but rather argue that they were not required to file the Rule 11 motion in a timely manner provided that they complied with Rule 11's safe harbor provision.  (ECF No. 229 at 9.)  This is not correct.  The "safe harbor" provision of Rule 11 provides that the party moving for sanctions must serve the motion upon the party against whom sanctions are sought at least 21 days before filing the motion with the court in order to give the attorney the opportunity to withdraw or correct the challenged paper without consequence.  Fed. R. Civ. P. 11(c)(2).  This requirement is separate and distinct from the requirement to file a Rule 11 motion promptly.  *Weinreich*, 156 F.R.D. at 63–64 (denying Rule 11 motion for failure to comply with safe harbor provision and finding untimeliness an "alternative ground" for denying the motion); *Cohen*, 2021 WL 4393129, at *4 (explaining that "even if the safe-harbor provision could be viewed as satisfied . . ., the Court would still recommend denying [the] Motion under Rule 11 because the motion was not filed shortly after summary judgment was granted"); *see also Ins. Co. of Am.*, 121 F.R.D. at 162–63 (finding a Rule 11 motion untimely where there was no allegation of non-compliance with the

safe harbor provision).  Accordingly, Defendants' compliance with the safe harbor provision does not excuse them from the separate requirement to file a Rule 11 motion promptly.

Defendants also argue that a sooner-filed Rule 11 motion would not have persuaded Plaintiff to withdraw these claims, because Plaintiff claimed to need discovery to validate her claims.  (ECF No. 229 at 9.)  This argument only supports the notion that the claims were not objectively unreasonable at the time they were brought; "[i]f the claims on their face were patently frivolous or without any basis in existing law (as opposed to containing factual allegations that only subsequent discovery would reveal lacks support)," Defendants "could have moved far sooner."  *Team Obsolete Ltd. v. A.H.R.M.A. Ltd.*, 216 F.R.D. 29, 44 (E.D.N.Y. 2003).

Therefore, to the extent the motion seeks to sanction Plaintiff's counsel for signing the Complaint, this motion is untimely and should be denied on this alternative ground.  To the extent Defendants seek sanctions for Plaintiff's refusal to withdraw the claims after substantial discovery was taken, this cannot be said to be untimely, but as described above, the motion should be denied regardless because the claims are not frivolous.

### 2.  Defendants' Motion for Sanctions under § 1927 and the Court's Inherent Power

Whereas Rule 11 requires only a showing of "objective unreasonableness," the imposition of sanctions under § 1927 or the Court's inherent power "requires more: subjective bad faith by counsel."  *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am.*, 948 F.2d 1338, 1346 (2d Cir. 1991).  As described above, Defendants have not shown that it was objectively unreasonable for Plaintiff's counsel to bring or maintain the equal pay or overtime claims, and as such, sanctions under § 1927 or the

Court's inherent power are not appropriate.  That said, even if it was unreasonable for Plaintiff's counsel to bring or maintain these claims, sanctions under § 1927 or the Court's inherent power are inappropriate because Defendants have not shown that Plaintiff's counsel acted in bad faith.

Defendants argue that Plaintiff's equal pay and overtime claims were made in bad faith "as part of a strategy to expand the scope of discovery and increase the costs of defense." (ECF No. 196 at 18.)  Critically, however, Defendants provide no evidence supporting this contention, and suggest the Court reach this conclusion based solely on the weakness of Plaintiff's arguments.  This is hardly "clear evidence" of bad faith, and absent such evidence, a finding of bad faith is not warranted.  *Revson*, 221 F.2d at 79.  This is especially true where, as here, Plaintiff's arguments are coherent and supported at least to some extent by case law and factual assertions.  *See Zurich Am. Ins. Co. v. Team Tankers A.S.*, 811 F.3d 584, 591 (2d Cir. 2016) (explaining that a finding of bad faith was not warranted where the petitioner's arguments, "however flawed," were tied to "recognizable legal concepts" and relied on propositions that were not "absurd" on their face).  Because Defendants have not shown that the challenged claims are entirely without color, nor that they were brought in bad faith, their motion for sanctions under § 1927 and the Court's inherent power should be denied.

### 3. <u>Plaintiff's Request for Sanctions</u>

Plaintiff argues that Defendants' motion for sanctions was filed in bad faith and asks the Court to award Plaintiff her costs and fees incurred in opposing the motion pursuant to Rule 11(c)(2).  (ECF No. 218 at 21–24.)  Motions for sanctions under Rule 11 must "be made separately from other motions or requests," and must follow the Rule's safe harbor procedures.

Fed. R. Civ. P. 11(c); *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1328 (2d Cir.1995).  Here, Plaintiff failed to make a separate motion requesting Rule 11 sanctions and did not follow the safe harbor procedures specified in the Rule.  Therefore, Plaintiff's request for sanctions should not be considered.  *See, e.g. Banfield v. UHS Home Attendants, Inc.*, 1997 WL 342422, at *3 (S.D.N.Y. June 23, 1997); *McLeod v. Verizon N.Y., Inc.*, 995 F. Supp. 2d 134, 145 (E.D.N.Y. 2014).

Plaintiff may move for sanctions using the proper procedures laid out in Rule 11 and in the Court's local rules regarding motion practice.  However, the Court cautions that the same strict standards elucidated here would be applied to such a motion, and that parties should generally attempt to avoid "an endless tit for tat" that could "consume[] precious party and court resources."  *Elliott v. PHH Mortg. Corp. for KeyBank Nat'l Ass'n*, 2018 WL 4119081, at *1 (N.D.N.Y. Aug. 29, 2018) (denying a motion for sanctions following a series of motions for sanctions).

## <u>CONCLUSION</u>

As set forth above, Plaintiff has put forward conceivable arguments supporting her equal pay and overtime claims, and Defendants have failed to show that these claims are entirely unreasonable or that they were brought in bad faith.  For these reasons I respectfully recommend that Defendants' motion for sanctions (ECF No. 195) be DENIED.

DATED:      July 13, 2022
            New York, New York

Respectfully Submitted,

*Katharine H. Parker*

KATHARINE H. PARKER
United States Magistrate Judge

17

**NOTICE**

**The parties shall have fourteen days from the service of this Report and Recommendation to file written objections to the Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days only when service is made under Fed. R. Civ. P. 5(b)(2)(C) (mail), (D) (leaving with the clerk), or (F) (other means consented to by the parties)).**

**If any party files written objections to this Report and Recommendation, the opposing party may respond to the objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2).  Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Lewis J. Liman at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(d), 72(b).  Any requests for an extension of time for filing objections must be addressed to Judge Liman.  The failure to file these timely objections will result in a waiver of those objections for purposes of appeal.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn*, 474 U.S. 140 (1985).**