# TRAUB LIEBERMAN

Mid-Westchester Executive Park | 7 Skyline Drive | Hawthorne, NY 10532
DIRECT (914) 586-7061 | MAIN (914) 347-2600 | FAX (914) 347-7037

Gregory R. Bennett | Partner | gbennett@tlsslaw.com

September 20, 2022

*Via ECF Only*

Hon. Katharine H. Parker, U.S.M.J.
U.S. District Courthouse
500 Pearl Street, Room 750
New York, New York 10007

      Re:   *Graham Chase Robinson v. Robert De Niro et al.*
              Civil Action No.: 19cv9156 (LJL) (KHP) (the "Action")

Dear Judge Parker:

      Defendants submit this status letter in response to the Court's September 12, 2022 Order (Dkt. No. 259) (the "Order"), and to supplement the letter they filed last evening (Dkt. No. 260). Even though defense counsel noted in their recent letter that they intended to continue working with Plaintiff's counsel today towards completing a joint status update to the Court, Plaintiff filed a letter unilaterally (Dkt. No. 261). Consequently, Defendants are submitting this letter with their position.

**Status of Discovery and Mediation.** Discovery is <u>no</u> <u>longer</u> on track to be concluded in accordance with the Order because of 2,395 documents produced by Plaintiff last Friday afternoon. Two other open items are discussed below, and the parties have scheduled a mediation for November 7, 2022.

**Plaintiff's Production of 2,395 Documents Last Friday Afternoon.** A new issue has emerged since the Court entered the Order. At 4:58 p.m. this past Friday, September 16, Plaintiff's counsel "data-dumped" their Seventeenth Document Production on us. When downloaded, we learned this consisted of 1.13 GB of data and 2,395 documents in more than 6,000 pages. No prior indication had been given that any additional production was underway or forthcoming. The Court may recall Plaintiff harbored Canal's cash, gift cards and physical property until delivering it on a prior Friday afternoon when discovery was supposed to end.

      According to the email that accompanied it, the production was the result of a literally month-long (undisclosed) manual review of documents (supposedly not captured by ESI terms) showing the "work" Plaintiff performed on dates Canal claims she was on vacation. The Court should recognize the sleight of hand. Canal's claim does not turn on whether Plaintiff "worked" while on vacation, but

NEW YORK
NEW JERSEY
ILLINOIS
FLORIDA
CONNECTICUT
www.traublieberman.com    CALIFORNIA

Hon. Katharine H. Parker, U.S.M.J.
September 20, 2022
Page 2

rather why she created and implemented a self-dealing policy that she was entitled to be paid for any vacation time she claimed to not have used. The "specific days" is a Plaintiff-created distraction.

Regardless, Plaintiff already knew the dates Canal understood she was on vacation as Canal previously produced documents showing where Plaintiff had admitted being on vacation. These dates were then read back to Plaintiff's counsel and into the record at the 30(b)(6) deposition from those very documents. Plaintiff's underlying premise that she did not know these dates until the deposition (necessitating a manual comb-through of documents) is, put kindly, wrong.

Mr. Bennett will be out of the country (on vacation and not working) beginning this Friday. Defense counsel have not had the ability review the 2,395 new documents in any detail with limited exception. That is a video of someone (Plaintiff?) flipping through a photo album containing images of Mr. De Niro in social settings. It is unclear whether Plaintiff claims that flipping through a photo album while on vacation is evidence of her "working" or if it is evidence of a larger scale document-laundering where otherwise responsive documents that ought to have been produced sooner are now intermingled among thousands of pages of detritus.

Defendants would like sufficient time to review the 2,395 new documents to determine what is there; whether there are objections; and whether any additional discovery and/or a preclusion order will be sought. We ask the Court to grant us 30-days to do so and report back.

**Stipulation as to the General Ledger.**   In furtherance of the September 12 Order, on September 14, we advised Plaintiff's counsel that the Defendants would adopt the Court's suggested stipulation that accommodated and balanced all interests and asked for their position.  Our requests for follow up were ignored until yesterday morning (when the joint letter was due) when Plaintiff's counsel declined. Defense counsel's availability was limited yesterday, as was known to Plaintiff's counsel.

From Defendants' perspective, opposing counsel seeks to wordsmith away Plaintiff's role in the business process (as explained by witnesses at their depositions). We do not agree with or to Plaintiff's proposed language. The Court's was neutral; hers is not. As the Court has already held production of the general ledger is disproportionate, and Plaintiff does not wish to avail herself of the Court's stipulation, this issue should be deemed resolved.

**Stipulation as to Mr. De Niro's Net Worth.**   Following the September 12 Order, on September 14, Defendants renewed their offer to stipulate to a "greater than" amount for Mr. De Niro's net worth and provided counsel with an amount.  This was consistent with the Court's treatment of the issue at the April 12, 2022 conference. (Dkt. No. 215). Just as above, requests for their position were ignored until yesterday morning when they declined.

Plaintiff belabors the point by now seeking Mr. De Niro's actual net worth to the nearest $25 million. The Court previously laid out the parameters regarding net worth at the April conference where it "direct[ed] that there be no more questions on this [at Mr. De Niro's deposition] and the parties meet and confer about a stipulation." Tr. at 27; and see generally id. at 26-28.

Hon. Katharine H. Parker, U.S.M.J.
September 20, 2022
Page 3

      Opposing counsel's supposition about what may be occurring in an unrelated litigation has no place here. This information is irrelevant at this stage of our litigation and Plaintiff does not contend otherwise. Moreover, his net worth today will not be his net worth <u>if</u> the case is tried and <u>if</u> Plaintiff was to prevail on <u>any</u> claim that would entitle her to an award of punitive damages; let alone any proportionality between the amount of damages sought here and any conceptual award that might be made. The question of Mr. De Niro's net worth should be deferred until if, and when, it ever becomes relevant.

      As per the letter she filed unilaterally, Plaintiff does not seem to oppose this approach, which is why we sought to resolve the matter today without needing to burden the Court.

### **Conclusions**

      Defendants respectfully request that the Court:

- Deem the "general ledger" issue be resolved;
- Defer any questions about Mr. De Niro's net worth until and should there be a trial, and;
- Grant Defendants 30-days to review the 2,395 documents, at which time they will update the Court on any open issues resulting from their review.

      We thank the Court for its consideration of the above.

      Respectfully submitted,

| **TARTER KRINSKY & DROGIN LLP** | **TRAUB LIEBERMAN STRAUS & SHREWSBERRY LLP** |
|---|---|
| */s/ Laurent S. Drogin* and */s/ Brittany K. Lazzaro* | */s/ Gregory R. Bennett* |