UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **GRAHAM CHASE ROBINSON** *Plaintiff,* v. **ROBERT DE NIRO and CANAL PRODUCTIONS, INC.,** *Defendants.* | Case No. 1:19-cv-09156-LJL-KHP |

**PLAINTIFF'S MOTION TO STRIKE AND
MOTION FOR LEAVE TO FILE SURREPLY**

ORDER: The motion to strike and the motion for leave to file a surreply is denied in part and granted in part. The request to file a surreply is granted and the surreply shall be deemed filed. The requests, however, to strike Defendants' argument regarding retaliation concerning gender-based pay disparities and the Appendix are denied. See Mizel v. Royal Caribbean Cruises Ltd., 2019 WL 13247284, at *1 (E.D.N.Y. Apr. 29, 2019) ("Although arguments raised for the first time on reply are usually deemed waived, courts may consider them where the opposing party has a fair opportunity to respond" including through filing a surreply (cleaned up)). Defendants may respond to any arguments in the surreply at oral argument on April 20.

The Clerk of Court is respectfully directed to close Dkt. No. 365.

Date: 4/10/2023

SO ORDERED.

LEWIS J. LIMAN
United States District Judge

I.  **Introduction**

In their Reply to their summary judgment motion, Defendants raise new arguments and submit new factual material riddled with misrepresentations. Their new arguments—namely their contention that Plaintiff cannot pursue a retaliation claim predicated on her complaints of gender-based pay disparities—should be disregarded as untimely and waived. Further, the Court should strike Defendants' Appendix, a "timeline" proffered for the first time on reply, because it contains new and false representations. Finally, like Canal's previously filed 56.1 Response (Dkt. No. 334), Defendants' Counterstatement in Response to Plaintiff's Statement of Additional Material Facts (Dkt. No. 357) is filled with defects. To address Defendants' new materials and arguments, offered for the first time on reply, Plaintiff seeks leave to present the below surreply arguments.

II.  **The Court Should Disregard Defendants' New Arguments for Dismissing Plaintiff's Retaliation Claims**

Confronted with their failure to seek relief on Plaintiff's claims of retaliation for making equal pay complaints (*see* Dkt. No. 333 (Pl. MSJ Opp.) at 19-20), Defendants belatedly try to sneak in new arguments in their Reply. It is too late to do so now.

Defendants did not move for summary judgment on Plaintiff's claims that they retaliated against her for complaining about gender-based pay disparities, in violation of: 29 U.S.C. § 215(a)(3) (which protects complaints related to violations of the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d), as incorporated into the FLSA); N.Y. Lab. L. ("NYLL") § 215 (which protects complaints related to violations of NYLL § 194); and N.Y.C. Admin. Code § 8-107(7) ("NYCHRL") (which protects complaints related to violations of § 8-107(1)(a)(3)). Defendants did not contend that Plaintiff's complaints of pay disparities were insufficient to establish an instance of protected activity. Nor did they argue a lack of causal connection between these complaints and their adverse actions—constructive discharge, refusal to provide a reference, a

1

sham investigation, threats of legal action, a $6 million lawsuit (which was repurposed as baseless counterclaims), and a criminal referral. In fact, Defendants' summary judgment motion did not include *any* discussion of Plaintiff's equal pay complaints.

Plaintiff's allegations regarding her protests of gender-based pay disparities are plainly and unambiguously detailed in the Complaint, including in the retaliation counts.[1] By failing to move for summary judgment on these allegations, Defendants waived their arguments for dismissal—conceding, at least for purposes of their summary judgment motion, that Plaintiff's complaints of unequal pay are protected activity under the relevant statutes and that she suffered the alleged retaliatory actions as a result of making these complaints. Defendants cannot raise new arguments on reply. Accordingly, their new arguments for dismissal of this aspect of the retaliation counts should be disregarded.[2] Because a reasonable juror could conclude that Defendants' retaliatory acts qualify as adverse under *Burlington Northern* and the NYCHRL standard (*see* Dkt. No. 333

