# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

GRAHAM CHASE ROBINSON

*Plaintiff,*

v.

ROBERT DE NIRO and
CANAL PRODUCTIONS, INC.,

*Defendants.*

Case No.  1:19-cv-09156-LJL-KHP

MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION TO CERTIFY THE COURT'S SUMMARY JUDGMENT
ORDER FOR INTERLOCUTORY REVIEW PURSUANT TO 28 U.S.C. § 1292(b)

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................. 1

II.  LEGAL STANDARD ........................................................................................... 2

III.  ARGUMENT ....................................................................................................... 4

   A.  The Court's Rulings on Plaintiff's Retaliation Claims Call for Immediate Appeal to Resolve Thorny Questions of Law, Avert a Pointless Trial, and Conserve Resources .. 5

    1.  The Court's Rulings on Retaliation Based on Canal's Lawsuit and Demand ................. 5

    2.  The Court's Rulings Regarding Canal's Lawsuit and Demand Present Controlling Questions of Law ..................................................................................................... 6

    3.  There Is a Substantial Ground for Difference of Opinion on Both Questions ................. 8

      a.  There Is a Substantial Ground for Difference of Opinion on Whether a Baselessness Standard Governs Retaliatory Litigation Claims ......................................... 8

      b.  There Is a Substantial Ground for Difference of Opinion on Whether a Baseless Demand Qualifies as Actionable Retaliation ........................................... 10

    4.  Interlocutory Appeal Would Materially Advance the Litigation by Avoiding Multiple Trials and by Enabling Timely Resolution of Questions of First Impression ............... 12

   B.  The Court's Rulings on Canal's Counterclaims Warrant Immediate Review ............. 13

    1.  The Court's Ruling That a Lack of Authorization Can Be Presumed on a Conversion Claim Presents a Novel Question Calling for Interlocutory Appeal ............................ 13

      a.  The Ruling Presents a Controlling Question of Law .................................... 14

      b.  There Are Substantial Grounds for Difference of Opinion ......................... 15

      c.  Appellate Review of This Issue Would Materially Advance the Litigation ............... 16

    2.  The Court's Ruling That Canal Did Not Abandon Its Plea for Disgorgement Implicates a Novel Question of Law as to Whether a Company Owner's Testimony Forgoing Disgorgement of Compensation Amounts to Abandonment or Waiver of Such Relief 17

      a.  The Ruling Presents a Controlling Question of Law .................................... 17

      b.  There Are Substantial Grounds for Difference of Opinion ......................... 18

      c.  Appellate Review of This Issue Would Materially Advance the Litigation ............... 19

IV.  CONCLUSION ................................................................................................... 19

**CASES**                                                                                                   **PAGE(S)**

*ABN Amro Verzekeringen BV v. Geologistics Ams., Inc.*,
    2003 WL 21543529 (S.D.N.Y. July 9, 2003) ............................................................. 4, 12

*Allstate Ins. Co. v. Elzanaty*,
    2013 WL 2154759 (E.D.N.Y. May. 16, 2013) ................................................................. 13

*Arizonans for Off. Eng. v. Arizona*,
    520 U.S. 43 (1997).......................................................................................................... 13

*Baldeo v. Majeed*,
    55 N.Y.S.3d 340 (2d Dep't 2017)................................................................................... 16

*BE & K Constr. Co. v. N.L.R.B.*,
    536 U.S. 516536 (2002).................................................................................................... 8

*Bentivegna v. People's United Bank*,
    2017 WL 4277149 (E.D.N.Y. Sept. 25, 2017) ................................................................. 9

*Bill Johnson's Rests. v. N.L.R.B.*,
    461 U.S. 731 (1983)............................................................................................... 8, 9, 11

*Blue Spike, LLC v. Audible Magic Corp.*,
    2016 WL 3653516 (E.D. Tex. May 31, 2016)................................................................. 18

*Burlington N. & Santa Fe Ry. Co. v. White*,
    548 U.S. 53 (2006)................................................................................... 9, 10, 11, 12

*Capitol Recs., LLC v. Vimeo, LLC*,
    972 F. Supp. 2d 537 (S.D.N.Y. 2013)..................................................................... 3, 6, 7

*Carroll v. Del. River Port Auth.*,
    2016 WL 727117 (D.N.J. Feb. 23, 2016) ....................................................................... 13

*Chauca v. Abraham*,
    841 F.3d 86 (2d Cir. 2016)...................................................................................... 12, 13

*Chauca v. Abraham*,
    89 N.E.3d 475 (2017)...................................................................................................... 11

*Conahan v. MedQuest Ltd.*,
    2022 WL 16748585 (S.D.N.Y. Nov. 7, 2022) .................................................................. 7

*Consub Del. LLC v. Schahin Engenharia Limitada*,
  476 F. Supp. 2d 305 (S.D.N.Y. 2007)...............................................................7

*Corrado v. N.Y. Unified Ct. Sys.*,
  163 F. Supp. 3d 1 (E.D.N.Y. 2016) ................................................................11

*Crawford v. Coram Fire Dist.*,
  2015 WL 10044273 (E.D.N.Y. May 4, 2015) ..................................................9

*D'Antuono v. Serv. Rd. Corp.*,
  2011 WL 2222313 (D. Conn. June 7, 2011).....................................................13

*Daddino v. Sanossian*,
  2022 WL 1085542 (E.D.N.Y. Feb. 25, 2022)....................................................9

*Darveau v. Detecon, Inc.*,
  515 F.3d 334 (4th Cir. 2008) ............................................................................9

*Di Bella v. United States*,
  369 U.S. 121 (1962)...........................................................................................2

*Durham Life Ins. Co. v. Evans*,
  166 F.3d 139 (3d Cir. 1999)..............................................................................9

*Glatt v. Fox Searchlight Pictures Inc.*,
  2013 WL 5405696 (S.D.N.Y. Sept. 17, 2013)...............................................3, 7

*Halvatzis v Perrone*,
  156 N.Y.S.3d 428 (2d Dep't 2021)..................................................................19

*Hecht v. Components Int'l, Inc.*,
  867 N.Y.S.2d 889 (N.Y. Sup. Ct. 2008) .........................................................15

*Hess v. A.I. DuPont Hosp. For Child.*,
  2009 WL 2776606 (E.D. Pa. Aug. 28, 2009) ..................................................16

*Hudson v. Moore Bus. Forms, Inc.*,
  836 F.2d 1156 (9th Cir. 1987) .........................................................................11

*Hymes v. Bank of Am., N.A.*,
  2020 WL 9174972 (E.D.N.Y. Sept. 29, 2020) ..................................................2

*In re A2P SMS Antitrust Litig.*,
  2015 WL 876456 (S.D.N.Y. Mar. 2, 2015) ....................................................2, 4

*In re Duplan Corp.*,
    591 F.2d 139 (2d Cir. 1978).............................................................. 4, 12

