## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---

**GRAHAM CHASE ROBINSON,**

     *Plaintiff and Counterclaim Defendant,*

     -against-

**ROBERT DE NIRO,**

     *Defendant,*

 and

**CANAL PRODUCTIONS, INC.,**

     *Defendant and Counterclaim Plaintiff.*

**Civil Action No. 1:19-CV-09156 (LJL) (KHP)**

---

## JOINT REQUEST TO CHARGE

     The parties have worked collaboratively to propose the following jury instructions. Matters that the parties could not agree upon are identified in brackets with explanatory footnotes. All parties reserve the right to offer additional argument or authorities in support of their positions and to seek changes as the trial progresses.

Dated: October 5, 2023

/s/ Alexandra Harwin
Alexandra Harwin (AH-3111)
David Sanford (5695671)
Jeremy Heisler (JH-0145)
Andrew Macurdy (*pro hac vice*)
Kate MacMullin (5693882)
SANFORD HEISLER SHARP, LLP
17 State Street, 37th Floor
New York, New York 10004
Telephone: (646) 402-5650
Facsimile: (646) 402-5651
aharwin@sanfordheisler.com

/s/ Richard C. Schoenstein
Richard C. Schoenstein (RS9376)
Laurent S. Drogin (LD-4770)
Brittany K. Lazzaro (BL1497)
Ingrid J. Cardona (5838552)
TARTER KRINSKY & DROGIN LLP
1350 Broadway, 11th Floor
New York, New York 10018
Telephone: (212) 216-8000
Facsimile: (212) 216-8001
ldrogin@tarterkrinsky.com

dsanford@sanfordheisler.com
jheisler@sanfordheisler.com
amacurdy@sanfordheisler.com
kmacmullin@sanfordheisler.com

Brent Hannafan (BH-4344)
Michael Lockman (5485156)
SANFORD HEISLER SHARP, LLP
611 Commerce Street, Suite 3100
Nashville, Tennessee 37203
Telephone: (615) 434-7000
Facsimile: (615) 434-7020
bhannafan@sanfordheisler.com
mlockman@sanfordheisler.com

H. Vince McKnight (*pro hac vice*)
SANFORD HEISLER SHARP, LLP
700 Pennsylvania Avenue, Suite 300
Washington, D.C. 20003
Telephone: (202) 499-5200
vmcknight@sanfordheisler.com

*Counsel for Plaintiff Graham Chase
Robinson*

blazzaro@tarterkrinsky.com
rschoenstein@tarterkrinsky.com
icardona@tarterkrinsky.com

*Counsel for Defendant
Canal Productions, Inc.*

/s/ Gregory R. Bennett
Gregory R. Bennett (GB1112)
Hillary Raimondi (HR0198)
Craig Rokuson (CR0227)
TRAUB LIEBERMAN STRAUS &
SHREWSBERRY LLP
7 Skyline Drive
Hawthorne, NY 10532
Telephone: (914) 347-2600
Facsimile: (914) 347-8898
hraimondi@tlsslaw.com
gbennett@tlsslaw.com
crokuson@tlsslaw.com

*Counsel for Defendants Robert De Niro
and Canal Productions, Inc.*

## TABLE OF CONTENTS

1.    INTRODUCTION ............................................................................................ 1

2.    CONTENT OF THE LAW ............................................................................. 2

3.    ROLE AS FACTFINDER ............................................................................. 3

4.    ROLE OF COUNSEL AND SIDEBARS ...................................................... 3

5.    EVALUATION OF EVIDENCE .................................................................. 4

6.    PREPONDERANCE OF THE EVIDENCE STANDARD ............................. 5

7.    THE SCOPE OF EVIDENCE ...................................................................... 6

8.    DIRECT AND CIRCUMSTANTIAL EVIDENCE ........................................ 8

9.    INFERENCES ............................................................................................... 9

10.   WITNESS CREDIBILITY ........................................................................ 10

11.   EVALUATING EXPERT WITNESSES .................................................... 13

12.   WITNESS BIAS ......................................................................................... 14

13.   CORPORATE ACTION AND KNOWLEDGE ........................................... 15

14.   SUBSTANTIVE LAW ................................................................................ 16

  A.   Ms. Robinson's Claims ....................................................................... 16

    1.   Gender Discrimination ................................................................... 16

    2.   Retaliation ...................................................................................... 18

  B.   Canal's Counterclaims ......................................................................... 22

    1.   Conversion ...................................................................................... 22

    2.   Breach of Fiduciary Duty ............................................................... 23

    3.   Breach of Duty of Loyalty .............................................................. 25

  C.   Ms. Robinson's Affirmative Defenses to Canal's Counterclaims ..................... 28

    1.   Ratification ...................................................................................... 28

    2.   Acquiescence ................................................................................... 30

    3.   Laches ............................................................................................. 31

    4.   Unclean Hands ................................................................................ 32

  D.   Damages ............................................................................................... 33

    1.   Compensatory Damages (on Ms. Robinson's Claims) ................................ 34

    2.   Punitive Damages (on Ms. Robinson's Claims) ............................................ 36

    3.   Monetary Damages (on Canal's Counterclaims against Ms. Robinson) ........ 37

    4.   Nominal Damages (as to all Claims and Counterclaims) .............................. 38

15.   NOTES TO THE COURT ........................................................................... 39

16.   CONCLUSION ............................................................................................ 40

1.      **INTRODUCTION**[1]

Members of the jury, you have now heard all of the evidence as to the claims by the plaintiff, Chase Robinson, against the defendants, Robert De Niro and Canal Productions, Inc., as well as the evidence as to the claims by Canal Productions, Inc. against Ms. Robinson.  You have paid careful attention to the evidence, and I am confident that you will act together with fairness and impartiality to reach a just verdict in this case. We are near the point where you will undertake your vital function as jurors of deliberating. Now that the lawyers have made their closing arguments, I am going to instruct you about the law that governs the case. There are two parts to these instructions:

First, I will provide with you some general instructions about your role and about how you are to decide the facts of the case. These instructions would apply to just about any trial.

Second, I will give you some specific instructions about the legal rules applicable to this particular case. Then I will give you some final instructions before you begin your deliberations.

Listening to these instructions may not be easy. It is important, however, that you listen carefully and that you concentrate. I ask you for patient cooperation and attention. You will notice that I am reading these instructions from a prepared text. It would be more lively, no doubt, if I just improvised, but it is important that I not do that. The law is made up of words, and those words are very carefully chosen.

So it's critical that I use exactly the right words. You will have copies of what I am reading in the jury room to consult, so don't worry if you miss a word or two. But for now, listen carefully

---

[1] Based on *Casmento v. Volmar Const., Inc.*, Trial Tr., 20-cv-00944, Dkt. 106 (S.D.N.Y. June 7, 2022) (Liman, J.); *Edelman v. NYU Langone Health System*, Trial Tr., 21-cv-502 (S.D.N.Y.) (Liman, J.).

and try to concentrate on what I'm saying. I will also be distributing to you a verdict form in which to record your verdict. It will list the questions that you should consider, in the order you should consider them.

### 2.     CONTENT OF THE LAW[2]

I will now instruct you on the law. It is my duty to do that, just as it has been my duty to preside over the trial and decide what testimony and evidence is relevant under the law for your consideration. It is your duty to accept my instructions on the law and to apply them on the facts as you determine them.

On these legal matters, you must take the law as I give it to you. You must not substitute your own notions or opinions of what the law is or ought to be. You should not, any of you, be concerned about the wisdom of any rule that I state. Regardless of any opinion that you may have as to what the law may be -- or should be -- it would violate your sworn duty to base a verdict upon any other view of the law than that which I give you.

If any attorney states or has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow. You should not single out any particular instruction as alone stating the law, and you should consider my instructions as a whole when you retire to deliberate in the jury room. You are not to infer from any of my questions or any of my rulings on objections or anything else I have done during this trial that I have any view as to the credibility of the witnesses or how you should decide the case. Any questions I asked were designed to make sure that the testimony was clear and to avoid confusion. You are expressly to understand that the Court has no opinion as to the verdict you should render in this case.

---

[2] Based on *Casmento v. Volmar Const., Inc.*, Trial Tr., 20-cv-00944, Dkt. 106 (S.D.N.Y. June 7, 2022) (Liman, J.); *Edelman v. NYU Langone Health System*, Trial Tr., 21-cv-502 (S.D.N.Y.) (Liman, J.).

### 3.      ROLE AS FACTFINDER[3]

As members of the jury, you are the sole and exclusive judges of the facts. You pass judgment upon the evidence. You determine the credibility of the witnesses. You resolve any conflicts there may be in the testimony. You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.

Although you are encouraged to use all of your life experiences in analyzing testimony and reaching a fair verdict, you may not communicate any personal professional expertise you might have or other facts not in evidence to the other jurors during deliberations. You must base your discussions and your decisions solely on the evidence presented to you during the trial and that evidence alone. You may not consider or speculate on matters not in evidence or matters outside the case.

### 4.      ROLE OF COUNSEL AND SIDEBARS[4]

Let me talk about the role of counsel and objections and sidebars.  It is the duty of the attorneys to object when the other side offers testimony or other evidence that the attorney believes is not properly admissible. Therefore, you should draw no inference from the fact that an attorney objected to any evidence. Nor should you draw any inference from the fact that I might have sustained or overruled an objection.

From time to time, the lawyers and I had conferences at sidebar, outside of your hearing. These conferences involved procedural and other matters. None of the events relating to these conferences should enter into your deliberations at all.

---

[3]  Based on *Casmento v. Volmar Const., Inc.*, Trial Tr., 20-cv-00944, Dkt. 106 (S.D.N.Y. June 7, 2022) (Liman, J.); *Edelman v. NYU Langone Health System*, Trial Tr., 21-cv-502 (Liman, J.).