---

[1] *See* Dkt. No. 1, Compl. ¶ 29 ("De Niro also underpaid Ms. Robinson based on her gender. De Niro insisted on paying Ms. Robinson less than a male whose job required no greater skill, effort, or responsibility than Ms. Robinson's position. Ms. Robinson *sought pay parity and objected to this pay discrimination*, including in her communications with De Niro in late 2018 and early 2019. To defend his conduct, De Niro invoked gender-laden stereotypes and implied that a male breadwinner deserved more pay than Ms. Robinson, a woman without children.") (emphasis added); ¶ 36 ("As described above, Ms. Robinson repeatedly *engaged in protected activity prior to her resignation*, *including objecting to Mr. DeNiro's discriminatory pay practices* . . . .") (emphasis added); ¶¶ 54 (describing pay discrimination as example of Defendants' gender discrimination in violation of the NYCHRL), 60, 64-65 (count for NYCHRL retaliation, alleging that Plaintiff engaged in protected activity by opposing practices that "constitute colorable violations of the [NYCHRL]," in clear reference to her opposition to pay discrimination and other illegal practices); ¶¶ 90, 92-93 (count for NYLL retaliation, *alleging that Plaintiff "engaged in protected activity" by complaining of "unequal pay in violation of the New York Equal Pay Act"*) (emphasis added); ¶¶ 98, 100-101 (count for FLSA/EPA retaliation, *alleging that Plaintiff "engaged in protected activity" by complaining of "violations of the [EPA]"*) (emphasis added).

[2] *See, e.g.*, *Milord-Francois v. N.Y. State Off. of Medicaid Inspector Gen.*, 2022 WL 10653757, at *14 (S.D.N.Y. Oct. 18, 2022) (Liman, J.) ("[T]o the extent that Defendants attempt to seek summary judgment on Plaintiff's HWE claim against JDR based on JDR's actions, that argument is waived because it was raised for the first time in a reply brief"); *Rowley v. City of New York*, 2005 WL 2429514, at *5-6 (S.D.N.Y. Sept. 30, 2005); *Hammond v. Toy Indus. Assn., Inc.*, 8 F. Supp. 3d 484, 499 (S.D.N.Y. 2014); *Genger ex rel. AG Props. Co. v. Sharon*, 910 F. Supp. 2d 581, 591 & n.82 (S.D.N.Y. 2012).

at 28-30), Plaintiff's NYCHRL, FLSA, and NYLL claims that she was retaliated against for objecting to pay disparities must proceed to trial on the merits.

### III. Alternatively, Defendants' Arguments for Dismissal Fail on Their Merits

Even if the Court elects to consider Defendants' new arguments, Plaintiff readily survives summary judgment on all retaliation claims predicated on her equal pay complaints.

#### A. Plaintiff's Pay Disparity Complaints Constitute Protected Activity

Defendants suggest that Plaintiff merely asked for a "raise" and that neither Mr. De Niro's conduct nor her complaints can be construed as gender-related. These contentions profoundly minimize and disregard the substance of Plaintiff's complaints and the relevant law.

Plaintiff's complaints clearly come within the ambit of the EPA, NYLL § 194, and the NYCHRL. She did not merely ask for a raise. Rather, she objected to Canal paying her less than a male employee with overlapping job responsibilities (Dkt. No. 335-11 at 223:19-224:22.) She specifically sought pay parity with a male counterpart. In a December 18, 2018 e-mail to Mr. De Niro, she complained, "I want parity," "I make less than your trainer [Dan Harvey]," and, "I deserve" at least Mr. Harvey's "kind of compensation too." (Dkt. No. 335-33.) She also testified that she "discussed with [Mr. De Niro] in 2018 and 2019, parity and having parity when it came to Dan Harvey." (Dkt. No. 335-11 at 246:12-15; *see id.* at Errata.) This undoubtedly qualifies as protected activity. Even assuming Plaintiff did not explicitly reference Mr. Harvey's gender, Mr. De Niro obviously knew that Mr. Harvey was a man.