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
    986 F. Supp. 2d 524 (S.D.N.Y. 2014)........................................... 4, 10

*In re Fosamax Prods. Liab. Litig.*,
    2011 WL 2566074 (S.D.N.Y. June 29, 2011) ................................. 13

*Jackson v. Birmingham Bd. of Educ.*,
    544 U.S. 167 (2005)........................................................................ 10

*Jacques v. DiMarzio*,
    200 F. Supp. 2d 151 (E.D.N.Y. 2002) ........................................... 11

*Jacques v. DiMarzio, Inc.*,
    216 F. Supp. 2d 139 (E.D.N.Y. 2002) ........................................... 11

*Kim v. Lee*,
    2023 WL 2317248 (2d Cir. Mar. 2, 2023)........................................ 8

*Kim v. Lee*,
    576 F. Supp. 3d 14 (S.D.N.Y. 2021)............................................. 7, 9

*Klinghoffer v. S.N.S. Achille Lauro*,
    921 F.2d 21 (2d Cir. 1990)............................................................... 3

*Kuzinski v. Schering Corp.*,
    614 F. Supp. 2d 247 (D. Conn. 2009)............................................. 3

*Laurent v. PricewaterhouseCoopers LLP*,
    2014 WL 251986 (S.D.N.Y. Jan. 22, 2014) .................................... 7

*Lehman Bros. v. Schein*,
    416 U.S. 386 (1974)........................................................................ 13

*Lok Prakashan, Ltd. v. Berman*,
    2005 WL 8178482 (S.D.N.Y. Nov. 4, 2005)............................. 18, 19

*Marisol A. v. Giuliani*,
    1996 WL 419887 (S.D.N.Y. July 26, 1996) .................................... 3

*McKee v. McKee*,
    98 N.Y.S.3d 219 (2d Dep't 2019)................................................... 16

*Mitchell v. Robert De Mario Jewelry*,
    361 U.S. 288 (1960)..................................................................... 10

*NRDC v. Ill. Power Res., LLC*,
    2016 WL 9650981 (C.D. Ill. Nov. 2, 2016)..................................... 13

*Pen Am. Ctr., Inc. v. Trump*,
    2020 WL 5836419 (S.D.N.Y. Oct. 1, 2020) ................................ 3, 18

*Primavera Familienstifung v. Askin*,
    139 F. Supp. 2d 567 (S.D.N.Y. 2001)............................................... 3

*Proulx v. Citibank, N.A.*,
    659 F. Supp. 972 (S.D.N.Y. 1987).................................................. 10

*Quintal v. Kellner*,
    189 N.E. 770 (1934)...................................................................... 15

*Radin v. Tun*,
    2015 WL 4645255 (E.D.N.Y. Aug. 4, 2015) ................................. 19

*Richardson Greenshields Sec. Inc. v. Lau*,
    819 F. Supp. 1246 (S.D.N.Y. 1993)........................................... 14, 16

*Rodriguez v. Nat'l Golf Links of Am.*,
    2020 WL 3051559 (E.D.N.Y. June 8, 2020) .................................... 9

*SEC v. Rio Tinto PLC*,
    2021 WL 1893165 (S.D.N.Y. May 11, 2021) .............................. 4, 12

*Sherman v. Fivesky, LLC*,
    2020 WL 5105164 (S.D.N.Y. Aug. 31, 2020) ................................. 7

*Spencer v. Int'l Shoppes*,
    2010 WL 1270173 (E.D.N.Y. Mar. 29, 2010) ............................... 11

*Spencer v. Int'l Shoppes*,
    902 F. Supp. 2d 287 (E.D.N.Y. 2012) ............................................ 9

*Supreme Showroom v. Branded Apparel Grp.*,
    2018 WL 3148357 (S.D.N.Y. June 27, 2018) ............................... 18

*Tantaros v. Fox News Network*,
    465 F. Supp. 3d 385 (S.D.N.Y. 2020)............................... 4, 5, 16, 19

*W. View Hills, Inc. v. Lizau Realty Corp.*,
    160 N.E.2d 622 (1959) .................................................................. 17

*Wang v. Hearst Corp.*,
    2013 WL 3326650 (S.D.N.Y. June 27, 2013) ................................... 4

*Weber v. United States*,
    484 F.3d 154 (2d Cir. 2007) ......................................................... 2

*Weintraub v. Bd. of Educ. of N.Y.*,
    489 F. Supp. 2d 209 (E.D.N.Y. 2007) .......................................... 12

*Yu v. Hasaki Rest., Inc.*,
    874 F.3d 94 (2d Cir. 2017) ............................................................ 4

*Zakrzewska v. New Sch.*,
    574 F.3d 24 (2d Cir. 2009) ............................................. 11, 15, 18

## STATUTES

28 U.S.C. § 1292(b) ................................................................... passim

Fair Labor Standards Act, 29 U.S.C. § 215 ("FLSA") ........................ passim

National Labor Relations Act, 29 U.S.C. §§ 151-69 ("NLRA") ............... 8, 9

New York City Human Rights Law, N.Y. Admin. Code § 8-107 ("NYCHRL") ................ passim

New York Labor Law § 215 ("NYLL") ............................................ passim

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e ......................... 9, 10, 11

## RULES

Federal Rule of Civil Procedure 11 ...................................................... 8

## TREATISES

16 Charles A. Wright, Arthur R. Miller & Edward H. Cooper,
    Federal Practice and Procedure (3d ed. 2012) ................................. 2

# I.    INTRODUCTION

In its Opinion and Order on the parties' motions for summary judgment (Dkt. No. 382), the Court issued rulings of law that fundamentally shape the course of this litigation. First, the Court excised key aspects of Ms. Robinson's retaliation claims, including her claims that Defendants launched a state court suit with a baseless $6 million demand to "humiliate" and "ruin her" because she asserted employment claims against them.   Second, the Court denied Ms. Robinson's motion, allowing all of Canal's claims against her to proceed to trial.

The Court's rulings hinge on novel, open questions of federal and New York law that have never been decided by the Second Circuit or the New York Court of Appeals.  Interlocutory appeal is warranted because immediate appellate review will clarify critical legal issues that will shape the forthcoming trial and avoid the need for a re-trial.  It would be wasteful and inefficient for the Court to empanel a jury and conduct a multi-week trial on the merits, only to have to redo the entire endeavor if the Second Circuit reverses the Court's legal rulings post-trial.

On Defendants' summary judgment motion, interlocutory appeal is warranted to decide: (1) whether an employer's suit against an employee must be "baseless" to qualify as actionable retaliation under the Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL"), or New York City Human Rights Law ("NYCHRL"), where there is evidence that at least some aspect of the suit was driven by retaliatory animus, and (2) whether an employer's baseless demand, standing alone, may qualify as a materially adverse action under the FLSA or NYLL or as an adverse action under the NYCHRL.  A reversal of the Court's legal rulings on these issues would substantially impact the scope of Plaintiff's retaliation claims and thus the entire trial.