[4] Based on *Casmento v. Volmar Const., Inc.*, Trial Tr., 20-cv-00944, Dkt. 106 (S.D.N.Y. June 7, 2022) (Liman, J.); *Edelman v. NYU Langone Health System*, Trial Tr., 21-cv-502 (S.D.N.Y.) (Liman, J.).

Similarly, the personalities and the conduct of counsel in the courtroom are not in any way in issue. If you formed reactions of any kind to any of the lawyers, favorable or unfavorable, whether you approved or disapproved of their behavior as advocates, those reactions should not enter into your deliberations.

I know that you will try the issues that have been presented to you according to the oath which you have taken as jurors, which you promised that you would well and truly try the issues joined in this case and a true verdict render. If you follow that oath, and try the issues without fear or prejudice or bias or sympathy, you will arrive at a true and just verdict.

### 5.    EVALUATION OF EVIDENCE[5]

You are to evaluate the evidence calmly and objectively, without prejudice or sympathy. You are to be completely fair and impartial. Your verdict must be based solely on the evidence developed at this trial, or the lack of evidence. The parties in this case are entitled to a trial free from prejudice and bias. Our judicial system cannot work unless you reach your verdict through a fair and impartial consideration of the evidence.

It would be improper for you to consider, in deciding the facts of the case, any personal feelings you may have about the race, national origin, sex, or age of any party or any witness, or any other such irrelevant factor. This case should be decided by you as an action between the parties of equal standing in the community, and of equal worth. All parties are entitled to the same fair trial at your hands.

As noted, in reaching your verdict, you must remember that all parties stand equal before the law, and are to be dealt with as equals in this Court.  The mere fact that one of the parties in

---

[5] Based on *Casmento v. Volmar Const., Inc.*, Trial Tr., 20-cv-00944, Dkt. 106 (S.D.N.Y. June 7, 2022) (Liman, J.); *Edelman v. NYU Langone Health System*, Trial Tr., 21-cv-502 (S.D.N.Y.) (Liman, J.).

this case is a corporation does not mean it is entitled to any lesser or greater consideration by you. Likewise, the mere fact that one of the parties in this case is a celebrity does not mean that he is entitled to any lesser or greater consideration by you.  All litigants are equal before the law, and corporations, big or small, are entitled to the same fair consideration as you would give any other individual party.  This means you must treat Chase Robinson and Robert De Niro, both natural persons, and Canal Productions, Inc. as equal under the law.

6.      **PREPONDERANCE OF THE EVIDENCE STANDARD**[6]

Now, the plaintiff, Ms. Robinson, has the burden of proving all of the elements of her claims against Mr. De Niro and Canal Productions, Inc. by a preponderance of the evidence.  Canal Productions Inc. also has the burden of proving all of the elements of its counterclaims against Ms. Robinson by a preponderance of the evidence.

Because this is a civil case, the preponderance of the evidence standard applies to all disputed issues.  Some of you may have heard of "proof beyond a reasonable doubt," which is the proper standard of proof in a criminal trial.  That requirement does not apply to a civil case such as this one, and you should put it out of your mind.

What does a preponderance of the evidence mean? To establish a fact by a preponderance of the evidence means to prove that the fact is more likely than not. A preponderance of the evidence means the greater weight of the evidence. It refers to the quality and persuasiveness of the evidence, not the number of witnesses or documents. In determining whether a claim has been proven by a preponderance of the evidence, you may consider the relevant testimony of all

---

[6] Based on *Casmento v. Volmar Const., Inc.*, Trial Tr., 20-cv-00944, Dkt. 106 (S.D.N.Y. June 7, 2022) (Liman, J.); *Edelman v. NYU Langone Health System*, Trial Tr., 21-cv-502 (S.D.N.Y.) (Liman, J.).

witnesses, regardless of who may have called them, and all the relevant exhibits received in evidence, regardless of who may have produced them.

If, after considering all of the testimony, you are satisfied that Ms. Robinson, as to her claims, or Canal Productions Inc., as to its counterclaims, has carried her or its burden on each essential point of their claim, then you must find in favor of the party asserting the claim, as to that specific claim. If, after such consideration, you find that the evidence produced by the party asserting the claim is outweighed by the evidence against that party's position, or that the credible evidence on a given issue is evenly divided between the parties -- that it is as equally probable that one side is right as it is that the other side is right -- then you must decide that issue against the party asserting that claim. That is because the party asserting the claim bears the burden of proof and must prove more than simple equality of the evidence. They must prove the element by a preponderance of the evidence. On the other hand, a party asserting a claim need not prove more than a preponderance. So long as you find that the scales tip, however slightly, in favor of the party asserting the claim -- that what he claims is more likely true than not -- then that element will have been proved by a preponderance of the evidence.

To reach this conclusion, you do not need to find that each and every witness or exhibit provided by a party was more persuasive than any counter-testimony or evidence provided by the other party. Instead, you must make a determination regarding the evidence as a whole.

7.      **THE SCOPE OF EVIDENCE**[7]

I want to take a moment to describe to you what is and is not evidence in this case. As I have said, you may rely only on the evidence in your deliberations. The evidence in this case is

---

[7] Based on *Casmento v. Volmar Const., Inc.*, Trial Tr., 20-cv-00944, Dkt. 106 (S.D.N.Y. June 7, 2022) (Liman, J.); *Edelman v. NYU Langone Health System*, Trial Tr., 21-cv-502 (S.D.N.Y.) (Liman, J.).

the sworn testimony of the witnesses, and the exhibits received in evidence. On the other hand, certain things are not evidence: I will describe a list of examples of things that are not evidence:

To begin, a question by a lawyer is not to be considered by you as evidence. It is the witnesses' answers that are evidence, not the questions. At times, a lawyer may have incorporated into a question a statement which assumed certain facts to be true, and asked the witness if the statement was true. If the witness denied the truth of a statement and if there is no direct evidence in the record proving that assumed fact to be true, then you may not consider it to be true simply because it was contained in the lawyer's question.

Similarly, arguments by lawyers are not evidence because the lawyers are not witnesses. What they have said in their opening statements and in their closing statements was intended to help you understand the evidence and to reach your verdict. However, if your recollection of the facts differs from the lawyers' statements, it is your recollection which controls.

Any dollar figure suggested by any party's counsel as appropriate relief in this case is only a comment on the evidence or a suggestion.  Such a suggestion is not evidence, and you are free to disregard it.

Statements that I may have made concerning the evidence do not constitute evidence.

Testimony that has been stricken or excluded or that I have asked you to disregard is not evidence, and it may not be considered by you in rendering your verdict.

Anything you may have seen or heard outside the courtroom is not evidence, including anything you may have already known or believed about any of the parties in this case, whether positive or negative.

Now, I will provide you with some things that you may consider as evidence. As I have said, evidence may come in several forms.

The sworn testimony of witnesses, regardless of who called them, is evidence. This is true of the witnesses' answers on both direct and cross-examination, as well as the witnesses' answers in any deposition testimony presented at trial.  However, if certain testimony was received for a limited purpose, you must follow the limiting instructions I have given.

The exhibits that were admitted during the trial, regardless of who may have presented them, are evidence. However, if certain exhibits were received for a limited purpose, you must follow the limiting instructions I have given.

Any stipulations of the parties may be considered as evidence.

**8.      DIRECT AND CIRCUMSTANTIAL EVIDENCE**[8]

Let me tell you about direct and circumstantial evidence. Generally, as I told you in my initial instructions, there are two types of evidence that you may consider in reaching your verdict.

One type of evidence is direct evidence. Direct evidence is testimony by a witness about something he or she knows by virtue of his or her own senses -- something he or she has seen, felt, touched or heard. For example, if a witness testified that when she left her house this morning, it was raining, that would be direct evidence about the weather.

Circumstantial evidence is evidence from which you may infer the existence of certain facts. For example, assume that when you came into the courthouse this morning the sun was shining and it was a nice day. Assume that the courtroom blinds were drawn and you could not look outside. As you were sitting here, someone walked in with an umbrella which was dripping wet. Then a few minutes later, another person entered with a wet raincoat. Now you cannot look outside of the courtroom and you cannot see whether or not it is raining. So you have no direct

---

[8] Based on *Casmento v. Volmar Const., Inc.*, Trial Tr., 20-cv-00944, Dkt. 106 (S.D.N.Y. June 7, 2022) (Liman, J.); *Edelman v. NYU Langone Health System*, Trial Tr., 21-cv-502 (S.D.N.Y.) (Liman, J.).

evidence of that fact. But on the combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.

That is all there is to circumstantial evidence. You infer on the basis of reason and experience and common sense from one established fact the existence or nonexistence of some other fact.  Many facts, such as a person's state of mind, are rarely susceptible of proof by direct evidence. Usually, such facts are established by circumstantial evidence. Where circumstantial evidence is presented, it is of no less value than direct evidence, for it is a general rule that the law makes no distinction between direct evidence and circumstantial evidence.

**9.      INFERENCES**[9]

During the trial, you may have heard the parties use the term "inference," and in their arguments they've asked you to infer, on the basis of your reason, experience, and common sense, from one or more established facts, the existence of some other fact.

An inference is not a suspicion or a guess, it is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact that you know exists. There are times when different inferences may be drawn from facts, whether proved by direct or circumstantial evidence. Ms. Robinson asks you to draw one set of inferences, while Canal and Mr. De Niro ask you to draw another. It is for you, and you alone, to decide what inferences you will draw.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a deduction or conclusion that you, the jury, are permitted, but not required, to draw from the facts that have been established by either direct or circumstantial evidence.  In drawing inferences, you should exercise your common sense.

---

[9] Based on *Torres v. Metro-North R.R. Co.*, Trial Tr., 20-cv-10782, Dkt. 72 (S.D.N.Y. Mar. 22, 2022) (Liman, J.).

So, while you are considering the evidence presented to you, you are permitted to draw, from the facts that you find to be proven, such reasonable inferences as would be justified in light of your experience.