Notably, while Plaintiff need not show an actual statutory violation to demonstrate protected activity, intent is not a required element for violations of the applicable pay equity laws (the EPA and its state counterpart, NYLL § 194). In fact, an unjustified pay discrepancy between a male and female employee gives rise to strict liability. *E.g.*, *Belfi v. Prendergast*, 191 F.3d 129, 135-36 (2d Cir. 1999); *Wheeler v. Citizens Telecomms. Co. of N.Y.*, 795 N.Y.S.2d 370, 371 (3d

3

Dep't 2005). Thus, seeking pay "parity" with a higher-paid male worker whose job required no greater skill, effort, or responsibility than Ms. Robinson's undoubtedly invokes a colorable statutory claim. With respect to the NYCHRL, in protesting pay disparities between herself and a man, Plaintiff unmistakably complained about being treated "less well" than a male colleague.

Then, on January 3, 2019, Ms. Robinson engaged in protected activity once again. First, she reiterated her complaint to Mr. DeNiro about being paid inequitably relative to her male co-worker, Mr. Harvey—this alone was sufficient to establish protected activity. Then, after Mr. De Niro defended the disparity on the basis that she "d[idn't] have kids" and that Mr. Harvey "ha[d] a family to support," she objected to his attempt to justify the pay disparity and protested his sexist rationale, complaining: "That has no relevance to what you pay me." (Dkt. No. 336 at ¶ 3.).

Ms. Robinson's response constituted protected activity on multiple fronts: 1) she opposed unequal pay practices, and 2) she complained of gender-based mistreatment—namely that Mr. De Niro was paying her less than a male counterpart for no legitimate reason.[3] Ms. Robinson found Mr. De Niro's comment to be "sexist." (*Id.*) And, in texts with Canal employee Robin Chambers on January 3, 2019, Plaintiff described her quest for equal compensation as a "fight[] for equality and parity" and complained that Mr. De Niro was treating her worse as a "single *woman*." (Dkt.

---

[3] *See, e.g.*, *Rizo v. Yovino*, 950 F.3d 1217 (9th Cir. 2020) (under EPA, employer's proffered gender-neutral explanation for pay disparity must be job-related, citing, *e.g.*, *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 525 (2d Cir. 1992): disparity must be "rooted in legitimate business-related differences in work responsibilities and qualifications"); *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 845 (9th Cir. 2002) (en banc) (upholding jury verdict on Title VII claim, where female forklift operator was not given equal opportunity for overtime work on the basis that she was not a breadwinner, i.e., where her manager justified giving overtime to male coworker because "he 'has a family to support'"); *Black v. Pan Am. Lab'ys.*, *L.L.C.*, 646 F.3d 254, 257, 260-63 (5th Cir. 2011) (upholding verdict in plaintiff's favor on Title VII claim, as "ample evidence" showed sex discrimination where plaintiff was assigned a "higher sales quota" than male comparators and was told that "the quota 'shouldn't matter to you, [because] you're not the breadwinner anyway'"); *Hall v. Ledex, Inc.*, 669 F.2d 397, 399 (6th Cir. 1982) (upholding bench verdict for plaintiff on EPA claim, in part on showing that supervisor "knew that [the comparator] was the chief breadwinner for his family" and "also knew that [plaintiff] had no children").