On Plaintiff's summary judgment motion, interlocutory appeal is warranted to decide: (1) whether a presumption of lack of authorization applies to an employer's conversion claims against

an employee, and (2) whether a company owner's testimony that a remedy should not be imposed constitutes abandonment or waiver of the remedy, even where the owner has not been designated as a Rule 30(b)(6) witness. A reversal of the Court's legal rulings on these issues may dispose of Canal's claims, which would substantially reduce the claims before the Court and the length of the trial. Even if a reversal does not eliminate any claims, it would still require a re-trial.

Accordingly, Plaintiff respectfully requests that the Court amend its Order to certify one or more of the above questions for interlocutory review pursuant to 28 U.S.C. § 1292(b).

## II.    <u>LEGAL STANDARD</u>

Pursuant to 28 U.S.C. § 1292(b), a district court may certify an order for interlocutory review when it (1) "involves a controlling question of law," (2) "as to which there is substantial ground for difference of opinion," and where (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation."

This statute is designed to "avoid protracted litigation" and "assure the prompt resolution of knotty legal problems." *Weber v. United States*, 484 F.3d 154, 159 (2d Cir. 2007) (citation omitted). Interlocutory appeal is imperative "where the damage of error unreviewed before the judgment . . . [is] greater than the disruption caused by [the] appeal." *Di Bella v. United States*, 369 U.S. 121, 124-25 (1962). Thus, the guiding principle under § 1292(b) is a practical inquiry into the "probable gains and losses" that may arise from an immediate appeal. *In re A2P SMS Antitrust Litig.*, 2015 WL 876456, at *5 (S.D.N.Y. Mar. 2, 2015) (citing 16 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3930 (3d ed. 2012)).[1] The factors should be applied with "flexibility." Fed. Prac. & Proc. § 3930; *see also id.* § 3929.

---

[1] *See also, e.g.*, *Hymes v. Bank of Am., N.A.*, 2020 WL 9174972, at *6 (E.D.N.Y. Sept. 29, 2020) (certification should be granted "if the statutory criteria are met and the court believes that immediate appeal would best foster a simultaneously effective and efficient judiciary").

Certification is proper even where the district court has a "strong belief" that its decision is correct. *Marisol A. v. Giuliani*, 1996 WL 419887, at *1 (S.D.N.Y. July 26, 1996).[2]

As to the first factor under § 1292(b), the "controlling question of law," the question should be "a 'pure' question of law that the reviewing court could decide quickly and cleanly without having to study the record." *Capitol Recs., LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 551 (S.D.N.Y. 2013) (citation omitted). The "controlling question" factor can be satisfied in a number of ways, including if: "[1] reversal of the district court's opinion could result in dismissal of the action; [2] reversal of the district court's opinion, even though not resulting in dismissal, could significantly affect the conduct of the action; *or*, [3] the certified issue has precedential value for a large number of cases." *Primavera Familienstifung v. Askin*, 139 F. Supp. 2d 567, 570 (S.D.N.Y. 2001);[3] *see also Capitol Recs.*, 972 F. Supp. 2d at 552 (where court partially granted summary judgment, holding that issue of law was "controlling" because its resolution could affect "which party prevails" and would thus "materially affect the litigation's outcome").[4]

As to the second factor under § 1292(b), a "substantial ground for difference of opinion" exists where "there is conflicting authority on the issue" or the issue is one of "first impression for the Second Circuit." *Pen Am. Ctr., Inc. v. Trump*, 2020 WL 5836419, at *2-3 (S.D.N.Y. Oct. 1, 2020) (citation omitted); *Capitol Recs.*, 972 F. Supp. 2d at 552 (factor met, as the "issue is a question of first impression in the Second Circuit" and "[i]n view of the paucity of case law and . . . conflicting conclusions"). To fulfill the second factor, there need only be "genuine doubt as to

---

[2] Questions of law decided on a complete record at summary judgment—as here—are especially appropriate for review. *See Kuzinski v. Schering Corp.*, 614 F. Supp. 2d 247, 249-50 (D. Conn. 2009).

[3] All italicization in quoted material is added unless indicated otherwise.

[4] Notably, while a "controlling question of law" need not affect a large number of cases, "the impact that an appeal will have on other cases is a factor" that weighs in favor of granting an interlocutory appeal. *Klinghoffer v. S.N.S. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990); *see also Glatt v. Fox Searchlight Pictures Inc.*, 2013 WL 5405696, at *2 (S.D.N.Y. Sept. 17, 2013).

whether the district court applied the correct legal standard." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 540 (S.D.N.Y. 2014) (citation omitted).

The third and final factor, material advancement, "overlaps with the issue of whether a controlling question of law is presented." *SMS Antitrust Litig.*, 2015 WL 876456, at *5. All that is required is that the appeal "*may*" materially advance the litigation. *Yu v. Hasaki Rest., Inc.*, 874 F.3d 94, 98 (2d Cir. 2017) (citing 28 U.S.C. § 1292 (b)). In assessing this factor, "courts must consider the institutional efficiency of both the district court and the appellate court." *SEC v. Rio Tinto PLC*, 2021 WL 1893165, at *2 (S.D.N.Y. May 11, 2021) (citation omitted).

This third factor can be met where certifying the question has "the potential for substantially accelerating the disposition of the litigation" or "shorten[ing] the time required for trial." *In re Duplan Corp.*, 591 F.2d 139, 148 n.11 (2d Cir. 1978); *Tantaros v. Fox News Network*, 465 F. Supp. 3d 385, 389 (S.D.N.Y. 2020). Resolution of the question at issue need not result in the dismissal of a claim. Rather, courts have recognized that this prong is also met where an immediate appeal would avoid duplicative trials arising from delayed review. *See, e.g.*, *ABN Amro Verzekeringen BV v. Geologistics Ams., Inc.*, 2003 WL 21543529, at *3 (S.D.N.Y. July 9, 2003) ("By certifying an appeal now, the prospect of *two* trials will be eliminated . . . appellate review at this juncture is the most efficient way to proceed.") (emphasis in original). In addition, the third element is satisfied where appellate review would provide clarification of the law and thus guide the resolution of pending issues. *See, e.g.*, *Wang v. Hearst Corp.*, 2013 WL 3326650, at *2 (S.D.N.Y. June 27, 2013) ("If the Second Circuit provides clarification or a different legal standard, it will guide a resolution of the outstanding issues pending in the Circuit.").