### 10.    WITNESS CREDIBILITY[10]

Now let me tell you about witness credibility. You have had the opportunity to observe the witnesses. It is now your job to decide how believable each witness was in their testimony. You are the sole judge of the credibility of each witness and of the importance of that witness's testimony. In making these judgments, you should carefully scrutinize the testimony of each witness, the circumstances under which each witness testified, the impression the witness made when testifying, and any other matter in evidence which may help you decide the truth and the importance of each witness's testimony.

How do you determine where the truth lies? You watched each witness testify. Everything a witness said or did on the witness stand counts in your determination. How did the witness impress you? Did he or she appear to be frank, forthright, and candid? Or was the witness evasive and edgy, as if hiding something? How did the witness appear? What was his or her demeanor -- that is, their carriage, behavior, bearing, manner and appearance while testifying? Often it is not what a person says but how he or she says it that moves us.

You should use all the tests for truthfulness that you would use in determining matters of importance to you in your everyday life. You should consider any bias or hostility the witness may have shown for or against any party as well as any interest the witness has in the outcome of the case. You should consider the opportunity the witness had to see, hear, and know the things about

---

[10] Based on *Casmento v. Volmar Const., Inc.*, Trial Tr., 20-cv-00944, Dkt. 106 (S.D.N.Y. June 7, 2022) (Liman, J.); *Edelman v. NYU Langone Health System*, Trial Tr., 21-cv-502 (S.D.N.Y.) (Liman, J.).

which they testified, the accuracy of their memory, their candor or lack of candor, their intelligence, the reasonableness and probability of their testimony and its consistency or lack of consistency and its corroboration or lack of corroboration with other credible testimony. In other words, what you must try to do in deciding credibility is to size a witness up in light of the witnesses' demeanor, the explanations given, and all of the other evidence in the case. Always remember that you should use your common sense, your good judgment, and your everyday experiences in life to make your credibility determinations.

If you find that any witness has willfully testified falsely as to any material fact -- that is, as to an important matter -- the law permits you to disregard the entire testimony of that witness upon the principle that one who testifies falsely about one material fact is likely to testify falsely about everything. However, you are not required to consider such a witness as totally unbelievable. You may accept so much of the witness' testimony as you deem true and disregard what you feel is false. By the processes which I have just described, you, as the sole judge of the facts, decide which of the witnesses you will believe, what portion of each witness's testimony you accept, and what weight you will give to it.

On some occasions during this trial, witnesses were asked to explain an apparent inconsistency between testimony offered at this trial and previous statements made by the witness. It is for you to determine whether a prior statement was inconsistent, and if so, how much, if any, weight to give to an inconsistent statement in assessing a witness's credibility at trial.[11]

Evidence of a prior inconsistent statement may have been placed before you not because it is itself evidence of a party's claim or defenses to the claim, but only for the purpose of helping

---

[11] *Casmento v. Volmar Const., Inc.*, Trial Tr., 20-cv-00944, Dkt. 106 at 742 (S.D.N.Y. June 7, 2022) (Liman, J.).

you decide whether to believe the trial testimony of a witness who may have contradicted a prior statement.  However, if the prior statement is from a deposition, you may consider it as substantive evidence. If you find that the witness made an earlier statement that conflicts with the witness's trial testimony, you may consider that fact in deciding how much of the witness's trial testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with a small detail; whether the witness had an explanation for the inconsistency, and whether that explanation appealed to your common sense.

It is exclusively your duty, based upon all the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and if so how much, if any, weight to give to the inconsistent statement in determining whether to believe all, or part of, the witness's testimony.

You have heard evidence during the trial that certain witnesses discussed the facts of the case and their testimony with the lawyers before the witnesses appeared in court.  Although you may consider that fact when you are evaluating a witness's credibility, I should tell you that there is nothing either unusual or improper about a witness meeting with lawyers before testifying, so that the witness can be made aware of the subjects that he or she will be questioned about, focus on those subjects, and have the opportunity to review relevant exhibits before being questioned about them.  In fact, it would be unusual for a lawyer to call a witness without such consultation. Again, the weight you give to the fact or the nature of the witness's preparation for his or her testimony and what inferences you draw from such preparation are matters completely within your discretion.

## 11.    EVALUATING EXPERT WITNESSES[12]

You will recall that certain witnesses testified as experts and gave their opinions concerning issues, including alleged damages in this case. When a case involves a matter of science or art, or requires special knowledge or skill not ordinarily possessed by the average person, an expert is permitted to state his or her opinion for the information of the Court and the jury. The opinions stated by each expert who testified before you were based on particular facts, as the expert obtained knowledge of them and testified to them before you, or as the attorney who questioned the expert asked him to assume. You may reject an expert's opinion if you find the facts to be different from those which formed the basis for the opinion. You may also reject the opinion, if, after careful consideration of all of the evidence in the case, expert and other, you disagree with the opinion. In other words, you are not required to accept an expert's opinion to the exclusion of the facts and circumstances disclosed by other testimony. Such an opinion is subject to the same rules concerning reliability as the testimony of any other witness. It is given to assist you in reaching a proper conclusion; it is entitled to such weight as you find the expert's qualifications in the field warrant and must be considered by you, but it is not controlling upon your judgment. Your role in judging credibility and assessing weight applies just as much to these witnesses as to other witnesses. In weighing this opinion testimony, you may consider the witness's qualifications, his or her opinions, the reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony.

---

[12] Based on *Casmento v. Volmar Constr., Inc.*, Trial Tr., 20-cv-00944, Dkt. 106 (S.D.N.Y. June 7, 2022) (Liman, J.).

12.      **WITNESS BIAS**[13]

In deciding whether to believe a witness, you should take into account any evidence that shows that a witness may benefit in some way from the outcome of the case, such as a financial interest. Likewise, you should specifically note any evidence of hostility or affection that the witness may have towards one of the parties. You should also consider any other interest or motive that the witness may have in cooperating with a particular party.

For example, in this case, the plaintiff Ms. Robinson and the defendant Mr. De Niro testified before you. As parties to this action, they are, by definition, interested witnesses.

You may also consider a witness's relationship with a party, including a present or past romantic or employment relationship, when deciding whether the testimony of the witness was in any way influenced by the witness's relationship with that party.[14] It is your duty to consider whether each witness has permitted any such bias or interest to color his testimony. In short, if you find that a witness is biased, you should view his testimony with caution, weigh it with care, and subject it to close and searching scrutiny.

An interested witness is not necessarily less believable than a disinterested witness. The mere fact that a witness is interested in the outcome of the case does not mean that he or she has not told the truth. It is for you to decide from your observations and applying your common sense and experience and all the other considerations mentioned, whether the possible interest of any witness, or of any party, has, intentionally or otherwise, colored or distorted his or her testimony.

---

[13] Based on *Casmento v. Volmar Const., Inc.*, Trial Tr., 20-cv-00944, Dkt. 106 (S.D.N.Y. June 7, 2022) (Liman, J.); *Edelman v. NYU Langone Health System*, Trial Tr., 21-cv-502 (S.D.N.Y.) (Liman, J.).

[14] *Adams v. Supermarkets General Corp.*, 138 A.D.2d 253, 254 (1st Dep't 1988); *People v. Roman*, 224 A.D.2d 256, 257 (1st Dep't 1996); *People v. Agosto*, 73 N.Y.2d 963, 967 (N.Y. 1989); *U.S. v. Bagaric*, 706 F.2d 42, 68 (2d Cir. 1983); *Dobro v. Village of Sloan*, 48 A.D.2d 243, 248 (4th Dep't 1975); *Majestic v. Louisville & N.R. Co.,* 147 F.2d 621, 627 (6th Cir. 1945); *Smith v. McGinnis*, 2008 WL 5203726, at *4 (S.D.N.Y. 2008).

You are not required to believe an interested witness; you may accept as much of his or her testimony as you deem reliable and reject as much as you deem unworthy of acceptance.

### 13.    CORPORATE ACTION AND KNOWLEDGE[15]

One of the defendants in this action, Canal, is a corporation.  A corporation is legally considered a person, but of course, it cannot act except through its owners, directors, officers, employees, attorneys, and agents. An agent is anyone whom the corporation designates or appoints to act on its behalf.

It is established law that, in general, owners, directors, officers, employees, attorneys, and agents of a corporation bind the corporation by their acts and declarations made while acting within the scope of their authority delegated to them by the corporation, or within the scope of their duties on behalf of the corporation.  Accordingly, an employer may be liable for the wrongs, even willful wrongs, done by its representatives if the wrongs are committed during the scope of the representative's duties and in furtherance of the employer's business. An employer's liability rests upon the broad principle that if a corporation manages its affairs through others, the corporation is bound to manage them in such a way that no person shall suffer injury from a wrong done by that other while engaged upon the employer's business and acting within the scope of their employment.

Regarding corporate knowledge, because Canal is an entity rather than a person, the law deems a corporation to have general knowledge of a matter when any of the corporation's owners, directors, officers, employees, attorneys, or agents in a managerial position has knowledge.  In

---

[15] *Kay v. Port Authority Trans. Hudson, Corp.*, Trial Tr., 18-cv-11327, Dkt. No. 69 (S.D.N.Y. Oct. 27, 2021) (Liman, J.).; *Edelman v. NYU Langone Health System*, Trial Tr., 21-cv-502 (S.D.N.Y.) (Liman, J.); *Ravina v. Columbia Univ.*, Trial Tr., 16-cv-02137, Dkt. 266 (S.D.N.Y. July 24, 2018); 3 Fed. Jury Prac. & Instr. § 108:01 (6th ed.).

order to find that Canal has knowledge of any matter, it is not required that every relevant

individual decisionmaker at Canal had knowledge of that matter.

14.    **SUBSTANTIVE LAW**

    A.    **Ms. Robinson's Claims**

       1.    **Gender Discrimination[16]**

Ms. Robinson brings a gender discrimination claim against Mr. De Niro and Canal under

the New York City Human Rights Law, alleging that Defendants discriminated against Ms.