No. 335-15) (emphasis added). Thus, a reasonable juror could conclude that Plaintiff's objection to Mr. De Niro's rationale amounted to a complaint of gender-based misconduct.[4]

Even under the most stringent standard governing protected activity under the statutes—i.e., the standard for FLSA/EPA retaliation claims under 29 U.S.C. § 215(a)(3)[5]—Plaintiff need only have raised a complaint within the "colorable" reach of the statute—even if factually or legally mistaken. *See, e.g.*, *Cortese v. Skanska Koch, Inc.*, 544 F. Supp. 3d 456, 471 (S.D.N.Y. 2021) (describing this as a "low bar"); *Ramah v. 138 Hillside Ave., Inc.*, 2021 WL 7906551, at *7 (E.D.N.Y. Aug. 24, 2021) (if plaintiff complains from a reasonable, good faith belief of pay violations, her complaints need not be meritorious). Notably, in denying Defendants' motion for Rule 11 sanctions, this Court held that the claims were indeed colorable. (Dkt. No. 240 at 17 ("Plaintiff has put forward conceivable arguments supporting her equal pay [claims].").)[6]

Further, the language of Plaintiff's complaint was more than sufficient "for a reasonable employer to understand it . . . as an assertion of rights protected by the statute and a call for their protection." *Greathouse v. JHS Sec.*, 784 F.3d 105, 107 (2d Cir. 2015); *Mitchell v. Ceros*, 2022 WL 748247, at *7 (S.D.N.Y. Mar. 10, 2022); *see also Ramah*, 2021 WL 7906551, at *7 (protected

---

[4] Even if accepted on its face, Defendants' contention that Plaintiff complained solely of marital/caregiver status discrimination does not defeat her NYCHRL retaliation claim. Marital status and caregiver status are protected categories under the city law, *see* N.Y.C. Admin Code § 8-107(1)(a), and complaining about discrimination on these bases is protected activity giving rise to a NYCHRL retaliation claim.

[5] The standards under the NYLL and NYCHRL are even more lenient in critical respects. (*See* Dkt. No. 333 at 20 n.14 (NYLL); *id.* at 23 n.21, 29 (NYCHRL).)

[6] The fact that Plaintiff withdrew the underlying EPA and NYLL claims during the litigation, in order to narrow and streamline the case, is immaterial. Plaintiff need not have pursued such claims at all and could have sued solely for retaliation from the outset. What is relevant is that her complaints of equal pay violations were colorable and made in good faith at the time that she made them. *See, e.g.*, *Verdone v. Am. Greenfuels, LLC*, 2017 WL 3668596, at *4 (D. Conn. Aug. 17, 2017) (plaintiff's "failure to state a claim for breach of the Equal Pay Act[] would not necessarily result in the dismissal of her retaliation claims."); *Sims v. Mme. Paulette Dry Cleaners*, 580 F. Supp. 593, 594 & n.4 (S.D.N.Y. 1984) (recognizing that, under 29 U.S.C. § 215(a)(3), "the act of retaliation is a separate violation, in and of itself, without regard to the plaintiff's success or failure on the merits of the underlying discrimination claim").

5

activity established where "fair notice that a grievance has been lodged"). Under the EPA, Plaintiff need show only that she raised the issue of *potentially* "gender-related" disparate pay for substantially similar work; she need not have cited the EPA or accused Defendants of illicit conduct. *Chen-Oster v. Goldman, Sachs & Co.*, 293 F.R.D. 557, 564 (S.D.N.Y. 2013); *Servello v. N.Y. State Off. of Child. & Fam. Servs.*, 2019 WL 974972, at *7 (N.D.N.Y. Feb. 28, 2019). Plaintiff here expressly sought equal treatment and pay "parity" with a male comparator with overlapping responsibilities, and she objected that Mr. De Niro's purported defense that her higher-paid male co-worker "ha[d] a family to support" was of no "relevance" to the issue of their respective pay. In all, she explicitly sought pay equity relative to a male co-worker, not just a "raise."