### III.    ARGUMENT

The Court's Order presents at least four controlling questions of law on novel or sharply

contested issues. An immediate appeal of any of these questions would materially advance the termination of this litigation, either by disposing of claims altogether and thus reducing the number of claims for trial or by promoting efficiency and averting re-trials that would be necessary if any of Ms. Robinson's claims are reinstated post-trial. Where, as here, Ms. Robinson has identified a number of questions, any one of which "meets the standards set forth in § 1292(b) and involves a new legal question or is of special consequence," this Court "should not hesitate to certify an interlocutory appeal." *Tantaros*, 465 F. Supp. 3d at 391 (quotation omitted).

### A. The Court's Rulings on Plaintiff's Retaliation Claims Call for Immediate Appeal to Resolve Thorny Questions of Law, Avert a Pointless Trial, and Conserve Resources

### 1. The Court's Rulings on Retaliation Based on Canal's Lawsuit and Demand

In opposing Defendants' motion for summary judgment, Plaintiff presented direct evidence that Canal filed its lawsuit against Ms. Robinson—and grossly inflated its damages demand—out of retaliatory animus. In contemporaneous text messages, long-time Canal employee Michael Kaplan confirmed that Canal launched a suit against her and sought millions in damages (a "random" number) to "ruin her," "humiliate her," and "strike first"—all because Ms. Robinson "was threatening to sue" Mr. De Niro. (Dkt. No. 335-74 at CANAL_0047781; Dkt. No. 335-73 at CANAL_0049481.)[5] Plaintiff also cited Mr. De Niro's own admissions, including his testimony that he issued a directive to "go after her [Ms. Robinson]" and "file whatever" and that he was "very angry" and "upset" that Ms. Robinson asserted employment claims and threatened a lawsuit. (Dkt. No. 335-2 at 423:16-25, 419:7-12, 424:14-425:7; Dkt. No. 335-3 at 528:6-10.)

---

[5] Plaintiff also cited other evidence confirming that the plan was to deploy Canal's General Counsel, Tom Harvey, to retaliate against Ms. Robinson. For example, after Ms. Robinson "threaten[ed] legal action," Mr. De Niro received assurances that General Counsel Harvey would "get her [Ms. Robinson]." (Dkt. No. 335-32 at CANAL_0048628-29.)

The Court ruled that a jury could infer that "the request for $6 million in monetary relief was inserted into the complaint with a retaliatory motive" and "solely to deter Plaintiff from pursuing her claims." (Dkt. No. 382 at 68.) Still, the Court granted summary judgment on Ms. Robinson's retaliation claims to the extent they were based on Canal's lawsuit. In reaching this decision, the Court ruled that a plaintiff must demonstrate that an employer's lawsuit is baseless to sustain a retaliatory litigation claim; the Court held that Ms. Robinson had not done so. (Dkt. No. 382 at 64, 67.)

The Court also concluded that "Plaintiff may have raised a triable issue of fact that the *damages request* in the State Court Action was both retaliatory and baseless." (*Id.* at 113.) Nonetheless, the Court ruled as a matter of law that an inflated demand, on its own, does not qualify as actionable retaliation. (*Id.* at 114.)

### 2. The Court's Rulings Regarding Canal's Lawsuit and Demand Present Controlling Questions of Law

The questions at the heart of the Court's rulings—(i) whether an employer's suit against an employee must be "baseless" to qualify as actionable retaliation under the FLSA, NYLL, or NYCHRL, where there is evidence that at least some aspect of the suit was driven by retaliatory animus, and (ii) whether an employer's baseless demand, standing alone, may qualify as a materially adverse action under the FLSA or NYLL or as an adverse action under the NYCHRL— are "controlling questions of law." Thus, these questions satisfy the first prong of §1292(b).

First, the questions are pure questions of law. The Second Circuit does not need to analyze the factual record to address either question; it can decide these issues by analyzing Supreme Court, Second Circuit, and New York appellate precedent governing retaliation claims and by engaging in statutory interpretation. *See, e.g.*, *Capitol Recs.*, 972 F. Supp. 2d at 552 ("Because the issue turns almost exclusively on a question of statutory interpretation, 'the reviewing court could decide

[it] quickly and cleanly without having to study the record.'"); *Glatt*, 2013 WL 5405696, at *2 (appropriate standard for determining whether an unpaid intern is an "employee" under the FLSA and NYLL qualified as a controlling question of law).[6]

Second, the resolution of these questions would materially affect the course and outcome of this litigation. By excising Plaintiff's retaliation claims based on Canal's state court lawsuit, a material component of which was Canal's baseless $6 million demand, the Court eliminated crucial aspects of Plaintiff's retaliation claims. A reversal of such rulings and reinstatement of these claims would materially shape the litigation. *See Capitol Recs.*, 972 F. Supp. 2d at 552.

Moreover, these questions are "controlling" because an appellate decision would impact many other cases. In recent years, employer claims against employees have proliferated, and there have been a multitude of retaliation suits challenging such claims. *See, e.g.*, *Conahan v. MedQuest Ltd.*, 2022 WL 16748585, at *11 (S.D.N.Y. Nov. 7, 2022) (Liman, J.); *Sherman v. Fivesky, LLC*, 2020 WL 5105164, at *6 (S.D.N.Y. Aug. 31, 2020) (Liman, J.); *Kim v. Lee*, 576 F. Supp. 3d 14, 31 (S.D.N.Y. 2021) (Liman, J.). Appellate review of these questions will clarify the law and impact scores of retaliation suits filed in this District and elsewhere challenging retaliatory employer claims. *Cf., e.g.*, *Glatt*, 2013 WL 5405696, at *2 (interlocutory appeal warranted on standard for whether interns qualify as employees; citing to fact that "[s]everal intern cases have been filed in the Southern District of New York . . . and this issue affects all of them").

---

[6] *See also Laurent v. PricewaterhouseCoopers LLP*, 2014 WL 251986, at *1 (S.D.N.Y. Jan. 22, 2014) ("The Court's Order . . . hinged on statutory interpretation—a quintessentially legal determination."); *Consub Del. LLC v. Schahin Engenharia Limitada*, 476 F. Supp. 2d 305, 313 (S.D.N.Y. 2007).

### 3. There Is a Substantial Ground for Difference of Opinion on Both Questions

*a. There Is a Substantial Ground for Difference of Opinion on Whether a Baselessness Standard Governs Retaliatory Litigation Claims*

There is "substantial ground for difference of opinion" as to whether employer claims must be "baseless" to be actionable as retaliation. Thus, this question satisfies the second prong of § 1292(b).