Robinson based on her gender during her employment by subjecting her to demeaning comments

and conduct based on her gender, assigning her stereotypically female job duties that were

inconsistent with her job title, [underpaying her based on sex stereotypes,][17] and allowing Mr. De

Niro's girlfriend, Tiffany Chen, to target Ms. Robinson and make false accusations that Ms.

Robinson wanted a romantic relationship with Mr. De Niro.  Defendants deny that they took any

action against Ms. Robinson because of her gender, or that they discriminated against her in any

way, or that she has demonstrated damages arising from any discrimination.

Under the New York City Human Rights Law, it is unlawful for an employer to

discriminate against an employee because of gender; this prohibits not only harassment and hostile

work environments but also any other adverse, differential, or unequal treatment that is at least in

part based on gender.  It is sufficient for Ms. Robinson to show that she suffered any adverse,

---

[16] Based on *Edelman v. NYU Langone Health System*, Trial Tr., 21-cv-502 (S.D.N.Y.) (Liman, J.); *see also* N.Y.C. Admin. Code § 8-107(1); *Edwards v. Nicolai*, 60 N.Y.S.3d 40 (1st Dep't 2017); *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998); *Naumovski v. Norris*, 934 F.3d 200, 220 (2d Cir. 2019).

[17] Plaintiff's Position: The bracketed language should be included, as Plaintiff's NYCHRL gender discrimination claim includes pay discrimination.  *See* Dkt. No. 1 at ¶¶ 29, 54; Dkt. No. 268 (noting that Plaintiff's dismissal of federal and state Equal Pay Act claims does not affect her NYCHRL claims). Defendants' Position: Defendants dispute that Plaintiff may proceed on any equal pay claims, in light of the Court's findings on summary judgment, and will be moving in limine in that regard.

differential, or unequal treatment at least in part based on her gender; Ms. Robinson does not need to identify a man who was treated more favorably. Even a single comment, if made in circumstances where the comment would signal views about the role of women in the workplace, may be sufficient to give rise to a claim of gender discrimination. Gender discrimination can be committed by a man against a woman or by a woman against another woman. Further, gender discrimination occurs where an employer is motivated to treat an employee less well based on a desire to appease a romantic partner's jealousy of the employee.

To prove her gender discrimination claim under the city human rights law, Ms. Robinson must prove by a preponderance of the evidence that she has been treated less well at least in part because of her gender. To prove her discrimination claim, Ms. Robinson need only show that her gender was a motivating factor in how she was treated. It need not be the sole motivating factor. A motivating factor is a factor that made a difference or played a part in a decision. Stated another way, Ms. Robinson must prove by a preponderance of the evidence a causal connection between her gender and how she was treated.

If you find that Mr. De Niro treated Ms. Robinson less well based at least in part on her gender, you must find Mr. De Niro and Canal liable for gender discrimination. If you find that Ms. Chen treated Ms. Robinson less well based at least in part on her gender, you must find Canal and Mr. De Niro liable for gender discrimination if you find either (1) that Ms. Chen acted as a supervisor or manager to Ms. Robinson; or (2) Canal or Mr. De Niro knew of Ms. Chen's discriminatory conduct and allowed it to continue or failed to take immediate and appropriate corrective action; or (3) that Canal or Mr. De Niro should have known of Ms. Chen's discriminatory conduct, yet failed to exercise reasonable diligence to prevent it. In determining Canal's liability for Ms. Chen's discriminatory conduct, you may consider factors, such as, among

others, whether Canal failed to adequately respond to and investigate complaints or effectively discouraged complaints from being filed.

Further, keep in mind that the city human rights law is not a general civility code.  Ms. Robinson still bears the burden of showing that the conduct is caused by a discriminatory motive. It is not enough to show one has an overbearing or obnoxious boss.  Ms. Robinson must show that she has been treated less well at least in part because of her gender.  Thus, even if Ms. Robinson establishes that she was subjected to discriminatory treatment, Canal and Mr. De Niro can still avoid liability by proving that the complained-of conduct is nothing more than what a reasonable woman would consider a petty slight or trivial inconvenience.

## 2.    Retaliation[18]

Ms. Robinson also asserts a retaliation claim under the New York City Human Rights Law against Canal and Mr. De Niro, alleging that Defendants stripped Ms. Robinson of job duties after she expressed concerns about Ms. Chen's treatment. To prevail on her retaliation claim under the city human rights law, Ms. Robinson must prove each of the following four elements by a preponderance of the evidence: (1) that she engaged in protected activity, such as making a complaint to her employer about discrimination; (2) that the protected activity Ms. Robinson engaged in was known to the defendant; (3) that the defendant engaged in conduct that was reasonably likely to deter a person from engaging in that protected activity; and (4) that the

---

[18] Based on *Casmento v. Volmar Constr., Inc.*, Trial Tr., 20-cv-00944, Dkt. 106 (S.D.N.Y. June 7, 2022) (Liman, J.); *Edelman v. NYU Langone Health System*, Trial Tr., 21-cv-502 (S.D.N.Y.) (Liman, J.); N.Y.C. Admin. Code § 8-107(7); N.Y.C. Admin. Code § 8-107(13)(a); *Williams v. N.Y.C. Housing Auth.*, 61 A.D. 3d 62, 69-71 (N.Y. App. Div. 2009); *Naumovski v. Norris*, 934 F.3d 200, 220 (2d Cir. 2019); *Marseille v. Mount Sinai Hospital*, 2022 WL 14700981, at *2 (2d Cir. 2022).

.

defendant's conduct was motivated, at least in part, by Ms. Robinson's protected activity. Defendants deny that any of those elements have been proven.

As to the first element, an employee has a right to report and protest workplace discrimination where such discrimination has actually occurred or the employee reasonably believes in good faith that discrimination occurred. Protected activity includes the employee's conduct in opposing in good faith unlawful discrimination by complaining about discrimination to the employer.  Protected activity includes complaints that do not explicitly reference the law and instead make implicit reference to unlawful conduct.  To prove that she engaged in protected activity, Ms. Robinson need not establish that she was correct in her complaints or that there was indeed discrimination. She need only show that she had a good faith, reasonable belief that the challenged actions violated the law, and that she in fact made a complaint or otherwise engaged in protected activity.

The second element is knowledge of Ms. Robinson's protected activity. There's no dispute that Canal and Mr. De Niro knew of Ms. Robinson's alleged protected activity. If you find that Ms. Robinson engaged in protected activity, I direct you to find that she also satisfied this element.

The third element is that the defendant engaged in conduct that was reasonably likely to deter a person from engaging in protected activity.  Canal's or Mr. De Niro's conduct need not have resulted in a termination of Ms. Robinson's employment or in a materially adverse change in the terms and conditions of her employment. Instead, you need only find that the conduct at issue was reasonably likely to deter a person from engaging in protected activity.

The fourth element of retaliation under the city human rights law that plaintiff must prove by a preponderance of the evidence is that the decision of that defendant to retaliate against her was a motivating factor in that defendant's decision to engage in its conduct.  In order to carry her

burden as to this element, Ms. Robinson need not establish that her protected activity was the sole or principal reason for any action that the defendant took against her. The city human rights law is violated when retaliatory intent is a motivating factor for a defendant's action, whether or not that retaliatory motive was the sole cause for the action. If plaintiff proves that the defendant had a retaliatory motive for any action that he or it took against her that would be reasonably likely to deter a person from engaging in protected activity, this element is satisfied. Ms. Robinson may show either that the individual or entity that made the decision to take such action was motivated in part by a desire to retaliate against her or that an individual who was substantially motivated by retaliatory intent, such as Ms. Chen, played a meaningful role in the decision.

When you consider the question of retaliatory motive, you are to decide whether the non-retaliatory reasons advanced by a Defendant were the actual reasons for the Defendant's actions. An employer or supervisor is entitled to make decisions for good reasons, bad reasons, or for no reason at all, so long as the decision is not motivated by an unlawful reason, such as retaliation. The issue in this case is not whether you would have taken any of the alleged adverse actions against Plaintiff if you were in charge.  Rather, you are to determine whether the Defendant you are considering took the alleged adverse actions against Plaintiff for purely non-retaliatory reasons, or at least in part because of her protected activity.

If you believe that the reasons offered by a Defendant for adverse actions taken against Plaintiff are false, you may infer that that Defendant acted out of a desire to retaliate against her. Here, temporal proximity, without more, is insufficient to satisfy the plaintiff's burden to bring forward some evidence of pretext.  However, if you find that the reasons given by a Defendant for the alleged adverse actions are false, that does not necessarily mean that the true motive was the illegal, retaliatory motive argued by Plaintiff.

In determining whether Ms. Robinson has carried her burden of proving retaliatory intent, you will consider all the facts and circumstances that your common sense and good judgment tell you are relevant to deciding why someone acted as they did. The central question is whether the Defendants took the alleged adverse actions against Ms. Robinson at least in part because she engaged in a protected activity, and the burden is on Ms. Robinson to prove that.

If you find that Mr. De Niro retaliated, or aided and abetted retaliation, against Ms. Robinson, you must find both Mr. De Niro and Canal liable for retaliation.  If you find that Ms. Chen retaliated, or aided and abetted retaliation, against Ms. Robinson, you must find Canal liable for retaliation.

[If you find that Ms. Robinson has proved all the elements of her retaliation claim under the City Human Rights Law, you must then decide whether the Defendant you are considering has proved by a preponderance of the evidence that the action taken against Ms. Robinson would have been taken on the basis of non-retaliatory reasons alone.  Defendants here claim that any action taken against Ms. Robinson that was reasonably likely to deter a person from engaging in protected activity was taken for a non-retaliatory reason.