Ms. Robinson's complaints are equivalent to or more explicit than other pay complaints deemed to qualify as protected activity under the EPA. *See, e.g.*, *Mitchell*, 2022 WL 748247, at *2, 7 (complaints of being paid less than male counterpart); *Xanthakos v. City Univ. of N.Y.*, 2020 WL 5026930, at *2, 7 (S.D.N.Y. Aug. 24, 2020) (complaints of "pay inequity"—being paid less than male colleagues); *Johnson v. J. Walter Thompson U.S.A., LLC*, 224 F. Supp. 3d 296, 315 n.17 (S.D.N.Y. 2016) (questioning whether men also received reduced bonuses, construed as a complaint about equal pay and not just about the sheer amount of the bonus); *Servello*, 2019 WL 974972, at *6-7 (raising concerns about pay inequity, including being qualified for a higher title and pay grade given to members of the opposite gender).[7] Especially considering the context of

---

[7] *See also, e.g.*, *Santiago v. ACACIA Network, Inc.*, 2022 WL 6775835, at *2, 8 (S.D.N.Y. Oct. 10, 2022) (raising concerns about unequal pay—being paid less than a male employee—constituted protected activity under Title VII and the NYCHRL); *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 112-13 (2d Cir. 2019) (plaintiff's complaint that she was being paid less than her peers (all of whom were male) constituted protected activity under Title VII regime when read and considered in context).

Cases under 29 U.S.C. § 215(a)(3) involving retaliation for wage and hour complaints are also instructive on the level of detail needed to establish protected activity. *See* Dkt. 333 at 21 n.17; *see also, e.g.*, *Quintanilla v. Suffolk Paving Co.*, 2019 WL 885933, at *4, 20-21 (E.D.N.Y. Feb. 22, 2019) (informal complaints of payroll violations: "missing a lot of overtime" and being underpaid); *Lopez v. Advantage Plumbing & Mech. Corp.*, 2016 WL 1268274, at *2 (S.D.N.Y. Mar. 31, 2016) ("missing overtime hours").

Plaintiff's various complaints of gender discrimination, a jury could infer that Defendants De Niro and Canal knew or should have known that she was complaining of gender-based pay disparities.

### B. A Jury Could Easily Conclude That Defendants Retaliated Against Plaintiff Because of Her Complaints of Unequal Pay

Defendants also raise new arguments regarding a purported lack of causal connection between Ms. Robinson's pay complaints and their adverse actions. But there is ample evidence of causation and animus. Plaintiff's pay complaints were part of a chain of persistent protected activity that triggered her retaliatory constructive discharge, followed by a series of additional adverse actions that Defendants launched as part of a campaign to ruin her and destroy her career.

While Defendants attempt to backdate Plaintiff's pay complaints to November 2018, the record is clear: Plaintiff complained of pay disparities in December 2018 and then again in January 2019, only *three* months before her retaliatory constructive discharge.[8] (Dkt. No. 335-33; Dkt. No. 336 at ¶ 3; Dkt. No. 329 at ¶¶ 62-69; Dkt. No. 333 § II(C).) Such a tight timeframe is more than sufficient to establish causation. Since Ms. Robinson's retaliatory constructive discharge, Defendants have engaged in a protracted course of retaliation, including filing baseless counterclaims. (*Id.* at § II(D-E).)[9] A jury could readily find a causal link between Plaintiff's pay complaints and Defendants' post-employment retaliation, given that her protected activity and

---

[8] Ms. Robinson continued to raise equal pay complaints after she was driven to resign. For example, in July and August 2019, her then-counsel asserted claims of sex discrimination *under the NYLL*, in clear reference to equal pay violations under NYLL § 194, and raised that Mr. De Niro had defended paying Ms. Robinson less on the basis that she did not have children. (Dkt. No. 335-63 at CANAL_0049395, CANAL_0049393.)