First, this question is an issue of first impression. Plaintiff has not located a case in which the Supreme Court, Second Circuit, or New York Court of Appeals has required proof that employer litigation is "baseless" to sustain FLSA, NYLL, or NYCHRL retaliation claims. The Second Circuit recently acknowledged that this is an issue of first impression in the FLSA context. *See Kim v. Lee*, 2023 WL 2317248, at *3 n.5 (2d Cir. Mar. 2, 2023) (declining to "decide whether and under what circumstances a non-frivolous counterclaim may constitute unlawful retaliation under" the FLSA's anti-retaliation provision and recognizing that "whether a non-frivolous lawsuit may qualify as actionable retaliation under the FLSA is an open question in the Second Circuit").[7]

Moreover, there is conflicting authority on this issue. Indeed, courts in this Circuit and

---

[7] In its Order, the Court suggested that the First Amendment right to petition the government requires that an employer lawsuit be baseless in order to constitute actionable retaliation. (Dkt. No. 382 at 64.) But the rationale for imposing a baselessness standard stems from the antitrust realm, and Plaintiff has not located a single case in which the Supreme Court, Second Circuit, or New York Court of Appeals has applied any such principle to the anti-retaliation provisions of federal, state, or local employment statutes. At most, there has been some discussion under the National Labor Relations Act ("NLRA"). *See Bill Johnson's Rests. v. N.L.R.B.*, 461 U.S. 731, 747 (1983) (indicating that an employer suit must be baseless to be *enjoined* as an unfair labor practice under the NLRA but that a claim for monetary and other relief may proceed once the suit is resolved in an employee's favor); *BE & K Constr. Co. v. N.L.R.B.*, 536 U.S. 516, 519, 536 (2002) (recognizing that the free speech burdens were different in the NLRA context than under antitrust law and leaving open the question of whether the NLRB "may declare unlawful any unsuccessful but reasonably based suits that would not have been filed but for a motive to impose the costs of the litigation process"). Moreover, bringing non-frivolous claims in bad faith is not generally protected by the First Amendment. Under Rule 11 and other provisions, litigants may be sanctioned for bad faith and vexatious litigation conduct even if their claims or defenses are not wholly groundless. *See, e.g.*, Fed. R. Civ. P. 11(b)(1) (party responsible for a pleading certifies to the court that "it is not being presented for *any* improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation").

elsewhere are divided on whether to require proof that employer litigation is baseless to sustain retaliation claims. *Compare* Dkt. No. 382 at 64 and *Kim v. Lee*, 576 F. Supp. 3d at 31 (citing *Darveau v. Detecon, Inc.*, 515 F.3d 334, 343 (4th Cir. 2008))*, with, e.g.*, *Daddino v. Sanossian*, 2022 WL 1085542, at *23 (E.D.N.Y. Feb. 25, 2022) (rejecting application of frivolousness standard); *Rodriguez v. Nat'l Golf Links of Am.*, 2020 WL 3051559, at *5 (E.D.N.Y. June 8, 2020);[8] *Bentivegna v. People's United Bank*, 2017 WL 4277149, at *4 (E.D.N.Y. Sept. 25, 2017); *Crawford v. Coram Fire Dist.*, 2015 WL 10044273, at *7 (E.D.N.Y. May 4, 2015); *Spencer v. Int'l Shoppes*, 902 F. Supp. 2d 287, 296-99 (E.D.N.Y. 2012) (rejecting *Bill Johnson's* baselessness standard as inapplicable to the employment discrimination context and reasoning that *Bill Johnson's* is "aimed at a different public policy context, namely, NLRA cases and that *Burlington Northern* requires a more expansive interpretation of retaliation for employment discrimination cases"); *see also, e.g.*, *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 157 (3d Cir. 1999) (rejecting *Bill Johnson's* baselessness standard in Title VII retaliation context: "*Bill Johnson's* . . . construed a specific, ambiguous provision of the NLRA defining unfair labor practices. Its reasoning has not been extended to Title VII, in part because the prohibition on retaliation is so explicit and the public policy behind the retaliation provision so compelling.").

Finally, there are strong public policy grounds for rejecting a "baselessness" test on statutory anti-retaliation claims. Such a standard would narrow the remedial reach of the FLSA, NYLL, and NYCHRL and deprive employees who engage in protected activity of recourse if their employers' claims have any kernel of merit, even where there is ample evidence that the

---

[8] While this Court cited *Rodriguez* when ruling that an employee must demonstrate baselessness (Dkt. No. 382 at 64), *Rodriguez* does not support this conclusion. In fact, the court in *Rodriguez* "decline[d] to extend the reasoning in *Bill Johnson's* . . . to bar Plaintiff from adding retaliation claims under the FLSA and NYLL" and emphasized that the law on the baselessness standard was unsettled. *See Rodriguez*, 2020 WL 3051559, at *5. In that vein, the court in *Rodriguez* indicated that the claim could succeed if a retaliatory motive was the but-for impetus of the employer's suit—even without a finding of baselessness. *Id.*

employer's lawsuit was driven by retaliatory motives. Such a standard also stands to embolden employers confronted with employee claims to leverage any potential infraction or misstep by the employee into a countersuit—and to discourage employees who face retaliatory, potentially ruinous litigation from challenging their employers' violations. Thus, a baselessness standard is at odds with the remedial and deterrence goals of anti-retaliation statutes.[9]

In all, there is "genuine doubt" as to whether the Court applied the correct legal framework. *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d at 540.

> b.   *There Is a Substantial Ground for Difference of Opinion on Whether a Baseless Demand Qualifies as Actionable Retaliation*

There is also "substantial ground for difference of opinion" as to whether a baseless demand, standing alone, can be actionable retaliation under the federal *Burlington* test or under the NYCHRL's more expansive standard. This too satisfies the second element of § 1292(b).

First, this issue is one of first impression. Indeed, there is no appellate authority on the subject. This Court itself recognized the novelty of the question, acknowledging "[t]here is no case squarely on point" regarding whether such a demand constitutes a materially adverse action. (Dkt. No. 382 at 68.) Moreover, the Court did not cite a single case addressing whether such a demand qualifies as an adverse action under the NYCHRL.

Second, the Court's ruling is "not free from doubt." *Zakrzewska v. New Sch.*, 574 F.3d 24,

---

[9] Without strong anti-retaliation protections, the enforcement schemes of these statutes "would unravel." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 180 (2005); *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006) ("Title VII depends for its enforcement upon the cooperation of employees who are willing to file complaints and act as witnesses."); *Mitchell v. Robert De Mario Jewelry*, 361 U.S. 288, 292 (1960) (FLSA: "Plainly, effective enforcement could thus only be expected if employees felt free to approach officials with their grievances . . . By the proscription of retaliatory acts set forth in [29 U.S.C. § 215(a)(3)] . . . Congress sought to foster a climate in which compliance with the substantive provisions of the Act would be enhanced."); *Proulx v. Citibank, N.A.*, 659 F. Supp. 972, 978 (S.D.N.Y. 1987) (retaliation protections are crucial because "enforcement of Title VII rights is necessarily dependent on individual complaints") (citation omitted).