In deciding whether the Defendant you are considering has satisfied his or its burden on this issue, follow these steps:  Consider whether the Defendant has proved that the decision to take an action against Ms. Robinson that was reasonably likely to deter a person from engaging in protected activity was motivated by a non-retaliatory reason in addition to a retaliatory motive.  If you find that the Defendant you are considering was not motivated by any non-retaliatory reason, you must find for Ms. Robinson.  If, however, you find that the Defendant had non-retaliatory reasons for his or its action, you must determine whether the Defendant has proved that he or it

would have taken this action against Ms. Robinson based upon these non-retaliatory reasons alone.][19]

### B.    Canal's Counterclaims

### 1.    Conversion[20]

Canal has asserted a counterclaim against Ms. Robinson for conversion. In this counterclaim, Canal alleges that Ms. Robinson transferred Delta SkyMiles from Canal's account to her own without permission. Ms. Robinson contends that the transfer of Delta SkyMiles was authorized, and Canal cannot quantify specific damages that it alleges it sustained as a result of the transfer.

Canal bears the burden of proof on its conversion counterclaim. [For each SkyMiles transfer at issue in Canal's claims,] Canal must prove all four of the following elements.[21]

First, Canal must prove that Ms. Robinson intentionally assumed or exercised control over Canal's personal property and interfered with Canal's right of possession.

Second, Canal must prove that Ms. Robinson's actions were not authorized by Canal or Mr. De Niro. An act may be authorized in a variety of ways, for instance if it was allowed under

---

[19] Plaintiff's Position: The bracketed language should be omitted, as it sets forth a defense that does not apply to the NYCHRL, which mandates that retaliation play "no role" in the challenged conduct. *See, e.g.*, *Ya-Chen Chen v. City University of New York*, 805 F.3d 59, 76 (2d Cir. 2015). Defendants' Position: Defendants request the bracketed language because, if the action would have been taken with or without the alleged protected activity, it is not by definition retaliatory. Thus, Plaintiff's language is an overstatement.

[20] Based on *Crawford v. Coram Fire*, 2:12-cv-03850, Dkt. 110 at 42 (E.D.N.Y. Oct. 18, 2016); *Halvatzis v. Perrone*, 156 N.Y.S.3d 428, 430 (2d Dep't 2021); *Baldeo v. Majeed*, 55 N.Y.S.3d 340, 344-45 (2d Dep't 2017).

[21] Plaintiff's Position: The bracketed language should be included, as Canal must prove all the elements of conversion for each SkyMiles transfer as to which it seeks damages. Defendants' Position: Defendants dispute the bracketed language, as it does not need to independently prove the elements for each particular transfer or each particular SkyMile. The jury may review the totality of the evidence and reach a decision.

Canal's standard operating procedures or policies or if it was approved orally or in writing by Mr. De Niro or by someone else that he designated to act on behalf of Canal.

Third, Canal must prove that Ms. Robinson's actions caused Canal to suffer specific and quantifiable damages. In addition to this requirement, I will also provide separate instructions to you on how to evaluate damages.

In order for you to find for Canal on its counterclaim for conversion, Canal must prove all elements of its claim by a preponderance of the evidence. If Canal fails to prove any elements of its claim by a preponderance of the evidence, you must find against Canal on its counterclaim for conversion.

### 2.      Breach of Fiduciary Duty[22]

Canal has asserted a counterclaim against Ms. Robinson for breach of fiduciary duty.

In this counterclaim, Canal alleges that Ms. Robinson owed a fiduciary duty, breached this duty by engaging in unauthorized spending and transactions from August 17, 2016 until she resigned from Canal on April 6, 2019, and caused Canal to sustain damages as a result. Specifically, Canal alleges that Ms. Robinson committed the following acts of wrongdoing: placing unauthorized credit card charges for Ubers and taxis, at Paola's restaurant, Whole Foods, and Dean & Deluca, and for a trip to Los Angeles in March 2018; obtaining unauthorized payments for unused vacation days; and transferring Delta SkyMiles generated by a Canal credit card without Mr. De Niro's approval in 2019.  Ms. Robinson contends that she did not breach a fiduciary duty to Canal, the spending and transactions that Canal now challenges were authorized during her

---

[22] Based on *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 241 (2d Cir. 2020); *Baldeo v. Majeed*, 55 N.Y.S.3d 340, 344-45 (2d Dep't 2017).

employment, and Canal cannot quantify that it sustained specific damages as a result of unauthorized spending and transactions.

Canal bears the burden of proof on its counterclaim for breach of fiduciary duty.

First, Canal must prove that Ms. Robinson owed a fiduciary duty to Canal at the time of the alleged wrongdoing.  Generally, a current officer, director, or employee of a company owes a fiduciary duty to the company if they are acting on behalf of the company as its agent with power to affect the company's legal rights and duties.  [However, not all aspects of the employment relationship trigger a fiduciary duty, such as when an employee exercises discretion given to her by her employer.  If you determine that, in the transactions at issue, Ms. Robinson did not have a secret conflict of interest and was merely exercising discretion that Canal or Mr. De Niro gave to her, you should find that Ms. Robinson did not owe a fiduciary duty to Canal with respect to that conduct.[23]]  [An employee has a duty to his employer to act in good faith and in the employer's best interests during the period of the employment.  A person acting in a fiduciary capacity is required to make truthful and complete disclosures to those to whom a fiduciary duty is owed and the fiduciary is forbidden to obtain an improper advantage at the other's expense.][24] [Further, a former officer, director, or employee does not owe a fiduciary duty to the company.][25]

---

[23] Plaintiff's Position: The bracketed language should be included; as per RESTATEMENT (THIRD) OF AGENCY § 1.01, cmts. C & e (2006), an agent's unconflicted exercise of discretion does not automatically implicate fiduciary doctrines.  Defendants' Position: Defendants dispute the bracketed language, which inserts an improper conflict of interest requirement and suggestions about the specific evidence in the case.  Defendants assert that the Court should instruct the jury that the first element has been satisfied as it is uncontested that Robinson owed fiduciary duties.

[24] Plaintiff's Position: The bracketed language should be omitted and replaced with the preceding bracketed section.  If the bracketed language is included, the following clarification should be added: "An employee's fiduciary duty does not mean that the employee cannot utilize company expense policies or exercise discretion afforded to her by her employer."  Defendants' Position: The bracketed language should be included as it is necessary to explain what a fiduciary duty is.

[25] Plaintiff's Position: The bracketed language should be included to clarify for the jury that any actions of Ms. Robinson after her employment ended do not give rise to a counterclaim for breach of fiduciary duty.

Second, Canal must prove that Ms. Robinson violated a fiduciary duty to Canal by committing acts of misconduct between August 17, 2016, and April 6, 2019. An act is not considered misconduct if it was authorized by Canal or by other persons designated to act on behalf of Canal, including Canal's owner, Mr. De Niro. An act may be authorized in a variety of ways, for instance if it was allowed under Canal's standard operating procedures or policies or if it was approved orally or in writing by Mr. De Niro or by someone else that he designated to act on behalf of Canal.

Third, Canal must prove that any proven acts of misconduct between August 17, 2016, and April 6, 2019, directly caused Canal to sustain specific, quantifiable damages. I will provide separate instructions to you on how to evaluate damages.

In order for you to find for Canal on its counterclaim for breach of fiduciary duty, Canal must prove all three (3) of these elements by a preponderance of the evidence. If Canal fails to prove any one of these three (3) elements by a preponderance of the evidence, you must find against Canal on its counterclaim for breach of fiduciary duty.

### 3. Breach of Duty of Loyalty[26]

Canal has asserted a counterclaim against Ms. Robinson for breach of the duty of loyalty or faithless servant doctrine.

In this counterclaim, Canal alleges that Ms. Robinson owed a duty of loyalty to the Company, breached this duty by engaging in unauthorized spending and transactions from August 17, 2016 until she resigned from Canal on April 6, 2019, and therefore should be ordered to return

Defendants' Position: The bracketed language should be excluded as confusing. The breach of fiduciary duty claim only implicates Robinson's activities while employed so there is no need to reference the lack of duty of a former employee.

[26] Based on *Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 201 (2d Cir. 2003); *Turner v Konwenhoven*, 100 N.Y. 115 (1885); *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 238-41 (2d Cir. 2020).

the salary that Canal paid to her during the period of her alleged disloyalty. Specifically, Canal alleges that Ms. Robinson committed the following acts of wrongdoing: placing unauthorized credit card charges for Ubers and taxis, at Paola's restaurant, Whole Foods, and Dean & Deluca, and for a trip to Los Angeles in March 2018; obtaining unauthorized payments for unused vacation days; and transferring Delta SkyMiles generated by a Canal credit card without Mr. De Niro's approval in 2019. Ms. Robinson contends that she did not breach a duty of loyalty to Canal, the actions that Canal now challenges were authorized during her employment, and she should not be ordered to repay her salary.

Canal bears the burden of proof on its counterclaim for breach of duty of loyalty.

First, Canal must prove that Ms. Robinson owed a duty of loyalty to Canal at the time of the alleged wrongdoing. Generally, a current officer, director, or employee of a company owes a duty of loyalty to the company if they are acting on behalf of the company as its agent with power to affect the company's legal rights and duties. [However, not all aspects of the employment relationship trigger a fiduciary duty, such as when an employee exercises discretion given to her by her employer. If you determine that, in the transactions at issue, Ms. Robinson did not have a secret conflict of interest and was merely exercising discretion that Canal or Mr. De Niro gave to her, you should find that Ms. Robinson did not owe a fiduciary duty to Canal with respect to that conduct.[27]] [An employee has a duty to his employer to act in good faith and in the employer's best interests during the period of the employment. A fiduciary owes his employer undivided and unqualified loyalty and may not act in any manner contrary to the interests of the employer. A

---

[27] Plaintiff's Position: The bracketed language should be included; as per RESTATEMENT (THIRD) OF AGENCY § 1.01, cmts. C & e (2006), an agent's unconflicted exercise of discretion does not automatically implicate fiduciary doctrines. Defendants' Position: Defendants dispute the bracketed language, which inserts an improper conflict of interest requirement and suggestions about the specific evidence in the case. Defendants assert that the Court should instruct the jury that the first element has been satisfied as it is uncontested that Robinson owed fiduciary duties.

person acting in a fiduciary capacity is required to make truthful and complete disclosures to those to whom a fiduciary duty is owed and the fiduciary is forbidden to obtain an improper advantage at the other's expense.][28] [Further, a former officer, director, or employee does not owe a fiduciary duty to the company.][29]

Second, Canal must prove that Ms. Robinson violated her duty of loyalty by committing acts of disloyalty between August 17, 2016, and April 6, 2019.  This requirement is not satisfied where an employee engages in petty theft.  By contrast, sufficiently serious acts of embezzling or stealing money may satisfy this requirement.  An act is not considered disloyal if it was authorized by Canal, by its owner Mr. De Niro, or by other persons designated to act on behalf of Canal.  An act may be authorized in a variety of ways, for instance if it was allowed under Canal's standard operating procedures or policies or if it was approved orally or in writing by Mr. De Niro or by someone else that he designated to act on behalf of Canal.