[9] In the Second Circuit, temporal proximity of five to seven months is often sufficient to establish a causal link, particularly where there is other evidence of animus. *See, e.g.*, *Summa v. Hofstra Univ.*, 708 F.3d 115, 128 (2d Cir. 2013) (seven-month gap); *Rasmy v. Marriott Int'l*, 952 F.3d 379, 391-92 (2d Cir. 2020) (five months sufficient to show causation); *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (same); *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (six-month window).

their retaliatory acts were part of a protracted pattern and series of conduct.[10] Further, there is strong direct proof of retaliatory animus—clear expressions of Defendants' anger at her for raising and pursuing complaints of employment violations, coupled with unmistakable expressions of their intent to go after her and "ruin" her for doing so. Such evidence of unlawful intent can be imputed to all of Plaintiff's complaints. *See, e.g.*, *Tomlins v. Vill. of Wappinger Falls Zoning Bd. of Appeals,* 812 F. Supp. 2d 357, 375 (S.D.N.Y. 2011) ("Evidence of a 'pattern of antagonism' . . . may serve as circumstantial evidence of retaliation.").

In sum, a jury could find that Plaintiff's complaints of unequal pay relative to a male colleague, including her objection to Mr. De Niro's illegitimate rationale for the disparity, were protected activity and that Defendants retaliated against her for making these complaints.

### V.     Defendants' Appendix Is Riddled With Inaccuracies and Should Be Stricken

As an Appendix to their Reply brief, Defendants attach a purported "timeline" of Plaintiff's retaliation claims. The Court should strike the Appendix because it is filled with newly asserted and inaccurate representations regarding the timing of the events in question.

For example, Defendants vaguely assert for the first time that a "conversation about pay" took place in November 2018. Insofar as this refers to Plaintiff's complaints of unequal pay relative to her male co-worker, she levied such complaints on December 18, 2018 and again on January 3, 2019, as discussed above. (Dkt. No. 335-33; Dkt. No. 336 at ¶ 3.) The Appendix thus misrepresents the timing and nature of Plaintiff's complaints.

Similarly, Defendants misrepresent the timing of Canal's investigation. For the first time, they claim that Canal's investigation into Ms. Robinson began as early as March 2019. This

---

[10] *See, e.g.*, *Johnson v. Nicholson*, 2007 WL 1395546, at *7 (E.D.N.Y. May 11, 2007); *Vale v. Great Neck Water Pollution Dist.*, 80 F. Supp. 3d 426, 440-441 (E.D.N.Y. 2015); *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 895 (9th Cir. 2005) (causation may be shown through "circumstantial evidence of a 'pattern of antagonism' following the protected conduct.") (citation omitted).

8

directly contradicts Defendants' earlier assertions in their Rule 56.1 Statement that "the investigation began on or around April 20, 2019." (Dkt. No. 321 at ¶ 85.) Beyond this internal inconsistency, evidence indicates that the investigation began much later. Ms. Weeks-Brittan, one of the three Canal employees involved in the investigation, testified that the "formal investigation" into Ms. Robinson did not begin until the summer of 2019. (Dkt. No. 335-9 at 167:24-168:5.) This aligns with contemporaneous text messages from employees conscripted to conduct the investigation. For example, in June 2019, Mr. Kaplan relayed that he "talked to Tom [Harvey]," Canal's General Counsel, and that Mr. Harvey "told [him]" to "spend 24/7 thinking of crazy [C]hase shit." (Dkt. No. 335-59 at CANAL_0047443.) Finally, Canal's Rule 30(b)(6) witness confirmed that any investigation regarding Ms. Robinson's purported transactions did not begin until *after* Ms. Robinson's April 2019 resignation. (Dkt. No. 335-69 at 2.) Therefore, the March 2019 date, newly asserted by Defendants on reply, is inconsistent with Defendants' own prior representations and clearly inaccurate based on record evidence.[11]

Defendants also falsely suggest for the first time that the alleged "targeting based on gender" by Defendants did not begin until March 27, 2019. This is untrue. Ms. Robinson has long alleged that Defendants "subjected [her] to years of gender discrimination and harassment." (*See* Dkt. No. 1 at ¶ 3.) For example, as Ms. Robinson testified, Mr. De Niro repeatedly called her a "bitch" during the last three years of her employment. (Dkt. No. 335-12 at 31:8-17; *see also id.* at 31:20-24.) Thus, Defendants' claim that such targeting began on March 27, 2019 is highly misleading and completely untethered to Ms. Robinson's allegations.