27 (2d Cir. 2009). A baseless demand for millions of dollars has a profound chilling effect that goes well beyond the mere filing of the suit; it threatens to bankrupt an employee, garner significant press attention, and eviscerate her reputation and job prospects. Indeed, numerous cases recognize that exorbitant damages demands pose an *in terrorem* effect—the touchstone for retaliation under *Burlington*. *See, e.g.*, *Bill Johnson's*, 461 U.S. at 741 ("[T]he chilling effect . . . upon an employee's willingness to engage in protected activity is multiplied where the complaint seeks damages."); *Jacques v. DiMarzio, Inc.*, 216 F. Supp. 2d 139, 144 (E.D.N.Y. 2002) ("Although the *ad damnum* clause was amended from $500,000 to $50,000, the *in terrorem* effect of the initial half million dollars [on the ADA plaintiff] lingered for about a year."); *Jacques v. DiMarzio*, 200 F. Supp. 2d 151, 162 (E.D.N.Y. 2002) (deeming $500,000 counterclaim "to be nothing more than a naked form of retaliation"); *Spencer v. Int'l Shoppes*, 2010 WL 1270173, at *11 (E.D.N.Y. Mar. 29, 2010) (denying summary judgment on Title VII, Section 1981, and NYSHRL retaliation claims and holding that "[t]he lawsuit against Plaintiff for over six million dollars could dissuade a reasonable worker, and thus, is an adverse action").[10]

Third, there is particular ground for difference of opinion under the NYCHRL. The statute incorporates an especially liberal standard that requires an independent analysis and review. *See* N.Y.C. Admin Code § 8-130; *Chauca v. Abraham*, 89 N.E.3d 475, 481 (2017) (adopting "the most liberal construction of the statute that is 'reasonably possible' and furthers the purpose of the NYCHRL"—even where doing so deviates from the federal standard). Under the NYCHRL, a retaliatory action need not be materially adverse but only "disadvantage[] the plaintiff *in any manner.*" *Corrado v. N.Y. Unified Ct. Sys.*, 163 F. Supp. 3d 1, 26 (E.D.N.Y. 2016) (emphasis in

---

[10] Courts sanction parties for baselessly inflating their demands. *See, e.g.*, *Hudson v. Moore Bus. Forms, Inc.*, 836 F.2d 1156, 1162-63 (9th Cir. 1987) (imposing Rule 11 sanctions for excessive, unsubstantiated $4 million punitive damages demand on retaliatory counterclaim by employer against employee).

original). Even if a baseless multi-million-dollar demand was deemed non-actionable as a matter of federal law under *Burlington*, such a demand likely would be deemed to "disadvantage" an employee under the NYCHRL.[11]

### 4. Interlocutory Appeal Would Materially Advance the Litigation by Avoiding Multiple Trials and by Enabling Timely Resolution of Questions of First Impression

Immediate appellate review of these rulings would "substantially accelerat[e] the disposition of the litigation" by eliminating the possibility of duplicative trials. *See In re Duplan Corp.*, 591 F.2d at 148 n.11. Thus, they satisfy 1292(b)'s third prong.

Deferring appellate review, on the other hand, would only prolong resolution of this matter. If this action proceeds to trial before Ms. Robinson can appeal the Order, the jury will not decide crucial aspects of her retaliation claims. If the Second Circuit later reverses the Court's rulings on the baselessness standard or the actionability of a baseless demand, this will reinstate key components of Plaintiff's retaliation claims, and the entire case "would need to be retried, resulting in a substantial waste of resources on the part of the Court and the parties to this action." *Weintraub v. Bd. of Educ. of N.Y.*, 489 F. Supp. 2d 209, 222 (E.D.N.Y. 2007); *Rio Tinto*, 2021 WL 1893165, at *3 (if Second Circuit reverses the Order and finds additional claims to be actionable, "the parties could resolve all actionable claims at one trial. This would be more efficient than seeking appellate review following trial, after which a second trial might be necessary.").

Consequently, a prompt appellate ruling on these thorny issues of law will promote efficiency and ensure that only one trial is needed. *See, e.g.*, *ABN Amro Verzekeringen BV*, 2003 WL 21543529, at *3 ("By certifying an appeal now, the prospect of *two* trials will be eliminated

---

[11] On interlocutory appeal, the Second Circuit could certify this question to the New York Court of Appeals if necessary. *See Chauca v. Abraham*, 841 F.3d 86 (2d Cir. 2016) (certifying unsettled question as to the standard for punitive damages under NYCHRL).

. . . appellate review at this juncture is the most efficient way to proceed.") (emphasis in original); *In re Fosamax Prods. Liab. Litig.*, 2011 WL 2566074, at *9 (S.D.N.Y. June 29, 2011) (interlocutory review likely to ensure that another trial would not be needed); *D'Antuono v. Serv. Rd. Corp.*, 2011 WL 2222313, at *2 (D. Conn. June 7, 2011) (certifying interlocutory appeal where an appellate ruling could reduce the number of proceedings); *NRDC v. Ill. Power Res., LLC*, 2016 WL 9650981, at *5 (C.D. Ill. Nov. 2, 2016) ("The controlling and materially advance requirements are met because the resolution of questions affects what claims on which the Plaintiff can proceed . . . there is an abundance of authority supporting interlocutory appeals with respect to orders granting partial summary judgment on the issue of liability."); *Carroll v. Del. River Port Auth.*, 2016 WL 727117, at *3 (D.N.J. Feb. 23, 2016) (a key purpose of § 1292(b) is "the avoidance of unnecessary trials[;] . . . immediate review of all potentially reversible rulings furthers this goal").

Moreover, on interlocutory appeal, the Second Circuit may certify unsettled questions under the NYCHRL to the New York Court of Appeals, which further promotes efficiency.[12]

## B. The Court's Rulings on Canal's Counterclaims Warrant Immediate Review

### 1. The Court's Ruling That a Lack of Authorization Can Be Presumed on a Conversion Claim Presents a Novel Question Calling for Interlocutory Appeal

It is blackletter law that an element of a conversion claim is that the defendant "acted

---

[12] *See, e.g.*, *Allstate Ins. Co. v. Elzanaty*, 2013 WL 2154759, at *4-5 (E.D.N.Y. May. 16, 2013) (by facilitating review by the New York Court of Appeals, permitting an interlocutory appeal would advance overall efficiency where "[t]he matter at hand largely concerns a novel and distinct question arising under New York State Law unaddressed by . . . any state or federal trial or appellate authority"). The state-law certification process is an engine designed to materially advance the action. *See Chauca v. Abraham*, 841 F.3d 86, 93 (2d Cir. 2016) (certification provides federal courts "with a valuable device for securing prompt and authoritative resolution of questions of state law") (citation omitted); *Elzanaty*, 2013 WL 2154759, at *4 (citing *Lehman Bros. v. Schein*, 416 U.S. 386, 390-91 (1974) ("where there is doubt as to local law," certification "does, of course, in the long run save time, energy, and resources and helps build a cooperative judicial federalism") and *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 76 (1997) ("Certification procedure . . . allows a federal court faced with a novel state-law question to put the question directly to the State's highest court, reducing the delay, cutting the cost, and increasing the assurance of gaining an authoritative response.")).