Third, Canal must prove that Ms. Robinson's disloyalty was substantial, that it permeated her service to Canal in its most material and substantial part, and that it substantially violated her contract with Canal.  [Canal cannot satisfy this requirement if the disloyalty was limited to a single act or if Canal or Mr. De Niro knew of and tolerated her conduct.][30]

---

[28] Plaintiff's Position: The bracketed language should be omitted and replaced with the preceding bracketed section proposed by Plaintiff.  If the bracketed language is included, the following clarification should be added: "An employee's fiduciary duty does not mean that the employee cannot utilize company expense policies or exercise discretion afforded to her by her employer."  Defendants' Position: The bracketed language should be included as it is necessary to explain what a fiduciary duty is.

[29] Plaintiff's Position: The bracketed language should be included to clarify for the jury that any actions of Ms. Robinson after her employment ended do not give rise to a counterclaim for breach of the duty of loyalty.  Defendants' Position: The bracketed language should be excluded as confusing. The duty of loyalty claim only implicates Robinson's activities while employed.

[30] Plaintiff's Position: The bracketed language should be included, as it is drawn directly from the Second Circuit's decision in *Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 202 (2d Cir. 2003). Defendants' Position: Defendants dispute the bracketed language. There is no requirement that an employee engage in multiple acts of disloyalty. Nor does Canal have any burden to prove that it did not know of or

In order for you to find for Canal on its counterclaim for breach of the duty of loyalty, Canal must prove all three (3) of these elements by a preponderance of the evidence. If Canal fails to prove any one of these three (3) elements by a preponderance of the evidence, you must find against Canal on its counterclaim for breach of the duty of loyalty.

### C.     Ms. Robinson's Affirmative Defenses to Canal's Counterclaims

Ms. Robinson asserts four affirmative defenses to Canal's counterclaims.  If you find that Canal has not proven any of its counterclaims against Ms. Robinson, then you do not need to consider her affirmative defenses.

However, if you do find that Canal has proven one or more of its counterclaims, you must next consider whether Ms. Robinson has an affirmative defense to the counterclaim(s).  If you find that Ms. Robinson has proven an affirmative defense as to one or more counterclaim, then you must find in Ms. Robinson's favor as to such counterclaim.

### 1.     Ratification[31]

Ms. Robinson has asserted the legal doctrine of ratification as an affirmative defense to all of Canal's counterclaims. Under the ratification defense, ratification occurs if an employer has knowledge of allegedly unauthorized charge or transaction and does not timely reject it or otherwise acts in a way that indicates that it adopts or accepts it.  As part of this affirmative defense, Ms. Robinson asserts that even if one were to accept Canal's argument that Ms. Robinson converted Delta SkyMiles or violated her fiduciary duty or duty of loyalty, Canal nonetheless

---

tolerate the activity. Those assertions go to Plaintiff's affirmative defenses.

[31] Based on *Cammeby's Mgmt. Co., LLC v. Alliant Ins. Servs., Inc.*, Jury Instructions, 2016 WL 11468882 (S.D.N.Y.), *aff'd*, 720 F.App'x 18, 23 (2d Cir. 2017); *Anderson v Wood-Dolson Co.*, 212 A.D. 483, 486-87 (1st Dep't 1925); (*Rothschild v. Title Guar. & Trust Co.*, 204 N.Y. 458, 464 (1912); *In re Adelphia Recovery Tr.*, 634 F.3d 678, 692 (2d Cir. 2011); *In re Ampal-American Israel Corp.*, 648 B.R. 457, 475-76 (Bkrtcy. S.D.N.Y. 2023).

ratified her conduct that it now challenges [by, for example, not objecting over many years, paying the credit card charges it now challenges, and claiming tax deductions based on those charges.][32] Canal disputes that it ratified the spending and transactions at issue.

Ms. Robinson bears the burden of proving this defense by a preponderance of the evidence. To establish this defense, Ms. Robinson must show that: (1) Canal and/or Mr. De Niro had either (a) full knowledge of the conduct at issue, or (b) sufficient notice of their rights and all material facts; and (2) Canal and/or Mr. De Niro accepted benefits from the conduct or otherwise approved it.

Canal's and/or Mr. De Niro's approval can be proven through affirmative acts [such as paying credit card bills containing charges or by claiming tax deductions for the charges].[33] In appropriate circumstances, such approval can be proven by acquiescence, inaction, or even silence. Specifically, if you find that an authorized representative of Canal or Mr. De Niro had knowledge of the conduct and yet failed to inform Ms. Robinson in a timely manner concerning a lack of approval, you may, if you wish, infer that Canal intended to accept the conduct and, by their silence, was manifesting its acceptance.  You are not, however, required to draw this inference, and you may do so only if, in the circumstances, such silence was a clear manifestation of acceptance. The length of time of any such silence may be a factor in your determination.

---

[32] Plaintiff's Position: The bracketed language should be included as it identifies bases for Plaintiff's ratification defense.  Defendants' Position: Defendants dispute the bracketed language because it suggests that proof of those particular facts are sufficient to establish ratification. The instruction should set forth the law and the jury should determine what facts are applicable.

[33] Plaintiff's Position: The bracketed language should be included as examples of ratifying acts; acceptance of tax benefits is a recognized form of ratification, as per *Niosi v. Niosi*, 641 N.Y.S.2d 93, 94 (2d Dep't 1996); *see also Evanston Ins. Co. v Po Wing Hong Food Market*, 800 N.Y.S.2d 396, 397 (1st Dep't 2005) (ratification through payment); *Lifshutz v. Lifshutz*, 199 S.W.3d 9, 22 (Tex. App. San Antonio, 2006) (involving ratification of payment of personal expenses). Defendants' Position: Defendants dispute the bracketed language. There is no rule that paying an expense or taking a tax deduction automatically ratifies an act, as the bracketed language misleadingly suggests. The instruction should state the law and not comment on facts in dispute.

If you find that Ms. Robinson has proved all the elements of this defense, you should find against Canal and in favor of Ms. Robinson on all of Canal's counterclaims.

2.      **Acquiescence[34]**

Ms. Robinson has asserted acquiescence as an affirmative defense to Canal's counterclaims.  Under the acquiescence defense, if a party remains silent and fails to object to an employee's conduct, their silence is treated as an assent or, in other words, an agreement.  Ms. Robinson asserts that Canal acquiesced in the conduct at issue by failing to object for years, thereby implying that it was authorized.  Canal disputes that it acquiesced the conduct at issue.

Ms. Robinson bears the burden of proving this defense by a preponderance of the evidence. To establish this defense, Ms. Robinson must show that: (1) Canal and/or Mr. De Niro knew or should have known of the conduct Canal now challenges; and (2) that Canal and/or Mr. De Niro did not object to the conduct when it occurred; and (3) Canal's and/or Mr. De Niro's silence implied that Canal had no objection to such conduct.  If you find that Mr. De Niro acquiesced in certain conduct, then you must find that Canal acquiesced as to that conduct as well. The length of time of any such silence may be a factor in your determination.

If you find that Ms. Robinson has proved all the elements of this defense, you should find against Canal and in favor of Ms. Robinson on all of Canal's counterclaims.

---

[34] Based on *In re Prudential Lines, Inc.*, 209 B.R. 621, 625 (S.D.N.Y. 1997), *aff'd*, 158 F.3d 65 (2d Cir. 1998); *Harper v. Adams*, 18 N.Y.S. 896, 897 (2d Dep't 1892); 2A N.Y. Jur. 2d Agency § 192; *Kent v. Quicksilver Min. Co.*, 78 N.Y. 159, 159-60 (1879); *Rothschild v. Title Guarantee & Tr. Co.*, 204 N.Y. 458, 461, 464 (1912).

### 3.    Laches[35]

Ms. Robinson has also asserted a legal doctrine known as laches as an affirmative defense to all of Canal's counterclaims.  According to the laches defense, a party must be vigilant and will be denied relief if they sleep on their rights.  Ms. Robinson argues that Canal and Mr. De Niro had failed to complain about her conduct in a timely manner and this delay prejudiced her.  Canal disputes that the laches defense applies.

The doctrine of laches is an equitable principle designed to bar stale claims. When a party neglects to assert a right or claim for an unreasonable [and unexplained][36] length of time and the lapse of time and other circumstances cause prejudice to the adverse party, relief is denied on the grounds of laches. [The mere passage of time is not enough to invoke the doctrine.][37] The defense of laches consists of two elements. First, there must have been an unreasonable delay by Canal [that was inexcusable],[38] and second, that delay must have prejudiced Ms. Robinson. The burden is on Ms. Robinson to establish that defense by a preponderance of the evidence.

[In determining whether the defense of laches applies, you must take into account all the particular facts and circumstances of the case and with the equities of the parties. You should also consider whether Canal has demonstrated that Ms. Robinson was guilty of egregious conduct or

---

[35] Based on *Deutsche Bank Nat. Trust Co. v. Joseph*, 986 N.Y.S.2d 545, 546 (2d Dep't 2014); *Ivani Contracting Corp. v. City of New York*, 103 F.3d 257, 259 (2d Cir. 1997).