In light of these misrepresentations, inconsistencies, and new assertions, the Court should

---

[11] Defendants also assert in the Appendix that they first made contact with the District Attorney's Office in July 2019. However, Canal's 30(b)(6) witness testified that he may have first communicated with the DA's Office as late as "August of [20]19." (Dkt. No. 335-5 at 396:20-25.)

9

disregard Defendants' Appendix in its entirety.

## VI. Defendants' 56.1 Counterstatement Violates the Rules

Plaintiff has identified a myriad of deficiencies in Defendants' Rule 56.1 Response that rendered it noncompliant with the Local Rules and the Court's Individual Practices. (Dkt. No. 364 at 3-6.) Defendants' Counterstatement (Dkt. No. 357), submitted in connection with their Reply, is similarly checkered with defects. For example, in numerous paragraphs, Defendants purport to "den[y]" or "dispute[]" Plaintiff's statements, but cite *no* countervailing evidence.[12] Plaintiff's statements here must be deemed admitted. *See* Loc. Civ. R. 56.1(b)-(d); Individual Pracs. in Civ. Cases 3(D)(i). Further, in many paragraphs, Defendants do not expressly admit or deny Plaintiff's statements and instead respond with verbiage such as "immaterial" or other language that does not denote a factual dispute.[13] Here too, Plaintiff's statements preceding such "responses" must be deemed admitted. *See, e.g.*, *U.S. Info. Sys. V. Int'l B'hd of Elec. Workers Loc. Union No. 3*, 2006 WL 2136249, at *4 (S.D.N.Y. Aug. 1, 2006). These, among other deficiencies, underscore the need for a close, searching review of Defendants' 56.1 submissions.

## VII. Conclusion

In sum, the Court should disregard Defendants' newly asserted arguments for summary judgment on Plaintiff's retaliation claims, and the Court should strike Defendants' Appendix, which is replete with new and false assertions. The Court should also be wary of relying on Defendants' 56.1 Counterstatement, which is deficient and violates the Court's own rules.

---

[12] *See, e.g.*, Dkt. No. 357 at ¶¶ 5, 20-22, 26, 30, 32, 37-38, 48, 50, 53, 56, 62-63, 84, 87, 89, 98, 102, 105-08, 115, 118-20, 133, 156, 182, 184, 197, 199, 204, 250, 262-63, 267, 269, 271.

[13] *See, e.g.*, Dkt. No. 357 at ¶¶ 10, 17, 42, 124, 126, 176, 178, 198, 206, 209-13, 219-20, 232, 236, 239-40, 245, 254, 259, 266.

Dated: December 22, 2022                    Respectfully submitted,


    */s/ Melinda Koster*
Melinda Koster (MK-1384)
Alexandra Harwin (AH-3111)
David Sanford (5695671)
Jeremy Heisler (JH-0145)
Kate MacMullin (5693882)
SANFORD HEISLER SHARP, LLP
1350 Avenue of the Americas, 31st Floor
New York, New York 10019
Telephone: (646) 402-5650
Facsimile: (646) 402-5651
mkoster@sanfordheisler.com
aharwin@sanfordheisler.com
dsanford@sanfordheisler.com
jheisler@sanfordheisler.com
kmacmullin@sanfordheisler.com

Michael Lockman (5485156)
SANFORD HEISLER SHARP, LLP
611 Commerce Street, Suite 3100
Nashville, Tennessee 37203
Telephone: (615) 434-7000
Facsimile: (615) 434-7020
mlockman@sanfordheisler.com

*Counsel for Plaintiff Graham Chase Robinson*