without authorization." *Richardson Greenshields Sec. Inc. v. Lau*, 819 F. Supp. 1246, 1268 (S.D.N.Y. 1993). In seeking summary judgment on Canal's conversion claim, Ms. Robinson presented evidence— including testimony from Canal's Rule 30(b)(6) witnesses and Mr. De Niro himself—that Canal had policies authorizing credit card charges for taxis and car rides, credit card charges for meals and food purchases, and payment for unused vacation days. Ms. Robinson further presented evidence that Mr. De Niro approved her transfer of SkyMiles. Canal, on the other hand, did not identify a single specific transaction or activity that fell outside the scope of these authorizations. Canal even conceded at summary judgment that its summary tabulations included proper charges. (Dkt. No. 337 at 22 ("This is not to say that every charge was improper."); *see also* Dkt No. 382 at 140 (noting that "Canal agrees that . . . not every charge was improper").)

Nonetheless, the Court denied summary judgment on Canal's conversion claim. Notably, the Court did not assess whether Canal had affirmatively demonstrated a lack of authorization. Instead, it presumed that Plaintiff's transactions were unauthorized and reasoned that "lack o[f] authorization or fraud *is presumed* when an agent uses the principal's property in a manner that is, at least in part, self-interested." **(**Dkt. No. 382 at 138.) In doing so, the Court devised a novel standard that is not found in the case law on conversion.

    a.        *The Ruling Presents a Controlling Question of Law*

The question at issue—whether a lack of authorization is presumed when an employer brings conversion claims against an employee—is a "controlling question of law." First, it is a pure question of law; deciding it requires no knowledge of the factual record. Second, its resolution will materially affect the course of this litigation. If the Second Circuit rules that lack of authorization should not be presumed, this should dispose of Canal's conversion claim altogether, since Canal presented no proof that any specific transactions were unauthorized. Even

if Canal's claim is not disposed of in its entirety, a ruling from the Second Circuit will clarify what evidence Canal would need to present to a jury to meet its burden on the conversion claim. If the jury is instructed on the incorrect burden of proof, reversal and a new trial will be required. Thus, pre-trial clarification of these standards is warranted.

    *b.*     *There Are Substantial Grounds for Difference of Opinion*

There are "substantial grounds for difference of opinion" about whether a lack of authorization should be presumed when a conversion claim is brought against an employee.

First, this is a question of first impression. In its decision, the Court stated "[t]he relevant case law in the conversion context is sparse as to this issue" (Dkt. No. 382 at 138), and it deployed a novel approach in which it imported a fiduciary duty standard into the conversion context. The Court held that "when an agent uses the principal's property in a manner that is, at least in part, self-interested" a lack of authorization is presumed. (*Id.*) The Court did not cite a single case in which a court presumed lack of authorization on a conversion claim. (*See id.* at 138-39.) While it cited a trial court's decision in *Hecht v. Components Int'l, Inc.*, 867 N.Y.S.2d 889 (N.Y. Sup. Ct. 2008) as support for its novel standard, *Hecht* is non-binding and inapposite. Far from presuming a lack of authorization, the court in *Hecht* relied on facts showing that the counter-defendant in that case was under an obligation to use funds in a particular way; the court ruled that the counter-defendant was liable for conversion specifically because he failed to use the funds for that purpose.

Second, there is extensive authority that contradicts the Court's ruling. Therefore, the Court's ruling is "not free from doubt." *Zakrzewska*, 574 F.3d at 27. In fact, a legion of cases, including from the New York Court of Appeals, do not presume a lack of authorization in the conversion context, even where the defendant is a fiduciary. *See, e.g.*, *Quintal v. Kellner*, 189 N.E. 770, 771 (1934) (not applying a presumption of lack of authorization against corporate officers

and dismissing conversion claim alleging diversion of corporate funds to discharge personal obligations); *Baldeo v. Majeed*, 55 N.Y.S.3d 340, 344-45 (2d Dep't 2017) (not applying a presumption of lack of authorization against former employee on conversion claim that he engaged in unauthorized withdrawals or disbursements of funds from employer bank accounts; dismissing conversion claim because plaintiff's "documents [did] not raise a triable issue of fact as to whether any such disbursements were unauthorized," since documents did not show "to whom disbursements were made, or for what purposes"); *Richardson*, 819 F. Supp. at 1268 (not applying a presumption of lack of authorization; recognizing lack of authorization as element on which the plaintiff bears burden of proof in case involving allegations that broker fraudulently induced plaintiffs to open accounts); *McKee v. McKee*, 98 N.Y.S.3d 219, 220-21 (2d Dep't 2019) (not applying presumption of lack of authorization against fiduciary bank and dismissing conversion claim).

     *c.*     *Appellate Review of This Issue Would Materially Advance the Litigation*

Appellate review of this issue will materially advance the termination of the litigation. If the Second Circuit rules that lack of authorization cannot be presumed, this should eliminate Canal's conversion claim altogether. The dismissal of an entire counterclaim would necessarily "shorten the time required for trial." *E.g.*, *Tantaros*, 465 F. Supp. 3d at 389. Even if an appellate decision does not dispose of the conversion claim, it will still determine the evidence that will be presented at trial and the content of the jury instructions. Application of an incorrect standard will require a redo in a second trial, thus weighing in favor of immediate certification. *See, e.g.*, *Hess v. A.I. DuPont Hosp. For Child.*, 2009 WL 2776606, at *4 (E.D. Pa. Aug. 28, 2009) (third prong was met where appeal could result in "clarification of the law to be applied at trial, which in turn will simplify the administration of the trial and reduce the likelihood of a post-trial appeal").

2.     **The Court's Ruling That Canal Did Not Abandon Its Plea for Disgorgement Implicates a Novel Question of Law as to Whether a Company Owner's Testimony Forgoing Disgorgement of Compensation Amounts to Abandonment or Waiver of Such Relief**

Defendant De Niro owns Canal and controls its affairs, including any litigation filed in Canal's name. *See, e.g.*, *W. View Hills, Inc. v. Lizau Realty Corp.*, 160 N.E.2d 622, 623 (1959) (recognizing that a company president generally has "presumptive authority" regarding litigation activity in the name of and on behalf of the corporation). As Defendants admit, Mr. De Niro is the "decision-maker" for Canal's legal action against Ms. Robinson and "authorized Canal to commence suit against [her]." (Dkt. No. 334 ¶ 61; Dkt. No. 362-2 at 424:11-13; Dkt. No. 321 ¶ 92.) After Canal sued Ms. Robinson and demanded disgorgement of her pay in its suit, Mr. De Niro was asked at deposition about the litigation and whether he thought Ms. Robinson should be ordered to repay any of the salary or bonuses he had paid her. Mr. De Niro testified unequivocally: "No."; "I don't care about that."; and "[L]et her enjoy whatever bonuses I gave her." (Dkt. No. 307-02 at 431:24-432:4; Dkt. No. 307-03 at 587:24-588:4.)