[36] Plaintiff's Position: The bracketed language should be omitted, as Defendants present no authority for its inclusion.  Defendants' Position: Defendants request the bracketed language because it is axiomatic that an explained delay may preclude a claim of laches. The jury is entitled to consider both the existence of any delay and its explanation.

[37] Plaintiffs' Position: The bracketed language should be omitted as unnecessary, as the elements of the defense are clearly explained in the following sentences.  Defendants' Position: Defendants request the bracketed language for clarity and because Plaintiff does not contest its accuracy.

[38] Plaintiffs' Position: The bracketed language should be omitted as redundant, as the clause already refers to an "unreasonable delay."   Defendants' Position: Defendants request the bracketed language as reasonableness is different from excuse and the jury is entitled to consider both concepts.

committed misdeeds toward Canal which preclude application of the defense in this case. Because laches is an equitable defense, it should be applied only if under the circumstances Ms. Robinson acted in ignorance or good faith.][39]

If you find that Ms. Robinson has proved all the elements of this defense, you should find against Canal and in favor of Ms. Robinson on all of Canal's counterclaims.

### 4.   Unclean Hands[40]

Ms. Robinson has also asserted a legal doctrine known as "unclean hands" as an affirmative defense to Canal's counterclaim for breach of duty of loyalty.  According to the unclean hands defense, a party who themselves acted in bad faith may not obtain relief even against a party who acted improperly. Ms. Robinson argues that Canal and Mr. De Niro have acted in bad faith in relation to the matter for which Canal seeks relief.  Canal disputes that the unclean hands defense applies.

The doctrine of unclean hands is invoked when a litigant seeking relief has committed some unconscionable act, has acted in bad faith, has acted fraudulently, or has used deceit or any unfair means to gain an advantage. If you find any such violation of good faith or conscience by Canal, then you should find that Canal has acted with unclean hands.

Ms. Robinson bears the burden of proving the defense of unclean hands by a preponderance of the evidence.  To establish this defense, Ms. Robinson must show that: (1) Canal has engaged

---

[39] Plaintiff's Position: The bracketed language should be omitted as antithetical to the doctrine of laches; the doctrine of laches concerns the actions of the allegedly injured party, not whether the alleged offender has behaved inequitably. *See Deutsche Bank Nat. Trust Co. v. Joseph*, 986 N.Y.S.2d 545, 546 (2d Dep't 2014) (collecting cases).  Defendants' Position: Defendants request the bracketed language because laches is a purely equitable concept and the jury is permitted to take into account the conduct of the party asserting laches.

[40] Based on *Obabueki v. Int'l Bus. Machines Corp.*, 145 F.Supp.2d 371, 401 (S.D.N.Y. 2001); *Wells Fargo Bank v. Hodge*, 939 N.Y.S.2d 98, 100 (2d Dep't 2012).

in bad faith conduct with regard to the claim that Ms. Robinson breached her duty of loyalty; and (2) Ms. Robinson was injured by Canal's bad faith conduct.

The only conduct on which you may make a finding of unclean hands is that conduct directly related to the subject matter or relationship at issue in this litigation. Unclean hands does not mean that someone is a bad person in general or in some other respect; you may find unclean hands only if you find a direct connection between the alleged unclean hands conduct and the facts of this case.

If you find that Ms. Robinson has proved both elements of this defense, you should find against Canal and in favor of Ms. Robinson on Canal's counterclaim for breach of duty of loyalty.

### D.    Damages

I am now going to instruct you on the issue of damages.  The fact that I am going to instruct you on damages does not reflect any view as to whether any party is entitled to a verdict in this case.  Instructions as to the measure of damages are simply given for your guidance in the event you return a verdict in favor of a party.

The purpose of the law of damages is to award, as far as possible, just and fair compensation for the loss, if any, that the injured party has suffered as a result of the actions of the liable party you are considering.  The damages that you award must be fair and reasonable, and neither inadequate nor excessive.

In awarding damages, if you decide to award them, you must be guided by dispassionate common sense.  Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork.  On the other hand, the law does not require injured parties to prove the amount of their losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.  In all instances, you are to use sound discretion in fixing

an award of damages, drawing reasonable inferences where you deem appropriate from the facts and circumstances in evidence.

You must not consider the tax implications of any award of damages to any party.

The verdict form I will give you will assist you in recording the determinations, if any, that you make as to damages.

### 1.    Compensatory Damages (on Ms. Robinson's Claims)[41]

If you decide that Ms. Robinson is entitled to recover on any of her claims against Mr. De Niro or Canal, then you should proceed to decide the amount of damages to award Ms. Robinson. Ms. Robinson bears the burden of proving her damages [and must present competent evidence of identifiable loss so that the damages award is not merely speculative].[42] But if her damages cannot be precisely measured, you should make a just and reasonable estimate. [43]  You should award an amount as, in the exercise of your good judgment and common sense, you decide is fair and just compensation for her injury.  In fixing that amount, you should consider all the facts and circumstances in this case.[44]

If you decide that Ms. Robinson is entitled to recover on her claims of discrimination or retaliation, you should proceed to calculate the dollar amount of any actual monetary loss that Ms.

---

[41] Based on *Edelman v. NYU Langone Health System*, Trial Tr., 21-cv-502 (S.D.N.Y.) (Liman, J.); *Casmento v. Volmar Constr., Inc.*, Trial Tr., 20-cv-00944, Dkt. 106 (S.D.N.Y. June 7, 2022) (Liman, J.).

[42] Plaintiff's Position: The bracketed language should be omitted, as there is no requirement that a discrimination or retaliation victim must prove "identifiable loss" in order to obtain compensatory damages. Defendants' Position: Defendants request inclusion of the bracketed language because, of course, Plaintiff must establish some identifiable, legally cognizable loss.

[43] *Raishevich v. Foster*, 9 F.Supp.2d 415, 417 (S.D.N.Y. 1998); *Airday v. City of New York,* 406 F.Supp.3d 313, 327 (S.D.N.Y. 2019)

[44] *Casmento v. Volmar Constr., Inc.*, Trial Tr., 20-cv-00944, Dkt. 106 at 748-49 (S.D.N.Y. June 7, 2022) (Liman, J.).

Robinson has proven she sustained as a result of the wrongful conduct by Defendants between August 17, 2016, and April 6, 2019.

In addition, your award of damages may also include compensation for Ms. Robinson's intangible injuries, such as emotional distress or reputational harm.  No evidence of monetary value of intangible things like pain and suffering needs to be introduced into evidence.  A plaintiff is not required to have sought psychiatric or psychological treatment in order to recover damages for emotional distress.  There is no requirement that a plaintiff prove expenses, lost earnings, or that she suffered any measurable damages in order for her to receive compensation for mental suffering.  No expert testimony is necessary to support an award of compensatory damages. Furthermore, Ms. Robinson's personality or any pre-existing condition should not affect your determination of damages; a plaintiff is entitled to recover damages for their full emotional distress, even if their personality or a pre-existing condition aggravated that distress.[45]

There is no exact standard for fixing the compensation to be awarded for those elements of damages.  You must use your sound discretion in fixing an award of damages, drawing reasonable inferences from the facts in evidence.  The damages that you award must be fair and reasonable, neither inadequate nor excessive.  You should not award compensatory damages for speculative injuries, but only for those injuries that Ms. Robinson has actually suffered or is reasonably likely to suffer in the future.

[In addition, if you find that Ms. Robinson was paid unequally at least in part based on her gender, she is entitled to recover damages for the difference in compensation between Ms. Robinson and her male comparator during the period when the unequal pay occurred.[46]]

---

[45] *Schuster v. Brimstone Hill Corp.*, 64 F.App'x 316, 318 (2d Cir. 2003); N.Y. Pattern Jury Instr. § 2:282.

[46] Plaintiff's Position: The bracketed language should be included, as Plaintiff's NYCHRL claim includes

## 2.    Punitive Damages (on Ms. Robinson's Claims)[47]

In addition to compensatory damages, the law authorizes what are called punitive damages for the purpose of punishing a wrongdoer and serving as an example or warning to other defendants not to engage in similar unlawful conduct in the future. You will thus be asked to determine if either Mr. De Niro's or Canal's conduct warrants punitive liability. Specifically, under the New York City Human Rights Law, a plaintiff is entitled to punitive damages when she has proven by a preponderance of the evidence that the wrongdoer's actions amounted to willful or wanton negligence or recklessness, that there was a conscious disregard of the rights of others, or that there was conduct so reckless as to amount to such disregard. A defendant has acted with willful or wanton negligence if its discriminatory and/or retaliatory acts evidence a high degree of moral culpability and demonstrate exceptional misconduct towards a plaintiff. An act is conscious if it is done knowingly.

If you decide to award punitive damages, you must use sound reason in setting the amount – it must not reflect bias, prejudice, or sympathy towards any party.  But the amount may be as large as you believe necessary to fulfill the purposes of punitive damages.  In this regard, you may consider the financial resources of Mr. De Niro and Canal in fixing the amount of punitive damages.

---

pay discrimination.  *See* Dkt. No. 1 at ¶¶ 29, 54; Dkt. No. 268 (noting that Plaintiff's dismissal of federal and state Equal Pay Act claims does not affect NYCHRL claims). Defendants' Position: Defendants dispute that Plaintiff may proceed on any equal pay claims, in light of the Court's findings on summary judgment, and will be moving in limine in that regard.

[47] Based on *Casmento v. Volmar Constr., Inc.*, Trial Tr., 20-cv-00944, Dkt. 106 (S.D.N.Y. June 7, 2022) (Liman, J.); *Chauca v. Abraham*, 885 F.3d 122, 124 (2d Cir. 2018); *Ravina v. Columbia Univ.*, Trial Tr., 16-cv-02137, Dkt. 266 (S.D.N.Y. July 24, 2018).