In its Order, the Court signaled that Canal's faithless servant claim might be dismissed as duplicative if Canal's plea for disgorgement had been abandoned or waived. (*See* Dkt. No. 382 at 134.) But the Court held that Mr. De Niro's testimony was not binding on Canal because he was not testifying as a Rule 30(b)(6) witness. (*Id.* at 133.) The Court also concluded that his testimony was insufficient to amount to a waiver or abandonment of Canal's claims. (*Id.* at 133-34.)

a.     *The Ruling Presents a Controlling Question of Law*

Plaintiff seeks interlocutory review of the question of whether a company owner's testimony that a remedy should not be imposed constitutes abandonment or waiver of the remedy, even where the owner has not been designated as a Rule 30(b)(6) witness. This is a "controlling question of law." A reversal of the Court's ruling could dispose of Canal's faithless servant

claim—without a plea for additional relief in the form of disgorgement, the claim may be dismissed as duplicative of Canal's fiduciary duty claim. (*See* Dkt. No. 382 at 134); *Supreme Showroom v. Branded Apparel Grp.*, 2018 WL 3148357, at *12 n.14 (S.D.N.Y. June 27, 2018).

### b.    There Are Substantial Grounds for Difference of Opinion

As to the second factor under 28 U.S.C. § 1292(b), a "substantial ground for difference of opinion" exists because the issue is one of "first impression for the Second Circuit," and the Court's decision is hardly "free from doubt." *Pen Am. Ctr., Inc.*, 2020 WL 5836419, at *2-3 (citation omitted); *Zakrzewska*, 574 F.3d at 27.

First, the Second Circuit has never addressed the question of whether a company owner's testimony that a remedy should not be imposed constitutes abandonment or waiver of that remedy. Nor has the Circuit ever held that *only* Rule 30(b)(6) testimony can be binding on a corporate party. In fact, Plaintiff has not located a single case in which the Second Circuit has addressed the question of when and under what circumstances a corporate litigant (or any other party) may effectuate abandonment of a claim or form of relief through deposition testimony.

Second, the Court's ruling that Mr. De Niro's testimony did not effectuate abandonment or waiver of relief by Canal is hardly "free from doubt." *Zakrzewska*, 574 F.3d at 27. Applicable case law indicates that a company can be bound by the testimony of its controlling principal under analogous circumstances, regardless of whether the principal is designated as a Rule 30(b)(6) witness. *See Lok Prakashan, Ltd. v. Berman*, 2005 WL 8178482, at *3 (S.D.N.Y. Nov. 4, 2005) (principal's deposition testimony "effectively waived" company's contractual right to relief and "abandoned its request for relief"); *Blue Spike, LLC v. Audible Magic Corp.*, 2016 WL 3653516, at *5-6 (E.D. Tex. May 31, 2016) (binding plaintiff to deposition testimony of its sole owner and director, who exercised control over its affairs; rejecting argument that testimony was not binding

because he was not a Rule 30(b)(6) witness); *cf. Halvatzis v Perrone*, 156 N.Y.S.3d 428 (2d Dep't 2021) (agent's admissions are binding on a party if agent was acting in its "authorized capacity").

Moreover, Mr. De Niro's unequivocal confirmation that Plaintiff should not be ordered to return her compensation is on par with what other courts have deemed sufficient to constitute abandonment or waiver of a claim. *Compare*, *e.g.*, Dkt. No. 307-2 at 431:24-432:4 (Q: "Mr. De Niro, do you think Ms. Robinson should be ordered to pay back any of the salary that you paid her over the years"; A: "No.") and Dkt. No. 307-3 at 587:24-588:4, *with Lok*, 1:04-CV-07212, Dkt. No. 29-9 (S.D.N.Y. Apr. 18, 2005) at 67:19-22 (Q: "Would it be fair to say that to the extent the [Company's] counterclaim does ask for advertising revenue generated in India, it should not?" A: "Right."); *Radin v. Tun*, 2015 WL 4645255, at *23 (E.D.N.Y. Aug. 4, 2015) (abandonment of all claims other than defamation claim effectuated by plaintiff's statement that: "It is not my purpose, at this point in time, to litigate all my claims, though I could. . . . I anticipate that I will be litigating my claims for fraud, false claims, and other claims in another separate action.").

### c. Appellate Review of This Issue Would Materially Advance the Litigation

Appellate review of this issue will materially advance the litigation. The Second Circuit may well rule that a corporation waives a remedy through its owner's testimony disclaiming any interest in recovering such relief. If so, Canal's faithless servant claim could be dismissed as duplicative, and any issues regarding the remedy of disgorgement would disappear from the case. This would "shorten the time required for trial." *See, e.g.*, *Tantaros*, 465 F. Supp. 3d at 389.

## IV. **CONCLUSION**

Plaintiff has identified four questions of law warranting immediate appellate review. Each of these questions, standing alone, satisfies 28 U.S.C. § 1292(b)'s certification requirements. Each of these presents an open, novel question of law about which there is substantial ground for

difference of opinion. Appellate review of these questions will materially advance the ultimate termination of the litigation, culminating in either the outright dismissal of claims or the clarification of issues that are crucial to the conduct of trial. Thus, appellate review will promote judicial efficiency and avoid the need for re-trials at a later juncture. For these reasons, the Court has strong grounds to certify its Order for interlocutory review. Accordingly, Plaintiff respectfully requests that the Court amend its Order to certify one or more of the above questions for interlocutory review pursuant to 28 U.S.C. § 1292(b).

Dated: June 15, 2023     Respectfully submitted,


          */s/ Melinda Koster*
          Melinda Koster (MK-1384)
          Alexandra Harwin (AH-3111)
          David Sanford (5695671)
          Jeremy Heisler (JH-0145)
          Kate MacMullin (5693882)
          SANFORD HEISLER SHARP, LLP
          1350 Avenue of the Americas, 31st Floor
          New York, New York 10019
          Telephone: (646) 402-5650
          Facsimile: (646) 402-5651
          mkoster@sanfordheisler.com
          aharwin@sanfordheisler.com
          dsanford@sanfordheisler.com
          jheisler@sanfordheisler.com
          kmacmullin@sanfordheisler.com

          Michael Lockman (5485156)
          SANFORD HEISLER SHARP, LLP
          611 Commerce Street, Suite 3100
          Nashville, Tennessee 37203
          Telephone: (615) 434-7000
          Facsimile: (615) 434-7020
          mlockman@sanfordheisler.com

          *Counsel for Plaintiff Graham Chase Robinson*