3.    **Monetary Damages (on Canal's Counterclaims against Ms. Robinson)[48]**

If you decide that Canal is entitled to recover on any of its claims against Ms. Robinson, then you should proceed to decide the amount of damages to award to Canal. Canal bears the burden of proving its damages and must present competent evidence of identifiable loss so that the damages award is not merely speculative.

If you decide that Canal is entitled to recover on its claims of conversion or breach of fiduciary duty, you should proceed to calculate the dollar value of any actual monetary loss that Canal has proven that it sustained as a result of unauthorized spending or transactions by Ms. Robinson between August 17, 2016, and April 6, 2019.  When calculating this amount, the dollar value of each unauthorized charge or transaction must be reduced by the dollar value of any financial benefit that Canal received from the charge or transaction, including any tax deductions, credit card points, or frequent flyer miles Canal received.[49]

If you decide that Canal is entitled to recover on its counterclaim of breach of the duty of loyalty, you should proceed to decide how much of Ms. Robinson's salary from Canal, if any, she should be ordered to forfeit and return Canal.  The amount of salary that you may order Ms. Robinson to forfeit and return to Canal is limited to the amount of salary she received for the specific date or date range when you find she was substantially disloyal, but no earlier than August 17, 2016 and no later than April 6, 2019.

---

[48] Based on *Crawford v. Coram Fire*, 2:12-cv-03850-DRH, Dkt. 110 at 42, 46 (E.D.N.Y. Oct. 18, 2016); New York Pattern Jury Instructions, Civil 3:10; *Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 201 (2d Cir. 2003); *Turner v Konwenhoven*, 100 N.Y. 115 (1885); *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 238-41 (2d Cir. 2020).

[49] *Fleetwood Services, LLC v. Ram Capital Funding, LLC*, 2022 WL 3536128, at *4 (S.D.N.Y. Aug. 17, 2022) (Liman, J.); *Nypl v. JP Morgan Chase & Co*., 2022 WL 819771, at *4 (S.D.N.Y. Mar. 18, 2022); *Weinberg v. Lear Fan Corp*., 627 F.Supp. 719, 724 (S.D.N.Y. 1986).

[I have one cautionary instruction regarding the damages that may be awarded to Canal. You should not award damages more than once for the same injury.  For example, if you find that Canal sustained its burden on more than one claim and established a total injury of one dollar, you may not award Canal one-dollar compensatory damages on each claim for a total of three dollars—Canal is only entitled to be made whole again, no more.][50]

### 4.    Nominal Damages (as to all Claims and Counterclaims)[51]

[If you return a verdict in favor of a party but find that the party has failed to prove by a preponderance of the evidence that they suffered any actual damages, then you may return an award of nominal damages, not to exceed the sum of one dollar. You may also award nominal damages if you find that some injury resulted, but you are unable to compute the monetary damages except by engaging in pure speculation and guessing.  You may not award both nominal and compensatory damages.   Nominal damages may be awarded when a party has acted in violation of law, but the other party has suffered no actual damage as a consequence of that conduct.][52]

---

[50] Plaintiff's Position: The bracketed language should be included, as it is blackletter law that a claimant may be made whole, but not put in a better position, and that duplicative damages are improper.  *See Wai Ming Ng v. Tow*, 260 A.D.2d 574, 575 (2d Dep't 1999).  Defendants' Position: Defendants dispute the bracketed language. It is likely to confuse the jury, which should consider damages on each of Canal's counterclaims. Duplicative damages can be eliminated by the court post-verdict; the task of doing so is not appropriate for the jury. Moreover, damages should be decided on each cause of action, for completeness in case any portion of the jury verdict is later altered by the court or on appeal.

[51] Based on *Casmento v. Volmar Construction, Inc.*, Trial Tr., Dkt. 106 at 752 (S.D.N.Y. June 7, 2022) (Liman, J.); *Marshall v. The Port Authority of N.Y. and N.J.*, Trial Tr., 19-cv-02168, Dkt. 110 at 543 (S.D.N.Y. Feb. 8, 2023) (Liman, J.).

[52] Plaintiff's Position: An instruction on nominal damages is in accord with the Court's instructions at other trials; *see Casmento v. Volmar Construction, Inc.*, Trial Tr., Dkt. 106 at 752 (S.D.N.Y. June 7, 2022) (Liman, J.); *Marshall v. The Port Authority of N.Y. and N.J.*, Trial Tr., 19-cv-02168, Dkt. 110 at 543 (S.D.N.Y. Feb. 8, 2023) (Liman, J.).  Defendants' Position: Defendants dispute the bracketed language and the inclusion of the section. Damages are an element of every legal claim asserted in this case. If the jury awards no damages on any claim, it has essentially ruled against that claim.

## 15.    NOTES TO THE COURT[53]

You are now about to go into the jury room to begin your deliberations.  Before you do that, I will give you a few final instructions.

The parties have prepared a list of the exhibits that were received, listed by exhibit number. If you want a particular exhibit, or if you want any testimony sent or read back to you, you may request that.  Any communication with the Court should be made in writing, signed by your foreperson, and given to the court security officer, whom, as in all cases, I will swear to ensure that your deliberations may take place uninterrupted.

Please remember that it is not always easy to locate what you might want, so be as specific as you possibly can.   If you want testimony read back to you, please try to be as specific as you possibly can because the court reporter will have to look through the transcript, and the parties will have to agree on what portions of testimony may be called for in response to your request, and if they disagree, I must resolve those disagreements.  If you want any further explanation of the law as I have explained it to you, you may also request that from the Court.  If there is any doubt or question about the meaning of any part of the instructions that I have given you during this trial, you should not hesitate to send me a note asking for clarification or for a further explanation.

It is very important that you not communicate with anyone outside the jury room about your deliberations or about anything touching this case. There is only one exception to this rule. If it becomes necessary during your deliberations to communicate with me -- to request exhibits or testimony, or to request clarification on the law -- you should send a note to me, in writing, signed by your foreperson, and given to one of the marshals or to my deputy. No members of the jury

---

[53] Based on *Casmento v. Volmar Constr., Inc.*, Trial Tr., 20-cv-00944, Dkt. 106 at 754-55 (S.D.N.Y. June 7, 2022) (Liman, J.).

should ever attempt to communicate with me except by a signed writing, and I will never communicate with a member of the jury on any subject touching on the merits of the case other than in writing or orally here in open court.

Many of you have taken notes periodically throughout this trial. You should not show your notes to or discuss your notes with any other jurors during your deliberations. Any notes you have taken are to be used solely to assist you. The fact that a particular juror has taken notes entitles that juror's views to no greater weight than those of any other juror.

I want to emphasize to you as you are about to begin your deliberations that notes are simply an aid to memory. Notes that any of you may have made may not be given any greater weight or influence in determination of the case than the recollections or impressions of other jurors, whether from notes or memory, with respect to the evidence presented, or what conclusions, if any, should be drawn from such evidence. Any difference between a juror's recollection and another juror's notes should be settled by asking to have the court reporter read back the transcript for it is the Court record, rather than any juror's notes, upon which the jury must base its determination of the facts and its verdict.

### 16.    CONCLUSION[54]

You will now retire to decide the questions I've described for you. For Ms. Robinson to prevail on the questions that you must answer, she must sustain her burden of proof. For Canal to prevail on the questions you must answer, it must sustain its burden of proof.  Your verdict on each question must be unanimous. Each juror is entitled to his or her opinion, but you are required to exchange views with your fellow jurors. This is the very essence of jury deliberation. It is your

---

[54] Based on *Casmento v. Volmar Const., Inc.*, Trial Tr., 20-cv-00944, Dkt. 106 (S.D.N.Y. June 7, 2022) (Liman, J.), and *Edelman v. NYU Langone Health System*, Trial Tr., 21-cv-502 (S.D.N.Y.) (Liman, J.).

duty to discuss the evidence. If you have a point of view and after reasoning with other jurors it appears that your own judgment is open to question, then of course you should not hesitate in yielding your original point of view if you are convinced that the opposite point of view is really one that satisfies your judgment and conscience. You are not to give up a point of view, however, that you conscientiously believe in simply because you are outnumbered or outweighed. You should vote with the others only if you are convinced on the evidence, the facts and the law that it is the correct way to decide the case. You are not to discuss the case until all jurors are present. Four or five jurors together is only a gathering of individuals. Only when all the jurors are present do you constitute a jury, and only then may you deliberate.

The first thing you should do when you retire to deliberate is take a vote to select one of you to sit as your foreperson. The foreperson will send out any notes, and when the jury has reached a verdict, he or she will notify the court security officer that the jury has reached a verdict, and when you come into open court, the foreperson will be asked to state what the verdict is.

Once you have made your verdict, you will record your decisions in a verdict form which I have prepared for you. You should also proceed through the questions in the order in which they are listed, following the instructions on that form.

Once you have completed the form, the foreperson should then fill in the verdict sheet and date it, and each of you should sign it. The foreperson should then give a note to the court security officer outside your door stating that you have reached a verdict. Do not specify what the verdict is in your note. I will stress that each of you must be in agreement with the verdict that is announced in court. Once your verdict is announced by your foreperson in open court and officially recorded, it cannot ordinarily be revoked.

I remind you that you took an oath to render judgment impartially and fairly, without prejudice or sympathy and without fear, solely upon the evidence in the case and the applicable law. Your oath sums up your duty. I know that you will do your duty and reach a just and true verdict. I will ask you to remain seated while I confer with the attorneys to see if there are any additional instructions that they would like to have given to you or if there is anything I may not have covered.  In this regard, I ask you not to discuss the case while seated in the box because the case has not yet been formally submitted to you.

*                            *                            *

Members of the jury, that concludes my instructions to you.  You may now retire to the jury room and begin this phase of your deliberations.  As a first matter of business, please select a foreperson and send me a note, signed, dated, and timed, through the court security officer or my deputy, Mr. Fishman, telling me whom you have elected as your foreperson.